UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Movant David Andrew Christenson

DEMOCRATIC NATIONAL COMMITTEE,

Plaintiff,

v.

RUSSIAN FEDERATION, et al;
Defendants.

Civil Action No. 1:18-cv-03501

Racketeer Influenced and
Corrupt Organization Act (RICO)

Judge John G. Koeltl

Amicus (Second) (Part 1 of 2)

Here is precedent about my trying to help my fellow Americans and the Federal Judiciary refusing to allow me to do so.

The Federal Judiciary has repeatedly ruled that I do have a right or Constitutional Right to help my fellow Americans.

Attached are the first few pages of three class action complaints against Orleans Parish Criminal Court Judges, the Orleans Parish District Attorney and 10 Assistant District Attorneys and Magistrate Harry Cantrell.

I filed Motions to Intervene and Motions to Join in all three class action complaints because of my direct history/association (Amicus Second Part 2) with the Orleans Parish Criminal Court Judges, the Orleans Parish District Attorney and 10 Assistant District Attorneys and Magistrate Harry Cantrell.

The first page is an email (forwarded) sent to US Attorney James Letten. This is what happens to Federal Whistleblowers. Letten by the way was fired for criminal prosecutor misconduct. District Attorney Leon Cannizzaro still has not been indicted.

Review Amicus Second Part 2 and tell me if I had standing and cause to Join and Intervene.

The attached eleven Amicus (Second) Pleadings were filed in the following cases:

1. United States v. Boucher (1-18:cr-00004) Judge Marianne O. Battani

2. United States v. Manafort (1:18-cr-00083) Senior Judge T.S. Ellis, III

3. Manafort v. United States (1:18-cv-00011) Judge Amy Berman Jackson

4. United States v. Flynn (1:17-cr-00232) Judge Emmet G. Sullivan

5. United States v. Papadopoulos (1:17-cr-00182) Judge Randolph Daniel Moss

6. United States v. Manafort (1:17-cr-00201) Judge Amy Berman Jackson

7. United States v. Internet Research Agency LLC (1:18-cr-00032) Judge Dabney L. Friedrich

8. United States v. Van Der Zwann (1:18-cr-00031) Judge Amy Berman Jackson

9. Deepwater Horizon v. BP Exploration & Production (16-30918) Judge Carl Barbier

10. Democratic National Committee v. Russian Federation, et al (1:18-cv-5301) Judge John G. Koeltl

11. State of Louisiana v. Nathan Foreman (Section H Case 459100) Judge Camille Buras

Godspeed

Sincerely,

David Andrew Christenson
Box 9063
Miramar Beach, Florida 32550
504-715-3086
davidandrewchristenson@gmail.com
dchristenson6@hotmail.com

CERTIFICATE OF SERVICE
I hereby certify that on May 18th, 2018 I filed the foregoing with the Clerk of Court and served the pleading on all counsel of record by e-mail and first-class mail.

David Andrew Christenson

## FW: Christenson foreclosure COX KEEPS TURNING OFF OUR WATER AND GAS!!! WHY???

From: **David Christenson** (dchristenson6@hotmail.com)
Sent: Wed 7/27/11 11:13 AM
To:      16James Letten (james.letten@usdoj.gov)

You have won.

Please tell them to leave us alone.

David Christenson
504-715-3086

---

From: dchristenson6@hotmail.com
To: lcannizzaro@cityofno.com; gbourgeois@cityofno.com
CC: rfreeman@cityofno.com
Subject: Christenson foreclosure COX KEEPS TURNING OFF OUR WATER AND GAS!!! WHY???
Date: Wed, 27 Jul 2011 11:11:45 -0500

Please reference civil court foreclosure 2010-4808. Our foreclosure/Sheriff's sale is set for August 11th, 2011. Even if we wanted we are unable to maintain ownership because of the fraud that Madere committed. His unit is number 7 and comprises 49% of the association. Unit 7 is in foreclosure. It is our understanding that 70% of the association is in foreclosure. We are talking about a four million dollar fraud.

Aris Cox keeps turning off our water and gas. We have called the police at least three or four times. They have instructed him to leave the water and gas on. They have told him that it is a civil matter and that he would need a court order.

We have sent a check to cover our usage. We also paid money directly to the S&WB. We also deposited funds directly into the association's account.

We have repeatedly requested financials and expense reports so that that we can pay our fair share. Cox refuses to provide the bills.

I still have three civil lawsuits against Madere and the association. We have filed a title claim as well.

**It is wrong that you have authorized Cox to harass us in this manner. Please tell him to leave us alone.**

I called the police again today. I think they have more important things to do than mess with a civil matter.

Cox just does not get it. The foreclosure hurts him and the value of his condo. The association in broke and bankrupt because of his actions, not mine.

We overpaid our condo fees and have a surplus of thousands of dollars. Ask Cox when he got an electric meter and started paying his own way. He just got it. He had the association pay his electric bill for five years, which means we were paying for it.

We are trying to leave New Orleans.

David Christenson
504-715-3086

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADRIAN CALISTE and BRIAN GISCLAIR, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>HARRY E. CANTRELL, Magistrate Judge of Orleans Parish Criminal District Court,<br><br>    Defendant. | Case No.<br>Complaint-Class Action |

## CLASS ACTION COMPLAINT

1. Defendant Magistrate Judge Cantrell is responsible for setting bail for persons arrested in Orleans Parish. Defendant Cantrell consistently and unlawfully imposes secured financial conditions of release in an amount that arrestees cannot afford without any inquiry into or findings concerning the arrestee's ability to pay. He routinely states that he will not consider imposition of non-financial alternative conditions of release. As a result, the money-based orders of post-arrest release that he imposes constitute de facto orders of pretrial detention for those unable to pay — orders that are issued without the legal and factual findings and procedures required for a valid order of pretrial detention.

2. Moreover, Defendant Cantrell has an institutional financial conflict of interest in every secured money bond that he imposes because he acts both as a supposedly neutral judicial officer and as an executive responsible for managing the funds generated by each bail order that he sets. Louisiana law provides that if (and only if) an arrestee uses a commercial surety, the

judges of the Orleans Parish Criminal District Court receive 1.8% of the amount of that bond into the court's General Fund, which Defendant Cantrell and the other judges control. As a result Defendant Cantrell refuses to allow arrestees to post cash bail. He instead requires that financial conditions be paid through a for-profit bail bond ("a commercial surety"), and routinely in amounts larger than $2,500.

3. These policies and practices result in imminent and ongoing violations of fundamental rights. Plaintiffs, on behalf of themselves and a class of similarly situated arrestees, seek a declaration that Defendant Cantrell's conduct violates the Fourteenth Amendment to the United States Constitution.

### Jurisdiction and Venue

4. This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. §§ 2201–02, and the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

### Parties

6. Named Plaintiff Adrian Caliste is a 55-year-old man currently in the custody of the Orleans Parish Sheriff's Office. On June 20, 2017, Mr. Caliste appeared before Defendant Cantrell in the Magistrate section of Orleans Parish Criminal District Court. Defendant Cantrell imposed a secured bond Mr. Caliste cannot afford to pay as a condition of release. He remains in custody solely because he cannot afford to pay the amount of money required for his release. Mr. Caliste represents himself as an individual and a Class of similarly situated people who are all subject to the Defendant's post-arrest money-based detention scheme.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENATA SINGLETON,<br>MARC MITCHELL,<br>LAZONIA BAHAM,<br>JANE DOE,<br>TIFFANY LACROIX,<br>FAYONA BAILEY, and<br>SILENCE IS VIOLENCE;<br><br>*Plaintiffs*,<br><br>v.<br><br>LEON CANNIZZARO, in his official capacity as District Attorney of Orleans Parish and in his individual capacity;<br><br>DAVID PIPES,<br>IAIN DOVER,<br>JASON NAPOLI,<br>ARTHUR MITCHELL,<br>TIFFANY TUCKER,<br>MICHAEL TRUMMEL,<br>MATTHEW HAMILTON,<br>INGA PETROVICH,<br>LAURA RODRIGUE, and<br>JOHN DOE,<br>in their individual capacities;<br><br>*Defendants*. | Case No. _____<br><br><br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

1

## **PRELIMINARY STATEMENT**

This civil rights action challenges the Orleans Parish District Attorney's Office's unconstitutional policy of using extrajudicial and unlawful means to coerce, arrest, and imprison crime victims and witnesses. The plaintiffs in this action are victims and witnesses of crime and a non-profit organization that advocates for victims in Orleans Parish. Each has been harmed by Defendants' unconstitutional acts.

Pursuant to official policies, practices, and customs of Defendant Orleans Parish District Attorney Leon Cannizzaro, prosecutors routinely issue their own fabricated subpoenas directly from the District Attorney's Office—without any judicial approval or oversight—in order to coerce victims and witnesses into submitting to interrogations by prosecutors outside of court. These fraudulent documents create the false impression that meeting with the District Attorney is required by law, and they threaten crime victims and witnesses with fines, arrest, and imprisonment if they do not obey. If that unlawful coercion does not succeed, Defendants routinely obtain arrest warrants to put crime victims and witnesses in jail.

In the past five years alone, Defendants have sought "material witness" warrants at least 150 times. In a significant number of applications for these warrants, Defendants make false statements, omit material facts, and rely on plainly insufficient allegations no reasonable prosecutor would believe could justify the arrest of a witness or a victim of crime. If prosecutors told the whole story, these warrants would never be issued.

In addition, Defendants ensure crime victims and witnesses languish in jail. Defendants habitually seek and obtain extraordinarily high secured money bonds for victims and witnesses, ranging up to $500,000, and sometimes no bond at all. These amounts often dwarf the bond

2

amounts set for criminal defendants themselves—and they ensure these victims and witnesses are trapped in jail, even when the defendant in the criminal case may be released.

Defendants then deny victims a prompt court appearance, where the victim could challenge her detention or the conditions of her release. As a result, victims and witnesses routinely wait weeks or even months in jail before they are brought before a judge. One rape victim spent 12 days in jail before her first court appearance. A victim of child sex trafficking was jailed for 89 days—including Christmas and New Year's Day—before she had an opportunity to challenge her confinement.

Defendants' policies are designed to create a culture of fear and intimidation that chills crime victims and witnesses from asserting their constitutional rights. As a result of these policies, crime victims and witnesses in Orleans Parish know that if they exercise their right not to speak with an investigating prosecutor, they will face harassment, threats, arrest, and jail.

For instance, when Plaintiff Renata Singleton, an accountant for a charter school system and the victim in a domestic violence case, declined to speak to Defendants, they arrested and jailed her for five days on a $100,000 bond. Upon being booked into jail, Ms. Singleton's clothes were taken, and she was given an orange jumpsuit. When she appeared in court, she was shackled at her hands and feet. Metal chains tethered her to the other prisoners. The defendant, her former boyfriend and alleged abuser, had paid his $3,500 secured bond at arraignment and was released. He came to court from home in his own clothes. He pled guilty to two misdemeanors and was sentenced to probation, avoiding a jail sentence altogether.

Ms. Singleton's experience is but one example of the practices challenged in this action. Other crime victims have been threatened and arrested in front of their friends and family. Their names now appear online in publicly accessible arrest databases. They have had to expend

3

limited incomes on lawyers to protect themselves against Defendants' unlawful practices. They have had to bear the toll of Defendants' threats when they are often already dealing with trauma connected to the underlying crime.

Defendants' actions violate the United States Constitution and Louisiana law. Plaintiffs seek declaratory and injunctive relief requiring Defendant Cannizzaro to permanently end these unconstitutional and illegal policies, and monetary damages against all individual Defendants who violated their rights.

## JURISDICTION AND VENUE

1. Plaintiffs bring this action under the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Louisiana law.

2. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The Court has jurisdiction over Plaintiffs' Louisiana law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## JURY DEMAND

4. Plaintiffs demand a trial by jury on all issues and claims set forth in this Complaint, pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38(b).

## PARTIES

### A. Plaintiffs

5. Plaintiff Renata Singleton is a 37-year-old black woman, and a victim in a domestic violence case. The prosecutor attempted to coerce Ms. Singleton into a private meeting

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

ALANA CAIN, ASHTON BROWN, )
REYNAUD VARISTE, REYNAJIA )
VARISTE, THADDEUS LONG, )
VANESSA MAXWELL, )
)
      Plaintiffs, )
)
v. )
) Case No. 15-4479
CITY OF NEW ORLEANS; ORLEANS )
PARISH CRIMINAL DISTRICT COURT; )
MARLIN GUSMAN, ORLEANS PARISH )
SHERIFF; ARTHUR MORRELL, CLERK )
OF COURT; ROBERT KAZIK, JUDICIAL )
ADMINISTRATOR; )
SECTION "A" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT )
COURT, JUDGE LAURIE A. WHITE; )
SECTION "B" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT )
COURT, JUDGE TRACEY )
FLEMINGS- DAVILLIER; )
SECTION "C" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT COURT, )
JUDGE BENEDICT WILLARD; )
SECTION "D" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT COURT, )
AD HOC JUDGE DENNIS WALDRON; )
SECTION "E" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT COURT, )
JUDGE KEVA LANDRUM-JOHNSON; )
SECTION "F" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT COURT, )
JUDGE ROBIN PITTMAN; )
SECTION "G" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT COURT, )
JUDGE BYRON C. WILLIAMS; )
SECTION "H" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT COURT, )
JUDGE CAMILLE BURAS; )
SECTION "I" OF THE ORLEANS )
PARISH CRIMINAL DISTRICT COURT, )

| | |
|---|---|
| JUDGE KAREN K. HERMAN; ) <br> SECTION "J" OF THE ORLEANS ) <br> PARISH CRIMINAL DISTRICT ) <br> COURT, JUDGE DARRYL DERBIGNY; ) <br> SECTION "K" OF THE ORLEANS ) <br> PARISH CRIMINAL DISTRICT COURT, ) <br> JUDGE ARTHUR HUNTER; ) <br> SECTION "L" OF THE ORLEANS ) <br> PARISH CRIMINAL DISTRICT COURT, ) <br> JUDGE FRANZ ZIBILICH; ) <br> MAGISTRATE OF THE ORLEANS ) <br> PARISH CRIMINAL DISTRICT COURT, ) <br> JUDGE HARRY CANTRELL ) <br>  ) <br> Defendants. ) <br> _____ ) | (Complaint: Class Action) |

## CLASS ACTION COMPLAINT

### Introduction

Despite longstanding Supreme Court precedent that the Government cannot imprison people just because they are poor, New Orleans officials routinely use jail and threats of jail to collect court debts from thousands of the City's poorest people. The result is an illegal, unconstitutional, and unjust modern debtors' prison. To make matters worse, officials in the Collections Department of the Orleans Parish Criminal District Court have admitted under oath that they have been issuing arrest warrants for unpaid debts by signing themselves the signatures of judges without first presenting any information to the judge or even notifying the judge.[1] The Defendants use their unconstitutional scheme of arresting and jailing people for their inability to pay and keeping them in jail until they come up with money to fund themselves off the backs of New Orleans' poorest.

The Plaintiffs in this case are each victims of this illegal scheme. They each live in poverty and each has been jailed for unpaid or late court debts. Although the Plaintiffs pleaded

---

[1] *See* Transcript of Evidentiary Hearing in *State of Louisiana v. Michael Addison*, No. 426-246J, Jan. 30, 2015, attached as Exhibit 1.

2

that they were unable to pay due to their indigence, they were all arrested on an illegal warrant, and all languished in jail for nonpayment without receiving notice of how or when they would be released or when a hearing would be held. None was afforded the inquiry into their ability to pay that the United States Constitution requires.

Once locked in jail, each person was told that they had no court date set and that they would not be released until they paid the entirety of their debts or posted a preset $20,000 secured money bond.[2] No inquiry was made into their individual circumstances, their ability to pay, or whether they constituted a danger to the community or a risk of flight prior to the setting of this secured money bond. Some languished in jail for days and others remained locked up for weeks.

The environment of threats of jail and actual jailing creates a culture of fear among indigent people and their families, who borrow money at high interest rates, divert money from food for their children, and cash their family members' disability checks in a desperate attempt to pay the Collections Department to avoid indefinite confinement.

The policies and practices that led to the jailing of the Plaintiffs and to the creation of a local debtors' prison are part of a broader breakdown of fairness and neutrality in the local criminal legal system, where financial conflicts of interest have derailed the pursuit of justice. When an indigent defendant appears in court, every government entity—the jailor who brought her there, the lawyer assigned to represent her, the prosecutor arguing against her, and the judge ruling on her case—funds its own budget in part based on the decisions made in her case. Each of them takes a percentage of every money bond that is required for release after arrest. Each also partially funds their own budgets through fees that are assessed only upon conviction.

---

[2] All named Plaintiffs had to seek the help of family members or others in jail with them to contact the clerk of court and find out why they were locked up to begin with. At no time did anyone come to them and tell them why they were locked up or when or how they could be released.

3

This Court struck down elements of these financial conflicts of interest over two decades ago. And yet, the system has persisted, with devastating consequences for the bodies and minds of the poorest people in New Orleans and for the dignity of the justice system. These conflicts of interest are out of line with fundamental principles of due process as those concepts have been understood throughout American legal history. Officials involved in every area of the local legal system, including law enforcement, lawyers, and judges, acknowledge and complain that these financial incentives have corrupted the basic delivery of justice in the City.

The treatment of Alana Cain, Ashton Brown, Reynaud Variste, Reynajia Variste, Thaddeus Long, Vanessa Maxwell, and each of the other Plaintiffs reveals systemic illegality perpetrated by the Defendants against some of the poorest people in the community. The Defendants, as a matter of policy and practice, engage in the same conduct against many other human beings on a daily basis, unlawfully jailing people if they are too poor to pay debts from prior convictions, including the associated fees, costs, and surcharges that the Defendants ultimately use for their own benefit.

Poverty is widespread in New Orleans. The United States Census Bureau reports that 104,919 people in New Orleans live in poverty.[3] That is more than one in four people (27%). Though millions of people work full-time and are still struggling to subsist below the federal poverty line, many people are living in extreme poverty: national statistics show that over 1.5 million families get by on less than $2 a day.[4] There are countless people in our community who have nearly no source of income at all. In New Orleans, about half of the adult men in the African American community are unemployed and receive no unemployment compensation.[5]

---

[3] United States Census Bureau, Quick Facts, *available at* http://quickfacts.census.gov/qfd/states/22/22071.html.
[4] http://www.cbsnews.com/news/the-surging-ranks-of-americas-ultrapoor/.
[5] http://allthingslocalnola.info/yahoo_site_admin/assets/docs/RecognizingPotential.170111053.pdf.

The Defendants know that most people appearing before them are impoverished because eighty-five percent of the people appearing in Orleans Parish Criminal District Court have been determined to be indigent for purposes of appointment of the Orleans Public Defenders. Plus, Louisiana Law Revised Statute 15:175 defines indigency for purposes of criminal proceedings as people who earn less than 200% of the Federal Poverty Guidelines or receive food stamps, Medicaid, or disability benefits. And yet, impoverished people represent the large majority of people who owe debts to the Collections Department. The burden of court debts increases recidivism, blocks productive reentry, devastates families who have to make hard choices about debt payments or food, inhibits mental health care, and makes it harder for people to obtain housing and employment.[6] It is therefore from those among us who are least able to pay that the Court's Collections Department attempts to fund its own budget through jailing and threats of jailing for nonpayment.

By and through their attorneys and on behalf of themselves and all others similarly situated, the Plaintiffs seek in this civil action the vindication of their fundamental rights, compensation for the violations that they suffered, injunctive relief assuring that their rights will not be violated again, and a declaration that the Defendants' conduct is unlawful. In the year 2015, these practices have no place in our society.

### Nature of the Action[7]

1. Defendants fund themselves through the collection of money from the people that they process and judge. The pursuit of that money has corrupted the basic delivery of justice and

---

[6] *See generally,* Brennan Center for Justice, *Criminal Justice Debt: A Barrier to Reentry* (2010), *available at* https://www.brennancenter.org/publication/criminal-justice-debt-barrier-reentry.

[7] Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which they have had personal involvement and on information and belief as to all other matters.



David Andrew Christenson
P.O. Box 9063
Miramar Beach, Fl. 32550

Pro Se
SN

Clerk
US District Court SD New York
500 Pearl Street
New York, NY 10007-1312