## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:18-cv-03501-JGK |
| ) | |
| v. ) | **STATUS REPORT REGARDING** |
| ) | **SERVICE OF PROCESS** |
| THE RUSSIAN FEDERATION et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## STATUS REPORT REGARDING SERVICE OF PROCESS

Plaintiff Democratic National Committee ("Plaintiff" or "the DNC") submits this status report to notify the Court of its progress in serving the Defendants, and to provide context for two motions to serve Defendants located outside the United States, which Plaintiff will file shortly.

On April 20, 2018, Plaintiff filed the Complaint in this action. (ECF No. 1) That same day, Plaintiff filed each Defendant's summons for the Court's seal and the Court promptly issued the summons. (ECF Nos. 26-38, 40, 59)  Immediately after filing the Complaint, Plaintiff began efforts to serve each of the 15 Defendants named in this action: The Russian Federation ("Russia"); the General Staff of the Armed Forces of the Russian Federation ("GRU"); the GRU operative using the pseudonym "Guccifer 2.0" ("GRU Operative #1")[1]; Aras Iskenerovich Agalarov ("Aras Agalarov"); Emin Araz Agalarov ("Emin Agalarov"); Joseph Mifsud

---

[1] On July 13, 2018, the United States Department of Justice announced the indictments of twelve Russian GRU officers for, among other things, their role in hacking into Plaintiff's computer systems, stealing documents from those computers, and staging releases of the stolen documents through the use of various personas, including the persona "Guccifer 2.0."  In light of the additional information contained in the indictment, including the identity of the group of individuals operating under the persona "Guccifer 2.0," Plaintiff will likely amend its complaint.

("Mifsud"); WikiLeaks, Julian Assange ("Assange"); Donald J. Trump for President, Inc. ("the Trump Campaign"); Donald J. Trump, Jr. ("Trump, Jr."); Paul J. Manafort, Jr. ("Manafort"); Roger J. Stone, Jr. ("Stone"); Jared C. Kushner ("Kushner"); George Papadopoulos ("Papadopoulos"); and Richard W. Gates, III ("Gates").  Four defendants signed service waivers: the Trump Campaign; Trump, Jr.; Stone; and Papadopoulos. (ECF Nos. 65, 85, 83, 92.) Plaintiff's efforts to serve the remaining defendants are summarized below.

## I.     Domestic Defendants

Plaintiff served the Complaint on all of the defendants located in the United States—the Trump Campaign, Trump, Jr., Stone, Papadopoulos, Manafort, Gates, Emin Agalarov[2], and Kushner (collectively, the "Domestic Defendants")—within 90 days of filing the Complaint, as required by Federal Rule of Civil Procedure 4(m).  As noted above, four of the Domestic Defendants filed service waivers, and Plaintiff served the remaining four—Gates, Manafort, Kushner, and Emin Agalarov (collectively, the "Non-Waiving Defendants")—at their homes, pursuant to a court order, or through counsel.  The steps Plaintiff took to serve the Non-Waiving Defendants are set out below.

### A.     Phone Calls to Counsel and Service Waivers

Within 10 days of filing the Complaint, Plaintiff's counsel called attorneys who reportedly represented the Non-Waiving Defendants in other matters. (Declaration of Joseph M. Sellers ("Sellers Decl.") ¶ 3, attached as Exhibit A.) On April 30, 2018, Plaintiff's counsel left voicemail messages with Thomas Green, who reportedly represented Gates,[3] Abbe Lowell, who

---

[2] Notwithstanding service on what qualifies as his residence, Mr. Agalarov informed Plaintiff's counsel that he plans to contest service.  *See infra* § I(D).

[3] *Manafort co-defendant Gates shows up in court with new lawyer*, Reuters (Feb. 14, 2018, 1L41 PM), https://www.reuters.com/article/us-usa-trump-russia-manafort/manafort-co-defendant-gates-shows-up-in-court-with-new-lawyer-idUSKCN1FY2RT.  See also criminal docket, Eastern District of Virginia, 1:18-cr-00083-TSE-2

represented Kushner,[4] and Kevin Downing, who reportedly represented Manafort,[5] but those messages were not returned. (Sellers Decl. ¶ 4.) That same day, Plaintiff's counsel called Scott Balber, who confirmed that he represents both Emin Agalarov and his father in other matters. (Sellers Decl. ¶ 5.) Mr. Balber said that he was not authorized to accept service on behalf of the Agalarovs. (*Id.*) When Plaintiff's counsel asked if Mr. Balber could identify anyone else who might be authorized to accept service for the Agalarovs, Mr. Balber instructed Plaintiff's counsel to consult "the Federal Rules." (*Id.*)

On May 2, 2018, Plaintiff's counsel also mailed service waivers to addresses that had been publicly linked to the Non-Waiving Defendants, pursuant to Federal Rule of Civil Procedure 4(d).[6] Plaintiff informed these defendants that they had thirty days to return the waivers. When the Non-Waiving Defendants missed the deadline to return their forms, Plaintiff began efforts to serve them. (Declaration of Julia Horwitz ("Horwitz Decl."), ¶ 2, attached as Exhibit B.)

### B.     Manafort

From June 11, 2018 through July 9, 2018, Plaintiff attempted (on five separate occasions) to serve Manafort at an address in Palm Beach Gardens, Florida because news reports suggested that Manafort's family resided there for at least part of the year. All attempts were unsuccessful. (ECF No. 137.) In early July 2018, Plaintiff separately attempted (on three separate occasions) to serve Manafort at an address in Alexandria, Virginia, again because news reports suggested

---

(listing Thomas Green's law firm, Sidley Austin Brown & Wood LLP, as counsel of record in Gates's criminal case).

[4] Josh Dawsey, *Kushner adds powerhouse lawyer Abbe Lowell to legal team*, Politico (June 26, 2017, 6:04 PM), https://www.politico.com/story/2017/06/26/jared-kushner-lowell-legal-team-239973.

[5] Josh Gerstein, *Manafort may add new defense lawyer*, Politico (Feb. 10, 2018, 11:14 PM), https://www.politico.com/blogs/under-the-radar/2018/02/10/manafort-new-defense-lawyer-402846.

[6] Plaintiff also sent a service waiver to Aras Agalarov at an address in Florida. As will be explained further below, however, Plaintiff now believes that Aras Agalarov lives abroad. *See* infra § II(B).

that Manafort's family resided there.  (*Id.*)   These attempts were also unsuccessful.  (*Id.*)   On July 3, 2018, Plaintiff attempted service at an address in New York that had been publicly linked to the Manafort family.  The process server was informed by security that Manafort had not lived there in over a year.  (*Id.*)  In addition to these attempts, Plaintiff's process server asked the United States Marshals Service whether it would be possible to serve Manafort while he is in federal custody awaiting his criminal trial, and was informed that Manafort would not be made available to accept service. (*Id.*)

On July 16, 2018, Plaintiff moved for leave to serve Manafort by sending the service packet via first class mail to the detention center where Manafort is currently awaiting trial; and via first class mail and email to his criminal defense counsel.  (ECF No. 137).  On July 17, 2018, the Court granted Plaintiff's motion, and that same day, Plaintiff's counsel emailed the service packet[7] to the attorneys of record listed on the docket sheet in Manafort's criminal case. (Horwitz Decl. ¶ 3.)  On July 18, 2018, Plaintiff's counsel mailed the service packet to those same attorneys at the address listed on the docket sheet, and on July 19, 2018, Plaintiff's counsel mailed the service packet to Manafort at the Alexandria Detention Center.  (Horwitz Decl. ¶ 4.)

## C.   Gates

On June 15, 2018, Plaintiff's process server handed a copy of the service packet to Gates's wife at an address in Richmond, Virginia.  (ECF No. 117).  Gates's wife stated that she lives with Gates at that address. (*Id.*)

---

[7] Each "service packet" discussed herein contained a summons, the Complaint, Electronic Case Filing Rules & Instructions, and the Individual Practices of Judge John G. Koeltl as required by the Court.

D.   **Emin Agalarov**

On June 13, 2018, Plaintiff attempted to serve Emin Agalarov at an address on Anderson Avenue in New Jersey, which had been described as Emin Agalarov's home in news stories.[8] (Sellers Decl. ¶ 7.) As set forth in his sworn affidavit, Roger Padilla hand-delivered the service packet to a woman at the New Jersey address who identified herself as Inga Madzule.  (ECF No. 129).  According to Mr. Padilla, Ms. Madzule represented that Emin Agalarov was not at home because he was traveling, and that she could accept a delivery for him because she lived at that address and looks after the children.  (ECF No. 135).  Mr. Padilla also stated under oath that he and Ms. Madzule carried out their conversation in English, and that he asked her to confirm that she understood him.  (*Id.*)  Plaintiff subsequently filed both of Mr. Padilla's affidavits on the docket.  (ECF Nos. 129 and 135).

On June 29, 2018, Mr. Balber, Emin Agalarov's attorney, contacted Plaintiff's counsel by phone to say that Emin Agalarov contests the sufficiency of service at the New Jersey address. (Sellers Decl. ¶ 8.) According to Mr. Balber, Emin Agalarov's sister—rather than Emin Agalarov himself—lives in the New Jersey house and Ms. Madzule is his sister's housekeeper. (*Id.*) Mr. Balber further claimed that Ms. Madzule does not speak English and therefore did not qualify as a person of "suitable age and discretion," capable of accepting service under Federal Rule of Civil Procedure 4(e)(2)(B).  (*Id.*) Mr. Balber acknowledged that Eris Agalarov was aware of the complaint naming him as a defendant. (*Id.*)

On July 10, 2018, Plaintiff sent Mr. Balber a letter explaining that service under the Federal Rules was effectuated on June 13, 2018, when the process server delivered the package

---

[8] Jennifer Gould Keil, *Billionaire linked to Trump email scandal selling his NJ mansion*, New York Post (July 11, 201, 5:57 PM), https://nypost.com/2017/07/11/billionaire-linked-to-trump-email-scandal-selling-his-nj-mansion ("Emin's home, at 98 Anderson Avenue, has been on the market for $2.9 million for more than a year.").

to Ms. Madzule. (Sellers Decl. ¶ 9.) Mr. Balber responded to this letter by emailed letter the next

day, confirming that he represents Agalarov in connection with this case, but disagreeing with

Plaintiff's analysis and stating, among other things, that Emin Agalarov could not be served in

New Jersey because he is a resident of Moscow. (*Id.*)

On July 19, 2018, Plaintiff's counsel personally spoke with the process server who

handed the service materials to Ms. Madzule and confirmed the account he provided in his

affidavit.   (Horwitz Decl. ¶ 5.)  The process server provided additional detail confirming his

account of service, including the fact that: (a) he twice said Emin Agalarov's full name, so he is

confident that Ms. Madzule did not think the package was intended for his sister; and (b) he is

confident that Ms. Madzule spoke English because she answered his open-ended questions in full

sentences such as: "He's traveling," "He's in Russia right now," and "I don't know when he's

coming back."  (*Id.*) Based on the facts available to the Plaintiff and the applicable authority, the

evidence shows that Emin Agalarov was properly served.  Moreover, as a courtesy to Agalarov,

Plaintiff transmitted copies of service materials to Mr. Balber by email and placed those

materials, addressed to Mr. Balber, in the first class mail, postage prepaid on July 19, 2018.

(Horwitz Decl. ¶ 6.)

### E.    <u>Jared Kushner</u>

Because Kushner's home in Washington, D.C. is protected by a contingent of United

States Secret Service agents, Plaintiff first requested that the process server attempt to serve

Kushner at an address in Manhattan that had been listed as one of Kushner's addresses in

publicly available sources. (Sellers Decl. ¶ 11, ECF No. 141-1.) The process server attempted

service on that address four times, on June 11, June 18, June 25, and July 16, 2018. (ECF No.

141-1, Exhibit C.)  The first three times, staff at that address informed the process server that

Kushner was rarely at that address; on the fourth occasion, building staff informed the process server that Kushner no longer lives there. (Exhibit C.)

Following these unsuccessful attempts, the process server attempted service at a Washington, D.C. address that has been described in news sources as Kushner's home. (ECF No. 141-2.)  On June 26th, 2018, the process server went to the D.C. address and told the United States Secret Service agent stationed outside the house that he was attempting to serve process for a case pending before the U.S. District Court for the Southern District of New York. (*Id.*)  After speaking with a superior, the Secret Service officer told the process server: "you're going to need to find another way to serve that."  (*Id.*)  Plaintiff then attempted to mail a service packet to the DC address through USPS certified mail.  (ECF 141-3.)  This packet was mailed on July 2nd, 2018, but as of July 9, 2018, delivery of the package was deemed unsuccessful by the USPS.  (*Id.*)  On July 17, 2018, Plaintiff filed a motion with this Court for leave to serve Kushner by first class mail (the "Kushner Motion"). (ECF No. 141.)  On July 18, 2018, the Court denied the motion without prejudice, noting that Plaintiff had attached an affidavit describing efforts to serve Manafort to the Kushner motion.[9] (ECF No. 143) The court further directed that "the DNC's counsel can contact Kushner's counsel and arrange a mutually convenient means to effectuate service." (*Id.*)

Immediately after receiving the Court's order, Plaintiff's counsel renewed their efforts to contact Mr. Lowell, who was reported to represent Kushner in another matter.  (Sellers Decl. ¶ 11.) By email dated July 18, 2018, Mr. Lowell agreed to accept service on behalf of Kushner. (*Id.*) That night, Plaintiff sent a courier Mr. Lowell's office to deliver Kushner's service packet.

---

[9] Plaintiff apologizes for attaching the wrong affidavit as Exhibit D to the Kushner motion.  The affidavit that should have been attached to the Kushner motion is attached hereto as Exhibit C.

(*Id.*) Plaintiff's counsel also emailed a copy of the service packet to Mr. Lowell. (*Id.*) On July 19,

2018, Mr. Lowell entered an appearance on behalf of Kushner. (ECF No. 145.)

## II.     The Foreign Defendants

While the Federal Rules of Civil Procedure do *not* impose a specific deadline for serving

foreign defendants, see Fed. R. Civ. P. 4(m), Plaintiff must act with "reasonable diligence" to

ensure those defendants are served in a timely manner, *Fallman v. Hotel Insider, Ltd.*, No.

14CV10140 (DLC), 2016 WL 5875031, at *4 (S.D.N.Y. Oct. 7, 2016), *reconsideration denied*,

No. 14CV10140 (DLC), 2016 WL 6238610 (S.D.N.Y. Oct. 25, 2016) (internal quotation marks

omitted). Plaintiff's efforts to serve the foreign defendants in this action are summarized below.

### A.     Russia, the GRU, and GRU Operative #1

On May 18, 2018, Plaintiff filed a motion requesting leave to serve three defendants—the

Russian Federation, the GRU, and the intelligence officer known as "Guccifer 2.0"—via

diplomatic means under 28 U.S.C. § 1608, the service of process provision of the Foreign

Sovereign Immunities Act. (ECF No. 64.)  On May 23, 2018, the Court granted Plaintiff's

motion, (ECF No. 75), and Plaintiff immediately began the process of submitting the required

documents to the Court for transmission to the Secretary of State in Washington, D.C. (Horwitz

Decl. ¶ 7.) On July 10, 2018, the State Department notified Plaintiff that the service request was

received and was being processed. (*Id.*)

### B.     Aras Agalarov

As noted above, on April 30, 2018, Plaintiff's counsel called Scott Balber, who

confirmed that he represents both Aras Agalarov and his son in other matters.  (Sellers Decl. ¶ 5.)

Mr. Balber said that he was not authorized to accept service on behalf of Aras Agalarov, and

when Plaintiff's counsel asked if Mr. Balber could identify anyone else who might be authorized to accept service for Aras Agalarov or his son, Mr. Balber directed Plaintiff's counsel to consult "the Federal Rules." (*Id*.)

Without Mr. Balber's guidance, Plaintiff consulted Florida real estate reports, which suggested that Aras Agalarov purchased a luxury condominium in Florida.  Plaintiff therefore mailed Aras Agalarov a service waiver at the Florida address on May 2, 2018. (Horwitz Decl. ¶ 8.)  When Plaintiff did not receive a response to the waiver by the deadline, Plaintiff hired a process server to attempt personal service at the Florida address. (*Id*.) On June 15, 2018, the process server knocked on the door of the condominium and received no answer. (Exhibit D.) He then spoke to a security guard who informed him that the Agalarov family has only been present at that residence twice in the last two years. (*Id*.) The process server has provided a notarized "affidavit of due diligence," explaining his attempt to serve Aras Agalarov. (*Id*.) The only other addresses Plaintiff has been able to identify for Aras Agalarov are the mailing address and email address of his Moscow-based real estate development firm, Crocus Group, of which Aras Agalarov is the president.[10] Plaintiff therefore believes that Aras Agalarov should be treated as a resident of Moscow for purposes of service of process.  Plaintiff intends to file a motion for leave to serve Aras Agalarov, pursuant to Rule 4(f).

## III.    WikiLeaks

WikiLeaks is an internet-based organization whose main activity is the maintenance of its website, Wikileaks.org.  On its website, WikiLeaks maintains a page devoted to "WikiLeaks:Legal."[11] On that page, WikiLeaks advises, "Send all USA legal correspondence to our lawyers," and provides the email address wl-legal@sunshinepress.org. *See supra* note 11.

---

[10] *Our Leaders*, Crocus Group, http://www.crocusgroup.com/crocus/management/ (last visited July 19, 2018).
[11] *WikiLeaks:Legal*, WikiLeaks, https://wikileaks.org/wiki/WikiLeaks:Legal (last visited July 19, 2018).

The website further advises, "you will then be provided with a postal address and contact details." (*Id.*) There is also a disclaimer on the WikiLeaks:Legal page that states, "We do not accept electronic servicing of legal documents." (*Id.*)

On April 25, 2018, Plaintiff's counsel attempted to send an email to wl-legal@sunshinepress.org, asking for the postal address and contact details where legal documents could be sent. (Horwitz Decl. ¶ 9.) Later that day, counsel received a notification that the outgoing email had been rejected six times over the course of an hour. (*Id.*) On April 29, 2018, Plaintiff's counsel received another notification that the email had been rejected 30 times over the course of 92 hours. (*Id.*) On July 10, 2018, Plaintiff's counsel made another attempt to send an email to that same address. (*Id.*) An hour later, counsel received another notification that the email had not been delivered, despite six attempts to deliver over a period of one hour. (*Id.*) On July 14, 2018, Plaintiff received another notification that the email had been rejected 30 times over the course of 92 hours.  (*Id.*)

Plaintiff's counsel also made diligent attempts to contact counsel who represented WikiLeaks in other matters.  (Horwitz Decl. ¶ 10.) Plaintiff searched PACER for any case in which WikiLeaks was represented by counsel, and found only one: a suit in the U.S. District Court for the District of Maryland in which WikiLeaks, the Plaintiff, was represented by two attorneys from Zuckerman Spaeder LLP. (*Id.*) On July 19, 2018, Plaintiff emailed those attorneys to ask if they were authorized to accept service on WikiLeaks's behalf, or if they knew of any other person who might be able to accept service. (*Id.*) The attorneys quickly replied: "We are not authorized and have had no contact with this entity for several years. (*Id.*) I do not have any idea about who may be authorized to accept service for Wikileaks." (*Id.*)

A Westlaw search unearthed another case where an attorney briefly represented WikiLeaks, *see Bank Julius Baer & Co. v. WikiLeaks*, No. C 08-00824 JSW, 2008 WL 413737 (N.D. Cal. Feb. 13, 2008), but that attorney later submitted a letter to the United States District Court for the Northern District of California explaining that she had not been WikiLeaks' attorney since January 24, 2008, and she "could not and would not" accept service on WikiLeaks' behalf.[12]  Additionally, Plaintiff's counsel searched news reports and Wikipedia, and identified three individuals who may have represented WikiLeaks: one is deceased, one lives in Spain and does not have contact information (that Plaintiff can find) online, and the third lives in London and has not been linked by reliable sources to WikiLeaks.  (Horwitz Decl. ¶ 11.) Plaintiff's counsel therefore believes it would not be feasible to serve WikiLeaks through counsel. Plaintiff intends to file a motion for leave to serve WikiLeaks by alternative means shortly. (*Id.*)

## IV.   Assange

Defendant Julian Assange is an Australian native who has been living for the past six years in the Ecuadoran embassy in London, U.K.[13]  On April 30, 2018, Plaintiff contacted Barry Pollack, Assange's criminal defense attorney. (Sellers Decl. ¶ 6.) Mr. Pollack confirmed that he represents Assange in the criminal matter under investigation by the Office of Special Counsel. (*Id.*) Plaintiff asked Mr. Pollack if he could accept service for Assange. (*Id.*) Mr. Pollack responded that he was not authorized to accept service in a civil matter for Assange, and that he could not identify anyone else in the United States who is authorized to accept service. (*Id.*)

---

[12] Letter from Julie S. Turner at 2, *Bank Julius Baer & Co. v. WikiLeaks* (No. C 08--00824), 2008 WL 413737, ECF No. 26.

[13] Annys Shin, *When WikiLeaks founder Julian Assange took refuge in the Embassy of Ecuador*, Wash. Post (June 14, 2018), https://www.washingtonpost.com/lifestyle/magazine/when-wikileaks-founder-julian-assange-took-refuge-in-the-embassy-of-ecuador/2018/06/11/263e560e-578c-11e8-8836-a4a123c359ab_story.html?utm_term=.625cd2b2211e.

In late April 2018, Plaintiff also contacted an international process server to inquire about how best to serve Mr. Assange. (Horwitz Decl. ¶ 12.) The process server indicated that serving Mr. Assange would present a unique set of challenges and that further investigation would be necessary. (*Id.*) In May 2018, while Plaintiff continued to evaluate the appropriate means to effect service on Assange, credible news reports began to circulate that Assange might be evicted from the Ecuadoran embassy and extradited to the United States.[14]  (*Id.*) In light of these reports, Plaintiff refrained from attempting service on Assange in London while there was still the possibility that he would be brought to the United States, where he could be served domestically. (*Id.*)  However, when there were no new reports about the possibility of Assange's eviction from the Ecuadoran embassy or extradition to the United States by early July, Plaintiff concluded that Assange was likely to remain at the embassy for the near future, and should be served there. (*Id.*) Plaintiff then commenced the process to attempt service of Assange in the Ecuadoran embassy. (*Id.*) That attempt to effectuate service is currently underway.  (*Id.*) If the attempt is unsuccessful, Plaintiff will move for leave to serve Assange through Mr. Pollack.

V.      **Joseph Mifsud**

According to many reputable news sources, Mifsud has been missing for at least eight months, and may be deceased (since October 31, 2017).[15] (Horwitz Decl. ¶ 13.)  Prosecutors in

---

[14] Dan Collyns, *Why does Ecuador want Assange out of its London embassy?*, The Guardian (May 15, 2018 12:00 EDT), https://www.theguardian.com/world/2018/may/15/ecuador-julian-assange-why-does-it-want-him-out-london-embassy; Shin,*supra* note 12.

[15] *See, e.g.,* Brennan Weiss, *A mysterious professor who told the Trump campaign about 'dirt' on Hillary Clinton has gone off the grid*, Business Insider (Mar. 2, 2018, 6:47 PM), http://www.businessinsider.com/where-is-joseph-mifsud-professor-in-russia-probe-2018-3; Nick Cohen, *Why has Britain given such a warm welcome to this shadowy professor?*, The Guardian (Jan. 20, 2018, 1:05 PM EST), https://www.theguardian.com/commentisfree/2018/jan/20/why-has-britain-given-such-a-warm-welcome-to-this-shadowy-professor; James Risen, *The Absent Professor*, The Intercept (Apr. 12, 2018, 11:15 AM), https://theintercept.com/2018/04/12/trump-russia-intermediary-joseph-mifsud-missing-case-for-collusion; Tim Lister & Nic Robertson, *Academic at heart of Clinton 'dirt' claim vanishes, leaving trail of questions*, CNN (Nov.

Italy have attempted to locate him for service in a different case but were unsuccessful, and deemed him unable to be found.[16] Plaintiff has been unable to locate any known current addresses or contact information for him, despite working with a private investigator. (*Id.*) Plaintiff is continuing to monitor new sources for any indicia of Mifsud's whereabouts. (*Id.*) If and when Plaintiff sees such indicia, it will file a motion to serve Mr. Mifsud by appropriate means. (*Id.*)

---

10, 2017, 10:40 AM EST), https://www.cnn.com/2017/11/08/politics/joseph-mifsud-trump-russia-investigation/index.html;

[16] *"Ingiustificato compenso e danno erariale", citati a giudizio ex presidenti del Cupa*, AgrigentoNotizie (Feb. 10, 2018 9:59), http://www.agrigentonotizie.it/cronaca/danno-erariale-ingiustificato-compenso-citati-a-giudizio-corte-dei-conti.html

Dated: July 19, 2018

Respectfully submitted,


*/s/ Joseph M. Sellers*_____
Joseph M. Sellers (admitted *Pro Hac Vice*)
Geoffrey A. Graber (admitted *Pro Hac Vice*)
Julia A. Horwitz (admitted *Pro Hac Vice*)
Alison S. Deich (*Pro Hac Vice* pending)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

Michael Eisenkraft
Cohen Milstein Sellers & Toll PLLC
88 Pine St. # 14
New York, NY 10005
(212) 838-7797


jsellers@cohenmilstein.com
ggraber@cohenmilstein.com
jhorwitz@cohenmilstein.com
adeich@cohenmilstein.com
meisenkraft@cohenmilstein.com


*Attorneys for Plaintiff*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF, who in turn sent notice to all counsel of record.


Dated:    July 19, 2018                    /s/ Julia A. Horwitz
                                           Julia A. Horwitz

2370428 v1