UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
DEMOCRATIC NATIONAL COMMITTEE,

      Plaintiff,                      Civil Action No. 1:18-cv-03501 (JGK)

   v.

THE RUSSIAN FEDERATION *et al.*,

      Defendants.
------------------------------------- X

**MOTION TO SERVE DEFENDANT WIKILEAKS BY TWITTER AND MAIL**

**TABLE OF CONTENTS**

I. Background ................................................................................................................... 1

II. Service Attempts ......................................................................................................... 3

III. Legal Standard ........................................................................................................... 5

IV. Analysis ..................................................................................................................... 7

V. Conclusion .................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Elsevier, Inc. v. Siew Yee Chew*,
   287 F. Supp. 3d 374 (S.D.N.Y. 2018)..............................................................................6, 7, 8

*Advanced Aerofoil Techs., AG v. Todaro*,
   2012 WL 299959 (S.D.N.Y. Jan. 31, 2012) ...............................................................................6

*Bank Julius Baer & Co. v. WikiLeaks*,
   No. 08-cv-00824 JSW, 2008 WL 413737 (N.D. Cal. Feb. 13, 2008) ..................................4, 5

*Center for Constitutional Rights v. Lind*,
   1:13-cv-01504 (May 22, 2013), ECF No. 1..............................................................................4

*Dama S.P.A. v. Does*,
   No. 15-cv-4528 (VM), 2015 WL 10846737 (S.D.N.Y. June 15, 2015) ................................7, 8

*FTC v. PCCare247 Inc.*,
   No. 12-cv-7189 PAE, 2013 WL 841037 (S.D.N.Y. March 7, 2013) .....................................8, 9

*Microsoft Corp. v. Does*,
   No. 12-cv-1335 SJ RLM, 2012 WL 5497946 (E.D.N.Y. Nov. 13, 2012).................................6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)...................................................................................................................6

*Philip Morris USA Inc. v. Veles Ltd.*,
   No. 06-cv-2988 GBD, 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007) ................................7, 8, 9

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ..........................................................................................6, 7, 9

*Sec. & Exch. Comm'n v. Anticevic*,
   2009 WL 361739 (S.D.N.Y. Feb. 13, 2009)..............................................................................6

*SEC v. Tome*,
   833 F.2d 1086 (2d Cir.1987)......................................................................................................9

*St. Francis Assisi v. Kuwait Fin. House*,
   No. 3:16-cv-3240-LB, 2016 WL 5725002 (N.D. Cal. Sept. 30, 2016) .............................7, 8, 9

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
   312 F.R.D. 329 (S.D.N.Y. 2015) ...............................................................................................8

Plaintiff DNC ("Plaintiff" or "the DNC") respectfully requests permission to serve the Complaint on Defendant WikiLeaks by Twitter and first class mail. As explained more fully below, Plaintiff has diligently attempted to serve WikiLeaks through a variety of methods, including emails to an address provided by WikiLeaks on its website, and by contacting counsel who have represented WikiLeaks in other matters. None of these efforts have succeeded, however. Accordingly, the Court should grant Plaintiff leave to serve WikiLeaks by Twitter, where it maintains a robust presence and has admitted knowledge of this action, and by mail. *See St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-CV-3240-LB, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (allowing service via Twitter).

## I. Background

WikiLeaks is an organization of unknown structure whose primary activity is running a website, Wikileaks.org, on which it publishes confidential or classified information.[1] WikiLeaks describes itself as a "multi-national" organization,[2] and news reports claim that WikiLeaks keeps 507 copies of its website around the world.[3] Prior to December 2010, WikiLeaks used Amazon servers in order to host its website.[4] However, on December 1, 2010, WikiLeaks tweeted, "WikiLeaks servers at Amazon ousted. Free speech the land of the free—fine our $ are now spent

---

[1]   *See* WikiLeaks, https://wikileaks.org/ (last visited July 20, 2018).

[2]   *What Is WikiLeaks*, WikiLeaks, https://wikileaks.org/What-is-Wikileaks.html (last visited July 20, 2018).

[3]   Larry Greenemeier, *How Has WikiLeaks Managed to Keep Its Web Site Up and Running?*, Scientific American (Dec. 7, 2010), https://www.scientificamerican.com/article/wikileaks-assange-persistence-of-info/.

[4]   Doug Gross, *WikiLeaks cut off from Amazon servers*, CNN (Dec. 2, 2010, 3:49 AM), http://www.cnn.com/2010/US/12/01/wikileaks.amazon/index.html.

to employ people in Europe."⁵ The next day, the L.A. Times reported that WikiLeaks had moved its servers to a former bomb shelter in Sweden.⁶ WikiLeaks has a P.O. box registered in the United States in San Mateo, California, and a mailbox at the University of Melbourne in Victoria, Australia, but it is not clear whether WikiLeaks uses or conducts business through those mailboxes.⁷

While WikiLeaks' physical presence is difficult to discern, it has a robust online presence, including an active presence on Twitter, using the handle @WikiLeaks.⁸ The @WikiLeaks account has more than 5.5 million followers and appears to tweet at least once per day. *See supra* note 8.

During the 2016 presidential campaign, WikiLeaks used its Twitter account to announce the publication of stolen DNC documents and to direct its Twitter followers to the page on the Wikileaks.org website where the stolen documents were posted. On April 20, 2018, shortly after the DNC filed its complaint, WikiLeaks tweeted, "The Democrats are suing @WikiLeaks and @JulianAssange for revealing how the DNC rigged the Democratic primaries. Help us counter-sue. We've never lost a publishing case and discovery is going to be amazing fun: https://www.iamwikileaks.org/donate/".⁹ On April 21, 2018, WikiLeaks acknowledged that it had read the lawsuit, tweeting, "Democrats have gone all Scientology against @WikiLeaks. **We**

---

⁵ WikiLeaks (@WikiLeaks), Twitter (Dec. 1, 2010 11:50 AM) https://twitter.com/wikileaks/status/10058229002272768.

⁶ W.J. Hennigan, *WikiLeaks' new home is in a former bomb shelter*, L.A. Times: Technology (Dec. 2, 2010, 11:07 AM), http://latimesblogs.latimes.com/technology/2010/12/wikileaks-bahnhof-amazon.html.

⁷ *WikiLeaks:Contact*, WikiLeaks, https://wikileaks.org/wiki/WikiLeaks:Contact#General_office (last visited July 18, 2018).

⁸ WikiLeaks (@WikiLeaks), Twitter https://twitter.com/wikileaks (last visited July 20, 2018).

⁹ WikiLeaks (@WikiLeaks), Twitter (Apr. 20, 2018, 3:13 PM), https://twitter.com/wikileaks/status/987454233862705152.

**read the DNC lawsuit**. Its primary claim against @WikiLeaks is that we published their 'trade secrets'. Scientology infamously tried this trick when we published their secret bibles. Didn't work out well for them."[10] From April 20 to April 22, WikiLeaks tweeted about the lawsuit at least six times, in one instance including a screenshot of part of the complaint, and in three instances directing followers to analyses of the complaint.[11] Each of these tweets was reposted (or "retweeted") thousands of times, and each received thousands of "likes." *See supra* notes 9-11.

## II. Service Attempts

On its website, WikiLeaks has a page devoted to "WikiLeaks:Legal."[12] On that page, WikiLeaks advises "Send all USA legal correspondence to our lawyers," and provides the email address wl-legal@sunshinepress.org. *Supra* note 12. The website advises, "you will then be provided with a postal address and contact details." *Id.* There is also a disclaimer on the WikiLeaks:Legal page that states, "We do not accept electronic servicing of legal documents." *Id.* On April 25, 2018, Plaintiff's counsel attempted to send an email to that address, asking for the postal address and contact details where we could send legal documents. Declaration of Julia Horwitz ("Horwitz Decl.") ¶ 2. Later that day, counsel received a notification that the outgoing

---

[10]   WikiLeaks (@WikiLeaks), Twitter (Apr. 21, 2018 5:10 PM) https://twitter.com/wikileaks/status/987846162924408832 (emphasis added).

[11]   WikiLeaks, *supra* note 4; WikiLeaks, *supra* note 5; WikiLeaks (@WikiLeaks), Twitter (Apr. 21, 2018 5:10 AM), https://twitter.com/wikileaks/status/987664747712667648; WikiLeaks (@WikiLeaks), Twitter (Apr. 20, 2018, 7:48 PM), https://twitter.com/wikileaks/status/987523410736578561; WikiLeaks (@WikiLeaks), Twitter (Apr. 20, 2018, 3:49 PM), https://twitter.com/wikileaks/status/987463375939620864; WikiLeaks (@WikiLeaks), Twitter (Apr. 22, 2018, 9:16 AM), https://twitter.com/wikileaks/status/988089117778042882.

[12]   *WikiLeaks:Legal*, WikiLeaks, https://wikileaks.org/wiki/WikiLeaks:Legal (last visited July 18, 2018).

email had been rejected six times over the course of an hour. *Id.* Four days later, on April 29, 2018, counsel received another notification that the email had been rejected 30 times over the course of 92 hours. *Id.* On July 10, 2018, Plaintiff's counsel made another attempt to send an email to that address, asking for the postal address and contact details where counsel could send legal documents. *Id.* An hour later, counsel received another notification that the email had not been delivered, despite six attempts to deliver over a period of one hour. *Id.* Four days later, on July 14, 2018, counsel received another notification that the email had been rejected 30 times over the course of 92 hours. *Id.* As a result, the email could not be delivered. *Id.*

Plaintiff's counsel also made diligent attempts to contact counsel who represented WikiLeaks in other matters. Horwitz Decl. ¶ 3. Plaintiff searched PACER for any case in which WikiLeaks was represented by counsel, and found only one: a suit in the United States District Court for the District of Maryland in which WikiLeaks, the Plaintiff, was represented by two attorneys from Zuckerman Spaeder LLP.[13] On July 19, 2018, Plaintiff emailed those attorneys to ask if they were authorized to accept service on WikiLeaks's behalf, or if they knew of any other person who might be able to accept service. Horwitz Decl. ¶ 3. The attorneys quickly replied: "We are not authorized and have had no contact with this entity for several years. I do not have any idea about who may be authorized to accept service for Wikileaks." *Id.*

A Westlaw search unearthed another case where WikiLeaks may have been represented by counsel, *see Bank Julius Baer & Co. v. WikiLeaks*, No. C 08-00824 JSW, 2008 WL 413737, at *1 (N.D. Cal. Feb. 13, 2008), but in that case the attorney specifically declined to accept service on

---

[13] Complaint, *Center for Constitutional Rights v. Lind*, 1:13-cv-01504 (May 22, 2013), ECF No. 1. The docket sheet for this case lists three individuals as counsel of record for the Plaintiffs, including WikiLeaks, but one attorney appeared to be in-house counsel for WikiLeaks' co-plaintiff. The DNC's counsel did not attempt to contact that in-house attorney.

WikiLeaks' behalf, explaining that her representation had ended and she was no longer counsel for the organization.[14] Plaintiff's counsel also searched news reports and Wikipedia, and identified three individuals who may have represented WikiLeaks: one is deceased, one lives in Spain and does not have contact information (that Plaintiff can find) online, and the third lives in London and is reported to be a member of Defendant Julian Assange's legal team, but has not been linked by reliable sources to WikiLeaks.[15] Horwitz Decl. ¶ 4. Plaintiff's counsel therefore believes it would not be feasible to serve WikiLeaks through counsel.

### III. Legal Standard

Federal Rule of Civil Procedure 4(h) establishes a procedure for serving a corporation, partnership, or "other unincorporated association," either within or without a "judicial district of the United States." Because WikiLeaks is an international organization of unknown structure, with no known known business conducted in the United States and its servers located abroad, it must be served using Rule 4(h)'s procedure for service outside of a U.S. judicial district. *See Bank Julius Baer & Co.*, 2008 WL 413737, at *1 (authorizing service on WikiLeaks at a place outside of a United States judicial district). That procedure requires Plaintiff to follow Rule 4(f). See Fed. R. Civ. P. 4(h)(2). Rule 4(f), in turn, establishes three mechanisms for service abroad: 1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those provided by the Hague Convention," Fed. R. Civ. P. (4)(f)(1); 2) if there is no internationally

---

[14] Letter from Julie S. Turner re service, *Bank Julius Baer & Co. v. WikiLeaks* (No. C 08-00824 JSW), 2008 WL 413737, ECF No. 26. In that case, the plaintiff also attempted to serve WikiLeaks by delivering the complaint to an individual that plaintiff believed to be an officer of the organization. *Id.* at ECF No. 39. That individual denied that he was an officer of the corporation. *Id.* at ECF No. 90. WikiLeaks never made a filing in that case.

[15] *Law Report: Jennifer Robinson: human rights and WikiLeaks lawyer*, abc.net.au (May 15, 2012) (downloaded from website) (available at http://www.abc.net.au/radionational/programs/lawreport/jennifer-robinson/4012814).

5

agreed means, then by following the law of the country where the defendant is located, following directions given by an official in the foreign country where the defendant is located, hand delivering a copy of the summons and complaint to the defendant (unless the defendant is an organization), or mailing the summons and complaint with a request for a signed receipt, Fed. R. Civ. P. (4)(f)(2), (4)(h)(2); or 3) by "other means not prohibited by international agreement, as the court orders," *see* Fed. R. Civ. P. (4)(f)(3).

Crucially, there is "no hierarchy" among these three means of service: A plaintiff need not attempt service under Rule 4(f)(1) or Rule 4(f)(2) before the court authorizes service on an international defendant under Rule 4(f)(3*). Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377–78 (S.D.N.Y. 2018) (quoting *Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012)); *see also Sec. & Exch. Comm'n v. Anticevic*, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009). However, in an exercise of their discretion, some courts have required parties seeking permission to serve a defendant under Rule 4(f)(3) to show: (1) "that the plaintiff has reasonably attempted to effectuate service on the defendant" by itself; and (2) that "the circumstances are such that the court's intervention is necessary." *Elsevier, Inc.*, 287 F. Supp. 3d at 378 (collecting cases).

When a court exercises its authority under Rule 4(f)(3), it may authorize any means of service that is "reasonably calculated, under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and comports with international law. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014, 1016 (9th Cir. 2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *Elsevier, Inc.*, 287 F. Supp. 3d at 379–80 (citing *Rio* with approval); *Microsoft Corp. v. Does*, No. 12-CV-

1335 SJ RLM, 2012 WL 5497946, at *2 (E.D.N.Y. Nov. 13, 2012) (same); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 GBD, 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12, 2007) (same).

## IV. Analysis

Because WikiLeaks has more of a virtual than a physical presence, the Court can and should exercise its authority under Rule 4(f)(3) to authorize service by Twitter and by first class mail to WikiLeaks' Post Office Box in the United States.  *See St. Francis Assisi*, 2016 WL 5725002, at *2 (allowing service via Twitter). Notably, Plaintiff has satisfied the two threshold conditions that some district courts impose on parties seeking a court order under Rule 4(f)(3).  *Elsevier, Inc.*, 287 F. Supp. 3d at 378.  First, as explained above, Plaintiff "reasonably attempted to effectuate service on the defendant" by itself: Plaintiff followed the instructions on the "WikiLeaks:Legal" webpage for obtaining a service address for WikiLeaks, but the instructions were faulty. *Id.* Additionally, Plaintiff contacted attorneys who represented WikiLeaks in the past to identify an appropriate service method, but those attorneys could not accept service or provide any guidance. Second, because WikiLeaks does not have a strong physical presence in any country, it would be difficult if not impossible to serve WikiLeaks without court permission to serve WikiLeaks electronically.  *Id.*; *see also Dama S.P.A. v. Does*, No. 15-CV-4528 (VM), 2015 WL 10846737, at *2 (S.D.N.Y. June 15, 2015) (authorizing email service under Rule 4(f)(3) where the defendant had a strong virtual presence and a "functioning email address," but "otherwise remained anonymous").

Moreover, under the unique facts of this case, service by Twitter is "reasonably calculated, under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc.*, 284 F.3d at 1016.  Courts in this district have consistently recognized that electronic means of service are reasonably calculated to

inform defendants of litigation when those defendants have a strong online presence. *See, e.g.*, *Elsevier, Inc.*, 287 F. Supp. 3d at 379 ("It is well-settled that service by email on foreign defendants meets [the Rule 4(f)] standard in an appropriate case."); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (holding that service via email was reasonably calculated to inform the defendant of the litigation because the defendant conducted some business over email, and it was therefore likely that the defendant would read the email serving the complaint); *Dama S.P.A.*, 2015 WL 10846737, at *2 (holding that service via email was reasonably calculated to inform the defendant of the litigation because the defendant had an online presence and a "functioning email address"); *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 PAE, 2013 WL 841037 (S.D.N.Y. March 7, 2013) (holding that service via email and Facebook was reasonably calculated to inform the defendant of the litigation because the email addresses and Facebook accounts were registered under the defendants' names and frequently used); *Philip Morris USA Inc.*, 2007 WL 725412, at *3 (holding that service via email was reasonably calculated to inform the defendant of the litigation because the defendant "conduct[ed] business extensively, if not exclusively, through [its] Internet websites and correspond[ed] regularly with customers via email").

Similarly, the U.S. District Court for the Northern District of California recently held that service by Twitter was reasonably calculated to apprise a defendant of the litigation. *St. Francis Assisi*, 2016 WL 5725002, at *2. In that case, the defendant was a Kuwaiti national who allegedly financed some of the Islamic State of Iraq and Syria's (ISIS's) activities. *Id.* at *1. After a diligent search, the plaintiff was unable to locate the defendant, but it was clear that he "ha[d] an active Twitter account and continue[d] to use it to communicate with his audience." *Id.* at *2. Thus, the Court held, "service by the social-media platform, Twitter, [was] reasonably calculated to give

8

notice to and [was] the 'method of service most likely to reach'" the defendant.  *Id.* (quoting *Rio Props.*, 284 F.3d at 1017).

In this case, as in *St. Francis Assisi*, Plaintiff searched diligently for a more conventional means of serving WikiLeaks, but was unable to identify one.  At the same time, WikiLeaks has a strong and continued Twitter presence: WikiLeaks seems to tweet daily.  *See St. Francis Assisi*, 2016 WL 5725002, at *2; *see also Philip Morris USA Inc.*, 2007 WL 725412, at *3 (allowing electronic service because the defendant "correspond[ed] regularly" on electronic platforms).; *PCCare247 Inc.*, 2013 WL 841037, at *5 ("Particularly where defendants have zealously embraced a comparatively new means of communication, it comports with due process to serve them by those means" (internal quotation marks omitted).).  Service by Twitter is "all the more reasonable" because WikiLeaks "demonstrably already ha[s] knowledge of the lawsuit."  *Id.* at *5 (citing *SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir.1987)).  As noted above, WikiLeaks tweeted that it "read the DNC lawsuit."  Additionally, while Plaintiff has no reason to believe that WikiLeaks regularly checks its Post Office Box in the United States, Plaintiff will, as a belt-and-suspenders measure, send a service packet to that address.

Finally, Plaintiff knows of no international agreement or international law that would prevent service by Twitter.  *See St. Francis Assisi*, 2016 WL 5725002, at *2.

## V. Conclusion

For the foregoing reasons, Plaintiff respectfully requests authorization to serve WikiLeaks by Twitter and first class mail to its Post Office Box in the United States.

Dated:  July 20, 2018                                         Respectfully submitted,


                                                              */s/ Joseph M. Sellers*
Michael Eisenkraft (#6974)

Cohen Milstein Sellers & Toll PLLC  
88 Pine St. ● 14th Floor  
New York, NY 10005  
(212) 838-7797  

Joseph M. Sellers (admitted *Pro Hac Vice*)  
Geoffrey A. Graber (admitted *Pro Hac Vice*)  
Julia A. Horwitz (admitted *Pro Hac Vice*)  
Alison S. Deich (*Pro Hac Vice* pending)  
Cohen Milstein Sellers & Toll PLLC  
1100 New York Ave. NW ● Fifth Floor  
Washington, DC 20005  
(202) 408-4600  

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 20, 2018, I electronically filed the Motion to Serve Defendant WikiLeaks by Twitter and Mail with the Clerk of the Court using ECF, which in turn sent notice to all counsel of record.


Dated:    July 20, 2018                                  */s/ Jihoon Lee*
                                                           Jihoon Lee

## CERTIFICATE OF LENGTH

I hereby certify that this document is less than 7,000 words.


Dated:   July 20, 2018                           */s/ Julia A. Horwitz*
                                                 Julia A. Horwitz