**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE,<br><br>　　　　　　　Plaintiff,<br><br>　-against-<br><br>THE RUSSIAN FEDERATION;<br>GENERAL STAFF OF THE ARMED<br>FORCES OF THE RUSSIAN<br>FEDERATION ("GRU");<br>ARAS ISKENEROVICH AGALAROV;<br>EMIN ARAS AGALAROV;<br>JOSEPH MIFSUD; WIKILEAKS;<br>JULIAN ASSANGE; DONALD J. TRUMP FOR<br>PRESIDENT, INC.; DONALD J. TRUMP, JR.;<br>PAUL J. MANAFORT, JR.; ROGER J. STONE,<br>JR.; JARED C. KUSHNER; GEORGE<br>PAPADOPOULOS; RICHARD W. GATES, III,<br><br>　　　　　　　Defendants. | Case No. 1:18-cv-03501-JGK |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ARAS AGALAROV'S AND EMIN AGALAROV'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF ALLEGED FACTS ............................................................. 3

STANDARD OF REVIEW ............................................................................... 5

ARGUMENT ..................................................................................................... 6

I.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(C) ....................................................................... 6

     A.    The Amended Complaint Fails to Allege that the Agalarovs Engaged in a Pattern of Racketeering Activity ................................. 7

     B.    The Amended Complaint Fails to Allege that the Agalarovs Conducted or Participated in the Enterprise's Affairs .................................. 10

     C.    The Amended Complaint Fails to Allege the Required Continuity ............. 11

     D.    The Amended Complaint Fails to Allege that the Agalarovs' Actions Caused Plaintiff's Alleged Injuries ................................... 13

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(D) ....................................................................... 14

III.   THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT FOR THE COURT TO EXERCISE PERSONAL JURISDICTION ............................................................................... 15

     A.    The Amended Complaint Fails to Meet the Requirements of New York's Long-Arm Statute ................................................. 16

     B.    The Exercise of Personal Jurisdiction Here Is Inconsistent with Due Process ......................................................................... 18

     C.    18 U.S.C. § 1965(b) Provides No Basis for Jurisdiction Here .................... 20

IV.   THE COURT SHOULD DISMISS THE AMENDED COMPLAINT'S ANCILLARY STATE LAW CLAIMS AS AGAINST THE AGALAROVS ................................................................................. 21

CONCLUSION ................................................................................................ 24

CERTIFICATE OF COMPLIANCE ............................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  No. 13 CIV. 981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015)................................20

*AmTrust Fin. Servs., Inc. v. Lacchini*,
  260 F. Supp. 3d 316 (S.D.N.Y. 2017)...................................................................................15

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006).................................................................................................................13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)........................................................................................................5

*Baisch v. Gallina*,
  346 F.3d 366 (2d Cir. 2003)..............................................................................................14, 15

*Beck v. Prupis*,
  529 U.S. 494 (2000).......................................................................................................8, 10, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................6

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)....................................................................................................16

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014).......................................................................................20

*Casio Comput. Co. v. Sayo*,
  No. 98CV3772 (WK), 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ......................................8

*Cave v. E. Meadow Union Free Sch. Dist.*,
  514 F.3d 240 (2d Cir. 2008)....................................................................................................23

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018).......................................................................................................17

*City of N.Y. v. Smokes-Spirits.com. Inc.*,
  541 F.3d 425 (2d Cir. 2008)....................................................................................................10

*Clifford v. Hughson*,
  992 F. Supp. 661 (S.D.N.Y. 1998)............................................................................................7

*DSMC, Inc. v. Convera Corp.*,
    479 F. Supp. 68 (D.D.C. 2007)................................................................21

*Dominion Res. Servs., Inc. v. 5K Logistics, Inc.*,
    No. 3:09 CV 315, 2009 WL 2461396 (E.D. Va. Aug. 7, 2009) ......................................22, 23

*Econ. Research Servs., Inc. v. Resolution Econ., LLC*,
    208 F. Supp. 3d 219 (D.D.C. 2016) ................................................................21, 22

*Elsevier Inc. v. Doctor Evidence, LLC*,
    No. 17-CV-5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018)......................................9

*Elsevier Inc. v. W.H.P.R., Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010)................................................................10

*Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*,
    No. 17-CV-8078 (RA), 2018 WL 4757961 (S.D.N.Y. Sept. 30, 2018) ................................9

*Figueroa Ruiz v. Alegria*,
    896 F.2d 645 (1st Cir. 1990) ................................................................6

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
    20 F. Supp. 3d 451 (S.D.N.Y. 2014)................................................................23

*First Capital Asset Mgmt., Inc. v. Brickelbush, Inc.*,
    150 F. Supp. 2d 624 (S.D.N.Y. 2001)................................................................23

*First Capital Asset Mgmt., Inc. v. Satinwood, In*c.,
    385 F.3d 159 (2d Cir. 2004)................................................................12, 23

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)................................................................6

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
    67 F.3d 463 (2d Cir. 1995)................................................................7

*Goodyear v. Dunlop Tires Operations., S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................19

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................................8

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990)................................................................10

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010)................................................................13, 14

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
    No. 17-CV-6851 (SHS), 2018 WL 4284290 (S.D.N.Y. Sept. 7, 2018)............................19, 20

*Int'l Bhd. of Teamsters v. Carey*,
    297 F. Supp. 2d 706 (S.D.N.Y. 2004),
    *aff'd* 124 F. App'x 41 (2d Cir. 2005).............................................................................6, 12, 13

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996),
    *aff'd*, 113 F.3d 1229 (2d Cir. 1997) ...................................................................................6

*Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998)....................................................................................16

*Lawati v. Montague Morgan Slade Ltd.*,
    102 A.D.3d 427 (1st Dep't 2013) ..................................................................................17, 18

*Liang v. City of New York*,
    No. 10-CV-3089 ENV VVP, 2013 WL 5366394 (E.D.N.Y. Sept. 24, 2013) ........................15

*M'Baye v. New Jersey Sports Prod., Inc.*,
    No. 06 CIV. 3439 (DC), 2007 WL 431881 (S.D.N.Y. Feb. 7, 2007).....................................15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 CIV. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994)....................................8

*Miranda v. Ponce Fed. Bank*,
    948 F.2d 41 (1st Cir. 1991)..................................................................................................6

*Moss v. Morgan Stanley Inc.*,
    719 F.2d 5 (2d Cir. 1983) ....................................................................................................7

*Picard v. Kohn*,
    907 F. Supp. 2d 392 (S.D.N.Y. 2012)..................................................................................13

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)..................................................................................................12

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).............................................................................................................10

*Salinas v. United States*,
    552 U.S. 52 (1997)...............................................................................................................15

*Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*,
    No. 2:12CV701, 2013 WL 2147478 (E.D. Va. May 14, 2013)..............................................22

*Sheridan v. Jaffe*,
No. 94 CIV. 9344 (AJP)(WK), 1996 WL 345965 (S.D.N.Y. June 24, 1996) ........................15

*Singh v. G.k.*,
No. 1:15-CV-05372 (ALC), 2016 WL 3181149 (S.D.N.Y. June 2, 2016) ............................19

*Smartix Int'l Corp. v. MasterCard Int'l LLC*,
355 F. App'x 464 (2d Cir. 2009) ..................................................................................6

*Spitzer v. Abdelhak*,
No. CIV. A. 98-6475, 1999 WL 1204352 (E.D. Pa. Dec. 15, 1999) ........................................8

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) ......................................................................................11

*Sullivan v. Barclays PLC*,
No. 13-CV-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ............................19, 20

*TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*,
536 F. App'x 45 (2d Cir. 2013) ..................................................................................13

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) ................................................................................................23

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ....................................................................................18, 19

*Walden v. Fiore*,
571 U.S. 277 (2014) ................................................................................................19

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*,
No. 03 Civ. 8606RWS, 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ................................11

*Westchester Cty. Indep. Party v. Astorino*,
137 F. Supp. 3d 586 (S.D.N.Y. 2015) ......................................................................9, 10, 12

**STATUTES**

18 U.S.C. § 1831 ....................................................................................................8, 9

18 U.S.C. § 1832 ......................................................................................................9

18 U.S.C. § 1956 ....................................................................................................20

18 U.S.C. § 1961 ..................................................................................................1, 10

18 U.S.C. § 1962 ..............................................................................................*passim*

18 U.S.C. § 1965 ....................................................................................................20

D.C. Code § 36-401 .................................................................................................................21

Va. Code. Ann. § 18.2-152.3 ....................................................................................................22

Va. Code. Ann. § 18.2-152.4 ....................................................................................................22

Va. Code. Ann. § 18.2-152.5 ....................................................................................................22

**RULES**

Fed. R. Civ P. 11 .......................................................................................................................5

Fed. R. Civ. P. 12 ..................................................................................................................1, 5

N.Y. C.P.L.R. § 302 .......................................................................................................16, 17, 18

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 217...........................................................................................22

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Aras Agalarov and Emin Agalarov (collectively, the "Agalarovs") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Amended Complaint (ECF No. 182 ("Amended Complaint" or "AC")) filed by the Democratic National Committee ("DNC" or "Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's claims against the Agalarovs are fundamentally flawed and should be dismissed with prejudice.  The Amended Complaint fails to allege any of the essential elements needed to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 - 1968.  The basic pleading deficiency is obvious and incontrovertible:  the Amended Complaint alleges an extensive conspiracy (by other defendants) to hack Plaintiff's electronic data, but alleges absolutely no connection of any kind between that conspiracy and any conduct by the Agalarovs, who did not have, and are not alleged to have had, the slightest knowledge or involvement in any conspiracy to hack anyone's computer files.  The Amended Complaint does not assert (nor could it) that any of the alleged contacts between the Agalarovs and the Trump Campaign[1] or Trump Associates—including the June 2016 Trump Tower meeting that the Agalarovs allegedly helped arrange—related to any "hacking" or any other activity prohibited by RICO.  Instead, the Amended Complaint attempts, without any such factual allegations, to join the Agalarovs as defendants simply because they:  (i) reside in Russia; and (ii) had some contact with President Trump and his campaign.  RICO jurisprudence does not permit such a theory to proceed.

---

[1]  Capitalized terms not otherwise defined have the meanings set forth in the Amended Complaint.

*First*, a RICO plaintiff must allege that each defendant committed, or knowingly conspired to commit or aided and abetted, at least two RICO predicate acts.  The Amended Complaint, however, alleges no (let alone two) predicate acts on the part of either of the Agalarovs, nor any knowledge or involvement by them in any predicate acts.  Rather, the Amended Complaint alleges purported violations of trade-secret and economic-espionage laws by others, and fails to claim that the Agalarovs knew of, committed, aided, or abetted any unlawful attempt to obtain anyone's trade secrets.  In the absence of any allegation that the Agalarovs committed or had knowledge of a single RICO predicate act, the claim against them must be dismissed.

*Second*, the Amended Complaint fails to allege other essential elements of a viable RICO claim against the Agalarovs.  It nowhere suggests that the Agalarovs played any role in directing the actions of an enterprise to hack Plaintiff's data, or that the Agalarovs had knowledge of or involvement in any such enterprise.  The Amended Complaint also fails to allege a "pattern of racketeering activity" (as the law requires) because, not having alleged any predicate act by the Agalarovs, the Amended Complaint does not (and cannot) allege *any* "racketeering activity" on their part.  Likewise, it fails to allege any damages or RICO injury to Plaintiff arising from the conduct of the Agalarovs (as opposed to the alleged hacking activity that is entirely disconnected from them).

*Finally*, the Amended Complaint fails to allege facts sufficient to establish personal jurisdiction over the Agalarovs.  The Agalarovs are not domiciled in New York or the United States, and therefore the New York long-arm statute and the Constitution's Due Process Clause set the limits of personal jurisdiction.  Plaintiff cannot satisfy either requirement, because it cannot allege that either of the Agalarovs transacted any business in New York giving rise to

2

Plaintiff's claims, or that they own any real property in New York.  While the Amended Complaint alleges that Emin Agalarov discussed the potential Trump Tower meeting by telephone with Defendant Donald J. Trump Jr., the Amended Complaint does not allege that this phone call occurred in New York, much less that the phone call has any relationship to Plaintiff's claims of cyberespionage.  Finally, Plaintiff cannot invoke RICO's "ends of justice" jurisdiction because, for the reasons stated above, the Amended Complaint fails to plead a viable underlying RICO claim against the Agalarovs, as would be required for the application of such jurisdiction.

Because this is a case about an alleged hacking conspiracy in which the Agalarovs are not alleged to have the slightest involvement, the Amended Complaint should be dismissed as to them.

## STATEMENT OF ALLEGED FACTS

The Amended Complaint contains 211 paragraphs of factual allegations describing what Plaintiff claims was the Russian Federation's "cyberattack on the DNC," through which "Russian intelligence services hacked into the DNC's computers," and various defendants (but not the Agalarovs) subsequently used the "stolen information to advance [Russia's] own interests." (AC ¶ 1.)  Despite its prolixity, the Amended Complaint alleges just seven facts involving the Agalarovs, not one of which pertains to the alleged cyberattack that the Agalarovs are not alleged to have known of, let alone been involved in.  Those allegations are as follows:

(i)      In 2013, the Agalarovs met Donald Trump in connection with hosting the Miss Universe pageant in Moscow.  (AC ¶¶ 41-42, 65.)

(ii)      At some undefined point in time, the Agalarovs negotiated with Donald Trump regarding a potential real estate development in Moscow.  (AC ¶¶ 41-42.)

(iii)    On June 3, 2016, Emin Agalarov's publicist, Rob Goldstone, offered to provide Donald Trump Jr. with "official documents and information that would incriminate Hillary and her dealings with Russia . . . ," which was "part of Russia and its government's support for Mr. Trump."  (AC ¶ 132.)

(iv)    Between June 6 and 7, 2016, Emin Agalarov and Donald Trump Jr. exchanged phone calls, purportedly to "discuss[] the meeting at which Russians would provide the Trump Campaign with damaging information about the Democratic nominee."  (AC ¶ 134.)

(v)    On June 9, 2016, a meeting took place at Trump Tower between Trump Campaign representatives, Mr. Goldstone, an Agalarov business associate, a lobbyist, and Natalia Veselnitskaya, who Plaintiff claims "was closely connected to the Kremlin."  (AC ¶¶ 136-137.)

(vi)    On June 10, 2016, the Agalarovs sent Donald Trump a painting as a birthday gift. (AC ¶ 138.)

(vii)    Conclusorily, and only upon information and belief, the Amended Complaint asserts that the Agalarovs "stood to benefit financially and professionally from a Trump Presidency."  (AC ¶ 80.)

As is self-evident from the face of the Amended Complaint, Plaintiff nowhere alleges that the Agalarovs had any knowledge of, involvement with, or connection to Russia's purported cyberattack on the DNC.  Nor does the Amended Complaint assert, in any fashion, that the Agalarovs possessed—much less stole or conveyed—any information belonging to the DNC. The Amended Complaint also does not allege that the Agalarovs entered into any agreement, undertaking or conspiracy with any other defendant that might have been connected with the DNC's stolen data.

Indeed, while the Amended Complaint contains several allegations that attempt to link other defendants to Russian hacking, Plaintiff makes no attempt at a similar showing with regard to the Agalarovs. [2]  For instance, the Amended Complaint alleges that Roger Stone and Donald Trump Jr. "communicated secretly with Russian agents or Wikileaks" regarding information allegedly stolen from the DNC (AC ¶¶ 22, 157, 166), that George Papadopolous and Joseph Mifsud communicated regarding the Russians having "thousands of emails" (AC ¶ 94(d)), that Wikileaks "contacted GRU operatives  . . . to request new material stolen from the DNC" (AC ¶ 146), and that the Trump Campaign "celebrated th[e] publication of stolen materials" (AC ¶ 154).  No such analogous facts are pleaded against the Agalarovs.

In fact, apparently acknowledging the lack of any connection between the Agalarovs and the allegedly illegal actions that are the basis for Plaintiff's claims, the Amended Complaint notes that "Russian operatives trespassed onto computer servers located in Virginia and Washington D.C. . . . in concert with Assange and WikiLeaks, and with the active support and approval of the Trump Campaign and the Trump Associates,"  (AC ¶ 82), but does not mention the Agalarovs at all when describing those actions.  There is simply no alleged connection between the Agalarovs' personal and professional relationship with Donald J. Trump, and the facts that give rise to Plaintiff's claims here.

## <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar*

---

[2]  Nor could Plaintiff make such allegations in any subsequent amended complaint consistent with its obligations under Rule 11 of the Federal Rules of Civil Procedure.

*Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544

(2007)).  Courts accept as true all well-pleaded facts alleged in the complaint but "conclusions of

law or unwarranted deductions of fact are not admitted."  *First Nationwide Bank v. Gelt Funding*

*Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (citations and marks omitted).

Courts in the Second Circuit have described civil RICO as "an unusually potent

weapon—the litigation equivalent of a thermonuclear device."  *Katzman v. Victoria's Secret*

*Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (quoting

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)).  "Because the 'mere assertion of a

RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . .

courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'"

*Id.* (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)).  Hence, in evaluating

RICO claims, courts distinguish between "factual allegations . . . [and] conclusory recitation of

RICO-related legal propositions."  *Int'l Bhd. of Teamsters v. Carey*, 297 F. Supp. 2d 706, 716

(S.D.N.Y. 2004), *aff'd* 124 F. App'x 41 (2d Cir. 2005); *see also Smartix Int'l Corp. v.*

*MasterCard Int'l LLC*, 355 F. App'x 464, 465 (2d Cir. 2009) ("[A] plaintiff's complaint must

provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action.'" (quoting *Bell*, 550 U.S. at 555)).

With respect to the Agalarovs, the Amended Complaint is frivolous in that it fails to

satisfy these standards on every level.

## ARGUMENT

### I.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(C)

To state a claim under Section 1962(c), a plaintiff must plead that (i) each defendant

(ii) through the commission of two or more acts (iii) constituting a "pattern" (iv) of "racketeering

activity" (v) "directly or indirectly invests in, or maintains an interest in, or participates in" (vi) an "enterprise" (vii) the activities of which affect interstate commerce or foreign commerce, and that (viii) plaintiff was "injured in his business or property *by reason of* a violation of section 1962." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citation omitted) (emphasis in original). Here, the Amended Complaint fails to state a claim under 18 U.S.C. § 1962(c) against the Agalarovs under each and every prong. In particular, the Amended Complaint: (i) fails to allege that the Agalarovs committed or even had knowledge of a single RICO "racketeering" predicate act, much less engaged in a "pattern" of "racketeering activity" (the first through fourth prongs); (ii) fails to allege that the Agalarovs managed, directed or coordinated any activities of the alleged hacking enterprise (prongs five through six); and (iii) fails to allege that the Agalarovs caused any injury to the DNC (prong eight).

### A.   The Amended Complaint Fails to Allege that the Agalarovs Engaged in a Pattern of Racketeering Activity

A plaintiff in a RICO action must plead facts sufficient to show that each defendant engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(c). Such a pattern requires a plaintiff to allege facts showing (i) that each defendant committed at least two predicate acts of racketeering activity within a ten-year period, (ii) that these racketeering predicates are interrelated, and (iii) that there is continued, or the threat of continued, racketeering activity. *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). Where, as here, a complaint alleges no predicate acts on the part of the relevant defendants, dismissal is required. *See, e.g.*, *Clifford v. Hughson*, 992 F. Supp. 661, 671 (S.D.N.Y. 1998) ("Because the Court holds that plaintiffs have failed to plead even one predicate act, there is no need to consider whether the complaint has alleged a pattern of racketeering activity.").

A qualifying RICO predicate act must constitute one of the crimes identified in 18 U.S.C. § 1961(1), or an attempt or conspiracy to commit, or aiding and abetting, the commission of one of the listed crimes.   *See Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000) ("Section 1961(1) contains an exhaustive list of acts of 'racketeering,' commonly referred to as 'predicate acts.'").  It is Plaintiff's burden to plead facts that would establish valid RICO predicate acts, and each of the elements of the relevant predicate offense(s) must be pleaded with respect to each alleged participant in the RICO enterprise.   *See Casio Comput. Co. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516, at *16 (S.D.N.Y. Oct. 13, 2000) (a RICO plaintiff "must plead all elements" of the relevant RICO predicates); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 CIV. 2923 (CSH), 1994 WL 88129, at *20 (S.D.N.Y. Mar. 15, 1994) ("[A]t a minimum, the Complaint must specify which defendant is alleged to have committed a particular predicate act."); *Spitzer v. Abdelhak*, No. CIV. A. 98-6475, 1999 WL 1204352, at *2 (E.D. Pa. Dec. 15, 1999) ("Not only does the [d]efendant have to meet all the requirements of § 1962(c), but the [p]laintiff must properly allege that the [d]efendant committed the elements of the predicate acts that form the basis for the 'pattern of racketeering activity.'").  A plaintiff may not allege RICO predicate acts through "group pleading," but must allege specific acts by each defendant.  *See Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) ("'group pleading' does not comply with the requirements of RICO" because "lumping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required").

The Amended Complaint makes no effort whatsoever to allege any involvement by the Agalarovs with respect to any identified RICO predicate.  The Amended Complaint cites the Economic Espionage Act ("EEA"), 18 U.S.C. § 1831, *et seq.*, and the Defend Trade Secrets Act

("DTSA"), 18 U.S.C. § 1832, *et seq.*, as the relevant predicates.  (AC ¶¶ 231, 244.)  Both the EEA and DTSA address theft or misappropriation of trade secrets.  *See* 18 U.S.C. § 1831 (criminalizing theft of trade secrets and their unauthorized dissemination); *id.* § 1832 (same). However, the Amended Complaint nowhere alleges that the Agalarovs used or misappropriated any trade secrets, conspired to do so, knew of any misappropriation of trade secrets, or provided Plaintiff's trade secrets to any person.  Absent such allegations, no predicate act is alleged against the Agalarovs under either provision of law.  *See, e.g.*, *Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*, No. 17-CV-8078 (RA), 2018 WL 4757961, at *6 (S.D.N.Y. Sept. 30, 2018) (dismissing claims for misappropriation of trade secrets due to a "complete absence of factual allegations tending to show that [defendant] disclosed any of [plaintiff's] proprietary information"); *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (dismissing claims under the DTSA for misappropriation of trade secrets for not providing "any details," and noting that "[g]eneral allegations regarding 'confidential information' and 'processes' simply do not give rise to a plausible trade secrets claim," because "alleging that a trade secret exists requires much more specificity as to the information owned by the claimant").

Instead, the Amended Complaint merely alleges that Emin Agalarov's publicist "made an offer of assistance from the Russian government to the Trump campaign," (AC ¶ 132), but does not allege, or even suggest, that this alleged "offer" related to any theft of Plaintiff's trade secrets. Even if true, this allegation is, as a matter of law, insufficient to plead a RICO claim because Plaintiff has not shown that the promotion of a political campaign, on its own, constitutes "racketeering" activity.  *See Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586 (S.D.N.Y. 2015) (allegation that enterprise's "primary activities . . . [was] to run a political party

and to support [a candidate's] candidacy" failed to allege "racketeering activity"); *see also Beck*, 529 U.S. at 497 n.2 ("Section 1961(1) contains an exhaustive list of acts of 'racketeering'"); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (noting that RICO targets "only predicate acts catalogued under section 1961(1)").[3]

## B. The Amended Complaint Fails to Allege that the Agalarovs Conducted or Participated in the Enterprise's Affairs

Even if the Amended Complaint did allege RICO predicates as to the Agalarovs, it would fail for the additional reason that it does not allege that the Agalarovs played any role in directing the affairs of the alleged RICO enterprise, which the Amended Complaint alleges to be either the Trump Campaign or an association-in-fact enterprise comprising of "Russia, the GRU, the GRU Operatives, WikiLeaks, Assange, the Trump Campaign, Aras and Emin Agalarov, Mifsud, the Trump Associates, the Defendants' employees and agents, and additional entities and individuals known and unknown."  (AC ¶¶ 222, 227.)

A RICO plaintiff must plausibly allege that each defendant played "some part in directing the enterprise's affairs" if a Section 1962(c) or (d) claim is to survive a motion to dismiss.  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Thus, in order to adequately allege its RICO claims against the Agalarovs, Plaintiff would need to "allege[] facts that, if proved, would demonstrate some degree of control over the enterprise."  *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) (citing *City of N.Y. v. Smokes-Spirits.com. Inc.*, 541 F.3d 425, 449 (2d Cir. 2008)).

The Amended Complaint fails to meet this standard.  It alleges no facts that demonstrate that either of the Agalarovs exercised *any* degree of control over the alleged enterprise, nor any

---

[3]  Plaintiff points to no other potential violations of U.S. law which would involve any predicate acts enumerated in 18 U.S.C. § 1961(1).

facts indicating that the Agalarovs directed or coordinated the behavior of other members of the supposed enterprise. It also alleges no facts showing that the Agalarovs knew of, or were involved to any extent in, any of the RICO predicate offenses described in the Amended Complaint. (*Cf.* AC ¶¶ 19, 22, 157, 166 (alleging that Roger Stone and Donald Trump Jr. communicated with Russian agents and Wikileaks regarding stolen information); ¶ 94 (alleging that George Papadopolous and Joseph Mifsud communicated about Russians having "thousands of emails"); ¶ 146 (alleging that Wikileaks requested materials stolen from DNC)). Dismissal as to the Agalarovs is therefore required. *See West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606RWS, 2004 WL 2187069, at *13-14 (S.D.N.Y. Sept. 29, 2004) (dismissing claims where plaintiff offered no "factual allegations concerning the degree of discretionary authority exercised by" defendants nor any allegations "establishing the degree of control" defendants exercised over the enterprise).

### C.   The Amended Complaint Fails to Allege the Required Continuity

Even if the Amended Complaint did allege predicate acts on the part of the Agalarovs, it would nonetheless fail to satisfy RICO's "continuity" requirement, which requires either "showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

Because the Amended Complaint alleges *no* "racketeering activity" on the part of the Agalarovs, it necessarily fails to allege a pattern of any such activity. But, if this Court somehow determined that simply communicating with the Trump Campaign (which is, at most, all that the Amended Complaint has alleged) constitutes "racketeering activity," the Amended Complaint nonetheless lacks any allegations of continuity as is required.

For instance, the non-criminal, non-predicate conduct that the Agalarovs are alleged to have engaged in related to the Trump Tower meeting spans a period of just seven days—from June 3 to June 10, 2016.  (AC ¶¶ 132, 134, 138.)  Even if engaging in sporadic, unspecified conversations over seven days were somehow deemed to be criminal (which it is not), the Amended Complaint would fail to establish the closed-ended continuity necessary to state a civil RICO claim because "two years [is] the minimum duration necessary to find closed-ended continuity. . . ."  *First Capital Asset Mgmt., Inc. v. Satinwood, In*c., 385 F.3d 159, 181 (2d Cir. 2004); *see also Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) (holding that closed-ended continuity was insufficiently pleaded where defendants were alleged to have committed two acts of wire fraud by placing two phone calls separated "by at most a few months").

Moreover, the Amended Complaint pleads no facts demonstrating any threat of continued criminal activity.  The Amended Complaint itself alleges that the entire enterprise at issue was designed to facilitate the 2016 election of Donald J. Trump.  (AC ¶¶ 4, 227.)  As such, any alleged hacking conspiracy connected to the enterprise ended on November 8, 2016, the day Donald J. Trump was elected.  Consequently, as a matter of law, the Amended Complaint cannot establish the requisite open-ended continuity to plead a RICO claim.

*Westchester County Independent Party v. Astorino*, 137 F. Supp. 3d 586 (S.D.N.Y. 2015), is directly on point.  In that case—as here—plaintiff asserted a RICO claim in connection with an alleged enterprise the goal of which was to elect a particular candidate.  *Id.* at 611.  But the *Westchester* court dismissed the RICO claims on the ground that open-ended continuity was insufficiently pleaded, reasoning that the alleged enterprise constituted "a single scheme that terminated with the 2013 primary election," which had "an intended and foreseeable endpoint," and therefore was "inherently terminable."  *Id.*; *see also Int'l Bhd. of Teamsters*, 297 F.Supp.2d at

718 (holding that plaintiff failed to plead open-ended continuity where "[t]he set of schemes . . . was . . . inherently terminable" because "once the election occurred, the schemes, and their alleged sponsoring enterprise, necessarily came to an end"); *TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 47-48 (2d Cir. 2013) (plaintiff insufficiently alleged open-ended continuity where complaint identified the specific achievable goal of conspiracy (gaining access to funds of clients)).

Because Plaintiff has failed to plead that the Agalarovs were engaged in any racketeering activity—much less a pattern of such activity—the Amended Complaint should be dismissed as to them.

### D.   The Amended Complaint Fails to Allege that the Agalarovs' Actions Caused Plaintiff's Alleged Injuries

The Amended Complaint should also be dismissed because it does not attempt to link any conduct by the Agalarovs to any injuries that the DNC alleges that it suffered.

A plaintiff lacks standing to bring a civil RICO claim unless it shows that a RICO predicate offense was both a "but for" and the proximate cause of its injury. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). "[T]he central question . . . is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Moreover, "[a]cts that merely furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act do not directly cause that injury, and thus do not proximately cause it." *Picard v. Kohn*, 907 F. Supp. 2d 392, 397 (S.D.N.Y. 2012) (internal quotation and citation omitted). Similarly, to establish a violation of § 1962(d) for RICO conspiracy, a plaintiff must plead injury caused by "an overt act that is . . . an act of racketeering or otherwise wrongful under RICO." *Beck*, 529 U.S. at 505.

Here, Plaintiff alleges that its RICO injury was "harm to Plaintiff's business . . . and to Plaintiff's computers and servers." (AC ¶ 242.) The Amended Complaint makes no effort to link any of the seven facts alleged regarding the Agalarovs (which do not, as explained above, constitute predicate acts) to any injury deriving from the alleged hacking of the DNC or the dissemination of any stolen information. (*See* AC ¶¶ 41-42, 65, 80, 132-139.) The Amended Complaint therefore fails to plead an essential element of any viable civil RICO claim.

Indeed, the cause of the DNC's alleged injuries—alleged hacking into its computers and servers and dissemination of stolen information—is a "set of actions . . . entirely distinct," from the alleged conduct of the Agalarovs, *Hemi Grp.*, 559 U.S. at 10 (citation omitted), which the Amended Complaint describes as offering undefined "official documents and information" and setting up a meeting, the content of which is not alleged (AC ¶¶ 132, 134).

Plaintiff fails to allege—and could not allege in good faith—any connection between the Agalarovs, on the one hand, and the other defendants' alleged scheme to hack the DNC and disseminate any stolen trade secrets, on the other. While Plaintiff points to the publicity surrounding the Trump Tower meeting (AC ¶ 39), it is unable to allege that the Trump Tower meeting had any relationship whatsoever to any cyber-hacking or other unlawful activity, or that Plaintiff was cognizably injured by the meeting. This complete and total disconnect between the alleged actions of the Agalarovs and the DNC's alleged injuries is fatal to the DNC's claims. *See Hemi Grp.*, 559 U.S. at 11 (plaintiff failed to establish causation element of RICO civil claim where there was a sharp disconnect between alleged injury and defendant's alleged conduct).

## II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(D)

In the civil context, to state a claim for RICO conspiracy, "a plaintiff must allege that the defendant 'knew about and agreed to facilitate the scheme.'" *Baisch v. Gallina*, 346 F.3d 366,

377 (2d Cir. 2003) (quoting *Salinas v. United States*, 552 U.S. 52, 66 (1997)); *Liang v. City of New York*, No. 10-CV-3089 ENV VVP, 2013 WL 5366394, at *14 (E.D.N.Y. Sept. 24, 2013) (dismissing RICO claims because "mere allegations of agreement to commit predicate acts are insufficient" and "[a]t the core, a plaintiff must plead facts from which a court may infer that a 'meeting of the minds' occurred between the defendants").

As set forth in more detail above, the Amended Complaint does not allege that the Agalarovs had any knowledge of any scheme to conduct cyberattacks against Plaintiff, much less that the Agalarovs agreed to facilitate such activities in any way.  Accordingly, the Amended Complaint fails to plead this essential element of a viable RICO conspiracy claim, and therefore, dismissal is required.  *See, e.g.*, *M'Baye v. New Jersey Sports Prod., Inc.*, No. 06 CIV. 3439 (DC), 2007 WL 431881, at *8 (S.D.N.Y. Feb. 7, 2007) ("[F]ailure to allege an agreement is the most basic element of a RICO conspiracy claim, and the lack of such an allegation is enough for dismissal."); *Sheridan v. Jaffe*, No. 94 CIV. 9344 (AJP)(WK), 1996 WL 345965, at *10 (S.D.N.Y. June 24, 1996) (plaintiff failed to establish knowledge where plaintiff offered no evidence that defendant, a financial advisor, had knowledge of underlying Ponzi scheme in which defendant recommended plaintiff invest).

## III.  THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT FOR THE COURT TO EXERCISE PERSONAL JURISDICTION

The Amended Complaint should also be dismissed because Plaintiff has failed to allege any basis for this Court to exercise personal jurisdiction over the Agalarovs, whom Plaintiff concedes are domiciled in Russia, not the United States.  (AC ¶¶ 41-42.)

It is well-established that RICO contains neither a jurisdictional provision authorizing personal jurisdiction, nor service of process, over foreign defendants.  *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 330 & n.7 (S.D.N.Y. 2017).  Instead, "[p]laintiffs asserting

RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit." *Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc*., 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998).   The exercise of state long-arm jurisdiction must, of course, be consistent with the Due Process Clause of the U.S. Constitution.  *Id.* at 598.   Plaintiff cannot satisfy either requirement.

### A.    The Amended Complaint Fails to Meet the Requirements of New York's Long-Arm Statute

Under New York's long-arm statute, a court may exercise personal jurisdiction over any non-domiciliary who, either "in person or through an agent":

- "transacts any business within the state or contracts anywhere to supply goods or services in the state";

- "commits a tortious act within the state";

- "commits a tortious act without the state causing injury to person or property within the state . . . if he [a] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or [b] expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce"; or

- "owns, uses or possesses any real property situated within the state."

N.Y. C.P.L.R. § 302(a)(1)-(4).

In addition, there must be a "substantial relationship" between the defendant's transactions in New York and the plaintiff's cause of action in order to satisfy the nexus requirement of CPLR § 302(a).  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

Here, the Amended Complaint utterly fails to allege that the Agalarovs supplied goods or services to anyone in New York or otherwise conducted business in New York in a manner related, even tangentially, to the RICO claims pleaded by Plaintiff.  Nor does the Amended Complaint allege that the Agalarovs committed any tort within the State of New York, or that they own any real property in New York.

While the Amended Complaint does suggest, without providing factual allegations of any sort, that the Agalarovs somehow "conspired" to commit trespass to chattels under Virginia law, (AC ¶¶ 293-298), this allegation is insufficient as a basis for personal jurisdiction because the Amended Complaint alleges no acts taken by the Agalarovs in New York—or anywhere— related to the cyberhacking activity which is the basis for Plaintiff's Virginia-law trespass claims. Jurisdictional contacts may be predicated on the actions of co-conspirators, but only if participation in a conspiracy to commit the tort in question is alleged; here, it is not.  *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018) (establishing jurisdiction on the basis of a co-conspirator's contact with the forum requires the plaintiff to allege that "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state.").

Nor does the Amended Complaint allege any actionable tort committed outside of New York State and directed towards it.  To assert jurisdiction over foreign defendants under CPLR § 302(a), Plaintiff must plead that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant."  *Lawati v.*

*Montague Morgan Slade Ltd.*, 102 A.D.3d 427, 428 (1st Dep't 2013). Moreover, the underlying conduct must be tortious under New York law. The Amended Complaint nowhere alleges that the Agalarovs' contacts with Donald Trump or the Trump Campaign were tortious in nature. Nor does it allege specific facts which would constitute a tort, and, as set forth above, the Amended Complaint does not allege that Plaintiff was injured by the Agalarovs' actions. Accordingly, jurisdiction cannot be predicated on CPLR § 302(a)(3).

Finally, the Agalarovs are not subject to the Court's personal jurisdiction under the "real property" prong of New York's long-arm statute because (i) the Amended Complaint does not allege that the Agalarovs own any real property in New York, and (ii) the ownership of property creates in personam jurisdiction only when the cause of action arises out of ownership, use or possession of realty; this action is manifestly unrelated to any such property. Therefore, the Amended Complaint fails to allege even a single fact upon which this Court could exercise jurisdiction over the Agalarovs consistent with the New York long arm statute. The Amended Complaint should therefore be dismissed.

### B. The Exercise of Personal Jurisdiction Here Is Inconsistent with Due Process

The Amended Complaint should also be dismissed because it fails to allege any facts allowing this Court to exercise jurisdiction over the Agalarovs consistent with the Constitutional guarantee of due process. There are two types of personal jurisdiction that the Court may exercise consistent with the Constitution's due process clause: general jurisdiction and specific jurisdiction. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). Yet the Amended Complaint does not plead any facts sufficient to satisfy either category of personal jurisdiction.

As regards general jurisdiction, the Amended Complaint does not allege that the Agalarovs are domiciled in the forum (because, of course, they are not). Therefore, as a matter

of law, general jurisdiction is not available.  *See Singh v. G.k.*, No. 1:15-CV-05372 (ALC), 2016 WL 3181149, at *3 (S.D.N.Y. June 2, 2016) ("[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (quoting *Goodyear v. Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 924 (2011))).

Nor does the Amended Complaint plead facts sufficient to establish that this Court may exercise specific jurisdiction over the Agalarovs.  "For a State to exercise [specific] jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Waldman*, 835 F.3d at 335 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).  Crucially, the "underlying 'suit-related conduct must create a substantial connection with the forum State,'" and it is "defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.  This includes consideration of the claim's elements and where the underlying conduct occurred."  *Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *43 (S.D.N.Y. Feb. 21, 2017) (citing *Waldman*, 835 F.3d at 339).

As noted above, the Amended Complaint fails to allege any facts connecting the Agalarovs to the other defendants' purported hacking of the DNC's computer systems.  For that very reason, the Amended Complaint also fails to make out a prima facie case that the Agalarovs engaged in any tortious behavior whose nucleus or focal point was in the United States.  Such a showing is necessary, however, for the Court to exercise specific jurisdiction over the Agalarovs consistent with due process.  *See, e.g.*, *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, No. 17-CV-6851 (SHS), 2018 WL 4284290, at *8 (S.D.N.Y. Sept. 7, 2018) (dismissing RICO claim for lack of personal jurisdiction because while plaintiff alleged "some contacts with New York," there was "no allegation of any relationship between these contacts and the alleged

wrongdoing"); *Sullivan*, 2017 WL 685570, at *45 (dismissing claim for lack of personal jurisdiction where plaintiff failed to make out prima facie case that defendant's allegedly tortious actions had a nucleus or focal point in the United States).

Instead, the Amended Complaint attempts to connect the Agalarovs to the United States by citing an email and a few phone calls.  (AC ¶¶ 132, 134.)  But such a United States presence (if it can even be called that) is "relevant only insofar as it has a nexus to the misconduct underlying [Plaintiff's] claims," *Sullivan*, 2017 WL 685570, at *44, and Plaintiff makes no attempt to establish such a nexus.  Therefore, the Amended Complaint fails to allege the facts required to make a prima facie showing that the exercise of personal jurisdiction over the Agalarovs is consistent with constitutional due process.

### C.     18 U.S.C. § 1965(b) Provides No Basis for Jurisdiction Here

Because Plaintiff cannot show that the Agalarovs are subject to personal jurisdiction under New York's long-arm statute, Plaintiff may point to 18 U.S.C. § 1965(b), which authorizes nationwide jurisdiction over "other parties" not residing in this district when "the ends of justice" so require.  However, 18 U.S.C. § 1965(b) cannot serve as the basis for exercising personal jurisdiction over the Agalarovs.

It is well-established that where a RICO claim is dismissed, a court cannot rely on 18 U.S.C. § 1956(b) to establish personal jurisdiction over each of the defendants.  *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014).  *See also  7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 CIV. 981 (PGG), 2015 WL 1514539, at *7 n.2 (S.D.N.Y. Mar. 31, 2015) ("Only if the allegations in the Amended Complaint state[ ] a viable RICO claim, . . . would [it] be proper to exercise 'ends of justice RICO jurisdiction.'") (quotation marks and citation omitted).  Because the Amended Complaint fails to state a viable RICO claim against either of the Agalarovs, *see supra*, § 1965(b) is flatly inapplicable.

**IV.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT'S ANCILLARY STATE LAW CLAIMS AS AGAINST THE AGALAROVS**

In addition to its primary claims against the Agalarovs, Plaintiff has asserted that "ALL DEFENDANTS" are liable for supposed violations of the Washington D.C. Uniform Trade Secrets Act (Count VIII, AC ¶¶ 273-279), aiding and abetting a violation of the Virginia Computer Crimes Act (Count XIV, AC ¶¶ 304-309), and engaging in a conspiracy to commit trespass to chattels in violation of Virginia common law (Count XII, AC ¶¶ 293-298).

It is telling that when pleading these claims, Plaintiff fails to even mention the Agalarovs by name—much less specify a single action that the Agalarovs undertook that might somehow constitute a violation of these local laws.  Nor does Plaintiff attempt to allege any facts about the Agalarovs to establish liability under any of the three state laws cited in the Amended Complaint. Specifically:

- The Washington, D.C. Uniform Trade Secrets Act:  To state a claim under the Washington, D.C. Uniform Trade Secrets Act, D.C. Code § 36-401, *et seq*.  Plaintiff must allege: (1) the existence of a "trade secret," defined as information whose "value must derive from its secrecy" and (2) "acquisition of the trade secret by improper means, or improper use or disclosure by one under a duty not to disclose." *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 232 (D.D.C. 2016) (quoting *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 68, 77 (D.D.C. 2007)).  Here, Plaintiff does not plead facts that show that the Agalarovs acquired **any** of Plaintiff's information, much less that the Agalarovs did so "by improper means," that the undefined information that the Agalarovs are not alleged to have even received would rise to the level of a trade secret, or that the Agalarovs improperly used or disclosed such information.   Accordingly, Plaintiff has failed to sufficiently plead its claim against the Agalarovs for any violation of the Washington, D.C. Uniform Trade Secrets Act.  *See, e.g., Econ*

*Research Servs, Inc.*, 208 F. Supp. 3d at 233 (dismissing claim where "the Complaint contains no factual allegations that would support an inference that any of the information defendants allegedly misappropriated was valuable because of its secrecy").

- The Virginia Computer Crimes Act:  To state a claim under the cited provisions of the Virginia Computer Crimes Act, Plaintiff must at least allege that the defendant:  (i) "use[d] a computer or computer network, without authority" (Va. Code. Ann. § 18.2-152.3); (ii) acted with "malicious intent" to commit defined acts of computer trespass (Va. Code. Ann. § 18.2-152.4); or (iii) "use[d] a computer or computer network and intentionally examine[d] without authority any employment, salary, creditor, or any other financial or identifying information" (Va. Code. Ann. § 18.2-152.5).  Here, Plaintiff does not allege that the Agalarovs used any computer or computer network, that the Agalarovs had any malicious intent, or that the Agalarovs accessed any employment, salary, creditor, or other financial or identifying information set forth in the statute.  Therefore, this claim should also be dismissed as against the Agalarovs.  *See  Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, No. 2:12CV701, 2013 WL 2147478, at *6-7 (E.D. Va. May 14, 2013) (dismissing claim for violation of Virginia Computer Crimes Act, Va. Code Ann. § 18.2–152.3 where "[p]laintiff [did] not allege that [d]efendants used a third party's computer or computer network").

- Trespass to Chattels:  To state a claim for conspiracy to commit trespass to chattels under Virginia common law, Plaintiff must allege that a defendant conspired to "intentionally use[] or intermeddle[] with personal property in the rightful possession of another without authorization."  Restatement (Second) of Torts § 217(b); *see also Dominion Res. Servs., Inc. v. 5K Logistics, Inc.*, No. 3:09 CV 315, 2009 WL 2461396, at *2 (E.D. Va. Aug. 7, 2009) (citing Section 217(b)).  But again, the Amended Complaint contains no allegations that the

Agalarovs ever acquired, used or intermeddled with any of Plaintiff's personal property, or that

the Agalarovs ever contacted any other defendant about Plaintiff's personal property. Therefore,

this claim should also be dismissed. *See Dominion Res. Servs., Inc.*, 2009 WL 2461396, at \*2

(dismissing Virginia trespass to chattels claim for failing to allege all required elements).

Plaintiff's state law claims should be dismissed against the Agalarovs for the additional

reason that there is no basis for this Court to exercise its supplemental jurisdiction over those

claims.  "The exercise of supplemental jurisdiction is left to the discretion of the district court."

*First Capital Asset Mgmt., Inc.*, 385 F.3d at 182 (citations and marks omitted).   Because

Plaintiff's RICO claims against the Agalarovs must be dismissed, the Court should also decline

to exercise supplemental jurisdiction over any of the DNC's state law claims asserted against the

Agalarovs.  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)

("Certainly, if the federal claims are dismissed before trial . . . the state claims should be

dismissed as well.") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966));

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 461 (S.D.N.Y. 2014)

(declining to exercise supplemental jurisdiction over four state law tort claims after dismissing

RICO claims); *First Capital Asset Mgmt., Inc. v. Brickelbush, Inc.*, 150 F. Supp. 2d 624, 636

(S.D.N.Y. 2001) ("As the RICO claims have been dismissed, the Court is not obliged to exercise

supplemental jurisdiction, and it declines to do so.").

## <u>CONCLUSION</u>

For the reasons stated, the Agalarovs respectfully request that the DNC's claims against them be dismissed with prejudice in their entirety.

Dated:      New York, New York
            December 6, 2018

                          Respectfully submitted,

                          HERBERT SMITH FREEHILLS NEW YORK LLP

                          By: */s/ Scott S. Balber*                          
                              Scott S. Balber
                              Jonathan C. Cross
                              Michael P. Jones
                              Pamela K. Terry
                              450 Lexington Ave, 14th Floor
                              New York, New York 10017
                              Tel:  (917) 542-7600
                              Fax:  (917) 542-7601
                              Email:  Scott.Balber@hsf.com
                                      Jonathan.Cross@hsf.com
                                      Michael.Jones@hsf.com
                                      Pamela.Terry@hsf.com

                              *Attorneys for Defendants*
                              *Aras Iskenerovich Agalarov*
                              *and Emin Araz Agalarov*

24

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(D) of the Individual Practices of Judge John G. Koeltl, counsel for defendants Aras Agalarov and Emin Agalarov hereby certifies that this memorandum of law complies with the page limitations made applicable to this memorandum of law by the Scheduling Order entered on October 1, 2018 [ECF No. 181].

Dated:  New York, New York
        December 6, 2018

Respectfully submitted,

HERBERT SMITH FREEHILLS NEW YORK LLP

By:  */s/ Scott S. Balber*
        Scott S. Balber
        Jonathan C. Cross
        Michael P. Jones
        Pamela K. Terry
        450 Lexington Ave, 14th Floor
        New York, New York 10017
        Tel:  (917) 542-7600
        Fax:  (917) 542-7601
        Email:  Scott.Balber@hsf.com
                Jonathan.Cross@hsf.com
                Michael.Jones@hsf.com
                Pamela.Terry@hsf.com

        *Attorneys for Defendants*
        *Aras Iskenerovich Agalarov*
        *and Emin Araz Agalarov*