**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DEMOCRATIC NATIONAL COMMITTEE,

              Plaintiff,

    v.

THE RUSSIAN FEDERATION *et. al.,*

          Defendants.

Case No. 18-CV-03501
**JURY DEMANDED**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**JARED KUSHNER'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Abbe David Lowell (NY Bar No. AL2981)
ADLowell@winston.com
Christopher D. Man *(pro hac)*
CMan@winston.com
Kyllan J. Gilmore
KGilmore@winston.com
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006
T: 1-202-282-5000
F: 1-202-282-5100

*Counsel for Jared Kushner*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………….....…ii

PRELIMINARY STATEMENT……………………………………………………………….1

LEGAL STANDARDS ON A MOTION TO DISMISS……………………………………….3

ARGUMENT…………………………………………………………………………………...3

   I.    PLAINTIFF FAILS TO STATE A RICO CLAIM AGAINST KUSHNER……………...3

   II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE WIRETAP ACT AGAINST KUSHNER…………………………………………………………………………………...8

   III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE DC UNIFORM TRADE SECRETS ACT AGAINST KUSHNER…………………………………………………...10

   IV.  PLAINTIFF FAILS TO STATE A CLAIM UNDER VIRGINIA LAW FOR CONSPIRACY TO COMMIT TRESPASS AGAINST KUSHNER……………………11

   V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VIRGINIA COMPUTER CRIMES ACT AGAINST KUSHNER……...……………………………………….......13

CONCLUSION…………...……………………………………………………………....…14

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Adelphia Supply USA*,
2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) .......................................................... 6-7

*Allen v. New World Coffee, Inc.*,
2001 WL 293683 (S.D.N.Y. Mar. 27, 2001) ..................................................... 5

*Almy v. Grisham*,
273 Va. 68 (2007) ............................................................................................. 11

*Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*,
515 F. Supp. 2d 298 (N.D.N.Y. 2007) .......................................................... 12-13

*Arias v. Jokers Wild, Inc.*,
73 Va. Cir. 281 (2007) ...................................................................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 3, 6

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ....................................................................................... 9-10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 3, 14

*Bowman v. State Bank of Keysville*,
229 Va. 534 (1985) ........................................................................................... 13

*Catalyst & Chem. Servs., Inc. v. Glob. Ground Support*,
350 F. Supp. 2d 1 (D.D.C. 2004) ...................................................................... 10

*Citizens United v. FEC*,
558 U.S. 310 (2010) .......................................................................................... 10

*Com–Tech Assoc. v. Computer Assoc. Int'l, Inc.*,
753 F. Supp. 1078 (E.D.N.Y.1990) ................................................................... 8

*Congregacion de la Mision Provincia de Venezuela v. Curi*,
978 F. Supp. 435 (E.D.N.Y. 1997) ................................................................... 7

*Conte v. Newsday, Inc.*,
703 F. Supp. 2d 126 (E.D.N.Y. 2010) ............................................................ 5-6

*Coward v. Wellmont Health Sys.*,
295 Va. 351 (2018) ........................................................................................... 13

*Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC,*
    2004 WL 1574645 (S.D.N.Y. July 13, 2004) .......................................................................12

*DSMC, Inc. v. Convera Corp.,*
    479 F. Supp. 2d 68 (D.D.C. 2007) .......................................................................................10

*Eagle One Roofing Contractors, Inc. v. Acquafredda,*
    2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018) .................................................................. 6-8

*Elsevier Inc. v. W.H.P.R., Inc.,*
    692 F. Supp. 2d 297 (S.D.N.Y. 2010) ..........................................................................4-5, 7-8

*Equinox Gallery Ltd. v. Dorfman,*
    306 F. Supp. 3d 560 (S.D.N.Y. 2018) ....................................................................................4

*Eu v. San Francisco Cnty. Democratic Cent. Comm.,*
    489 U.S. 214 (1989) ..............................................................................................................10

*Flexborrow LLC v. TD Auto Fin. LLC,*
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ............................................................................... 3-4

*Foster v. 2001 Real Estate,*
    2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015) .......................................................................5

*Gelber v. Glock,*
    293 Va. 497 (2017) ...............................................................................................................11

*Gross v. Waywell,*
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) ....................................................................................4

*Hecht v. Commerce Clearing House, Inc.,*
    897 F.2d 21 (2d Cir. 1990) .....................................................................................................8

*L-3 Comm. Corp. v. Serco, Inc.,*
    2018 WL 1352093 (E.D. Va. Mar. 15, 2018) ................................................................ 13-14

*Nasik Breeding & Res. Farm Ltd. v. Merck & Co.,*
    165 F. Supp. 2d 514 (S.D.N.Y. 2001) ..................................................................................11

*N.Y. State Auto. Ins. Plan,*
    1998 WL 695869 (S.D.N.Y. Oct. 6, 1998) ............................................................................4

*Peterson v. Fairfax Hosp. Sys., Inc.,*
    31 Va. Cir. 50 (1993) ............................................................................................................13

*Reich v. Lopez,*
    38 F. Supp. 3d 436 (S.D.N.Y. 2014) ....................................................................................12

*Schmidt v. Fleet Bank*,
    16 F. Supp. 2d 340 (S.D.N.Y.1998)......................................................................4

*Spinale v. United States*,
    2004 WL 50873 (S.D.N.Y. Jan. 9, 2004) ...............................................................6

*Stultz v. Va. Dep't of Motor Vehicles*,
    185 F. Supp. 3d 890 (W.D. Va. 2015) ................................................................14

*Supinger v. Virginia*,
    167 F. Supp. 3d 795 (W.D. Va. 2016) ................................................................14

*Targum v. Citrin Cooperman & Co., LLP*,
    2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) ......................................................4

*Toms v. Pizzo*,
    172 F.3d 38 (2d Cir. 1998)....................................................................................5

*Tysons Toyota, Inc. v. Commonwealth Life Ins.*,
    20 Va. Cir. 399 (1990) ........................................................................................14

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)..........................................................4-5, 7-8

*Va. Heartland Bank v. Roberts*,
    46 Va. Cir. 71 (1998) ..........................................................................................12

**Statutes**

18 U.S.C. §1962(c) ...................................................................................................... 3-5, 7

18 U.S.C. §1962(d) ...................................................................................................... 3, 5, 7-8

18 U.S.C. §2511(1) ...................................................................................................... 8-9

Va. Code Ann. §18.2-152.3 ..........................................................................................13

Va. Code Ann. §18.2-152.4 ..........................................................................................13

Va. Code Ann. §18.2-152.5 ..........................................................................................13

Defendant Jared Kushner joins Donald J. Trump for President, Inc.'s Motion to Dismiss (Omnibus Motion), and submits this supplemental motion and memorandum seeking dismissal of all claims against him for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff lumps Kushner in as part of a cast of "Trump Associates" collectively accused of "suspicious communications" with Russian operatives and of offering some form of vague "support" to the alleged hacking and dissemination of DNC files,[1] but the Amended Complaint does not contain a single factual allegation implicating Kushner in the alleged wrongdoing. Instead, Kushner is mentioned by name in only five of the Amended Complaint's 309 paragraphs, which allege only that he is President Trump's son-in-law and senior advisor, that he was a "decision-maker" responsible for the presidential campaign's unspecified "data-driven efforts," and that he attended a June 9, 2016 meeting at Trump Tower. *See* Am. Compl. ¶¶13, 50, 89, 136, 197(f). Plaintiff may believe these innocuous facts warrant equating Kushner with its favored antagonists, but they state no claim against him upon which relief can be granted.

In addition to the reasons outlined in Defendants' Omnibus Motion, Plaintiff's RICO claims fail because the Amended Complaint does not identify Kushner's role in any alleged enterprise, any specific actions he took in its furtherance, any support he provided to it, or any other factual matter to justify the conclusory assertion that he was, or intended to be, involved.

---

[1] According to Plaintiff, it was "Russia's intelligence services [who] illegally hacked into the DNC's computer systems and email sever in order to steal and publish trade secrets . . . [and] then disseminated the stolen, confidential materials through GRU-created websites, as well as WikiLeaks and Assange . . . ." Am. Compl. ¶83. Plaintiff claims that the "Trump Associates" contributed some unspecified form of "active[] support[]," but fails to allege any facts that would permit this inference.

Plaintiff also states no claim against Kushner under the Wiretap Act or DC Uniform Trade Secrets Act.  Even if we were to imagine that the documents purportedly disclosed were confidential communications or "trade secrets" (which takes a fanciful imagination), the Amended Complaint alleges that other parties were responsible for their interception and public dissemination.  Plaintiff does not identify a single instance of Kushner intercepting, obtaining, having, using, or providing any assistance with the acquisition of such documents.  In any case, the information disclosed related to issues of public concern and so these claims are foreclosed by the First Amendment.

For similar reasons, Plaintiff fails to state a claim against Kushner for conspiracy to commit trespass to chattels.  Beyond his alleged attendance at a single meeting, of which Plaintiff tells us essentially nothing, the Amended Complaint does not allege a single action or statement involving Kushner, much less anything supporting an inference that he shared an unlawful purpose or took any actions in support or furtherance of the alleged trespass.

Finally, Plaintiff's claim under the Virginia Computer Crimes Act (VCCA) is deficient and should be dismissed.  The VCCA targets unlawful behavior effectuated by persons using a computer, but Plaintiff does not allege that Kushner ever used a computer to commit any of the proscribed acts.  Additionally, no authority supports Plaintiff's insinuation that vicarious liability may be imposed under the Act for "aiding and abetting" and, even if it did, Plaintiff does not allege a single fact indicating that Kushner in any way aided and abetted the alleged offense.

In sum, the Amended Complaint's conspicuously exiguous factual allegations related to Kushner do not support a single inference necessary to state the claims asserted against him. Plaintiff must do more than levy conclusory and unjustified accusations to show plausible entitlement to relief, and the failure to do so demands dismissal of these claims.

2

## LEGAL STANDARDS ON A MOTION TO DISMISS

A complaint warrants dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" when it does not "contain sufficient factual matter to 'state a claim for relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  If a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the [] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 662 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'").  Similarly, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Id.* (alteration in original).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Id.*  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

## ARGUMENT

### I.  PLAINTIFF FAILS TO STATE A RICO CLAIM AGAINST KUSHNER

Plaintiff alleges that Defendants violated 18 U.S.C. §§1962(c) & (d) by engaging in, and conspiring to engage in, a pattern of racketeering activity.  Am. Compl. ¶¶220–46.  Although Plaintiff fails to state a viable RICO claim against any Defendant, the allegations against Kushner are particularly deficient.  There are no facts in the Amended Complaint connecting Kushner to the alleged RICO violation or permitting any inference that he was involved.  Instead, Plaintiff pleads the type of conclusory, stigmatizing, and frivolous RICO allegations that "courts should strive to flush out . . . at an early stage of the litigation." *Flexborrow LLC v. TD Auto Fin. LLC*,

255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (citations omitted); *see also Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 570 (S.D.N.Y. 2018) ("[C]ourts are encouraged to dismiss RICO allegations at an early stage of the litigation where it is otherwise appropriate to do so.").

"A plaintiff's burden is high when pleading RICO allegations." *Targum v. Citrin Cooperman & Co., LLP*, 2013 WL 6087400, at *5 (S.D.N.Y. Nov. 19, 2013).[2] A plaintiff bringing a RICO claim under Section 1962(c) must allege participation in the affairs of an enterprise and a pattern of racketeering activity in the form of two or more qualifying predicate acts. *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 446 (S.D.N.Y. 2004). These elements "must be established as to each individual defendant," and each "must 'share a common purpose to engage in a fraudulent course of conduct and work together [with the other associated individuals] to achieve such purposes.'" *Id.* at 447, 451 (citing *N.Y. State Auto. Ins. Plan*, 1998 WL 695869, at *5 (S.D.N.Y. Oct. 6, 1998)). Allegations directed at multiple defendants, or "'group pleading[s,]' do[] not comply with the requirements of RICO" because "lumping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required." *Gross*, 628 F. Supp. 2d at 495. Moreover, a plaintiff must allege facts showing that each defendant conducted or participated "in the operation or management of the enterprise" and had "some part in directing [its] affairs." *Id.* at 451. "In this Circuit, the 'operation and management' test is an extremely rigorous test," *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y.1998), and "[i]t is not enough to

---

[2] "[A]lthough civil RICO may be a 'potent weapon,' plaintiffs wielding RICO almost always miss the mark." *Flexborrow*, 255 F. Supp. 3d at 414; *see Gross v. Waywell*, 628 F. Supp. 2d 475, 479–83 (S.D.N.Y. 2009) (surveying the 145 civil RICO cases filed in this District in 2004-2007 and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage).

merely take directions and perform 'tasks that are necessary and helpful' to the enterprise . . . .
Nor is it enough to simply provide 'goods and services that ultimately benefit the enterprise.'"
*United Limousine*, 303 F. Supp. 2d at 451–452 (citations omitted) (citing *Schmidt*, 16 F. Supp. 2d
at 346); *see also Elsevier*, 692 F. Supp. 2d at 307–08 (Dismissing RICO claims against individual
defendants because "it is not enough to allege that a defendant provided services that were helpful
to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control
over the enterprise.").

Additional specificity is required in alleging conspiracy to commit a RICO violation under
Section 1962(d).  A plaintiff must "assert that 'each defendant by words or actions, manifested an
agreement to commit two predicate acts in furtherance of the common purpose of a RICO
enterprise.'"  *United Limousine*, 303 F. Supp. 2d at 453 (citing *Allen v. New World Coffee, Inc.*,
2001 WL 293683, at *8 (S.D.N.Y. Mar. 27, 2001)).  Moreover, a conspiracy claim under Section
1962(d) cannot survive if plaintiff fails to state a claim under Section 1962(c).  *Elsevier Inc. v.
W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 312 (S.D.N.Y. 2010); *Foster v. 2001 Real Estate*, 2015 WL
7587360, at *5–6 (S.D.N.Y. Nov. 24, 2015).

As an initial matter, Plaintiff does not allege that Kushner committed a single predicate act.
Instead, the complaint asserts that "the Trump Associates aided and abetted Russia, the GRU,
WikiLeaks, and Assange as they committed [the predicate acts of] economic espionage and theft
of trade secrets."  Am. Compl. ¶240.  Courts in the Second Circuit do not consider the alleged
trade secret theft or economic espionage viable predicate acts.  *See Toms v. Pizzo*, 172 F.3d 38 (2d
Cir. 1998) (affirming dismissal of RICO claims in part because "trade secret theft . .  [is] not [a]
predicate act[] for purposes of the RICO statute"); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126,
138, n.9 (E.D.N.Y. 2010) (finding that economic espionage "does not qualify as

a predicate act under the RICO statute"). Regardless, a defendant must do more than "aid and abet" a pattern of racketeering activity to incur RICO liability, and so Plaintiff's RICO theory against Kushner fails as a matter of well-settled law. *See Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *6 (E.D.N.Y. Jan. 4, 2017) ("[S]imply aiding and abetting a [RICO] violation is not sufficient to trigger liability.") (alteration in original); *Spinale v. United States*, 2004 WL 50873, at *6 (S.D.N.Y. Jan. 9, 2004) ("Courts in this district have routinely held that 'aiding and abetting' a RICO enterprise is not a valid cause of action.").

Moreover, Plaintiff alleges nothing that would permit any inference that Kushner (1) shared the purported unlawful purpose, (2) participated in the operation or management of the alleged enterprise, (3) agreed to commit any acts of racketeering in its furtherance, or (4) provided any support or aid whatsoever. Neither Kushner's status as the son-in-law and advisor to President Trump, nor the nebulous allegation that he was a "decision-maker" responsible for the presidential campaign's "data-driven efforts," imply any common unlawful purpose, "identify what role, if any, [Kushner] had in the operation or management of the alleged enterprise," or amount to "facts that, if proved, would demonstrate some degree of control over the enterprise." *Eagle One Roofing Contractors, Inc. v. Acquafredda*, 2018 WL 1701939, at *8 (E.D.N.Y. Mar. 31, 2018). These allegations are so impertinent to the alleged scheme, they cannot even be described as "'merely consistent with' a defendant's liability," which, in any case, "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

The *sole* allegation identifying any specific action taken by Kushner is that he attended the Trump Tower meeting on June 9, 2016. Yet, all Plaintiff factually alleges with respect to the June 2016 meeting is that it was preceded by an exchange among other people—Defendant Trump Jr. and a Russian individual—regarding certain unspecified "official documents and information" that

6

could incriminate Hillary Clinton.  *See* Am. Compl. ¶132–36.  Even if it could be fairly said that

this supports an inference regarding the subject matter of the meeting, the Amended Complaint

does not allege that Kushner was aware of that prior exchange, was aware that the information

discussed in that prior exchange had been obtained illegally, or learned at the meeting that the

information had been obtained illegally.  Moreover, there is no allegation that Kushner did

anything other than attend and listen, or that he agreed to do anything more following the meeting.

Thus, Kushner's attendance at the June 9, 2016 meeting supports no inference that he intended to

participate in the unlawful hacking and dissemination of DNC files as a means of illegally

benefiting Donald Trump's campaign for presidency, or managed and controlled those efforts

through the alleged enterprise.  Nor does this allegation evince any alleged "active support and

approval," Am. Compl. ¶82, of the alleged scheme, which would, in any case, be insufficient to

sustain the asserted claims.  *See Acquafredda*, 2018 WL 1701939, at *8 (dismissing a RICO claim

as to an individual defendant because the complaint alleged only that he "aided and abetted" the

enterprise); *Elsevier*, 692 F. Supp. 2d at 308 (alleging that a defendant "provid[ing] services that

were helpful to" an enterprise is insufficient to state a RICO claim).

    For similar reasons, Plaintiff's RICO conspiracy claim under Section 1962(d) would fail

even were it not proscribed by failure to allege a viable substantive RICO violation under Section

1962(c).  First, Plaintiff's claim that Kushner knew of or stood to benefit from the alleged scheme

is insufficient whether supported by factual allegations or not (it is not).  *See Abbott*, 2017 WL

57802, at *9 ("Even if Abbott's allegations gave rise to the inference that the defendants knew

about the scheme, 'mere knowledge of the scheme, even coupled with personal benefit, is not

enough to impose liability for a RICO conspiracy.'") (citing *Congregacion de la Mision Provincia*

*de Venezuela v. Curi*, 978 F. Supp. 435, 451 (E.D.N.Y. 1997)).  Second, beyond the June 2016

meeting, Plaintiff does not plead so much as a single act, statement, or "suspicious communication" involving Kushner[3]—much less "words or actions [that] manifest[] an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise." *United Limousine*, 303 F. Supp. at 453.  This claim must therefore also be dismissed.  *Elsevier*, 692 F. Supp. 2d at 313 ("[A] complaint alleging a violation of § 1962(d) must contain allegations of 'some factual basis for a finding of a conscious agreement among the defendants.'") (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)); *see also Com–Tech Assoc. v. Computer Assoc. Int'l, Inc.*, 753 F. Supp. 1078, 1092 (E.D.N.Y.1990) (dismissing conspiracy count because plaintiff failed to allege that defendants, by words or actions, manifested an agreement to commit two or more predicate acts).

As no factual allegations support any inference that Kushner agreed to, furthered, managed, or was otherwise connected to the alleged unlawful conspiracy or enterprise, Plaintiff is left with canonically inadequate and generalized conclusions that enjoy no presumption of truth.  *See Acquafredda*, 2018 WL 1701939, at *8 (dismissing a RICO claim as to an individual defendant because allegations that the defendant "aided and abetted" the enterprise "merely lump[s] [the defendant] with others in the enterprise").  Plaintiff's RICO claims against Kushner should therefore be dismissed.

## II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE WIRETAP ACT AGAINST KUSHNER

Plaintiff fails to state a claim under the Wiretap Act against Kushner for the same simple reason the RICO claims fail—there are no allegations that Kushner was at all involved in the alleged hacking and dissemination of confidential documents.  Plaintiff asserts a violation of 18

---

[3] Plaintiff identifies several allegedly "suspicious communications," but none involve Kushner.  Am. Compl. ¶¶6, 19.

U.S.C. §2511(1)(c) & (d),[4] which reproves the intentional use and disclosure of unlawfully intercepted electronic communications.  But Plaintiff's claim that Kushner knowingly used information unlawfully obtained and disclosed by others is a textbook legal conclusion that requires supporting factual allegations.  Am. Compl. ¶250.  There are none—not a single example of Kushner intercepting or using any confidential information.  Nor does Plaintiff allege that Kushner had knowledge of how the information was allegedly obtained by others, so it is implausible to assert that he could have known it was "unlawfully intercepted" within the meaning of the Wiretap Act.

Plaintiff's claim also fails to allege that Kushner had access to or used any confidential communications before they had been fully intercepted and disclosed to the public by others.  *See* Am. Compl. ¶¶83 ("Russia's intelligence services illegally hacked into the DNC's computer systems and email sever in order to steal and publish trade secrets . . . [and] then disseminated the stolen, confidential materials through GRU-created websites, as well as WikiLeaks and Assange . . . ."), 249–50.  Any subsequent obtaining and use of the communications by Kushner, who is not alleged to have participated in the interception and dissemination, would not offend the Wiretap Act.  *See Bartnicki v. Vopper*, 532 U.S. 514, 525 (2001) (finding that even a party with knowledge of unlawful interception does not violate the Wiretap Act by using and further disseminating the information if that party was not involved in the interception and acquired the information by lawful means).  This is particularly true here, where Plaintiff concedes that the information was of public importance by alleging that it was relevant to, and affected how, the public voted in a presidential election.  *See e.g.*, Am. Compl. ¶¶23, 83, 106, 156; *Bartnicki*, 532 U.S. at 534 (explaining that the First Amendment counsels strongly against imposing liability under the

---

[4] The Omnibus Motion explains there is no vicarious or "aiding and abetting" liability under the Wiretap Act.

Wiretap Act for disseminating communications of public importance, even where it is known they were unlawfully intercepted); *see also Citizens United v. FEC*, 558 U.S. 310, 339 (2010) ("The First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for public office.") (quoting *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)).

Because Plaintiff fails to allege any factual matter linking Kushner to the alleged violation of the Wiretap Act and because, according to Plaintiff's own allegations, any subsequent use by him would have been lawful and constitutionally protected, this claim must be dismissed.

## III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE DC UNIFORM TRADE SECRETS ACT AGAINST KUSHNER

For similar reasons, Plaintiff's claim under the DC Uniform Trade Secrets Act must be dismissed. "To establish a trade secret misappropriation claim, [Plaintiff] must demonstrate (1) the existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper use or disclosure by one under a duty not to disclose." *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 77 (D.D.C. 2007). Yet, as discussed above, Plaintiff does not claim that Kushner or the people it labels "Trump Associates" received, used, or disseminated any information before it was allegedly disclosed to the public by others.[5] "[O]nce material is publicly disclosed, it loses any status it ever had as a trade secret." *Catalyst & Chem. Servs., Inc. v. Glob. Ground Support*, 350 F. Supp. 2d 1, 9 (D.D.C. 2004), *aff'd*, 173 F. App'x 825 (Fed. Cir. 2006); *see also DSMC*, 479 F. Supp. 2d at 78 ("[A]s a matter of law, however . . . trade secret law does not protect information that is 'easily ascertainable by the public . . .'."). Kushner could

---

[5] *See e.g.,* Am. Compl. ¶¶249–250 (alleging that WikiLeaks and Assange "disclosed" the information and Trump Associates "used . . . knowing or having reason to know" its acquisition and disclosure was unlawful).

not, therefore, have misappropriated any trade secrets according to Plaintiff's own allegations, nor could he have "improperly obtained" them or had any "duty not to disclose" them.

Regardless, beyond the conclusory claim that "[e]ach Defendant disclosed, received, and used these misappropriated trade secrets without Plaintiff's consent, knowing or having reason to know that the trade secrets were acquired by improper means," Am. Compl. ¶277, Plaintiff fails to identify a single instance of Kushner receiving, disclosing, or using any of the alleged trade secrets, or any other action that could possibly be considered a "misappropriation" of anything. This claim must be dismissed.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM UNDER VIRGINIA LAW FOR CONSPIRACY TO COMMIT TRESPASS AGAINST KUSHNER

Just as Plaintiff failed to properly allege a RICO conspiracy, Plaintiff also fails to state a conspiracy claim against Kushner under Virginia law.  *See Nasik Breeding & Res. Farm Ltd. v. Merck & Co.,* 165 F. Supp. 2d 514, 540–41 (S.D.N.Y. 2001) (summarily disposing of a civil conspiracy claim because the plaintiff had failed to show any RICO conspiracy). "A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means."  *Gelber v. Glock*, 293 Va. 497, 533 (2017); *see also Almy v. Grisham*, 273 Va. 68, 81 (2007) ("The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use an unlawful means.")  Plaintiff's conspiracy claim relies on the underlying tort of trespass to chattels, which "is defined in Virginia as the intentional use or intermeddling with the personal property of another without authorization from the property's owner."  *Arias v. Jokers Wild, Inc.*, 73 Va. Cir. 281 (2007).

Again, Plaintiff does not allege that Kushner performed the alleged trespass, or anything supporting the conclusory claim that he "aided and abetted" and "knowingly and substantially assisted."  Am. Compl. ¶296–97.  Plaintiff asserts that Kushner was "generally aware of his role as part of an overall common scheme," Am. Compl. ¶297, but does not identify this alleged role or any actions taken pursuant to it.  Surely there is no explanation, coherent or otherwise, for how the mere attendance at a single meeting could be considered "substantially assisting" anything.  As with the RICO claim, Plaintiff's ability to attune a malicious agenda to ostensibly lawful behavior is not evidence of criminal intent, and it comes nowhere close to alleging that Kushner aided and abetted or substantially assisted anything.  Moreover, attending the June 2016 cannot be considered an "overt act in furtherance," as it was not an unlawful act or tort and did not contribute to the hacking that allegedly caused Plaintiff's injury.  *See Va. Heartland Bank v. Roberts*, 46 Va. Cir. 71 (1998).

Such "[c]onclusory claims of conspiracy that are not pleaded with sufficient factual grounding should be dismissed."  *Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC*, 2004 WL 1574645, at *3, *4 (S.D.N.Y. July 13, 2004) (dismissing a conspiracy claim because "the Complaint does not provide a factual basis from which it can be inferred that [the defendant] did anything to cause the offending articles to be published by [a different defendant]."); *see Reich v. Lopez*, 38 F. Supp. 3d 436, 461 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017) ("[T]he civil conspiracy allegation turns on whether Plaintiffs have pleaded with particularity that [the individual defendant] actually agreed to a conspiracy to defame."); *Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 318 (N.D.N.Y. 2007) ("[M]ore than a conclusory allegation of conspiracy or

common purpose is required to state a cause of action against a nonactor, who must have allegedly engaged in some 'independent culpable behavior.'").[6]   This claim should therefore be dismissed.

## V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VIRGINIA COMPUTER CRIMES ACT AGAINST KUSHNER

Finally, Plaintiff accuses Kushner of violating the Virginia Computer Crimes Act.   The VCCA penalizes any person with the requisite malicious intent "who uses a computer or computer network" "without authority . . ." to commit the various prohibited acts.   Va. Code Ann. §§18.2-152.3, 18.2-152.4, 18.2-152.5.   Plaintiff does not allege that Kushner used a computer or performed any of the acts listed in the statute.   Instead, Plaintiff claims that "[e]ach Defendant knowingly aided, abetted, encouraged, induced, instigated, contributed to and assisted Russia and the GRU's violation of" the VCCA.   Am. Compl. ¶308.   But Kushner cannot be legally liable under the VCCA for aiding and abetting a violation by others and, factually, Plaintiff has failed to allege a sufficient aiding and abetting claim against Kushner.

The VCCA does not permit a claim against a party who did not actually use or operate a computer to effectuate the enumerated crimes, which is consistent with Virginia's general rejection of aiding and abetting liability.   *See L-3 Comm. Corp. v. Serco, Inc.*, 2018 WL 1352093, at *9

---

[6] Virginia courts would reach the same outcome.   *See Bowman v. State Bank of Keysville*, 229 Va. 534, 541 (1985) ("The conspiracy theory is asserted in mere conclusory language and the argument in support of the theory is based on inferences that are not fairly and justly drawn from the facts alleged."); *Peterson v. Fairfax Hosp. Sys., Inc.*, 31 Va. Cir. 50 (1993) ("While the Court might infer that the conspiracy alleged in Count IV, was for an 'unlawful purpose,' the complaint fails to specify in what manner each of the individual defendants was involved in such conspiracy . . . ."); *Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 (2018) ("Nor does the complaint allege with specificity a civil conspiracy or any other form of knowing complicity with Hunley's alleged misdeeds.   If any vitiation inference is to be drawn, it must come from the specific factual allegations against each of these defendants.").

(E.D. Va. Mar. 15, 2018) ("Virginia does not recognize an aiding and abetting theory of tort liability."). Virginia law instead uses the vehicle of civil conspiracy to attach secondary or vicarious liability to a party accused of aiding or abetting another's unlawful activity. *See Tysons Toyota, Inc. v. Commonwealth Life Ins.*, 20 Va. Cir. 399 (1990). Not only has Plaintiff not listed the alleged VCCA violation as a predicate act in its Virginia civil conspiracy claim, but Plaintiff can state no conspiracy claim against Kushner for the reasons already expounded.

Notwithstanding the viability of secondary liability under the VCCA, and as explained in detail above, Plaintiff has alleged nothing to suggest Kushner was at all involved in the alleged wrongdoing, and any claim that he provided aid or encouragement is therefore implausible and conclusory. As such, this claim suffers the same fatal deficiencies inherent to all of Plaintiff's claims and should be dismissed. *See Supinger v. Virginia*, 167 F. Supp. 3d 795, 821 (W.D. Va. 2016) (dismissing a conclusory claim under the VCCA because the "complaint lacks sufficient factual allegations 'to raise a right to relief above the speculative level'") (citing *Twombly*, 550 U.S. at 555); *Stultz v. Va. Dep't of Motor Vehicles*, 185 F. Supp. 3d 890, 903–04 (W.D. Va. 2015) (same).

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Defendant Kushner are insufficient and should be dismissed.

Dated: December 7, 2018                    Respectfully submitted,


                                           /s/ Abbe David Lowell

                                           Abbe David Lowell (NY Bar No. AL2981)
                                           ADLowell@winston.com
                                           Christopher D. Man *(pro hac)*
                                           CMan@winston.com
                                           Kyllan J. Gilmore
                                           KGilmore@winston.com

14

WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006
T: 1-202-282-5000
F: 1-202-282-5100

*Counsel for Jared Kushner*

**CERTIFICATE OF SERVICE**

I certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

Dated:    December 7, 2018                          /s/ *Christopher D. Man*
                                                    Christopher D. Man

                                                    *Counsel for Jared Kushner*

16

## CERTIFICATION OF COMPLIANCE

I certify that this memorandum is 4,527 words long and a total of 14 pages, in compliance with the Court's rules and the requirements set forth in the Court's October 1, 2018 Scheduling Order.

Dated:    December 7, 2018                          /s/ *Christopher D. Man*
                                                                     Christopher D. Man

                                                                     *Counsel for Jared Kushner*