# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DEMOCRATIC NATIONAL
COMMITTEE,

$\qquad$ *Plaintiff*,

v.

THE RUSSIAN FEDERATION, et al.,

$\qquad$ *Defendants*.

Case No. 1:18-cv-3501-JGK-SDA

# MEMORANDUM OF LAW IN SUPPORT OF
## GEORGE PAPADOPOULOS'S MOTION TO DISMISS
## COUNTS II, III, IV, VIII, XII, AND XIV OF THE AMENDED COMPLAINT

Jeffrey R. Alexander
Caroline J. Polisi
Christopher N. LaVigne
Eric M. Creizman
Shira Lauren Feldman
Pierce Bainbridge Beck Price & Hecht LLP
20 West 23rd Street, Fifth Floor
New York, New York 10010
(212) 484-9866
jalexander@piercebainbridge.com

*Attorneys for Defendant George Papadopoulos*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 3

ARGUMENT ........................................................................................................ 5

1.     The Pleading Standard Under Federal Rule of Civil Procedure 12(b)(6) ............... 5

2.     The Second Cause of Action Should be Dismissed Because Plaintiff Fails to Plead Facts Sufficient to Establish a RICO Claim Against Papadopoulos ............. 7

     a.    The Complaint Does Not Allege That Papadopoulos Conducted Any Racketeering Acts ........................................................................ 7

        i.    Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Conspiracy to Commit Economic Espionage ............. 9

        ii.    Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Theft of Trade Secrets ................................................ 10

        iii.    Aiding/Abetting a RICO Enterprise is Not a Valid Cause of Action .......................................................................... 10

     b.    The Complaint Does Not Allege Facts Sufficient to Show That Papadopoulos Engaged in a Pattern of Racketeering Activity ................ 10

     c.    The DNC Does Not Allege Facts Sufficient to Show Papadopoulos Participated in the Conduct of the Affairs of Any Enterprise ................... 12

     d.    The Complaint Must Be Dismissed Against Papadopoulos Because it Fails to Allege the Existence of a Cognizable RICO Enterprise ............. 13

        i.    The DNC Fails to Allege a Common Purpose. ............................. 14

        ii.    The DNC Fails to Allege Relationships Amongst the Purported Association-in-Fact Enterprise Members. ..................................... 14

        iii.    The DNC Fails to Allege an Enterprise with the Required Longevity ................................................................................... 15

        iv.    The DNC Fails to Allege an Enterprise That is Separate From the Purported Pattern of Racketeering Activity ............................ 15

     e.    The Complaint Does Not Allege Any Cognizable Injuries Caused by Racketeering Acts ........................................................................ 16

3.     The Third Cause of Action Should Be Dismissed Because Plaintiff Fails to Plead Facts Sufficient to Establish a RICO Conspiracy Under 18 U.S.C. § 1962(d) ...... 16

     a.    The Complaint Fails to Plead Facts Showing a Violation of the RICO Act ............................................................................. 17

4.      The Fourth Cause of Action (Wiretap Act) Should be Dismissed.........................18

5.      The Eighth, Twelfth, and Fourteenth Causes of Action (Under D.C. and Virginia Law) Should be Dismissed Against Papadopoulos Because Plaintiff Fails to Adequately Allege the Necessary Elements for Either of These Claims...............20

         a.      Count VIII, D.C. Uniform Trade Secrets Act .............................................21

         b.      Count XII, Conspiracy to Commit Trespass to Chattels ...........................22

         c.      Count XIV, Violation of the Virginia Computer Crimes Act...................23

6.      The Court Should Dismiss All Claims Against Papadopoulos Because the Imposition of Liability Would Violate the First Amendment ..............................24

PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND AND WITH PREJUDICE ........................................................................................... 24

CONCLUSION........................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*236 Cannon Realty, LLC v. Ziss*,
    No. 02-cv-6683 (WHP), 2005 WL 289752 (S.D.N.Y. Feb. 8, 2005).....................................7, 8

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................................18

*Allen v. New World Coffee, Inc.*,
    No. 00-cv- 2610 (AGS), 2002 WL 432685 (S.D.N.Y. Mar. 19, 2002) ..................................16

*Am. Online, Inc. v. IMS*,
    24 F. Supp. 2d 548 (E.D. Va. 1998) .......................................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................5, 6, 15

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ..................................................................................................8

*Baisch v. Gallina*,
    46 F.3d 366 (2d Cir. 2003)......................................................................................................17

*Baisch v. Gallina*,
    346 F.3d 366 (2d Cir. 2003)....................................................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................5, 6

*Blackwelder v. Millman*,
    522 F.2d 766 (4th Cir. 1975) ..................................................................................................22

*Boyle v. United States*,
    556 U.S. 938 (2009).................................................................................................................15

*Com. Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*,
    271 F.3d 374 (2d Cir. 2001)......................................................................................................8

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
    No. 11-cv-7801 (PAE), 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ..................................17

*Cont'l Realty Corp. v. J.C. Penney Co., Inc.*,
    729 F. Supp. 1452 (S.D.N.Y. 1990).......................................................................................11

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001)............................................................................7

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)...........................................................8

*Directv, LLC v. Wright*,
   No. 15-cv-474(FRG), 2016 WL 3181170 (W.D.N.Y. June 3, 2016) ...................19

*DSMC, Inc. v. Convera Corp.*,
   479 F. Supp. 2d 68 (D.D.C. 2007) ...............................................................21

*Eagle One Roofing v. Acquafredda*,
   No. 16-cv-3537 (NGG) (SJB), 2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018) ..........11

*Econ. Research Servs., Inc. v. Resolution Econs., LLC*,
   208 F. Supp. 3d 219 (D.D.C. 2016) .............................................................21

*Elsevier Inc. v. Memon*,
   97 F. Supp. 3d 21 (E.D.N.Y. 2015) .............................................................12

*Elsevier, Inc. v. Grossman*,
   No. 12-cv-5121 (KPF), 2013 WL 6331839 (S.D.N.Y. Dec. 5, 2013) ...................18

*Faberware, Inc. v. Groben*,
   764 F. Supp. 296 (S.D.N.Y. 1991) ...............................................................11

*First City Nat'l Bank & Tr. Co. v. FDIC*,
   730 F. Supp. 501 (E.D.N.Y. 1990) ..........................................................8, 14

*Gerstenfeld v. Nitsberg*,
   190 F.R.D. 127 (S.D.N.Y. 1999) ..................................................................8

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989).....................................................................................12

*Hecht v. Commerce Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990).....................................................................17, 18

*Kirk v. Heppt*,
   423 F. Supp. 2d 147 (S.D.N.Y. 2006).............................................................6

*Lucente v. Int'l Bus. Machs. Corp.*,
   310 F.3d 243 (2d Cir. 2002).........................................................................24

*Lundy v. Cath. Health Sys. of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013)..........................................................................7

*Manhattan Telecomm. Corp. v. DialAmerica Mktg., Inc.*,
    156 F. Supp. 2d 376 (S.D.N.Y. 2001) ......................................................................6

*McGladrey & Pullen LP v. Shrader*,
    62 Va. Cir. 401, 2003 WL 22203709 (Va. Cir. Ct. 2003) ........................................23

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ....................................................................15

*Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*,
    420 F. Supp. 2d 253 (S.D.N.Y. 2006)......................................................................17

*Othentec Ltd. v. Phelan*,
    526 F.3d 135 (4th Cir. 2008) ..................................................................................23

*Purchase Real Estate Grp. Inc. v. Jones*,
    No. 05-cv-10859 (LAP), 2010 WL 3377504 (S.D.N.Y. Aug. 24, 2010) ..................6

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993), *not followed on state grounds*, *Keesling v. Beegle*, 880
    N.E.2d 1202 (Ind. 2008) ........................................................................................12

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).......15

*Ruffolo v. Oppenheimer & Co.*,
    987 F.2d 129 (2d Cir. 1993)....................................................................................24

*Salinas v. United States*,
    522 U.S. 52 (1997)............................................................................................16, 17

*Sedima S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)..................................................................................................7

*Snyder v. Fantasy Interactive, Inc.*,
    No. 11-cv-3593 (WHP), 2012 WL 569185 (S.D.N.Y. Feb. 9, 2012)......................19

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017)......................................................................17

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)................................................................................5, 11

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010)......................................................................................6

*Tantaros v. Fox News Network, LLC*,
    No. 17-cv-2958 (GBD), 2018 WL 2731268 (S.D.N.Y. May 18, 2018)..................19

*Tribune Co. v. Purcigliotti*,
    869 F. Supp. 1076 (S.D.N.Y. 1994), *aff'd*, 66 F.3d 12 (2d Cir. 1995) ...................................10

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)...................................................................................12

*U.S. v. Viola*,
    35 F.3d 37 (2d Cir. 1994)........................................................................................................12

*United States v. Allen*,
    155 F.3d 35 (2d Cir. 1998)......................................................................................................12

*United States v. Papadopoulos*,
    Case No. 17-CR-182-RDM (D.D.C. Sept. 7, 2018) ..........................................................5, 19

*United States v. Persico*,
    832 F.2d 705 (2d Cir. 1987).......................................................................................................7

*United States v. Turkette*,
    452 U.S. 576 (1981)................................................................................................................15

*Westchester Cty. Indep. Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015).................................................................................16, 17

*Williams v. Affinion Grp., LLC*,
    889 F.3d 116 (2d Cir. 2018)....................................................................................................17

*World Wrestling Entm't Inc. v. Jakks Pacific, Inc.*,
    530 F.Supp.2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).......................11

*Zaratzian v. Abadir*,
    No. 10-cv-9049 (VB), 2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014), *aff'd*, 694
    F. App'x 822 (2d Cir. 2017) ...................................................................................................19

**Statutes**

18 U.S.C. § 1831.........................................................................................................................7, 10

18 U.S.C. § 1832.........................................................................................................................7, 10

18 U.S.C. § 1962............................................................................................................... *passim*

18 U.S.C. § 1964...........................................................................................................................16

18 U.S.C. § 2511.......................................................................................................................19, 20

28 U.S.C. § 1367...........................................................................................................................20

D.C. Code § 36–401.......................................................................................................................21

Va. Code Ann. § 18.2-152.3–4 ..........................................................................................23

**Federal Rules**

Fed. R. Civ. P. 12(b) ...........................................................................................1, 5, 6, 24

Fed. R. Civ. P. 8 ..........................................................................................................6, 7

We respectfully submit this memorandum of law in support of George Papadopoulos's motion to dismiss the Amended Complaint against him under Rules 12(b)(6) and (8) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff the DNC's Amended Complaint[1] fails to plausibly allege any cause of action against Defendant George Papadopoulos ("Papadopoulos"). None of the allegations in the Amended Complaint establishes that Papadopoulos performed any actions that qualify as "racketeering activity" under the RICO Act, nor has Plaintiff sufficiently alleged any of the myriad state or federal law causes of action against Papadopoulos.

Notably, Plaintiff does not claim that Papadopoulos had any role in hacking into its systems and stealing the materials in question—it attributes that only to Russia. Nor does the DNC allege that Papadopoulos played any part in publicly disseminating or publishing the stolen materials—it attributes that only to Russia and WikiLeaks. Instead, the DNC predicates its claims against Papadopoulos exclusively on allegations that: (1) he received advanced notice that certain information had been possibly acquired by Russia; and (2) he "did not report this information to American law enforcement," but instead reported back to the Trump Campaign that there were "interesting messages coming in from Moscow about a trip when the time is right." Am. Compl. ¶ 11. These allegations do not amount to criminal racketeering liability.

Under the law, all elements of each RICO claim must be sufficiently pleaded against each defendant. Yet, Plaintiff has not alleged – nor could it – that Papadopoulos conducted *any* racketeering acts. Furthermore, Plaintiff has not established that Papadopoulos was in any way essential to the alleged scheme. He did not plan, organize, direct, control, or have any interest

---

[1]     All abbreviations referenced in this motion and not defined herein refer to those abbreviations and definitions set forth in the Amended Complaint.  Doc. No. 182.

whatsoever in the affairs of the alleged enterprise. Plaintiff relies on vague allegations that "Trump Associates," defined to include Papadopoulos, "assisted the common scheme." Such conclusory and vague allegations do not suffice under the law.

As explained in the Memorandum of Points and Authorities in Support of Donald J. Trump for President, Inc.'s Motion to Dismiss Counts II, III, IV, VIII, XII, and XIV of the Amended Complaint (the "Trump Campaign Memo"), the numerous deficiencies in the civil RICO allegations here include: (1) Plaintiff's failure to adequately allege a valid enterprise (a) with a common fraudulent purpose, (b) with sufficient relationships amongst the purported association-in-fact enterprise members, (c) with the required longevity, and (d) that is separate from the purported pattern of racketeering; and (2) Plaintiff's failure to allege a cognizable injury that was proximately caused by the RICO activity.[2] Because the Amended Complaint fails to adequately allege the elements of a substantive offense under the RICO statute, and because the DNC does not allege that Papadopoulos agreed to any conduct that constitutes a violation, Plaintiff's RICO conspiracy claim also must fail.

Similarly, Plaintiff's Amended Complaint fails to state facts sufficient to allege any cause of action against Papadopoulos under any of the tagalong state and federal torts. As explained below and in the Trump Campaign Memo, each of these causes of action is facially defective.

For these reasons, the claims alleged against Papadopoulos in the Amended Complaint should be dismissed in their entirety, with prejudice.[3]

---

[2]      Papadopoulos joins in, relies upon, and incorporates herein by reference, each and every argument, insofar as it applies to him, made by each and every other defendant named in the Amended Complaint.

[3]      The DNC raises six claims against Papadopoulos: (1) violation of RICO (count II), (2) conspiracy to violate RICO (count III), (3) violation of the Wiretap Act (count IV), (4) violation of the Washington, D.C. Uniform Trade Secrets Act (count VIII), (5) conspiracy to commit trespass to chattels in violation of Virginia law (count XII), and (6) violation of the Virginia Computer Crimes Act (count XIV). None is adequately pleaded.

## FACTUAL BACKGROUND

The DNC alleges a broad conspiracy in which Russia, via the GRU, hacked the DNC's computer networks, stole sensitive information, and then, together with WikiLeaks and its founder, Assange, disseminated that information with the purpose of harming the DNC and Hillary Clinton's campaign for President of the United States.  As to the other parties it names, the DNC alleges only that they conspired to assist Russia, the GRU, WikiLeaks, and Assange, or aided and abetted their actions.

The DNC alleges that, during the 2016 presidential campaign, "Russia's intelligence services illegally hacked into the DNC's computer systems and email accounts." (Am. Compl. ¶ 83.)  Russian intelligence agents allegedly launched the first phase of the cyberattack in July 2015 (*id.* ¶ 115), and the second phase in April 2016 (*id.* ¶ 77).  As a result of these attacks, Russian intelligence agents allegedly copied "thousands of DNC documents and emails." (*Id.* ¶ 12.)  The DNC further alleges that, after Russian agents stole the DNC's emails and other documents, Russian agents entered into a conspiracy with the Campaign, Papadopoulos, WikiLeaks, and others to "disseminate [the] stolen DNC material." (*Id.* ¶ 82.)  The DNC claims that, in accordance with this supposed conspiracy, Russia and WikiLeaks released batches of stolen DNC materials over the course of the next several months. (*See id.* ¶¶ 140–68.)  These disclosures revealed important information about the DNC to the public.

The DNC's factual theory likewise makes it clear that the alleged conspiracy between Russia and the Campaign came into being *after* the hack and *after* the theft of the emails.  The DNC alleges that Russia began "its cyberattack on the DNC" in July 2015, "launched a pervasive cyberattack on DNC servers" on "April 18, 2016," and "staged several gigabytes of DNC data located on the DNC's servers for unauthorized and surreptitious exfiltration" on "April 22,

2016." (*Id.* ¶¶ 84, 101, 104.)  Papadopoulos is not alleged to have played any role in the hacking or disseminating of sensitive or proprietary information, or the planning thereof.

Papadopoulos was a volunteer "foreign policy advisor" to the Trump Campaign.  In that capacity, he had meetings with foreign contacts – including one the DNC refers to as a "Kremlin-tied agent" – to glean information about the interests of various countries as relevant to the Trump Campaign.  The DNC insinuates something nefarious about Papadopoulos's meetings, and their timing, but is unable to plead any illegal or tortious acts committed by Papadopoulos.  Only Defendants Russia and the GRU are alleged to have hacked into computer systems, stolen trade secrets, or trespassed onto a computer network.  Only Defendants WikiLeaks and Assange are alleged to have disseminated or assisted in disseminating the information.  Papadopoulos is alleged to have done none of these things.

The DNC alleges only that *following* Russia's theft of DNC emails, Papadopoulos *learned* "that the Russians have dirt on Hillary Clinton in the form of thousands of emails," and "did not report this information to American law enforcement," but instead reported back to the Trump Campaign that there were "interesting messages coming in from Moscow about a trip when the time is right."  (Am. Compl. ¶ 11.)  The DNC does not allege that Papadopoulos himself stole any documents, or that he conspired to steal any documents, or that he disseminated documents in any way.  The DNC alleges that sometime *after* the hack and *after* the theft of the emails, Papadopoulos may have been informed in the vaguest sense that information had been acquired.  The Amended Complaint, of course, fails to allege that Papadopoulos had any involvement in the hacking of the DNC's servers or in the theft of its materials.

There is no allegation that Papadopoulos played any role in the planning of the alleged hack or theft, or had any contemporaneous knowledge of any action or agreement to act vis-à-vis

the DNC.  Papadopoulos's minimal relationship to the allegations herein occurred over the course of a few weeks in the spring of 2016.  (*Id*. ¶¶ 89-100.)  Otherwise, the DNC alleges only, generally, that in his role as foreign policy advisor, he was in "frequent contact" with the Trump Campaign "in the summer and fall of 2016," and that "Trump Associates" "actively supported" the disclosure of hacked information.  (*Id*. ¶¶ 51, 83.)

In its Amended Complaint, Plaintiff references Papadopoulos's Statement of Offense and guilty plea in order to document various foreign meetings Papadopoulos held following the GRU's hacking and theft (*id*. ¶¶ 51, 94), but Plaintiff ignores Judge Moss's unambiguous conclusion at sentencing: "I don't for a moment believe that Mr. Papadopoulos was seeking to assist the Russian government in any way."  *United States v. Papadopoulos*, Case No. 17-cr-182-RDM, Sentencing Tr., Doc. No. 48 (D.D.C. Sept. 7, 2018) at 39:17-19.  "I don't think there's any reason in the record to conclude that Mr. Papadopoulos had any desire to aid Russia in any way, to do anything that was contrary to the national interest."  (*Id*. at 38:12-15.)

## ARGUMENT

### 1.  <u>The Pleading Standard Under Federal Rule of Civil Procedure 12(b)(6)</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that the pleading requirements of Twombly apply to all civil actions).  "[B]ald assertions and conclusions of law will not suffice. The pleadings must create the possibility of a right to relief that is more than speculative."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).  The heightened pleading standards under *Twombly* and *Iqbal* are particularly important in RICO

cases like this one, so as to protect defendants against baseless charges of racketeering that are serious, harmful, and expensive to defend. *Kirk v. Heppt*, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006) (noting that courts "must be wary of putative RICO claims that are nothing more than sheep masquerading in wolves' clothing").

In resolving a Rule 12(b)(6) motion under *Twombly*, the Court must follow a two-pronged approach.  First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Nor must the Court "accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555).

Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense; there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.; *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).

The Amended Complaint's RICO allegations fail to meet the basic, liberal pleading standards under Rule 8(a).  Moreover, the Court should examine the DNC's RICO pleadings with special scrutiny. *See, e.g.*, *Purchase Real Estate Grp. Inc. v. Jones*, No. 05-cv-10859 (LAP), 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) (in dismissing RICO claims, court observed that "courts should look 'with particular scrutiny' at civil RICO claims"); *Manhattan Telecomm. Corp. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001) (dismissing RICO claims and noting that courts "should strive to flush out frivolous RICO allegations at an early stage of the litigation").

**2.** **The Second Cause of Action Should be Dismissed Because Plaintiff Fails to Plead Facts Sufficient to Establish a RICO Claim Against Papadopoulos**

A RICO claim must allege every essential element of each predicate act.  *See, e.g.*, *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (dismissing a RICO claim where the complaint failed to adequately plead predicate acts).  As an initial matter, Plaintiff's RICO allegations as to Papadopoulos are defective because Plaintiff has not properly alleged that Papadopoulos (a) conducted any racketeering activities, (b) engaged in a pattern of racketeering activity, or (c) participated in the conduct of the affairs of any enterprise.

> **a.** **The Complaint Does Not Allege That Papadopoulos Conducted Any Racketeering Acts**

The DNC has insufficiently alleged that Papadopoulos engaged in the predicate acts necessary to establishing a RICO claim.  *See Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act . . . .").  Plaintiff alleges two predicate "racketeering acts" gave rise to the pattern of racketeering (Count II, 18 U.S.C. § 1962(c)) on which Plaintiff's RICO claims are based: 18 U.S.C. § 1831 (Economic espionage), and 18 U.S.C. § 1832 (Theft of trade secrets).  Additionally, Plaintiff alleges Papadopoulos engaged in a conspiracy to commit those acts.

A plaintiff alleging substantive violations of RICO under 18 U.S.C. §§ 1962(c) must allege facts sufficient to show ***each*** defendant engaged in a pattern of racketeering activity.  *See, e.g.*, *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant."); *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987)); *236 Cannon Realty, LLC v. Ziss*, No. 02-cv-6683 (WHP), 2005 WL 289752, at *5-9 (S.D.N.Y. Feb. 8, 2005) (dismissing claim where plaintiff failed to allege that each defendant made misrepresentations upon which he relied).  The Second Circuit has made clear that a complaint "fail[s] to satisfy [Rule 8's] minimum standard" where a plaintiff merely

"lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (upholding dismissal of complaint that failed "to identify which defendants were alleged to be responsible for which alleged violations"); *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. 2011) ("Although Plaintiffs argue that they alleged that [certain defendants] were directly involved in the alleged conspiracy, a reading of the complaint indicates otherwise.  The complaint alleges direct involvement of [certain defendants] by way of generic references to 'defendants.'  This approach is insufficient.") (internal citations omitted).

Moreover, because RICO is predicated on criminal conduct, plaintiffs must plead and establish that ***each*** defendant intended to engage in the conduct with actual knowledge of the illegal activities.  *See Com. Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 487 (2d Cir. 2001) (plaintiffs must allege that the defendant acted with actual knowledge in violation of the predicate statute); *236 Cannon Realty, LLC*, 2005 WL 289752, at \*5-9 (dismissing claim where plaintiff failed to allege that each defendant made misrepresentations upon which he relied); *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 132 (S.D.N.Y. 1999) (dismissing RICO claims because the complaint failed to allege facts giving rise to a strong inference of fraudulent intent); *see also First City Nat'l Bank & Tr. Co. v. FDIC*, 730 F. Supp. 501, 509 (E.D.N.Y. 1990) (ruling that RICO does not apply to unwitting participants and recklessness is not sufficient to establish criminal intent).  Here, Plaintiff has not alleged Papadopoulos conducted any of the relevant predicate crimes alleged, let alone that he did so with a criminal intent.

The Amended Complaint alleges no facts sufficient to establish either predicate act, or any conspiracy engaged in by Papadopoulos.

###### i.    *Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Conspiracy to Commit Economic Espionage*

The Amended Complaint alleges in a single paragraph that "all of the Defendants" conspired to commit Economic espionage.  (Am. Compl. ¶ 239.)  That paragraph simply repeats the language of the statute, without even alleging the existence of an agreement that would be necessary to alleging a conspiracy.  It provides no factual information as to acts that violated the statute, and it alleges no actions by Papadopoulos.

In Paragraph 83, the DNC claims that the "Trump Associates" "actively supported" the disclosure of hacked information.  It does not explain how, nor does it mention Papadopoulos. The DNC alleges that, while hacked information was being released, Defendant Stone was in contact with Assange, WikiLeaks, and the GRU.  (*Id.* ¶ 157.)  It alleges that Defendant Trump, Jr. secretly communicated with WikiLeaks during the same period.  (*Id.* ¶ 166.)  And it alleges that Defendants Manafort and Gates communicated during that time with Konstantin Kilimnik, who the DNC speculates is an agent of the GRU.  (*Id.* ¶¶ 68, 162-63.)  Nowhere does it allege anything with respect to Papadopoulos.  Because there is absolutely no allegation that Papadopoulos took any information without authorization, copied, duplicated, downloaded, uploaded, altered, destroyed, replicated, transmitted, delivered, sent, communicated, or conveyed the DNC's supposed trade secrets, and because is there is no allegation that Papadopoulos participated in the conspiracy to engage in these activities allegedly undertaken by the other named defendants, the DNC does not plead facts sufficient to plausibly establish a predicate offense of conspiracy to commit Economic espionage against Papadopoulos.

Because Plaintiff must adequately plead all elements of each offense as to each defendant, conduct allegedly committed by another defendant or generically by "Trump Associates" cannot be attributed to Papadopoulos when pleading a substantive RICO violation.

### ii.    *Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Theft of Trade Secrets*

Plaintiff's Theft of trade secrets claim similarly fails.  Theft of trade secrets and Economic espionage involve the same activities.[4]  As with the Economic espionage allegation, the Amended Complaint claims in a single conclusory paragraph that all Defendants committed acts constituting Theft of trade secrets.  And as with economic espionage, the Amended Complaint alleges no facts to suggest that any such act was committed or aided and abetted by Papadopoulos, or that Papadopoulos did so with actual knowledge of the illegal activities.

### iii.    *Aiding/Abetting a RICO Enterprise is Not a Valid Cause of Action*

As the Trump Campaign Memo makes clear, the DNC also cannot state a claim against Papadopoulos by alleging he merely aided and abetted a substantive RICO violation.  *See* Trump Campaign Memo § II.C.  Moreover, the DNC's allegations fail to plausibly allege aiding and abetting.  To establish a claim for aiding and abetting, a complaint must allege, among other things, "'substantial assistance' by the aider and abettor in the achievement of the primary violation." *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1100 (S.D.N.Y. 1994), *aff'd*, 66 F.3d 12 (2d Cir. 1995).  The DNC does not plead that Papadopoulos provided any – let alone substantial –assistance to the Defendants that allegedly committed predicate acts.

### b.   The Complaint Does Not Allege Facts Sufficient to Show That Papadopoulos Engaged in a Pattern of Racketeering Activity

Because the DNC fails to plead facts showing that Papadopoulos committed any racketeering activity it also necessarily fails to plead facts sufficient to show that Papadopoulos engaged in a pattern of racketeering.  In alleging a "pattern" of racketeering activity, a plaintiff

---

[4]     The acts constituting Theft of trade secrets are undertaken with the intent to convert a trade secret to the economic benefit of anyone other than its owner, knowing and intending that doing so will injure that owner; the acts constituting Economic espionage are undertaken knowing or intending that doing so will benefit a foreign government, foreign instrumentality, or foreign agent.  *See* 18 U.S.C. §§ 1831, 1832.

must establish that *each* defendant participated in the pattern of racketeering, which the Amended Complaint fails to do. *World Wrestling Entm't Inc. v. Jakks Pacific, Inc.*, 530 F.Supp.2d 486, 513 (S.D.N.Y. 2007) ("The focus of section 1962(c) is on the individual patterns of racketeering activity engaged in by a defendant, rather than on the collective activities of the members of the enterprise"), *aff'd*, 328 F. App'x 695 (2d Cir. 2009). Here, Papadopoulos is alleged to have been told about the existence of information stolen from the DNC and to have sought contact with a "Kremlin-tied agent" – neither of which is illegal. Those are the only allegations suggesting Papadopoulos participated in any wrongdoing relevant to the alleged racketeering enterprise. This is not sufficient to adequately allege a "pattern of racketeering activity," and therefore Plaintiff's RICO claim against him fails as a matter of law. *See Faberware, Inc. v. Groben*, 764 F. Supp. 296, 306 (S.D.N.Y. 1991) (allegations regarding "what is essentially a single transaction" found to be insufficient, as "one allegedly overpriced contract does not involve the type of repeated criminal activity at which RICO is properly directed").[5]

Furthermore, the DNC is unable to establish the "continued criminal activity" that RICO requires. *See* Trump Campaign Memo § II.C. The DNC attempts to establish only closed-ended continuity, as it alleges that an Association-In-Fact Enterprise ("the AIF Enterprise") formed no earlier than March 2016 and ceased on November 8, 2016 (Election Day). (Am. Compl. ¶ 227.) The Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time.'" *Spool*, 520 F.3d at 184*; see also Eagle One Roofing v. Acquafredda*, No. 16-cv-3537 (NGG) (SJB), 2018 WL 1701939, at *14 (E.D.N.Y. Mar. 31, 2018) (confirming that the two-year threshold remains applicable). Thus, the AIF Enterprise's

---

[5]     *Cont'l Realty Corp. v. J.C. Penney Co., Inc.*, 729 F. Supp. 1452, 1455 (S.D.N.Y. 1990) (holding, where complaint did not allege that defendants "previously engaged in similar acts" that "to infer a threat of repeated fraud from a single alleged scheme would in effect render the pattern requirement meaningless").

11

alleged existence for nine months is nowhere near the "long-term criminal conduct" that RICO requires. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

### c.   The DNC Does Not Allege Facts Sufficient to Show Papadopoulos Participated in the Conduct of the Affairs of Any Enterprise

Under Section 1962(c), a defendant must have "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs."  18 U.S.C. § 1962(c).  The Supreme Court has defined that phrase as requiring that "one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  It is insufficient, as here, to merely "allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise." *Elsevier Inc. v. Memon*, 97 F. Supp. 3d 21, 33 (E.D.N.Y. 2015) (citations and quotations omitted).  Under this standard, a person may not be held liable merely for taking directions and performing tasks that are "necessary and helpful to the enterprise," or for providing "goods and services that ultimately benefit the enterprise."  *See U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004) (citations omitted).

The most generous reading of the Amended Complaint suggests only that Papadopoulos provided a service helpful to the purported enterprise by emailing the Trump Campaign that there were "interesting messages coming in from Moscow about a trip when the time is right." (Am. Compl. ¶ 11.)  This fact alone is insufficient to adequately plead that he played "some part in directing the enterprise's affairs." *Reves*, 507 U.S. at 179; *United States v. Allen*, 155 F.3d 35, 40 (2d Cir. 1998) (complaint must allege defendant "participated in the operation or management of the enterprise itself"); *U.S. v. Viola*, 35 F.3d 37, 40 (2d Cir. 1994) ("In *Reves*, the Court adopted an 'operation or management' test to gauge whether a defendant had a sufficient

connection to the enterprise to warrant imposing liability under § 1962(c) . . . simply aiding and abetting a violation is not sufficient to trigger liability.").

The Amended Complaint alleges no facts showing Papadopoulos directed the conduct of others.  The Russian Federation and the GRU allegedly stole sensitive information and disseminated it, with the assistance of Assange and WikiLeaks.  There is no allegation that Papadopoulos was even aware of these events, much less that he played any role in deciding to undertake them.  There are no allegations that Papadopoulos occupied a position in the chain of command, authorized or directed Russian conduct, or knowingly implemented the decisions of upper management of any entity.  In other words, the DNC does not allege that Papadopoulos played a part in – let alone directed – any of the conduct upon which its RICO claim is predicated.  Therefore, Plaintiff's claims under Section 1962(c) fail as a matter of law.

### d.   The Complaint Must Be Dismissed Against Papadopoulos Because it Fails to Allege the Existence of a Cognizable RICO Enterprise

The DNC's generic claim that Papadopoulos "was part of an Association-In-Fact comprising" all Defendants, which supposedly worked "to further [Defendants'] mutual goals of improving Trump's electoral prospects and damaging the DNC," (Am. Compl. ¶ 227), fails to adequately allege the existence of a RICO enterprise.  As explained in the Trump Campaign Memo (§ II.A.1), to plead a RICO claim, the DNC must allege an enterprise whose members pursued a common purpose by working closely together for an extended period.  But the DNC simply lumps together an assortment of individuals and entities who were pursuing differing objectives, who maintained no relationships beyond isolated interactions, and who did not come together until well after the alleged wrongdoing started.  *See id*.  The DNC's failure to allege a shared purpose, relationships among those associated with the enterprise, or longevity sufficient

13

to permit these associates to pursue the enterprise's purpose is fatal generally to the DNC's § 1962(c) claim and to this claim against Papadopoulos.

### i.      The DNC Fails to Allege a Common Purpose.

As explained in the Trump Campaign Memo (§ II.A.1), the Amended Complaint fails to allege a common purpose.  As to Papadopoulos, specifically, the DNC alleges a desire for the Trump Campaign's success –hardly surprising for a presidential campaign advisor.  This supposed desire for pecuniary and professional gain – which the DNC does not allege to have been shared by any of the other Defendants – falls far short of establishing that Papadopoulos shared the specific objective of harming the DNC.  Because the DNC has not plausibly alleged that the supposed enterprise members shared a *common* purpose, this enterprise theory  – and with it, the DNC's § 1962(c) claim against Papadopoulos  – fails.[6]

### ii.      The DNC Fails to Allege Relationships Amongst the Purported Association-in-Fact Enterprise Members.

As explained in the Trump Campaign Memo (§ II.A.3), for an association-in-fact enterprise to exist, its members also must have "interpersonal relationships" with one another. Here, the DNC alleges a series of isolated connections between various individuals (*e.g.*, Papadopoulos's meetings with Joseph Mifsud, a Maltese academic "based in London") with undefined connections to Russia.  (Am. Compl. ¶¶ 93–98).  These allegations are insufficient.

*First*, many of these allegations rely on unsupported assertions that particular individuals were working as "agents" for other Defendants. (*See, e.g.*, Am. Compl. ¶ 43 (alleging that Mifsud "acted as a de facto agent of the Russian government")).  But "conclusory allegations

---

[6]      As the Trump Campaign Memo (§II.A.2) states, a RICO plaintiff must allege not just a common purpose, but a common fraudulent purpose.  There is nothing fraudulent about the AIF Enterprise's supposed purpose of advancing President Trump's electoral prospects and diminishing the DNC's.  It is thus not enough for the DNC to allege that the AIF Enterprise pursued its (legitimate) objective through improper means. Because Defendants' alleged objective was entirely legitimate, Defendants cannot be said to have formed a RICO enterprise.

regarding [an] agency relationship," without "facts that support [this] assertion[,] . . . are not sufficient to survive a motion to dismiss." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 408 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010). The DNC offers no such factual support, and so cannot rely on these bare allegations to bootstrap relationships among various Defendants.

*Second*, these isolated interactions among various Defendants do not establish that the disparate and geographically dispersed enterprise members were "work[ing] together for a common illicit interest" through "interpersonal relationships," rather than for "their own independent interests." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301 (E.D.N.Y. 2017). The fact that various Defendants occasionally communicated with one another simply does not provide any "evidence of an ongoing organization" that "function[ed] as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 945 (2009).

### iii.   The DNC Fails to Allege an Enterprise with the Required Longevity

As the Trump Campaign Memo (§II.A.4) makes clear, the DNC similarly cannot establish the third structural requirement of an association-in-fact enterprise: "longevity sufficient to permit the[] associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. The AIF Enterprise did not exist long enough to play any role in the conduct that facilitated every theft and every disclosure at issue here.

### iv.   The DNC Fails to Allege an Enterprise That is Separate From the Purported Pattern of Racketeering Activity

Under Section 1962, "[t]he 'enterprise' is not the 'pattern of racketeering activity'"; it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). As the Trump Campaign Memo explains, the DNC quite plainly fails this test. The DNC has not alleged an organized entity, but, rather, has pleaded only

that a group existed to commit predicate acts.  Such allegations do not substantiate an enterprise as required for a RICO claim.

### e.   The Complaint Does Not Allege Any Cognizable Injuries Caused by Racketeering Acts

Because the DNC fails to allege that Papadopoulos committed any racketeering activity, the DNC also necessarily fails to allege facts sufficient to show that its alleged injuries were caused by racketeering activity by Papadopoulos.  As explained in the Trump Campaign Memo (§ II.D), the DNC has failed to allege the supposed RICO violations proximately caused injury to its "business or property."  18 U.S.C. § 1964(c).  The injury must be "*actual* [and] quantifiable"; "[c]ourts have required that the plaintiff show concrete financial loss in order to show injury under RICO."  *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015) (emphasis in original).  The DNC's failure to assert such cognizable injuries proximately caused by the supposed RICO violations requires dismissal of its RICO claims.

\*       \*       \*

The DNC does not allege a valid enterprise, does not allege that Papadopoulos participated in the operation or management of any such enterprise, does not allege that Papadopoulos committed any predicate acts (let alone a continuous pattern of such acts), and does not allege that it sustained any cognizable injury to its property or business that was proximately caused by RICO violations.  Thus, its § 1962(c) claim against Papadopoulos must be dismissed.

### 3.   The Third Cause of Action Should Be Dismissed Because Plaintiff Fails to Plead Facts Sufficient to Establish a RICO Conspiracy Under 18 U.S.C. § 1962(d)

The Amended Complaint's failure to adequately allege the elements of a substantive offense under Section 1962(c) requires dismissal of Plaintiff's RICO conspiracy claim.  *See Salinas v. United States*, 522 U.S. 52, 64–65 (1997); *Allen v. New World Coffee, Inc.*, No. 00-cv-2610 (AGS), 2002 WL 432685, at \*6 (S.D.N.Y. Mar. 19, 2002) ("The dismissal of all of

plaintiffs' RICO claims leaves the conspiracy cause of action without a leg to stand on."). "Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient." *Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006); *Westchester Cty. Indep. Party*, 137 F. Supp. 3d at 618 (collecting cases so holding).

Even if the Complaint adequately alleged substantive violations of RICO, which it has not, it fails to allege facts sufficient to establish conspiracy liability against Papadopoulos.

### a.  The Complaint Fails to Plead Facts Showing a Violation of the RICO Act

To be liable for a RICO conspiracy, the defendant must "knowingly agree[] to facilitate . . . an endeavor which, if completed, would satisfy all of the elements of a [RICO substantive claim] . . . ." *Salinas*, 522 U.S. at 64–65; *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (affirming dismissal of RICO conspiracy claim where plaintiff "does not allege facts implying any agreement involving each of the defendants to commit at least two predicate acts").

Therefore, to state a RICO conspiracy claim, Plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions" – that is, that defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *See Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 579 (S.D.N.Y. 2017). *See also Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). "To establish a RICO conspiracy claim pursuant to §1962(d), a plaintiff must demonstrate that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity." *See Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-cv-7801 (PAE), 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012) (quoting *Baisch*, 346 F.3d at 377).

17

Accordingly, "the Second Circuit has instructed that a plaintiff must prove that (i) the defendants agreed to form and associate themselves with a RICO enterprise; (ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise; and (iii) if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *See Elsevier, Inc. v. Grossman*, No. 12-cv-5121 (KPF), 2013 WL 6331839, at *11 (S.D.N.Y. Dec. 5, 2013). "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht*, 897 F.2d at 25; *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 544–45 (S.D.N.Y. 2014) (dismissing RICO conspiracy claim where plaintiffs alleged "no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations").

Here, as the Trump Campaign Memo (§ II.E) makes clear, the DNC's conspiracy claim fails on its own terms because the DNC has not sufficiently alleged a conspiratorial agreement. Conclusory allegations are all that the DNC offers. At no point does the DNC allege specific facts plausibly suggesting that Papadopoulos reached an agreement with the other Defendants to commit predicate acts of Economic espionage and Theft of trade secrets. For this reason, too, the DNC's § 1962(d) claim fails. *See 4 K & D Corp.*, 2 F. Supp. 3d at 545.

### 4.   The Fourth Cause of Action (Wiretap Act) Should be Dismissed

As explained in the Trump Campaign Memo (§III), the DNC's claim under the Wiretap Act fails, because it does not allege that the Campaign had any role in intercepting in-progress communications or using intercepted communications.

A straight-forward analysis of the allegations here makes clear that this cause of action has not been pleaded against Defendant Papadopoulos. The federal Wiretap Act makes it unlawful to "intentionally intercept, endeavor to intercept, or procure any other person to

18

intercept a wire, oral, or electronic communication, or to use the contents of any such communication knowing or having reason to know that the information was obtained in violation of [the Act]."  *See* 18 U.S.C. § 2511(1)(a), (c); s*ee also Tantaros v. Fox News Network, LLC*, No. 17-cv-2958 (GBD), 2018 WL 2731268, at *7 (S.D.N.Y. May 18, 2018).

Courts in the Second Circuit have construed the term "intercept" narrowly to require that the interception of an electronic communication be ***contemporaneous with the transmission*** of that communication.  *See Tantaros*, 2018 WL 2731268, at *7 (emphasis added); *see also Zaratzian v. Abadir*, No. 10-cv-9049 (VB), 2014 WL 4467919, at *6 (S.D.N.Y. Sept. 2, 2014) (collecting cases from the Third, Fifth, Ninth, and Eleventh Circuits), *aff'd*, 694 F. App'x 822 (2d Cir. 2017); *Directv, LLC v. Wright*, No. 15-cv-474(FRG), 2016 WL 3181170, at *5 (W.D.N.Y. June 3, 2016) ("[A]n interception requires a capture of the communication ***while it is in transit***.") (emphasis added); *Snyder v. Fantasy Interactive, Inc.*, No. 11-cv-3593 (WHP), 2012 WL 569185, at *2 (S.D.N.Y. Feb. 9, 2012) ("Courts addressing the meaning of 'intercept' narrowly define it to include only 'acquisitions of communication contemporaneous with transmission, not storage.'").

The DNC fails to allege an "interception."  The Amended Complaint notably does not state that Russian agents acquired the DNC emails *while DNC employees were in the process of sending or receiving them*.  The DNC thus alleges only that Russian agents gained access to stored communications – not that they intercepted communications contemporaneously with the communications' transmission.  Moreover, the DNC also fails to allege that *Papadopoulos* "kn[ew] or ha[d] reason to know that the information was obtained through . . . interception." 18 U.S.C. § 2511(d).  In other words, the DNC nowhere alleges that Papadopoulos knew or

should have known that Russian agents had extracted communications from the DNC's servers, let alone that they acquired the emails contemporaneously with the emails' transmission.

Furthermore, the provision of the Wiretap Act at issue here prohibits the intentional "use" of intercepted communications. 18 U.S.C. § 2511(1)(d). Here, the DNC fails to allege Papadopoulos "used" an interception because it does not allege he disclosed the contents of an intercepted communication to the public. The Amended Complaint alleges only that "GRU Operative #1, WikiLeaks, and Assange" "disclosed the contents of [the DNC's] wire, oral, or electronic communications." (Am. Compl. ¶ 249.) This is insufficient to state a claim against Papadopoulos under section 2511(1)(d).

The DNC cannot get around these problems by asserting that Papadopoulos conspired with Russian agents and WikiLeaks to disclose the DNC emails. (*See* Trump Campaign Memo §III.B.) In contrast with other clauses of the Wiretap Act, the use and disclosure clauses alleged do not provide for any form of secondary liability. Therefore, as the Amended Complaint fails to allege facts necessary to establish a cause of action under the Wiretap Act against Papadopoulos, Plaintiff's Wiretap Act claim against him must be dismissed.

5. **The Eighth, Twelfth, and Fourteenth Causes of Action (Under D.C. and Virginia Law) Should be Dismissed Against Papadopoulos Because Plaintiff Fails to Adequately Allege the Necessary Elements for Either of These Claims**

The DNC's state-law claims (under the laws of Washington, D.C., and Virginia) fare no better than its RICO claims. Given the defects in the federal claims and the complex state-law issues the state claims raise, the Court should decline to exercise supplemental jurisdiction over these claims. *See* Trump Campaign Memo §IV; 28 U.S.C. § 1367(c)(3) (a federal court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction"). But even if the Court were to retain jurisdiction over these claims, they should all be dismissed because the DNC (1) invokes D.C.'s Uniform Trade Secrets Act, but

fails to plead that this case involves any trade secrets; (2) brings a claim under Virginia law for conspiracy to commit trespass to chattels, but alleges nothing about Papadopoulos; and (3) asserts a claim under the Virginia Computer Crimes Act, but ignores that that statute does not authorize aiding-and-abetting liability (and that Papadopoulos is not alleged to have had any involvement in hacking, in any event).

### a.   Count VIII, D.C. Uniform Trade Secrets Act

Plaintiff has not pled any of the necessary elements to state a cause of action against Defendant Papadopoulos for a violation of the D.C. Uniform Trade Secrets Act.  The elements of a D.C. Uniform Trade Secrets Act ("DCUTSA") claim are: (1) the existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper use or disclosure by one under a duty not to disclose.  *See DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 77 (D.D.C. 2007); *Econ. Research Servs., Inc. v. Resolution Econs., LLC*, 208 F. Supp. 3d 219, 232 (D.D.C. 2016).  A plaintiff claiming misappropriation of trade secrets also must show that the defendant gained access to the trade secrets through ***improper*** means or that ***the defendant improperly used or disclosed trade secrets***.  *See DSMC*, 479 F. Supp 2d at 79.  The DCUTSA defines "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means."  D.C. Code § 36–401.

For the reasons set forth *supra* in Section 4, Plaintiff has not pleaded facts that plausibly establish any of these elements as to Papadopoulos.  Plaintiff alleges no facts that Papadopoulos disclosed, received, or otherwise used any alleged trade secrets.  Plaintiff makes no allegation that Papadopoulos undertook any efforts or aided in any efforts to disclose or improperly use any trade secrets.  The Amended Complaint does not allege that Papadopoulos was involved in any of the activity of the other Defendants relevant to this claim.  To the contrary, the Amended Complaint's allegations regarding this conduct entirely excludes Papadopoulos.  Therefore, this

cause of action is defective as to Papadopoulos.[7]

### b.  Count XII, Conspiracy to Commit Trespass to Chattels

Plaintiff has not pleaded any of the necessary elements to state a cause of action against Papadopoulos for conspiracy to commit trespass to chattels.  These necessary elements are: (1) that two or more persons engaged in concerted action; (2) to accomplish some criminal or unlawful purpose, or some lawful purpose by some criminal and unlawful means; and (3) that actual damages resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy.  *See Blackwelder v. Millman*, 522 F.2d 766, 776 (4th Cir. 1975). A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization.  *See Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998).

The DNC, however, has not alleged that Papadopoulos combined with anyone else to hack into the DNC's servers (which would constitute a trespass to chattels).  Instead, the DNC alleges that Russia hacked the DNC's servers and extracted information all by itself.  Indeed, the Amended Complaint's allegations regarding this conduct entirely exclude Papadopoulos.  While Plaintiff matter-of-factly alleges that "each Defendant committed overt acts" that "caused Plaintiff injury and damages," (Am. Compl. ¶ 296), there are no specific allegations as to Papadopoulos.  Plaintiff asserts only that "[a]ll of the named Defendants aided and abetted" the acts described, and "knowingly and substantially assisted the common scheme" and that, therefore, the "actions of Defendants constitute conspiracy to trespass."  (*Id.* ¶¶ 296-97.)  This

---

[7]    The eighth cause of action is also defective for all the reasons stated in the Trump Campaign Memo (§IV.D): the DNC has not properly identified the trade secrets at issue; the trade secret information at issue does not derive its independent economic value from not being generally known; and the trade secret information at issue was not the subject of "reasonable efforts to maintain its secrecy."

boilerplate language, without more, does not suffice to state a claim against Papadopoulos.

### c.  Count XIV, Violation of the Virginia Computer Crimes Act

The DNC fails to sufficiently allege any of the necessary elements to state a cause of action against Papadopoulos for a violation of the Virginia Computer Crimes Act.  The three elements required to state a claim for a violation of the Virginia Computer Crimes Act (VCCA) are: (1) using a computer or computer network (2) without authority (3) intending to obtain, embezzle, or convert the property of another.  *See Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008); *see also McGladrey & Pullen LP v. Shrader*, 62 Va. Cir. 401, 2003 WL 22203709, at *6 (Va. Cir. Ct. 2003).  The DNC claims that Papadopoulos is liable because he "knowingly aided, abetted, encouraged, induced, instigated, contributed to and assisted" Russia's violation of these prohibitions.  (Am. Compl. ¶ 308.)  The Court should dismiss this claim, because (1) the VCCA does not provide for aiding-and-abetting liability (*see* Trump Campaign Memo at IV.D) and (2) the DNC does not plausibly plead that Papadopoulos aided and abetted a violation of the VCCA.

Even if aiding-and-abetting liability were contemplated under the VCCA, the DNC fails to plausibly plead that Papadopoulos aided and abetted a violation of it.  The provisions on which the DNC relies prohibit acts involved in hacking into another person's computer network: "us[ing]" the network to convert property, "disabl[ing]" computer programs, "caus[ing] [the] computer to malfunction," "alter[ing]" computer data, "us[ing] [the] computer . . . to make . . . an unauthorized copy," "collect[ing] information" by installing certain kinds of malicious software, and "us[ing] [the] computer" to examine private financial information. Va. Code Ann. § 18.2-152.3–4; *see* Am. Compl. ¶¶ 304–09.  Plaintiff has not alleged any facts that plausibly establish any of these elements as to Papadopoulos.  Nor does the Amended Complaint allege that Papadopoulos was involved in any of the activity of the other Defendants relevant to this claim.

23

To the contrary, as with the rest of the Amended Complaint, the allegations regarding this conduct entirely exclude Papadopoulos.  The Amended Complaint fails to allege that Papadopoulos did anything to aid and abet the Russian hack of the DNC's servers.  Indeed, as discussed *supra* at pages 3-5, its theory is that Russia began colluding with Papadopoulos *after* the hack had occurred and the information in the DNC's servers had been stolen.  The DNC thus fails to state a claim against Papadopoulos under the VCCA.

6.  **The Court Should Dismiss All Claims Against Papadopoulos Because the Imposition of Liability Would Violate the First Amendment**

The DNC seeks to hold Papadopoulos legally responsible for the publication of the DNC's emails and other data on the internet.  However, the DNC does not actually claim that Papadopoulos played any role in publishing those materials.  As the Trump Campaign Memo (§ I) makes clear, of course, even if the DNC did make such a claim, the First Amendment protects a speaker's right to disclose stolen information so long as (1) the speaker did not participate in the theft and (2) the information deals with matters of public concern.  Here, the DNC does not allege that Papadopoulos participated in the theft of the leaked materials, and the materials plainly deal with matters of public concern.  Each claim must thus be dismissed.  The First Amendment bars civil liability here against Papadopoulos.

## PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND AND WITH PREJUDICE

The Amended Complaint's claims against Papadopoulos should be dismissed with prejudice.  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.").  Here, because there is no plausible set of facts

through which the DNC could state a cause of action against Papadopoulos, the claims against Papadopoulos should now be dismissed, with prejudice.

## CONCLUSION

The Amended Complaint fails to plead facts sufficient to establish any of the six claims alleged against Papadopoulos.  Accordingly, and for all the foregoing reasons, George Papadopoulos respectfully requests the Court enter an order dismissing the Amended Complaint, with prejudice.

Dated:  December 7, 2018

/s/ Caroline J. Polisi
Caroline J. Polisi
Jeffrey R. Alexander
Christopher N. LaVigne
Eric M. Creizman
Shira Lauren Feldman
Pierce Bainbridge Beck Price & Hecht LLP
20 West 23rd Street, Fifth Floor
New York, New York 10010
(212) 484-9866
cpolisi@piercebainbridge.com
jalexander@piercebainbridge.com
clavigne@piercebainbridge.com
ecreizman@piercebainbridge.com
sfeldman@piercebainbridge.com

*Attorneys for Defendant George Papadopoulos*

## CERTIFICATE OF SERVICE

I certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

Dated:    December 7, 2018                    /s/ Caroline J. Polisi
                                                             Caroline J. Polisi

                                                             *Attorney for Defendant George Papadopoulos*