UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEMOCRATIC NATIONAL COMMITTEE

       Plaintiff,

    v.                               Case No. 1:18-cv-03501-JGK

THE RUSSIAN FEDERATION, et. al.,

       Defendants.

_____/

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ROGER STONE'S MOTION TO DISMISS AMENDED COMPLAINT

---

Grant J. Smith
(*admitted pro hac vice*)
StrategySmith, P.A.
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, FL 33301
(954) 328-9064
gsmith@strategysmith.com

Robert C. Buschel
  *Counsel of Record*
(*admitted pro hac vice*)
BUSCHEL GIBBONS , P.A.
ONE FINANCIAL PLAZA – SUITE 1300
100 S.E. THIRD AVENUE
FORT LAUDERDALE, FL 33394
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

## TABLE OF CONTENTS

INTRODUCTION …………………………………………………………………1

ALLEGATIONS ……………………………………………………………...…3

ARGUMENT …………………………………………………………………9

    I.      THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION
              BECAUSE PLAINTIFF LACKS ARTICLE III STANDING …………….9

    II.     PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH
              RELIEF CAN BE GRANTED ………………………………………… 12

        A.  Standard of Review ………………………………………………… 12

        B.  The allegations are vague and do not support a complete and plausible set
           of facts ……………………………………………………………… 13

        1.  Conspiracy between Stone and the Campaign …………………… 14

        2.  Conspiracy between Stone and Russian agents …………………….. 15

        3.  Conspiracy between Stone and WikiLeaks …………………………. 15

    III.   PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER RICO
              AGAINST STONE ………………………………………………… 16

        A.  Roger Stone did not participate in management of enterprise affairs ……. 16

        B.  Roger Stone did not commit a predicate act ………………………….17

CONCLUSION ……………………………………………………………… 18

CERTIFICATE OF SERVICE ……………………………………………… 19

## TABLE OF CITATIONS

**Cases**

*All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82 (2d Cir. 2006)................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ............................................................. 12, 13

*\*Bartnicki v. Vopper*, 532 U.S. 514 (2001). ....................................................... 11, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 12, 14

*Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164 (1994)). .................... 18

*Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp.3d 158 (D.D.C. 2018) ............... 10

*\*D'Addario v. D'Addario*, 901 F.3d 80, 103 (2d Cir. 2018) ........................................ 17

*DeFalco v. Bernas*, 244 F.3d 286, 330 (2d Cir. 2001) ............................................. 18

*Dickerson v. Alachua County Comm.*, 200 F.3d 761 (11th Cir. 2000)........................ 14

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724 (D.C. 2000) .................. 14

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) .............. 17

*Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013) ...................................... 15

*Frydman v. Verschleiser*, 172 F. Supp. 3d 653 (S.D.N.Y. 2016) ................................. 12

*Gross v. Waywell*, 628 F. Supp. 2d 475, 479-80 (S.D.N.Y. 2009) ................................. 16

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ....................... 18

*Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013)................................................. 9

*In re: Ins. Brokerage*, 618 F.3d 300 (3d Cir. 2010) ..................................... 16

*Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002) .................. 14

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014). ..................................... 15

*Little Professor Book Co. v. Reston N. Pt. Vill.*, 41 Va. Cir. 73 (1996)........................ 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 9

*Reich v. Lopez,* 38 F. Supp. 3d 436, 464 (S.D.N.Y. 2014) ......................................... 14

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ........................................................... 16

*Tabb v. D.C.*, 477 F. Supp. 2d 185 (D.D.C. 2007) .................................................... 14

**Statutes**

Communications Decency Act of 1996, 47 U.S.C. §230 ............................................. 15

**Other Authorities**

GET   ME   ROGER   STONE,   a   NETFLIX   Original   Documentary,   (2017).
https://media.netflix.com/en/only-on-netflix/128318 ................................................ 1

U.S. Const. art. 3, § 2. .............................................................................................. 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 12, 18

## INTRODUCTION

Plaintiff, the Democratic National Committee ("DNC") alleges Russians, working on behalf of their government as part of a military operation, hacked the Democratic National Committee's emails and other data, transferred it to WikiLeaks, which then disclosed it to the world *via* the internet. The data was disclosed to the world without redaction and the DNC claims it suffered damage (mostly political) to their trade secret strategies. Roger Stone is not alleged to have hacked, transferred, or touched the emails or other data the DNC claims were disseminated. Roger Stone is not alleged to have spoken to any Russians or hackers about the alleged theft of DNC data or its transfer to WikiLeaks. The DNC concludes that Stone conspired with the Trump Campaign, Russian hackers, and WikiLeaks -- for the publication of those emails. Stone, however, is a journalist, political strategist, pundit, and commentator.  Like or dislike him for whom he campaigns or his political advocacy; that is a personal choice. Stone is an "agent provocateur."[1] He is the First Amendment running, not walking; but his conduct cannot be adjudged a civil wrong.

Nevertheless, Plaintiff has filed what is predominately a civil RICO lawsuit with a tagalong conspiracy, and supplemental D.C. statutory and Virginia common law claims relating only to the theft and dissemination of DNC emails with people and entities Roger Stone does not know or barely knows. The DNC can only seek remedies for torts relating to its own data. As a matter of law this proposition is critical to the analysis of Roger Stone's alleged culpability.

---

[1] GET ME ROGER STONE, a NETFLIX Original Documentary, (2017). https://media.netflix.com/en/only-on-netflix/128318

Assuming the DNC's best position, the DNC seeks to prosecute Roger Stone for the wrong conspiracy for the simple reason: John Podesta's emails (which Stone allegedly had early notice of their release, which Stone denies), did not reside on the DNC's servers in Virginia or the District of Columbia. Because, as the DNC focuses its case against Stone on "the Podesta's" allegedly stolen emails did not reside on the DNC's servers and John Podesta is not a plaintiff in this case, the DNC has improperly attempted to link Roger Stone to a conspiracy Stone did not join.

This case is meritless and filed for sensational and politically partisan reasons. The hope is this Court will authorize a private investigation through civil discovery, into the President of the United States and as a consequence, Roger Stone; an adviser and friend to President Donald Trump. In essence, litigate the 2016 presidential campaign. Proof of this lies with a lawsuit that does not allege Roger Stone conspired to damage the DNC; rather allegations that are only inferences of another conspiracy against John Podesta. Because the DNC alleged Stone injured John Podesta, therefore, he must be a part of a conspiracy against the DNC does not follow and is not a sufficiently plausible conclusion.

As a general proposition, the DNC cannot successfully sue Roger Stone because it thinks he may have been involved in a larger, yet different, conspiracy in a purported effort to tilt the election against the Democratic Candidate for President, in favor of Donald Trump. Although allegations may be fodder for media speculation, in the Courts there must be a wall against a lawsuit that without doubt is implausible and near impossible to prove. At the outset, and at a minimum, the DNC must establish standing and a legitimate claim for relief.  Here there is neither. This case should be dismissed.

## ALLEGATIONS

Roger Stone is a defendant in the RICO (count I), RICO conspiracy (count II), violation of Uniform Trade Secrets Act, a statute in D.C. (count VIII), conspiracy to trespass chattels, a Virginia common law claim (count XI), and violation of Virginia Computer Crimes (count XII). The specific facts alleged as to Roger Stone make him a unique defendant. While analyzing these allegations, it is critical for the Court to note <u>when</u> Stone is alleged, by Plaintiff to have joined the conspiracy (post-July 22, 2016, first DNC dissemination), what acts he allegedly committed to in fact <u>join</u> the conspiracy, and do those acts <u>allege a conspiracy</u> to which <u>the DNC</u> can seek a remedy in this Court. As to Roger Stone, the amended complaint alleges:

> 19.      Throughout the summer and fall of 2016, during the height of the Presidential campaign, Trump's associates continued to communicate secretly with Russian agents and WikiLeaks, who strategically disseminated information stolen from Democratic targets. <u>For example,</u> in <u>August 2016, Stone began communicating secretly with GRU operatives and bragged about his contacts with Assange.</u> Similarly, Gates, who served as the Trump Campaign's deputy chairman and then liaison to the Republican National Committee, maintained secret communications with an individual he knew to be connected to the GRU.

(emphasis added).

Other than the private messages (communication on the social network platform, twitter), between Guccifer 2.0 and Stone there are no additional allegations about what they communicated about. The communications are attached as exhibits to this motion.

> 20.      In the summer and fall of 2016, <u>Stone revealed information that he could not have had unless he were communicating with WikiLeaks, Russian operatives, or both</u> about their hacking operations in the United States. <u>For instance,</u> in <u>August of 2016,</u> nobody in the public sphere knew that Russia had <u>stolen emails from John Podesta,</u> the chairman of Secretary Hillary Clinton's presidential campaign. Nevertheless, on <u>August 21, 2016,</u> Stone predicted that damaging information about Podesta would be released, tweeting "it will soon [be] the Podesta's time in the barrel." <u>Weeks later,</u> WikiLeaks began releasing batches of

> Podesta's emails on a near-daily basis until Election Day—as
> Stone had predicted. Similarly, in mid-September 2016, Stone said
> that he expected "Julian Assange and the WikiLeaks people to
> drop a payload of new documents on Hillary [Clinton] on a weekly
> basis fairly soon." And, beginning on <u>October 7, 2016,</u> WikiLeaks
> began releasing stolen emails at least once a week—as Stone had
> predicted.

(emphasis added).

WikiLeaks merely telling Stone that it has specific information is not a tort. Additionally,

since the DNC alleged that Stone's prediction about "the Podesta's" proves Stone joined the

relevant conspiracy is belied by the fact John Podesta's emails were not on the DNC server. The

DNC cannot properly allege Stone joined the conspiracy and committed torts based upon this

allegation in which the DNC cannot claim a concrete injury fairly traceable to Stone. An analysis

of the DNC's standing and misuse of inferences to attempt to sufficiently plead this conspiracy

will be discussed below.

> 49.     Defendant Stone is Trump's long-time confidant. "[F]ew
> people go as far back [as] Trump [and] Stone," and Stone has
> "nurtured the dream of a [Trump] presidential run . . . for 30
> years." Stone also has a long history with Manafort: Manafort
> helped run Stone's campaign for national chairman of the Young
> Republicans in <u>1977,</u> and the two co-founded a consulting firm—
> Black, Manafort, Stone, and Kelly—in the 1980s. <u>In 2007,</u> Stone
> worked on the parliamentary campaign of a Ukrainian candidate
> who formed a coalition with pro-Russian politician Viktor
> Yanukovych, whose closest political advisor was Manafort. Upon
> information and belief, Stone served as an informal adviser to
> Trump and remained in contact with him and other senior officials
> in the Trump Campaign throughout the 2016 election. Stone
> resides in Florida.

(emphasis added).

This allegation claims that Defendants Manafort and Stone worked together in 1977, the

1980s, and over ten years ago Stone worked against Manafort's candidate during a Ukrainian

election. The above allegation alone or in conjunction with the other allegations fails to create a

plausible explanation that Roger Stone joined a conspiracy with Paul Manafort to steal and disseminate the DNC's emails.

119. In mid-September 2016, Stone accurately predicted on Boston Herald Radio that he expected "Julian Assange and the WikiLeaks people to drop a payload of new documents on Hillary on a weekly basis fairly soon."

121. On October 2, 2016, Stone stated on Twitter: "Wednesday @HillaryClinton is done. #WikiLeaks." And on October 3, 2016, Stone reiterated that he was confident WikiLeaks would continue disseminating hacked materials: "I have total confidence that @WikiLeaks and my hero Julian Assange will educate the American people soon."

122. Four days later, on October 7, 2016-and just one hour after the release of the infamous Hollywood Access recording in which Trump admitted to sexually assaulting women- WikiLeaks released 2,000 emails stolen from Podesta. WikiLeaks continued to release documents stolen from Podesta on a near-daily basis until November 9, 2017 (sic) - just as Stone had predicted.

(emphasis added).

Four days later was not a Wednesday, so this tweet was not as predictive as alleged. (*See* Am. Compl. ¶ 121). Again, the stolen Podesta emails were not on the DNC's servers, so the DNC has no standing to prosecute the theft of Podesta's emails. Lastly, claiming Stone predicted this is permitting speculation to be science -- assigning the meaning of causation to a correlation without a plausible explanation of how this was done.

157. Beginning in the spring of 2016, Trump's longtime friend and political advisor Roger Stone revealed on multiple occasions that he was in contact with Assange and WikiLeaks as well as Guccifer 2.0 about information in their possession that would be damaging to the Clinton campaign, to prominent members of the Democratic Party, and to Clinton campaign chairman John Podesta. Many of these reports from Stone occurred well before it was publicly known that the DNC's computer systems and Podesta's emails had been hacked by the same Russian intelligence entities.

Outside of stating the obvious, the allegations in this paragraph are as obtuse as an astrological forecast. More importantly, this allegation is confirmation Podesta's emails were separate from the DNC's computer systems. Other allegations do no better.

> 158.   On <u>August 8, 2016</u>, speaking to a local Republican Party group in Florida, Stone predicted the future disclosure of hacked materials: "I have actually communicated with Assange. I believe the next tranche of his documents pertain to <u>the Clinton Foundation</u>, but there's no telling what <u>the October surprise may be</u>."

(emphasis added).

This prediction was also hardly prophetic since WikiLeaks disclosed the first tranche of DNC emails on July 22, 2016 and since it did not disclose all the data it possessed – there were going to be other disclosures by WikiLeaks. (*See* Am. Compl. ¶¶ 142-145) ("Assange appeared on British television"). There was no telling what the October surprise might be (although every presidential campaign angles for one), and the DNC did not follow up and allege that the next tranche was about the Clinton Foundation – because the next dump was not about the Clinton Foundation.

> 159.   On <u>August 12, 2016</u>, Stone said that he <u>believed</u> Assange had emails belonging to Secretary Clinton. That same day, GRU officers posing as Guccifer 2.0 <u>disseminated another set of stolen documents</u> – this time containing personal information about Democratic candidates. Shortly thereafter, on August 12, Guccifer 2.0 sent a thank-you note to Stone.

(emphasis added).

The above allegation is not about DNC emails. In the original complaint, the DNC posted the actual message, yet removed it in the amended complaint. The post from "Guccifer 2.0" to Stone read: "Thanks that u believe in the real #Guccifer2," demonstrates that post by the alleged hacker(s) was innocuous (in its context) and did not create an agreement by Stone to enter any supposed conspiracy. (*See* Exhibit,  -1).

> 161. On <u>August 14, 2016</u>, Stone began secretly communicating with Guccifer 2.0. On <u>August 17, 2016,</u> one of these operatives tweeted to Stone, "please tell me if i can help u anyhow. it would be a great pleasure to me."

(emphasis added).

The date of the first allegation of Stone's communications with Guccifer 2.0 is after the first dissemination of DNC documents cited as July 22, 2016. (*See* Am. Compl. ¶ 18). The DNC did not allege Stone asked for help from Guccifer 2.0 or that he had knowledge Guccifer 2.0 was Russian military intelligence.

> 164. <u>On August 21, 2016,</u> amidst his communications with Assange and Russian intelligence, Stone <u>prophesized</u> the future dissemination of Podesta's emails, tweeting: "Trust me, it will soon [be] (sic) Podesta's time in the barrel." There had been no public disclosure that <u>Podesta's emails had been hacked</u> at that time.

(emphasis added).

The tweet was materially misquoted by Plaintiff. It should read: "Trust me, it will soon the Posdesta's time in the barrel." (*See* ECF No. 182, Am. Compl. ¶ 20 and Exhibit -2). "The Podesta's," demonstrates the plausible explanation Roger Stone has given that he was referring to the Podesta brothers who had business dealings with the Russian energy company, Gazprom. The Court should also note, the DNC recognizes Podesta's emails had been "hacked," separate from the DNC's database. Short of three weeks later, the Podesta emails were allegedly disseminated by WikiLeaks. (Am. Compl. ¶167). John Podesta is not a plaintiff in this case.  The DNC does not have standing to sue Stone based upon a claim that Podesta's data was hacked and disseminated.

To borrow from the title of episode 2 of season 1 from the popular television series: *The West Wing*, the DNC is guilty of violating the philosophical rule – *Post hoc, ergo propter hoc* (after this, therefore because of this). The DNC is correlating events in the 2016 presidential campaign with Roger Stone's online political advocacy, and claiming Stone's actions were

7

because of the other. The "other" being communications with the Russians or WikiLeaks. This

cannot be considered plausible allegations to support any cause of action against Roger Stone.

> 171. On <u>September 9, 2016</u>, GRU operatives posing as Guccifer
> 2.0 contacted Stone to ask him for his reaction to the "turnout
> model for the Democrats' entire presidential campaign." Stone
> replied, "pretty standard."

(emphasis added)

This communication does not support a conspiracy. This communication was after the

theft and dissemination of the first tranche of DNC emails by WikiLeaks. This is a standard

remark that would have been an answer to anyone that asked him. The amended complaint does

not allege what the turnout model entails, nor that it is a trade secret that was stolen off the DNC

server. Assuming Guccifer 2.0 is a group of Russian intelligence officers, it was a question about

an internet hyperlink to documents posted on a website from a United States political consultant

that was in the public domain. (Exhibit, -3).

The Court should keep in mind: Roger Stone was not alleged to have been part of the

meeting in Trump Tower in June, 2016 as described in paragraph 13, and referenced as the

turning point in this conspiracy throughout the amended complaint. Furthermore, the allegations

attempt to support multiple causes of action against Stone.  But, even if the Court were to assume

Stone had previous knowledge of the subject matter of WikiLeaks disclosures, the DNC merely

alleges Stone had previous knowledge of future publication of truthful disclosures. They do not

allege Stone advised the Russian Federation or the GRU on how to hack (break into the DNC

servers), steal the data from the servers, or who to give that data to once it was taken. The DNC

does not allege Stone advised WikiLeaks on an effective method of dissemination of anyone's

data – let alone the DNC's.  At best, the DNC claims Stone received information about what was

going to be disseminated and disclosed to the world via social media, as if he were a journalist.

The journalism community refers to that as a "scoop," not a tort. Even if status matters, which it does not, as a political advocate for Donald Trump, Stone campaigned that information would be revealed to the world that will affect Hillary Clinton's campaign. None of this is a tort.  It is protected free speech.


Defendant Roger Stone ("Stone") respectfully moves that this Court dismiss the D.C.-law and Virginia-law claims under Federal Rules of Civil Procedure12(b)(1); and, dismiss all claims for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure12(b)(6).

Defendant Roger Stone, pursuant to this Court's Order (ECF No. 181 at 2), adopts the argument made in the global motion to dismiss, as well as other Defendants' supplemental briefs, so applicable.

## **ARGUMENT**

### I.  **THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.**

Plaintiff in large part complains about the hacking, theft, transfer, and dissemination of two of its databases (one in Virginia, the other in the District of Columbia), through WikiLeaks. (Am. Compl. ¶¶ 81-84, 172). But some of its allegations, mostly about Roger Stone's involvement, relate to a completely different set of data – the Democratic    ("DCCC") and Hillary's Clinton's campaign, and the source of her campaign manager John Podesta's emails. To the extent that Plaintiff intends to remediate the rights of other people and organizations, the below argument applies. The DNC does not have standing to object to a hack, theft, and transfer of data that does not belong to the DNC.

Article III standing concerns subject matter jurisdiction. *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff cannot sustain this action because they allege no cognizable injury that can be fairly traced to Roger Stone's alleged actions, and thus fail to clear a fundamental constitutional threshold necessary to pursue their claims in federal court. Article III of the Constitution limits the jurisdiction of federal courts to actual "cases and controversies." U.S. Const. art. 3, § 2. Central to that requirement is that a litigant has "standing." This requires more than a "keen interest in the issue." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013). To avoid dismissal, the plaintiff bears the burden of demonstrating (1) he has suffered "a concrete and particularized" injury, (2) that is "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party [who is] not before the court," and (3) "likely … will be redressed by a favorable [judicial] decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citation omitted). Stone challenges that his actions are fairly traceable to the DNC's alleged injury. The above analysis of the allegations made by the DNC demonstrates Stone is only accused of a conspiracy relating to John Podesta's emails. He is not part of the RICO conspiracy to injure the DNC, steal its "trade secrets," or trespass on the DNC's computers.

The DNC is not the first plaintiff to try and link Stone to the alleged DNC hacking conspiracy. In the case where Stone and the Trump Campaign were sued in the District of Columbia, the District Court found: "Plaintiffs do not seek to impose liability on defendants for the publication of emails from the DCCC or John Podesta, Chairman of Hillary Clinton's 2016 presidential campaign." *Cockrum v. Donald J. Trump for President, Inc.,* 319 F. Supp.3d 158,

166 (D.D.C. 2018). This is because those plaintiffs' emails were on the DNC servers and their conspiracy claim was limited to only their alleged damages. The key point being Podesta's emails and the DNC lie on separate computer databases. The DNC seems to recognize that the conspiracy alleged is limited to a "conspiracy to disseminate stolen DNC data." (Am. Compl., VI. at 21; *see also* I. at 33). An allegation that Stone joined the conspiracy to hack, steal, and disseminate Podesta's emails, is not a conspiracy to hack, steal, or disseminate the DNC's emails. The DNC therefore cannot sue Stone for conspiracy because it lacks standing and cannot allege that Stone was part of the DNC's conspiracy alleged in the complaint.

It is clear from the complaint that the DNC emails were going to be published. Perhaps the Court is meant to infer Roger Stone was consulted without ever reviewing the thousands of emails and gave strategic advice on how to disseminate the tranches of emails that included Plaintiff's data. It is implausible; however, that Stone could offer meaningful strategic advice on dissemination without viewing the emails. The complaint fails to allege sufficient conduct fairly traceable with the alleged effect because it is contingent on a chain of attenuated hypothetical events and actions by third parties independent of Roger Stone.

In this case, it appears the DNC merely alleges Roger Stone knew about future disseminations prior to them, but not prior to the hack, theft, or transfer to WikiLeaks. If the DNC's lawsuit is based upon Stone receiving early notice of DNC emails directly from WikiLeaks, then this is not a tort. *See Bartnicki v. Vopper*, 532 U.S. 514 (2001). Stone is not alleged to have seen the DNC emails or given advice on their publication by WikiLeaks. Even having notice that the Russian military was planning on stealing the emails and giving them to WikiLeaks for dissemination, as long as Stone did not help them steal and distribute them, it is not a crime or a tort. Stone commenting on what was to come is a teaser that any news media has

done and continues to do today. But once WikiLeaks had the DNC's data, Roger Stone as a political pundit, strategist, adviser, or journalist could seek to review it or publicly tease about its future disclosure. This also is not a crime or a tort.

Most importantly, Stone did not do anything that made Russian hackers hack, or WikiLeaks disseminate the DNC's data.  Because the DNC only alleges tenuous events that occur at or near the time they felt they were injured, does not create a sufficient fairly traceable connection between Stone's acts and the injuries suffered.  Thus, the Plaintiff does not have standing to pursue this lawsuit against Stone.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Standard of Review

Pursuant to *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In all, determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*,  556 U.S. 662 (2009). Second, the court must determine whether the well-pled factual allegations, if assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*. at 662. When the factual allegations are "not only compatible with, but indeed [are] more likely explained by" lawful activity, the complaint must be dismissed. *Id.* at 663.

12

A complaint must be dismissed if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Following *Iqbal*, this District Court has applied the *Iqbal* standard strictly in cases ranging from racketeering, theft of trade secrets, to the Computer Fraud and Abuse Act. *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 659 (S.D.N.Y. 2016) (Koeltl, J.,).

Applying the *Iqbal* standard in this case, it is abundantly clear that Plaintiff's allegations of conspiracy fall short in crossing the line from "conceivable" to the "plausible" as they allege fantastic claims that are conclusory and unlikely. *See Iqbal*, 556 U.S. at 680. As discussed below, the allegations are implausible because they do not clearly identify how Stone encouraged delivery of the data to WikiLeaks and coach its dissemination. Plaintiff fails to allege *any* facts that could plausibly support a viable claim, relying instead on broad and conclusory allegations, largely gleaned from various publications.

**B. The allegations are vague and do not support a complete and plausible set of facts.**

The case of *Iqbal* is instructive on delineating sufficient allegations from insufficient conclusory allegations. The failure of Iqbal's pleading is that he pled as fact allegations that were "merely consistent with" a defendant's liability, it "stop[ped] short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Like Plaintiff's complaint, the essential allegations are presented merely consistent with liability and are so outrageous and unexplained that it comes nowhere near line of possibility and plausibility. *See id.* Plausibility of the complaint is a "context-specific task" that requires the court to draw on its "judicial experience"

and "common sense." *Id.* at 679. This complaint fails because it only alleges an implicit conspiracy insufficient to make Roger Stone a coconspirator. The allegations merely imply that Stone must have known about Podesta's hack based upon one "tweet," and so he must have known about the theft of DNC data. But the amended complaint does not state a plausible factual basis that Stone joined the conspiracy to steal and disseminate the DNC emails.

Looking at this complaint within only its four corners should lead this Court to conclude in its experience that Plaintiff's complaint is too vague to survive a motion to dismiss. Referenced intelligence and news reports from various media are inadmissible hearsay when used in motions for summary judgment. *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590, 593 (S.D.N.Y. 2002), aff'd, 59 Fed. Appx. 430 (2d Cir. 2003).  It offers little more at the motion to dismiss stage.

Without that level of specificity, Plaintiffs will never be able to show they are entitled to relief.  Without more specificity, Plaintiffs complaint fails to "nudge" their claim "across the line from conceivable to plausible." *See id.* at 683 (citing *Twombly,* 550 U.S. at 570). Plaintiffs fail to state a claim for any conspiracy.

    1.   **Conspiracy between Stone and the Campaign.**

Plaintiffs do not state a proper theory of conspiracy to support any claim. An agent of a corporation cannot conspire with the corporation itself. *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000) (referred to as the "intracorporate conspiracy doctrine"); *Little Professor Book Co. v. Reston N. Pt. Vill.,* 41 Va. Cir. 73 (1996) (circuit court opinion); *Reich v. Lopez,* 38 F. Supp. 3d 436, 464 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017); *Tabb v. D.C.*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007) (citing *Dickerson v. Alachua County Comm.,* 200 F.3d 761, 767 (11th Cir. 2000)). Stone worked as an independent contractor

for the Campaign for a few months in 2015. In short, the amended complaint alleges Stone was always acting as an agent of the Trump Campaign for President. In the only footnote in the amended complaint, the term "Trump Associate" is defined as an agent of the Campaign. (Am. Compl. at 16 *).   The D.C.-law and Virginia law, therefore, does not support a claim of conspiracy between Stone and the Campaign.

###        2.    **Conspiracy between Stone and Russian agents.**

In its causes of actions, Plaintiff lumps "Defendants" together as if there were sufficient specific allegations above. It does not allege that Roger Stone knew Guccifer 2.0 was Russian government. Because there is a dearth of allegations to establish Stone was part of any illegal acts, the allegations in the causes of action are conclusory and therefore insufficient. *See Franklin v. Curry*, 738 F.3d 1246, 1250-51 (11th Cir. 2013) (district court should identify and remove conclusory allegations not entitled to the assumption of truth).

###        3.    **Conspiracy between Stone and WikiLeaks.**

WikiLeaks did not commit a tort; therefore Roger Stone could not have vicarious liability for conspiring to participate in actions that do not amount to a tort. The Communications Decency Act of 1996, 47 U.S.C. §230, shields interactive computer services from liability from those who post on its site.  Stone is not alleged to have taken the Plaintiffs' data from the DNC or transferred it to WikiLeaks. Mere encouragement of publication of Plaintiffs' data on WikiLeaks is not a tort and Stone cannot be held liable. *See Klayman v. Zuckerberg,* 753 F.3d 1354, 1358 (D.C. Cir. 2014). This protection from liability exists even if WikiLeaks fails to edit the posts coming from third party users. *See id.* Since WikiLeaks could not be held liable for its act of dissemination, then Stone cannot be held liable even if he were to have encouraged or reveled in the dissemination or predicted more disclosure was forthcoming.

Because Stone did not participate in the hack, theft, or dissemination of the DNC's data, Stone's public social media posts alleged in the complaint are therefore nothing more than political speech. 'the Podesta's time in the barrel,' 'WikiLeaks will drop a payload of new documents soon,' 'Wednesday Hillary Clinton is done,' 'Assange is my hero and will educate the American people;' and the like, is what political operatives do during a campaign. They proclaim their candidate is great, the opposition candidate is bad. In the context of a campaign, none of this demonstrates that Stone participated in the strategic dissemination of Plaintiff's emails. Stone played no part in the "illegal interception;" access to the data was "obtained lawfully," and the subject matter was "a matter of public concern." *See Bartnicki v. Vopper,* 532 U.S. 514 (2001).

## III.   PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER RICO AGAINST STONE.

Civil RICO claims are difficult to sustain. The "formidable intricacies and pitfalls" inherent in these requirements have sent many a "crew of spellbound plaintiffs foundering against the rocks." *Gross v. Waywell,* 628 F.Supp.2d 475, 479-80 (S.D.N.Y. 2009) (granting motion to dismiss RICO claims after describing how vast majority of RICO cases result in "total loss" to plaintiffs). Plaintiff here—like others before them—have failed to plead the requisite RICO elements.

### A.   Roger Stone did not Participate in Management of  Enterprise Affairs

Even if Plaintiff was able to show that Roger Stone associated with an "enterprise"— something it has not done—Plaintiff must also allege that each defendant conducted or participated in the conduct of the enterprise's affairs. The Supreme Court has held that the "conduct or participate" element requires a defendant to "have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  More precisely, "one is not liable

16

under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183; *see also In re Ins. Brokerage*, 618 F.3d 300, 370-71 (3d Cir. 2010) ("[m]ere association with an enterprise does not violate § 1962(c)"). Indeed, the Supreme Court previously has said that liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Cedric Kushner Productions, Ltd. v. King,* 533 U.S. 158, 163 (2001) (citing *Reves,* 507 U.S. at 185)).

"In *Reves v. Ernst & Young,* the Supreme Court interpreted the operative language to require a RICO defendant charged with violating section 1962(c) to have had "some part in *directing* [the enterprise's] affairs." *D'Addario v. D'Addario*, 901 F.3d 80, 103 (2d Cir. 2018) (citing *Reves,* 507 U.S. at 179)) (emphasis in original). A RICO defendant will not be liable for mere participation in a racketeering act, but will sustain liability under the statute for participation in the "operation or management of an enterprise through a pattern of racketeering activity." *D'Addario,* 901 F.3d at 103 (citing *Reves,* 507 U.S. at 184; *see also First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 176 (2d Cir. 2004)).

The management requirement applies also to Roger Stone. The lawsuit does not allege Roger Stone had a management or operational position in the Campaign at all.  It also does not allege that Stone had a management role (or that he was even communicating with the other "Trump associates"), the association in fact enterprise. In short, Stone did not have any part in directing the enterprise's affairs as required by the law in this Circuit. *See id.*  At best, Stone is talking to a Russian hacker on twitter about a hack and theft after the DNC's data was stolen. Those alleged communications do not allege a plausible scenario of coordination. This failure requires dismissal of the RICO count.

17

### B. Roger Stone Did Not Commit A Predicate Act

Roger Stone is not alleged to have committed any predicate act nor conspire to commit a predicate act, therefore he cannot be liable under RICO. The DNC wishes to include Roger Stone in the RICO count but has not alleged he committed any of the predicate acts. The Campaign thoroughly explained the law and Plaintiff's pleading deficiency in its brief. (*See* § II.C, Campaign's brief). Stone did not commit economic espionage since he is not alleged to have stolen or reviewed the DNC's emails; or helped them do it. He also did not commit theft of trade secrets for the same reasons.

Stone's first allegation is after July 22, 2016, so he could not have committed the first predicate acts on that date. (*See* Am. Compl. ¶¶ 237-38). Furthermore, Stone also only allegedly communicated about John Podesta; therefore, he could not have committed economic espionage or theft of trade secrets against the DNC. Lastly, RICO statute under § 1962(c) does not support an aiding and abetting theory. *DeFalco v. Bernas*, 244 F.3d 286, 330 (2d Cir. 2001) (citing *Central Bank of Denver v. First Interstate Bank,* 511 U.S. 164 (1994)).

This Circuit is clear: "Therefore, we hold that standing may be founded only upon injury from overt acts that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy." *Hecht v. Commerce Clearing House, Inc*., 897 F.2d 21, 25 (2d Cir. 1990). As a matter of standing and sufficiency of the pleadings under Rule 12(b)(6), Plaintiff fails to make its RICO case and its tagalong conspiracy against Roger Stone.

### CONCLUSION

The Court should dismiss the complaint for lack of subject-matter jurisdiction. Alternatively, it should dismiss the complaint for failure to state a claim.

Dated: December 7, 2018                    Respectfully submitted,

                                           /s/ Robert Buschel
                                           Robert C. Buschel


 Grant J. Smith                            Robert C. Buschel
(*admitted pro hac vice*)                     *Counsel of Record*
STRATEGYSMITH, P.A.                        (*admitted pro hac vice*)
401 EAST LAS OLAS BOULEVARD                BUSCHEL GIBBONS , P.A.
SUITE 130-120                              ONE FINANCIAL PLAZA – SUITE 1300
FORT LAUDERDALE, FL 33301                  100 S.E. THIRD AVENUE
(954) 328-9064                             FORT LAUDERDALE, FL 33394
GSMITH@STRATEGYSMITH.COM                   (954) 530-5301
                                           BUSCHEL@BGLAW-PA.COM

                    *Counsel for Roger Stone*


## CERTIFICATE OF SERVICE

I certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

                                           /s/ Robert Buschel
                                           Robert C. Buschel
                                           *Counsel for Roger Stone*

 **GUCCIFER 2.0**
@GUCCIFER_2

👤 **Follow**

⌄

@RogerJStoneJr thanks that u believe in the real #Guccifer2

| RETWEETS | LIKES |
|----------|-------|
| 173 | 405 |



7:23 PM - 12 Aug 2016

 31    173    405



# Roger Stone did not join alleged relevant conspiracy



**Roger Stone never mentioned by DNC in complaint prior to dissemination (July 22, 2016)**

**Post email dissemination allegation against Roger Stone**

July 22, 2016
First Tranche - DNC emails released

AFTER WikiLeaks disseminated the DNC emails and the Podesta emails, it was not until October 13, 2016, well after the release, that Roger Stone had his FIRST unrelated Direct Message exchange with WikiLeaks

June 14, 2016, Guccifer 2.0 claims credit for the DNC materials provided to WikiLeaks

"...it will soon the Podesta's time in the barrel." (Amended complaint ¶ 20) Aug. 21, 2016

Roger Stone member of the Trump Campaign March 2015

Roger Stone parts ways with the Trump Campaign August 2015

July 22, 2016 Plaintiffs' emails posted by WikiLeaks from DNC database

Roger Stone's FIRST and ONLY 3 direct messages with Guccifer 2.0 begin on August 14, 2016

October 7, 2016, WikiLeaks publishes emails of John Podesta (Not DNC Emails)

**All communications with WikiLeaks & Guccifer 2.0 are post dissemination of DNC emails**