## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DEMOCRATIC NATIONAL COMMITTEE,

Plaintiff,

v.

THE RUSSIAN FEDERATION *et. al.,*

Defendants.

Case No. 18-CV-03501
**JURY DEMANDED**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JARED KUSHNER'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

Abbe David Lowell (NY Bar No. AL2981)
ADLowell@winston.com
Christopher D. Man *(pro hac)*
CMan@winston.com
Kyllan J. Gilmore
KGilmore@winston.com
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006
T: 1-202-282-5000
F: 1-202-282-5100

*Counsel for Jared Kushner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………....…ii

PRELIMINARY STATEMENT…………………………………………………………..…1

LEGAL STANDARDS ON A MOTION TO DISMISS…………………………………..…2

ARGUMENT……………………………………………………………………………...3

   I.   PLAINTIFF FAILS TO STATE A RICO CLAIM AGAINST KUSHNER……………..3

       A.  RICO Legal Standards……………………………………………………………3

       B.  Plaintiff Does Not Allege That Kushner Committed Any Predicate Acts……………5

       C.  Plaintiff Alleges Nothing Connecting Kushner to The Alleged RICO Violation…….8

       D.  Plaintiff Fails to State A RICO Conspiracy Claim Against Kushner………………10

  II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE WIRETAP ACT AGAINST KUSHNER……………………………………………………………………………11

 III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE DC UNIFORM TRADE SECRETS ACT AGAINST KUSHNER…………………………………………………...12

 IV.   PLAINTIFF FAILS TO STATE A CLAIM UNDER VIRGINIA LAW FOR CONSPIRACY TO COMMIT TRESPASS AGAINST KUSHNER……………………12

  V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VIRGINIA COMPUTER CRIMES ACT AGAINST KUSHNER……...…………………………………….......14

CONCLUSION…………...……………………………………………………………...…15

i

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Adelphia Supply USA*,
  2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ...........................................................................5, 10

*Allen v. New World Coffee, Inc.*,
  2001 WL 293683 (S.D.N.Y. Mar. 27, 2001) ..............................................................................5

*Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*,
  515 F. Supp. 2d 298 (N.D.N.Y. 2007) ................................................................................. 13-14

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ................................................................................................................6

*Arias v. Jokers Wild, Inc.*,
  73 Va. Cir. 281 (2007) ...........................................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................................2-3, 9

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) ........................................................................................................... 11-12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................................2-3, 14

*Bowman v. State Bank of Keysville*,
  229 Va. 534 (1985) ................................................................................................................14

*Catalyst & Chem. Servs., Inc. v. Glob. Ground Support*,
  350 F. Supp. 2d 1 (D.D.C.  2004) ..........................................................................................12

*Citizens United v. FEC*,
  558 U.S. 310 (2010) ...............................................................................................................12

*Cohen v. Cohen*,
  993 F. Supp. 2d 414 (S.D.N.Y. 2014) ...................................................................................7-8

*Com–Tech Assoc. v. Computer Assoc. Int'l, Inc.*,
  753 F. Supp. 1078 (E.D.N.Y.1990) .................................................................................... 10-11

*Congregacion de la Mision Provincia de Venezuela v. Curi*,
  978 F. Supp. 435 (E.D.N.Y. 1997) ........................................................................................10

*Conte v. Newsday, Inc.*,
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) .....................................................................................5

*Coward v. Wellmont Health Sys.*,
    295 Va. 351 (2018) ................................................................................14

*Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC*,
    2004 WL 1574645 (S.D.N.Y. July 13, 2004) ........................................13

*DSMC, Inc. v. Convera Corp.*,
    479 F. Supp. 2d 68 (D.D.C. 2007) .......................................................12

*Eagle One Roofing Contractors, Inc. v. Acquafredda*,
    2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018) .............................. 8-9, 11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    2010 WL 384736, at *4 (N.D. Cal. Jan. 29, 2010) .................................6

*Elsevier Inc. v. W.H.P.R., Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010)........................................4-5, 9-10

*Equinox Gallery Ltd. v. Dorfman*,
    306 F. Supp. 3d 560 (S.D.N.Y. 2018).....................................................3

*Flexborrow LLC v. TD Auto Fin. LLC*,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ....................................................3

*Foster v. 2001 Real Estate*,
    2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015) ........................................5

*Gelber v. Glock*,
    293 Va. 497 (2017) ..............................................................................13

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
    67 F.3d 463 (2d Cir. 1995).....................................................................7

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)............................................. 3-4, 7

*H.J. Inc. v. N.W. Bell Tel. Co.*,
    492 U.S. 229 (1989)...............................................................................7

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990)...................................................................10

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)...............................................................................6

*In re Basic Food Grp., LLC,*
2016 WL 3677673 (Bankr. S.D.N.Y. July 1, 2016) ...................................................8

*Kerrigan v. ViSalus, Inc.,*
112 F. Supp. 3d 580 (E.D. Mich. 2015)....................................................................6

*L-3 Comm. Corp. v. Serco, Inc.,*
2018 WL 1352093 (E.D. Va. Mar. 15, 2018) ........................................................15

*Nasik Breeding & Res. Farm Ltd. v. Merck & Co.,*
165 F. Supp. 2d 514 (S.D.N.Y. 2001)................................................................ 12-13

*Nielsen v. Rabin,*
746 F.3d 58 (2d Cir. 2014)........................................................................................8

*Peterson v. Fairfax Hosp. Sys., Inc.,*
31 Va. Cir. 50 (1993) ..............................................................................................14

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.,*
1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ..............................................................8

*Reich v. Lopez,*
38 F. Supp. 3d 436 (S.D.N.Y. 2014).......................................................................13

*Reich v. Lopez,*
858 F.3d 55 (2d Cir. 2017)....................................................................................6, 8

*Schlaifer Nance & Co. v. Estate of Warhol,*
119 F.3d 91 (2d Cir. 1997)........................................................................................8

*Schmidt v. Fleet Bank,*
16 F. Supp. 2d 340 (S.D.N.Y.1998)..........................................................................4

*Spinale v. United States,*
2004 WL 50873 (S.D.N.Y. Jan. 9, 2004) .................................................................5

*Stultz v. Va. Dep't of Motor Vehicles,*
185 F. Supp. 3d 890 (W.D. Va. 2015) ....................................................................14

*Supinger v. Virginia,*
167 F. Supp. 3d 795 (W.D. Va. 2016) ....................................................................14

*Targum v. Citrin Cooperman & Co., LLP,*
2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013)..........................................................3

*Toms v. Pizzo,*
172 F.3d 38 (2d Cir. 1998)........................................................................................5

*Tysons Toyota, Inc. v. Commonwealth Life Ins.*,
    20 Va. Cir. 399 (1990) ........................................................................15

*U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*,
    683 F. Supp. 1411 (E.D.N.Y. 1988) .......................................................5

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)........................................... 4-5, 10

**Statutes**

18 U.S.C. §1512(c)(2).........................................................................5

18 U.S.C. §1962(c) ..................................................................... 3-4, 10

18 U.S.C. §1962(d) ..................................................................... 3-4, 10

18 U.S.C. §2511(1) .............................................................................11

Va. Code Ann. §18.2-152.3 .................................................................14

Va. Code Ann. §18.2-152.4 .................................................................14

Va. Code Ann. §18.2-152.5 .................................................................14

Defendant Jared Kushner joins Donald J. Trump for President, Inc.'s Motion to Dismiss the Second Amended Complaint (Omnibus Motion), and submits this supplemental motion and memorandum seeking dismissal of all claims against him for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff lumps Kushner in as part of a cast of "Trump Associates" collectively accused of "suspicious communications" with Russian operatives and of offering some undefined form of "active support" to the alleged hacking and dissemination of DNC files,[1] but the Second Amended Complaint (SAC) fails to contain a single factual allegation implicating Kushner in any wrongdoing.  Instead, Kushner is mentioned by name in only 12 of the SAC's 372 paragraphs, and every conceivably relevant thing he is alleged to have done relates to his presence at a single meeting that he is not alleged to have arranged, actively participated in, or responded to by taking any action.  Attending an isolated meeting is not "actively supporting" anything, and while Plaintiff may believe these innocuous facts warrant equating Kushner with its favored antagonists, they state no claim against him upon which relief can be granted.

In addition to the reasons outlined in Defendants' Omnibus Motion, Plaintiff's RICO claims fail because the SAC does not identify Kushner's role in any alleged enterprise, any specific actions he took in its furtherance, any support he provided to it, or any other factual matter to justify the conclusory assertion that he was, or intended to be, involved.

---

[1] Plaintiff claims it was "Russia's intelligence services [who] illegally hacked into the DNC's computer systems . . . [and] then disseminated the stolen, confidential materials through GRU-created websites, as well as WikiLeaks and Assange . . . ."  SAC ¶83.  Plaintiff claims "Trump Associates" contributed some manner of "active[] support[]," but fails to allege any facts that would permit this inference.  *Id.*

Plaintiff also states no claim against Kushner under the Wiretap Act or DC Uniform Trade Secrets Act. Even if the documents purportedly disclosed were confidential communications or "trade secrets" (which takes a fanciful imagination), the SAC alleges that other parties were responsible for obtaining and disseminating them. Plaintiff does not identify a single instance of Kushner intercepting, obtaining, having, using, or providing any assistance with the acquisition of such documents. In any case, the information disclosed is of public concern, so these claims are foreclosed by the First Amendment.

For similar reasons, Plaintiff fails to state a claim against Kushner for conspiracy to commit trespass to chattels. Beyond his alleged attendance at a single meeting, of which Plaintiff tells us essentially nothing, the SAC does not allege a single action or statement involving Kushner that could possibly (let alone plausibly) support an inference that he shared an unlawful purpose or took any actions in support or furtherance of the alleged trespass.

Finally, Plaintiff's claim under the Virginia Computer Crimes Act (VCCA) should be dismissed. The VCCA targets unlawful behavior by persons using a computer, but Plaintiff does not allege that Kushner ever used a computer to commit any proscribed act. Additionally, no authority supports Plaintiff's insinuation that vicarious liability may be imposed under the Act for "aiding and abetting" and, even if it did, Plaintiff does not allege a single fact indicating that Kushner in any way aided and abetted the alleged offense.

## LEGAL STANDARDS ON A MOTION TO DISMISS

A complaint warrants dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" when it does not "contain sufficient factual matter to 'state a claim for relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). If a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the [] complaint must be dismissed."

*Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 662 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'").  Similarly, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Id.* (alteration in original).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Id.*

## ARGUMENT

## I.   PLAINTIFF FAILS TO STATE A RICO CLAIM AGAINST KUSHNER

Plaintiff alleges that Defendants violated 18 U.S.C. §§1962(c) & (d) by engaging in, and conspiring to engage in, a pattern of racketeering activity.  SAC ¶¶265–308.  Although Plaintiff fails to state a viable RICO claim against any Defendant, the allegations against Kushner are particularly deficient.  There are no facts in the SAC connecting Kushner to the alleged RICO violation.  Instead, Plaintiff pleads the type of conclusory, stigmatizing, and frivolous RICO allegations that "courts should strive to flush out . . . at an early stage of the litigation." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017); *see also Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 570 (S.D.N.Y. 2018) ("[C]ourts are encouraged to dismiss RICO allegations at an early stage of the litigation where it is otherwise appropriate to do so.").

### A.  RICO Legal Standards

"A plaintiff's burden is high when pleading RICO allegations." *Targum v. Citrin Cooperman & Co., LLP*, 2013 WL 6087400, at *5 (S.D.N.Y. Nov. 19, 2013).[2]  A plaintiff bringing

---

[2]"[A]lthough civil RICO may be a 'potent weapon,' plaintiffs wielding RICO almost always miss the mark." *Flexborrow*, 255 F. Supp. 3d at 414; *see Gross v. Waywell*, 628 F. Supp. 2d 475, 479–83 (S.D.N.Y. 2009) (surveying

a RICO claim under Section 1962(c) must allege participation in the affairs of an enterprise and a pattern of racketeering activity in the form of two or more qualifying predicate acts. *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 446 (S.D.N.Y. 2004). These elements "must be established as to each individual defendant," and each "must share a common purpose to engage in a fraudulent course of conduct and work together [with the other associated individuals] to achieve such purposes." *Id.* at 447, 451. Allegations directed at multiple defendants, or "'group pleading[s,]' do[] not comply with the requirements of RICO" because "lumping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required." *Gross*, 628 F. Supp. 2d at 495. Moreover, a plaintiff must allege facts showing that each defendant participated "in the operation or management of the enterprise" and had "some part in directing [its] affairs." *U.S. Fire*, 303 F. Supp. 2d at 451. "In this Circuit, the 'operation and management' test is an extremely rigorous test," *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y.1998), and "[i]t is not enough to merely take directions and perform 'tasks that are necessary and helpful' to the enterprise. . . . Nor is it enough to simply provide 'goods and services that ultimately benefit the enterprise.'" *U.S. Fire*, 303 F. Supp. 2d at 451–452; *see also Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) (dismissing RICO claims against individual defendants because "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise").

Additional specificity is required in alleging a RICO conspiracy under Section 1962(d). A plaintiff must "assert that 'each defendant by words or actions, manifested an agreement to commit

---

the 145 civil RICO cases filed in this District in 2004-2007 and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage).

two predicate acts in furtherance of the common purpose of a RICO enterprise.'" *U.S. Fire*, 303 F. Supp. 2d at 453 (citing *Allen v. New World Coffee, Inc.*, 2001 WL 293683, at *8 (S.D.N.Y. Mar. 27, 2001)). Moreover, a conspiracy claim under Section 1962(d) cannot survive if plaintiff fails to state a claim under Section 1962(c). *Elsevier*, 692 F. Supp. 2d 297 at 312; *Foster v. 2001 Real Estate*, 2015 WL 7587360, at *5–6 (S.D.N.Y. Nov. 24, 2015).

### B. Plaintiff Does Not Allege That Kushner Committed Any Predicate Acts

The so-labelled "Trump Associates" are alleged to have provided some unspecified "support" to the alleged trade secret theft and economic espionage,[3] but such "broad aiding and abetting allegation[s]" ignore the "requirement that at least two acts of racketeering per defendant be alleged." *U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F. Supp. 1411, 1427 (E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989); *see also Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *6 (E.D.N.Y. Jan. 4, 2017) ("Simply aiding and abetting a [RICO] violation is not sufficient to trigger liability."); *Spinale v. United States*, 2004 WL 50873, at *6 (S.D.N.Y. Jan. 9, 2004) ("Courts in this district have routinely held that 'aiding and abetting' a RICO enterprise is not a valid cause of action."). Evidently realizing this, Plaintiff adds a conclusory allegation that on "July 24, 2017, Kushner corruptly attempted to obstruct or impede an official proceeding, in violation of 18 U.S.C. § 1512(c)(2)" by initially failing to disclose information concerning the Trump Tower meeting during his congressional security clearance

---

[3] Neither of these are viable predicate acts. *See Toms v. Pizzo*, 172 F.3d 38 (2d Cir. 1998) ("trade secret theft . . [is] not [a] predicate act[] for purposes of the RICO statute"); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 138 n.9 (E.D.N.Y. 2010) (economic espionage "does not qualify as a predicate act under the RICO statute").

hearing.  SAC ¶¶213, 299.  This factual claim is false,[4] but even if true amounts to nothing more than a claim Kushner committed a single, non-RICO predicate.

RICO predicates must lead "directly to the plaintiff's injuries," *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006),[5] and relate to both each other and the alleged enterprise.  *Reich v. Lopez*, 858 F.3d 55, 61 (2d Cir. 2017).  Racketeering acts are related to the enterprise when "the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise."  *Id*.  Racketeering acts are related to each other when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Id.*

Not only is the alleged attempt to influence his security clearance the *sole* predicate attributed to Kushner, it does not relate to Plaintiff's injuries or any RICO scheme to influence a

---

[4] The suggestion that Kushner attempted to impede the proceeding is undermined by the very article Plaintiff cites, which admits that errors are common in such filings, that Kushner promptly corrected the error, and that he may not have needed to declare the information at all, but chose to out of an abundance of caution.  SAC ¶213 n.189.  It is ironic that Plaintiff has so little sympathy for Kushner's need to amend his filings despite requiring three iterations of the complaint just to include this allegation that has been publically known since at least 2017.

[5] This proximate cause must be established as to each defendant.  *See Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 608 (E.D. Mich. 2015) ("in order to state a § 1962(c) claim against any Defendant, Plaintiffs must allege a clear causal connection between that Defendant's alleged predicate acts and their injuries."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 2010 WL 384736, at *4 (N.D. Cal. Jan. 29, 2010) (dismissing RICO claim where "the complaint does not adequately allege that each defendant proximately caused plaintiff's damages"); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-74 (1992) (where the "link" between conduct alleged and plaintiffs' harm is "too remote," "purely contingent," or "indirect[]," RICO claims "run afoul of proximate causation standards").

presidential election that had concluded months prior.  Thus, it is no predicate act at all.[6]  And to

the extent Kushner's ability to commit the alleged offense was enabled by any position he held, it

would be his position in the Administration requiring him to obtain security clearance, not an

alleged enterprise that illegally benefited that Administration.  *See Cohen v. Cohen*, 993 F. Supp.

2d 414, 425 (S.D.N.Y. 2014) ("Any number of a defendant's activities or affiliations might create

the circumstances for a RICO predicate act, but the legal question is whether the predicate act

could rationally be ascribed to the enterprise such that it was conduct of an enterprise within the

meaning of the RICO act.").

Nor is Kushner's alleged omission related to the other claimed predicates in purpose, result,

participants, victims, or methods of commission.  Plaintiff's RICO theory is that Defendants, for

the purpose of securing the presidential election, hacked and disseminated its files, which resulted

in Plaintiff's harm.  SAC ¶¶276-304.  Kushner, by contrast, is alleged to have tried to influence

his security clearance by deliberately omitting information provided to the congressional

committee      overseeing      that      determination.[7]      This      is      exactly      the      type      of

"unrelated predicate act[] allegedly committed against [other] victims . . . . [pled] to extend the

scope of the pattern of racketeering activity" that these relatedness requirements prohibit.  *Cohen*,

---

[6] A RICO predicate must "amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  As the alleged omission was quickly cured, cannot be repeated, and could not have furthered the purposes of the alleged enterprise, it never posed any future threat of criminal activity.  *See GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (it "defies logic to suggest that" particular racketeering acts will continue where they are incapable of further benefiting the alleged enterprise); *Gross*, 628 F. Supp. 2d at 496 (rejecting alleged predicate acts that presented "no threat of continuing or renewed criminal activity").

[7] Notably, Kushner allegedly omitted information in a hearing regarding his security clearance rather than in an investigation of the alleged RICO activities.  SAC ¶¶291-303.

993 F. Supp. 2d at 425; *see also Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, 1996 WL 442799, at

*6 (S.D.N.Y. Aug. 6, 1996) (rejecting the relatedness of predicates that were not directed at

plaintiff and not alleged to have injured plaintiff); *In re Basic Food Grp., LLC*, 2016 WL 3677673,

at *11 (Bankr. S.D.N.Y. July 1, 2016) (same).[8]

### C. Plaintiff Pleads Nothing Connecting Kushner to The Alleged RICO Violation

The remaining allegations fail to support any of the inferences necessary to state a RICO

claim against Kushner.  For example, Plaintiff alleges nothing that would permit any inference that

Kushner (1) shared the purported unlawful purpose, (2) participated in the operation or

management of the alleged enterprise, (3) agreed to commit any racketeering acts in its furtherance,

or (4) provided any support or aid whatsoever.  Instead, Plaintiff factually alleges that Kushner:

1) is President Trump's son-in-law and senior advisor, and was a "decision-maker" for the campaign's "data-driven efforts," including social media and analytics.  SAC ¶59.

2) attended a June 7, 2016 meeting with Trump campaign personnel.  *Id.* ¶219.

3) attended a June 9, 2016 meeting at Trump Tower and was privy to some correspondence regarding this meeting before it occurred.  *Id.* ¶¶137, 219.

4) proposed establishing a secure communications channel between the Russian government and the Trump transition team after Trump had already won the election.  *Id.* ¶220.[9]

None of these allegations imply any common unlawful purpose, "identify what role, if any,

[Kushner] had in the operation or management of the alleged enterprise," or amount to "facts that,

---

[8] Even if Kushner hoped his omission would benefit the enterprise, which Plaintiff has not even suggested, this would

be insufficient.  *See Reich*, 858 F.3d at 62; *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).

[9] Plaintiff also alleges Kushner mislead "the Special Counsel, the FBI, and Congressional committees," SAC ¶30, but

this claim is based on Plaintiff's disagreement with Kushner's innocent explanations rather than any actual evidence

of bad intent.  SAC ¶¶219–20.  Such a "conclusory allegation[]. . . . couched as [a] factual allegation[]"is not presumed

true.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

if proved, would demonstrate some degree of control over the enterprise." *Eagle One Roofing Contractors, Inc. v. Acquafredda*, 2018 WL 1701939, at *8 (E.D.N.Y. Mar. 31, 2018). Plaintiff alleges the June 9, 2016 Trump Tower meeting was preceded by an exchange among other people—Defendant Trump Jr. and a Russian individual—regarding certain unspecified "official documents and information" that could incriminate Hillary Clinton. SAC ¶¶132–36. Whether Kushner believed that such documents were to be discussed at the meeting or not,[10] Plaintiff does not allege that Kushner was provided any information regarding the nature or source of the documents such that he would have any reason to believe they were unlawfully obtained or were intended for unlawful use. Moreover, Plaintiff does not allege that Kushner learned anything further about the documents at the meeting, actively participated, or agreed to do anything at or in response to the meeting. Standing alone, Kushner's mere attendance does not support any inference that he conspired to hack and disseminate DNC files to unlawfully influence the presidential election, or managed and controlled those efforts through the alleged enterprise. Nor does it evince any "active support and approval," SAC ¶82, of the alleged scheme, which would also be insufficient. *See Acquafredda*, 2018 WL 1701939, at *8 (dismissing a RICO claim because the complaint alleged only that the defendant "aided and abetted" the enterprise); *Elsevier*, 692 F. Supp. 2d at 308 ("provid[ing] services that were helpful to" an enterprise is no RICO violation).

---

[10] This claim is based on 1) the assertion that Kushner was forwarded emails from Trump Jr. with the subject line "Russia – Clinton – private and confidential," and 2) a blatant mischaracterization of a statement by Rudy Giuliani regarding a separate meeting that occurred two days before. SAC ¶219. The email subject line alone does not convey that the meeting was about incriminating documents, and Kushner's statement cited by Plaintiff is that he read only the top email concerning the meeting time, but not the chain of correspondence. *Id.* ¶220 n.201. The second assertion incorrectly reports that Giuliani described a meeting Kushner attended on June 7, 2016 as "preparatory" for the Trump Tower meeting, but Giuliani denied that the meeting was related in any way to the Trump Tower meeting. *Id.* n.200.

Finally, the allegation that Kushner proposed setting up a secure communication channel between the Russian government and the Trump transition team suggests no wrongdoing. True or not,[11] there are countless possible reasons that Kushner may have wanted such a connection, including the asserted need to exchange information concerning Syria. SAC ¶220 n.201. The more implausible reason is that he hoped it would, in some way that defies explanation, help secure a presidential election that had already been won. This allegation cannot even be described as "merely consistent with a defendant's liability," which, in any case, "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

### D.  Plaintiff Fails to State A RICO Conspiracy Claim Against Kushner

Plaintiff's RICO conspiracy claim under Section 1962(d) would fail even were it not proscribed by failure to allege a substantive RICO violation under Section 1962(c). First, Plaintiff's claim that Kushner knew of or stood to benefit from the alleged scheme is insufficient even if true (it is not). *See Abbott*, 2017 WL 57802, at *9 ("Even if Abbott's allegations gave rise to the inference that the defendants knew about the scheme, 'mere knowledge of the scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy.'") (citing *Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435, 451 (E.D.N.Y. 1997)). Second, Plaintiff alleges nothing at all plausibly connecting Kushner to the alleged scheme—much less "words or actions [that] manifest[] an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise." *U.S. Fire*, 303 F. Supp. at 453; *see also Elsevier*, 692 F. Supp. 2d at 313 ("[A] complaint alleging a violation of § 1962(d) must contain allegations of 'some factual basis for a finding of a conscious agreement among the defendants.'") (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)); *Com–Tech*

---

[11] Plaintiff offers only conflicting accounts by Kushner and a Russian individual. SAC. ¶220.

*Assoc. v. Computer Assoc. Int'l, Inc.*, 753 F. Supp. 1078, 1092 (E.D.N.Y.1990); *Acquafredda*, 2018 WL 1701939, at *8 (dismissing a RICO claim because allegations that the defendant "aided and abetted" the enterprise "merely lump[s] [the defendant] with others in the enterprise"). Plaintiff's RICO claims against Kushner must be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE WIRETAP ACT AGAINST KUSHNER

Plaintiff fails to state a claim under the Wiretap Act against Kushner for the same reason the RICO claims fail—there is no allegation that Kushner was involved in the alleged hacking and dissemination of documents. Plaintiff asserts a violation of 18 U.S.C. §2511(1)(c) & (d),[12] which reproves the intentional use and disclosure of unlawfully intercepted electronic communications. But Plaintiff's claim that Kushner knowingly used information unlawfully obtained and disclosed by others is a textbook legal conclusion that requires supporting factual allegations. SAC ¶312. There are none—not a single example of Kushner intercepting or using any confidential information. Nor does Plaintiff allege that Kushner knew how the alleged DNC information was obtained by others, so it is implausible to assert that he knew it was "unlawfully intercepted."

Regardless, Plaintiff fails to allege that Kushner had access to or used any confidential communications before they had been intercepted and disclosed to the public by others. SAC ¶83. Any subsequent obtaining and use by Kushner would not offend the Wiretap Act. *Bartnicki v. Vopper*, 532 U.S. 514, 525 (2001) (even a party with knowledge of unlawful interception does not violate the Wiretap Act by using and further disseminating the information by lawful means). This is particularly true here, where Plaintiff concedes that the information was of public importance by alleging that it was relevant to, and affected how, the public voted in a presidential election.

---

[12] The Omnibus Motion explains that there is no vicarious or "aiding and abetting" liability under the Wiretap Act.

*See e.g.*, SAC ¶¶13, 26, 84, 196, 203; *Bartnicki*, 532 U.S. at 534 (First Amendment counsels against Wiretap Act liability for disseminating communications of public importance, even where it is known they were unlawfully intercepted); *see also Citizens United v. FEC*, 558 U.S. 310, 339 (2010) ("The First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for public office.").  Because Plaintiff fails to allege any fact linking Kushner to the alleged violation of the Wiretap Act, and by Plaintiff's own allegations, any subsequent use by him would have been lawful and constitutionally protected, this claim must be dismissed.

### III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE DC UNIFORM TRADE SECRETS ACT AGAINST KUSHNER

Plaintiff's claim under the DC Uniform Trade Secrets Act fails.  "To establish a trade secret misappropriation claim, [Plaintiff] must demonstrate (1) the existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper use or disclosure by one under a duty not to disclose." *DSMC, Inc. v. Convera Corp.,* 479 F. Supp. 2d 68, 77 (D.D.C. 2007).  Yet, Plaintiff does not claim that Kushner received, used, or disseminated any information before it was allegedly disclosed to the public by others.  "[O]nce material is publicly disclosed, it loses any status it ever had as a trade secret." *Catalyst & Chem. Servs., Inc. v. Glob. Ground Support*, 350 F. Supp. 2d 1, 9 (D.D.C.  2004), *aff'd*, 173 F.  App'x 825 (Fed. Cir. 2006); *see also DSMC*, 479 F. Supp. 2d at 78 ("[A]s a matter of law, however . . . trade secret law does not protect information that is 'easily ascertainable by the public . . .'.").  Moreover, Plaintiff fails to identify any instance of Kushner receiving, disclosing, or using any of the alleged trade secrets, or any action that could possibly be considered a "misappropriation" of anything.  This claim must be dismissed.

### IV.   PLAINTIFF FAILS TO STATE A CLAIM UNDER VIRGINIA LAW FOR CONSPIRACY TO COMMIT TRESPASS AGAINST KUSHNER

Just as Plaintiff failed to properly allege a RICO conspiracy, Plaintiff also fails to state a conspiracy claim against Kushner under Virginia law.  *See Nasik Breeding & Res. Farm Ltd. v.*

*Merck & Co.,* 165 F. Supp. 2d 514, 540–41 (S.D.N.Y. 2001) (civil conspiracy claim fails because plaintiff failed to prove a RICO conspiracy).  "A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Gelber v. Glock*, 293 Va. 497, 533 (2017). Plaintiff's conspiracy claim relies on the underlying tort of trespass to chattels, which "is defined in Virginia as the intentional use or intermeddling with the personal property of another without authorization from the property's owner." *Arias v. Jokers Wild, Inc.*, 73 Va. Cir. 281 (2007).

Again, Plaintiff does not allege that Kushner performed the alleged trespass or anything supporting the conclusory claim that he "knowingly and substantially assisted."  SAC ¶359. Plaintiff asserts that Kushner was "generally aware of his role as part of an overall common scheme," *id.*, but does not identify this role or offer any explanation, coherent or otherwise, for how Kushner attending a single meeting could be "substantially assisting" anything.  As with the RICO claim, Plaintiff's ability to attune a malicious agenda to ostensibly lawful behavior is not evidence of criminal intent.  *See Reich v. Lopez*, 38 F. Supp. 3d 436, 461 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017) ("[T]he civil conspiracy allegation turns on whether Plaintiffs have pleaded with particularity that [the individual defendant] actually agreed to a conspiracy to defame.").  Plaintiff has not provided any "factual basis from which it can be inferred that [Kushner] did anything to cause the offending articles to be published by [different defendants]," and such "[c]onclusory claims of conspiracy that are not pleaded with sufficient factual grounding should be dismissed." *Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC*, 2004 WL 1574645, at *3, *4 (S.D.N.Y. July 13, 2004); *see also Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 318 (N.D.N.Y. 2007) ("more than a conclusory allegation of

conspiracy or common purpose is required to state a cause of action against a nonactor, who must have allegedly engaged in some independent culpable behavior").[13]

## V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VIRGINIA COMPUTER CRIMES ACT AGAINST KUSHNER

Plaintiff's claim that Kushner violated the Virginia Computer Crimes Act fails as well. The VCCA penalizes any person with the requisite malicious intent "who uses a computer or computer network" "without authority . . ." to commit the various prohibited acts.  Va. Code Ann. §§18.2-152.3, 18.2-152.4, 18.2-152.5.  Plaintiff does not allege that Kushner used a computer or performed any of the listed prohibited acts.  Instead, Plaintiff claims "[e]ach Defendant knowingly aided, abetted, encouraged, induced, instigated, contributed to and assisted Russia's violation of" the VCCA.  SAC ¶371.  But Kushner cannot be liable under the VCCA for aiding and abetting a violation by others and, factually, Plaintiff has failed to allege a sufficient aiding and abetting claim against Kushner.  *See Supinger v. Virginia*, 167 F. Supp. 3d 795, 821 (W.D. Va.  2016) (dismissing a conclusory claim under the VCCA because the "complaint lacks sufficient factual allegations 'to raise a right to relief above the speculative level'") (citing *Twombly*, 550 U.S. at 555); *Stultz v. Va. Dep't of Motor Vehicles*, 185 F. Supp. 3d 890, 903–04 (W.D. Va. 2015) (same).

---

[13] Virginia courts would reach the same outcome.  *See Bowman v. State Bank of Keysville*, 229 Va. 534, 541 (1985) ("The conspiracy theory is asserted in mere conclusory language and the argument in support of the theory is based on inferences that are not fairly and justly drawn from the facts alleged."); *Peterson v. Fairfax Hosp. Sys., Inc.*, 31 Va. Cir. 50 (1993) ("the complaint fails to specify in what manner each of the individual defendants was involved in such conspiracy . . . ."); *Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 (2018) ("Nor does the complaint allege with specificity a civil conspiracy. . . .  If any vitiation inference is to be drawn, it must come from the specific factual allegations against each of these defendants.").

The VCCA does not permit a claim against a party who did not actually use or operate a computer to effectuate the enumerated crimes, which is consistent with Virginia's general rejection of aiding and abetting liability.  *See L-3 Comm. Corp. v. Serco, Inc.*, 2018 WL 1352093, at *9 (E.D. Va. Mar. 15, 2018) ("Virginia does not recognize an aiding and abetting theory of tort liability.").  Virginia law instead uses the vehicle of civil conspiracy to attach secondary or vicarious liability to a party accused of aiding or abetting another's unlawful activity.  *See Tysons Toyota, Inc. v. Commonwealth Life Ins.*, 20 Va. Cir. 399 (1990).  Not only has Plaintiff not listed the alleged VCCA violation as a predicate act in its Virginia civil conspiracy claim, but Plaintiff can state no conspiracy claim against Kushner for the reasons already expounded.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Mr. Kushner should be dismissed.

Dated: March 4, 2019                              Respectfully submitted,


                                                  /s/ Abbe David Lowell

                                                  Abbe David Lowell (NY Bar No. AL2981)
                                                  ADLowell@winston.com
                                                  Christopher D. Man *(pro hac)*
                                                  CMan@winston.com
                                                  Kyllan J. Gilmore
                                                  KGilmore@winston.com
                                                  WINSTON & STRAWN LLP
                                                  1700 K Street, NW
                                                  Washington, DC 20006
                                                  T: 1-202-282-5000
                                                  F: 1-202-282-5100

                                                  *Counsel for Jared Kushner*

15

**CERTIFICATE OF SERVICE**

I certify that on March 4, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

Dated:   March 4, 2019

/s/ *Christopher D. Man*
Christopher D. Man

*Counsel for Jared Kushner*

16

**CERTIFICATION OF COMPLIANCE**

I certify that this memorandum is 5,926 words long (inclusive of footnotes) and a total of

15 pages, in compliance with the Court's Scheduling Order dated October 1, 2018.


Dated:    March 4, 2019                          /s/ *Christopher D. Man*
                                                 Christopher D. Man

                                                 *Counsel for Jared Kushner*