UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

DEMOCRATIC NATIONAL COMMITTEE,  :

                        Plaintiff,      :           18 Civ. 3501 (JGK)

       - against -           :

THE RUSSIAN FEDERATION, et al.,    :

                      Defendants.    :
--------------------------------------------------------X


SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT WIKILEAKS'S PRE-TRIAL MOTION TO DISMISS
<u>THE SECOND AMENDED COMPLAINT</u>

Joshua L. Dratel
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732 - 0707
LLewis@joshuadratel.com

*Attorney for Defendant WikiLeaks*

TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

POINT I

THE CLAIMS AGAINST WIKILEAKS IN THE SECOND AMENDED
COMPLAINT SHOULD BE DISMISSED FOR THE REASONS SET
FORTH IN WIKILEAKS'S INITIAL MOTION TO DISMISS. . . . . . . . . . . . . . . . . . . . . . . . 2

A.      *The SAC Fails to Cure Several of the Fundamental Fatal Defects
        in the FAC.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.      *The SAC Fails to Cure the Insufficiency of the Theft of
                Trade Secrets Claim.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        2.      *The SAC's Additions Fail to Rescue the Racketeering
                Claims from Dismissal.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.      *The Additions in the SAC Support WikiLeaks's Motion to Dismiss.* . . . . . . . . . . . . . . . . . 6

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i

TABLE OF AUTHORITIES

CASES

*Albright v. Attorneys Title Ins. Fund*, 504 F.Supp.2d 1187 (D. Utah 2007) . . . . . . . . . . . . . . . . . 5

*Barsam v. Pure Tech Int'l, Inc.*, 864 F. Supp. 1440 (S.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . . . . 5

*Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018). . . . . . . . . . 3

*Grunewald v. United States*, 353 U.S. 391 (1957).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Krulewitch v. United States*, 336 U.S. 440 (1949).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lutwak v. United States*, 344 U.S. 604 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Netyksho*, 18 Cr. 215 (ABJ) (D.D.C.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Marcus Schloss & Co.*, 710 F. Supp. 944 (S.D.N.Y. 1989).. . . . . . . . . . . . . . . . 4

STATUTES

18 U.S.C. §251............................................................................................ 2

18 U.S.C. §1503.......................................................................................... 5

18 U.S.C. §1512 .......................................................................................... 5

18 U.S.C. §1831 ..................................................................................... 2, 3

18 U.S.C. §1839(a)(3)................................................................................. 3

18 U.S.C. §1839(a)(3)(A)-(B)..................................................................... 3

18 U.S.C. §1963.......................................................................................... 3

47 U.S.C. §230............................................................................................ 2

## Introduction

This Supplemental Memorandum of Law is submitted on behalf of defendant WikiLeaks in support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") (ECF Dkt # 217), and supplements WikiLeaks' previously filed Motion to Dismiss the First Amended Complaint (ECF Dkt # 208) (WikiLeaks's Initial Motion"). This Supplemental Memo of Law respectfully incorporates by reference WikiLeaks's Initial Motion and applies it to the SAC. WikiLeaks also joins in the joint Memorandum of Law filed today on behalf of all defendants ("Defendants' Joint Memo").

The SAC does not add much with respect to WikiLeaks, and certainly nothing of substance. It does not add any claims for relief;  nor does it allege any conduct that could support a cause of action, or legitimately contribute to the insufficient allegations in the First Amended Complaint ("FAC"), or challenge WikiLeaks's position as a publisher fully protected by the First Amendment – just like so many other media organizations that have published and continue to publish the same and other similar material.

Indeed, as set forth below, examination and analysis of that which the SAC adds regarding WikiLeaks – including a highly publicized subsequent indictment that again places WikiLeaks solely in a publishing role without any allegation of legal liability – merely reinforces quite convincingly WikiLeaks's initial motion to dismiss. Thus, this Supplemental Memo of Law is directed solely at the material added to the SAC.

Accordingly, for the reasons set forth below, as well as in WikiLeaks's initial Motion to Dismiss, and the motions to dismiss filed by other defendants, it is respectfully submitted that WikiLeaks's motion to dismiss the SAC should be granted in its entirety.

1

## ARGUMENT

## POINT I

## THE CLAIMS AGAINST WIKILEAKS IN THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR THE REASONS SET FORTH IN WIKILEAKS'S INITIAL MOTION TO DISMISS

**A.**    *The SAC Fails to Cure Several of the Fundamental Fatal Defects in the FAC*

As a threshold matter, the SAC is more notable for what it does *not* contain than for what it amends.  As noted above, the SAC does not add any causes of action against WikiLeaks.  The SAC does not provide any information that would undermine in any respect WikiLeaks's role simply as a publisher of the materials at issue, a function fully protected by the First Amendment as set forth in WikiLeaks's Initial Motion at POINT I (pp. 3-9).  The same is true with respect to WikiLeaks's immunity as an interactive computer service pursuant to 47 U.S.C. §230, covered in POINT II (pp. 10-12)

Nor does the SAC add any allegations that would overcome the lack of personal jurisdiction over WikiLeaks, as discussed in WikiLeaks's Initial Motion at POINT VI (pp. 19-23), or establish venue in the Southern District of New York.  *Id.*, at POINT VII (pp. 23-25). Likewise, the SAC does not alter the insufficient claims pursuant to 18 U.S.C. §251 intercepted communications claim (Claim IV), addressed in WikiLeaks's Initial Motion at POINT IV (pp. 17).

**1.**    *The SAC Fails to Cure the Insufficiency of the Theft of Trade Secrets Claim*

The SAC does tweak the language of Plaintiff's trade secrets claim pursuant to 18 U.S.C. §1831 , but to no avail, as the SAC fails to cure the several statutory deficiencies pointed out in WikiLeaks's Initial Motion, at POINT V (pp. 17-19), and like the FAC still does not describe

2

anything that satisfies §1839(a)(3)'s definition of a trade secret.  For example, at ¶ 156, the SAC alleges as trade secrets, "donor lists and detailed proprietary fundraising strategies based on the [Democratic National Committee's] analysis of trends in donation data collected over years."

Yet that does not describe the necessary "narrow category of confidential information," *see Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *2 (S.D.N.Y. Jan. 23, 2018), constituting "financial, business, scientific, technical, economic, or engineering information . . ." 18 U.S.C. §1839(a)(3)(A)-(B).  *See Elsevier*, 2018 WL 557906, at *2 ("'confidential information' is not equivalent to 'trade secrets'").  *See also* WikiLeaks's Initial Motion, at 18.

In addition, the SAC adds statutory language – in particular, that the purported trade secrets were acquired "intending or knowing that those offenses would benefit the Russian government, Russian instrumentalities, or Russian agents," and including precise subsections of 18 U.S.C. §1831, *see* ¶¶ 277-78, 280, 282-83, 287-88 – but still has not made any factual allegation to support such claims against WikiLeaks.  Consequently, the trade secret claims still fail to state a claim against WikiLeaks.  *See also* WikiLeaks's Initial Motion, at 17-19.

    **2.**    ***The SAC's Additions Fail to Rescue the Racketeering Claims from Dismissal***

The SAC does seek to expand the nature of its claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1963, by adding allegations with respect to events occurring *after* the 2016 election that the SAC contends establishes obstruction of justice and witness tampering aimed at "solidify[ing]" Donald Trump's "grip on the presidency."  *See* SAC, at ¶¶ 5.

However, both general case law and specific RICO jurisprudence, as well as the lack of any pleaded facts with respect to WikiLeaks, preclude Plaintiff's attempt to extend the alleged

RICO enterprise's and/or racketeering activity's "continuity." *See also* WikiLeaks's Initial Motion, at 16.  As a result, the RICO claims remain fatally flawed, and the SAC does not salvage them.  *See also* Defendants' Joint Memo, at Point III(C)(2).

For instance, in *Grunewald v. United States*, 353 U.S. 391 (1957), the Supreme Court rejected the government's attempt to extend the charged conspiracy beyond the accomplishment of its object by including subsequent efforts to conceal it from detection.  In *Grunewald*, the government argued – in an effort to avoid the expiration of the statute of limitations – that acts of concealment that occurred within the limitations period could "be deemed part of the conspiracy and . . . extend its duration."  353 U.S. at 399.

*Grunewald* relied upon *Krulewitch v. United States*, 336 U.S. 440 (1949), in which the Supreme Court "rejected the . . . contention that in every conspiracy there is implicit an agreement as a part thereof for the conspirators to collaborate to conceal the conspiracy."  336 U.S. at 455, *citing Lutwak v. United States*, 344 U.S. 604, 616 (1953).  *Grunewald* represented the third time the  Supreme Court affirmed the principle that

> after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment.

*Grunewald*, 353 U.S. at 401-02;  *see also United States v. Marcus Schloss & Co.*, 710 F. Supp. 944, 947 (S.D.N.Y. 1989) (applying *Grunewald* to hold that "a joint effort by some of those involved" in the original conspiracy "to cover up their crime . . cannot form a part of the original conspiracy, in the absence of proof of an express original agreement on the part of the conspirators to commit and suborn perjury . . . if the conspiracy was detected").

4

In the RICO context, just as under *Grunewald* acts of concealment or allegations of a cover-up cannot be used to extend the life of the initial conspiracy, "efforts at covering up the initial fraudulent act are inadequate to satisfy the continuity requirement of the RICO statute." *Barsam v. Pure Tech Int'l, Inc.*, 864 F. Supp. 1440, 1450 (S.D.N.Y. 1994), *vacated pursuant to settlement*, 907 F. Supp. 79 (S.D.N.Y. 1995) (collecting cases); *see also Albright v. Attorneys Title Ins. Fund*, 504 F.Supp.2d 1187 (D. Utah 2007) ("attempts merely to conceal an underlying illegal predicate act are not sufficient to establish the open-ended continuity required for RICO claims").  Thus, the case law decidedly forecloses the SAC's attempt to rescue its RICO claims. *See also* Defendants' Joint Memo(s), at Point III(C)(2).

In addition to that dispositive deficiency as a matter of law, the SAC does not plead any post-election facts that could include WikiLeaks within any RICO conduct or conspiracy, or any other tortious conduct.  As a result, while the SAC makes omnibus obstruction-related accusations against the "defendants," *see* SAC, at ¶¶ 276, 291 & 295, pursuant to 18 U.S.C. §1503 (obstruction of justice), and 18 U.S.C. §1512 (relating to tampering with a witness, victim, or an informant), notably absent are any communications from or to WikiLeaks regarding the alleged cover-up involving Roger Stone, Jerome Corsi, and Randy Credico (or anyone else).

Indeed, the SAC, at ¶ 207, alleges an electronic communication that entirely refutes any assertion that WikiLeaks participated in any post-election concealment:  "On November 9, 2016, the same day Trump won the 2016 election, WikiLeaks sent a private message to Stone on Twitter:  'Happy?  We are now more free to communicate.'"  An invitation to speak *more* freely

demonstrates the *opposite* of a cover-up.[1]  Also, that Twitter message was cited not in the *Stone*

Indictment, but rather in a February 2017 magazine article (*See* SAC, at 13, n.181) that also

noted that WikiLeaks had earlier, in October 2016, in another private Twitter message, cautioned

Mr. Stone against making "false claims of association" between WikiLeaks and Mr. Stone.

Indeed, the article concludes that the "substance of the messages [between Mr. Stone and

WikiLeaks] does seem to corroborate, however, Stone and WikiLeaks' denials prior to October

13 that they had coordinated in any significant way." *Id*.

Accordingly, the SAC's amendments fail to cure the FAC's numerous defects.

Consequently, the SAC fails to state a viable RICO cause of action, or any other cause of action,

against WikiLeaks.

**B.      *The Additions in the SAC Support WikiLeaks's Motion to Dismiss***

Indeed, the SAC is perhaps more remarkable for what limited additional information it

does include with respect to WikiLeaks, as those additions – which either refute Plaintiff's

allegations of wrongdoing, or consist merely of unsubstantiated and discredited hearsay reports

that are immaterial to the issues in this case – demonstrate the patent insufficiency of the

allegations against WikiLeaks, and support WikiLeaks's motion to dismiss.

For example, references to the indictment of Roger J. Stone, Jr., *United States v. Stone*,

---

[1]  In addition, the SAC still fails to identify any damages cognizable under RICO, and/or which can be attributed to WikiLeaks's alleged conduct (even if it were actionable).  At ¶ 254, the SAC alleges that "[t]he DNC bore the cost of all of these activities, including purchasing new computer hardware and equipment, paying for an ongoing hacking-monitoring services subscription (capable of detecting Cozy Bear, Fancy Bear, and similar intruders)."  Yet all of those claimed damages are unrelated to WikiLeaks's publication of the materials, as the pre-existing cyber-intrusion alone was responsible for requiring those security measures and attendant costs.  *See also* Defendants' Joint Memo(s) at Point III(D).

19 Cr. 18 (ABJ) (D.D.C.) (ECF #1) ("*Stone* Indictment"), *see* SAC, at ¶¶ 58, 170, 174, 176 & 215, reinforce the conclusion that WikiLeaks's publication of the materials constituted neither a crime nor conspiratorial activity.  The *Stone* Indictment, which was the product of a federal grand jury proceeding replete with the panoply of sophisticated, intrusive, and exhaustive investigative measures, like the previous indictment in *United States v. Netyksho*, 18 Cr. 215 (ABJ) (D.D.C.) (ECF Dkt #1) ("*Netyksho*"), *see* WikiLeaks's Initial Motion, at 5 & n. 5, and other charges instituted by the Special Counsel, does not allege any wrongdoing by WikiLeaks.

The *Stone* Indictment identifies WikiLeaks as "Organization 1" – not as a co-conspirator or participant in criminal conduct any respect.  *See Stone* Indictment, at ¶¶ 3.  In fact, the criminal conduct alleged in the *Stone* Indictment is not any of the alleged communications involving WikiLeaks, or WikiLeaks's  conduct, but rather Mr. Stone's alleged lies to investigators.  *Id*., at ¶¶ 43.

Further rebutting its allegations of WikiLeaks's membership in any conspiracy, the SAC notes that

> Though [sic] October 2016, GRU Operatives using the screenname Guccifer 2.0 "release[d] documents through WordPress that they had stolen from [a Democratic organization] and [the] DNC."[] For example, on October 18, 2016, the GRU Operatives posted screenshots on WordPress of previously-unreleased documents stolen from the DNC.[]

SAC, at ¶ 195, *quoting Netyksho, at ¶ 43,* and Guccifer2, *Trump's Taxes: Clinton Campaign Prepares A New Provocation,* Wordpress (Oct. 18, 2016), available at <https://guccifer2.wordpress.com/2016/10/18/trumps-taxes/>.

Thus, consistent with WikiLeaks's limited and protected role as a publisher, even after

7

WikiLeaks published certain materials, it was not the source of additional subsequent disclosures by those the SAC claims hacked Plaintiff's servers.

Other amendments to the FAC are so specious and/or lacking in any probative value that they illustrate Plaintiff's recognition that the FAC was, and the SAC is, plainly insufficient to state any cause of action against WikiLeaks.  Indeed, if Plaintiff possessed and could plead sufficient *facts* with respect to WikiLeaks, it would not be compelled to resort to such frivolous and/or irrelevant contentions as have been added to the SAC.

For example, at ¶ 221, the SAC alleges that "[l]ike Russia, Assange and WikiLeaks also worked to undermine the Special Counsel's investigation[]" by tweeting July 29, 2017, the question, "Will Special Prosecutor Robert Mueller Fabricate The Results Of His Investigation Like He Did With Iraq?"  Of course, the SAC cannot provide *any* connection between that query, posed nine months after the 2016 election and a year after WikiLeaks initial publication of the materials at issue, and the allegations and causes of action in the SAC.

Similarly, the SAC again leaps to the preposterous at ¶ 232 (and ¶ 31) with its inclusion of the claim that "]i]n August 2017, Russia attempted to hack into the Senate computer network of Democratic Senator Claire McCaskill – a longtime critic of Trump, Russia, and WikiLeaks – and the networks of two other midterm candidates."  How that alleged attempted hack implicates WikiLeaks (and/or warrants its inclusion in that paragraph) beyond the scurrilous hopelessly attenuated guilt-by-association tenor of the allegation, the SAC fails to, and cannot, explain.[2]

---

[2]  In April 2017, much closer in time to the attempted hack alleged in ¶ 232, then-Senator McCaskill criticized a "single-payer" health care system, a proposal championed by Senator Bernie Sanders (I – Vt.).  It is unclear why Sen. Sanders was not included in ¶ 232 as among the reputed suspects who had an interest in or motivation for the attempted hack.  *See* Will Schmitt, "McCaskill opposes single-payer health care, takes voters' questions at Springfield town hall,"

Similarly, further grasping at straws that are nevertheless out of reach, the SAC, at ¶ 79,

plumbs the depths of fancy – and an hypothesis built solely and precariously upon that fiction –

alleging that

> Upon information and belief, Assange and WikiLeaks worked to to
> secure Trump's grip on the Presidency even after the 2016 election
> because of Trump's favorable view of WikiLeaks, and because of
> the Russian government's inclination to assist Assange with
> asylum.  In fact, reports have indicated that Russia even
> participated in a plan to facilitate Assange's escape from the
> Ecuadorian Embassy in London and fly him to Russia.

Of course, the SAC fails to provide any citation for that multi-tiered supposition

(notwithstanding the SAC's 232 endnotes).  Yet, in the absence of competent, credible, or

probative evidence against WikiLeaks, the SAC is forced to resort to such speculation.  Another

example of the SAC's immersion in immaterial scuttlebutt is found in ¶ 235, in which the SAC

alleges that

> On October 11, 2018, WikiLeaks released a proprietary AWS
> document showing the locations and some operational details of
> AWS servers around the world.  This was one of WikiLeaks' only
> releases since Assange and WikiLeaks' activities were constrained
> in the wake of the 2016 election.  Analysts noted that the leaked
> AWS information would be incredibly valuable for those trying to
> compromise AWS servers like the ones that house the DNC's
> documents and data – *i.e.*, Russia.

What connection that alleged event, nearly two years after the 2016 election, has to this

case, and what probative value it possesses, remains a mystery that the SAC does not endeavor to

explore, much less solve.  Again, this kitchen-sink approach reveals the insufficiency of the

---

*Springfield News-Leader*, April 14, 2017, available at
<https://www.news-leader.com/story/news/politics/2017/04/14/mccaskill-opposes-single-payer-system-springfield-town-hall/100346878/>.

SAC's allegations against WikiLeaks.

**Conclusion**

Accordingly, for all the reasons set forth above, as well as in WikiLeaks's Initial Motion, and any other defendants' motions, including Defendants' Joint Memo(s), it is respectfully submitted that Plaintiff's Second Amended Complaint against WikiLeaks be dismissed in its entirety.

Dated: 4 March 2019
      New York, New York

                                              Respectfully submitted,

                                              ___/S/ Joshua L. Dratel_____
                                              Joshua L. Dratel
                                              Joshua L. Dratel, P.C.
                                              29 Broadway, Suite 1412
                                              New York, New York 10006
                                              (212) 732-0707
                                              jdratel@joshuadratel.com
                                              *Attorneys for Defendant WikiLeaks*

– Of Counsel –

Joshua L. Dratel
Whitney G. Schlimbach

10