**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DEMOCRATIC NATIONAL COMMITTEE

        Plaintiff,

   v.

THE RUSSIAN FEDERATION, et. al.,

      Defendants.

CASE NO. 1:18-CV-03501-JGK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
ROGER STONE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

---

Grant J. Smith
(*admitted pro hac vice*)
StrategySmith, P.A.
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, FL 33301
(954) 328-9064
gsmith@strategysmith.com

Robert C. Buschel
 *Counsel of Record*
(*admitted pro hac vice*)
BUSCHEL GIBBONS, P.A.
ONE FINANCIAL PLAZA – SUITE 1300
100 S.E. THIRD AVENUE
FORT LAUDERDALE, FL 33394
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

## **TABLE OF CONTENTS**

INTRODUCTION …………………………………………………………..………1

ARGUMENT……………………………………………………………………………10

I.    THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION
BECAUSE PLAINTIFF LACKS ARTICLE III STANDING ……………………...10

II.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED………………………………………………….………….....13

A. Standard of Review ………………………………………………….…...13

B. Stone Did Not Join Any Conspiracy………...………………………………14

    1.  Conspiracy between Stone and Russian agents ………………………......14

    2.  Conspiracy between Stone and WikiLeaks ……………………………......15

III.    PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER RICO
AGAINST STONE …………………………………………………………..…...16

A. Roger Stone Did Not Participate in Management of Enterprise Affairs……...…......16

B. Roger Stone Did Not Commit a Predicate Act……… …………………………...17

C. Lying to Congress and Witness Intimidation are Not Overt or Predicate Acts……...19

CONCLUSION …………………………………………………………………19

CERTIFICATE OF SERVICE …………………………………………………………20

# TABLE OF CITATIONS

**Cases**

*All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82 (2d Cir. 2006)............... 11

*Ashcroft v. Iqbal*,  556 U.S. 662 (2009). ............................................................................. 13, 14

*Bartnicki v. Vopper,* 532 U.S. 514 (2001). ......................................................................... 12, 15

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................ 13, 14

*Central Bank of Denver v. First Interstate Bank,* 511 U.S. 164 (1994)). .................................... 18

*Cedric Kushner Productions, Ltd. v. King,* 533 U.S. 158 (2001)…………………………………..16

*Cockrum v. Donald J. Trump for President, Inc.,*

   319 F. Supp.3d 158 (D.D.C. 2018).............................................................. 10, 12, 19

*D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018)……………………………………………17

*DeFalco v. Bernas,* 244 F.3d 286 (2d Cir. 2001) ...................................................................... 18

*First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159 (2d Cir. 2004) .............................. 17

*Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013) ................................................................. 14

*Frydman v. Verschleiser*, 172 F. Supp. 3d 653 (S.D.N.Y. 2016) ............................................. 14

*Gross v. Waywell,* 628 F. Supp. 2d 475 (S.D.N.Y. 2009) ........................................................ 16

*Grunewald v. United States,* 353 U.S. 391, 402 (1957)…………………………………………18

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...................................... 18

*Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013).................................................................... 11

*In re: Ins. Brokerage*, 618 F.3d 300 (3d Cir. 2010) .................................................................... 16

*Klayman v. Zuckerberg,* 753 F.3d 1354 (D.C. Cir. 2014). ....................................................... 15

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,

   657 F. Supp. 2d 104 (D.D.C. 2009)…..……………………………………………………19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................... 11

*Pyramid Sec. Ltd. V. IB Resolution, Inc.,* 924 F.2d 1114 (D.C. Cir. 1991)……………..………19

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)...................................................................... 16, 17

*United States v. Andrews,* 532 F.3d 900 (D.C. Cir. 2008)………………….……………………19

**Statutes**

Communications Decency Act of 1996, 47 U.S.C. §230 ............................................................ 14

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1962(c)…16, 18

**Other Authorities**

GET   ME   ROGER   STONE,   a   NETFLIX   Original   Documentary,   (2017).
https://media.netflix.com/en/only-on-netflix/128318.................................................................. 1


U.S. Const. art. 3, § 2........................................................................................................... 10, 11

**Rules**

Rule 12(b)(1)………………………………………………………………………..……..11

Rule 12(b)(6)..................................................................................................................... 13, 18

**INTRODUCTION**

Plaintiff, the Democratic National Committee ("DNC") alleges Russians, working on behalf of their own government as part of a military operation, hacked the Democratic National Committee's emails and other data, transferred it to WikiLeaks, which then disclosed it to the world *via* the internet. The data was disclosed to the world without redaction and the DNC claims it suffered damage (mostly political) to their "trade secret" political strategies. Roger Stone is not alleged to have hacked, transferred, or touched the emails or other data the DNC claims were disseminated. In the Second Amended Complaint, Plaintiff does not clearly articulate Roger Stone's objectives. Roger Stone is not alleged to have spoken to any Russians or hackers about the alleged theft of DNC data or its transfer to WikiLeaks. The DNC, nonetheless, concludes that Stone conspired with Russian hackers and WikiLeaks -- for the publication (*i.e.* only the dissemination) of those emails for distinct and evolving goals. Stone, however, is a journalist, political strategist, pundit, and commentator. Like or dislike him for whom he campaigns or his political advocacy; that is a personal choice. Stone is an "agent provocateur."[1] He is the First Amendment running, not walking; but his conduct cannot be adjudged a civil wrong.

Nevertheless, Plaintiff has filed what is predominately a civil RICO lawsuit with a tagalong conspiracy, and supplemental D.C. statutory and Virginia common law claims relating only to the theft and dissemination (by others) of DNC emails with people and entities Roger

---

[1]   GET   ME   ROGER   STONE,   a   NETFLIX   Original   Documentary,   (2017). https://media.netflix.com/en/only-on-netflix/128318

Stone does not know or barely knows. The DNC can only seek remedies for torts relating to the misuse of its data, not the data of or injuries to others. As a matter of law this proposition is critical to the analysis of Roger Stone's alleged culpability. The DNC, however, seeks to prosecute Roger Stone for the wrong conspiracy for the simple reason: John Podesta's emails (which Stone allegedly had early notice of their release, which Stone denies), did not reside on the DNC's servers in Virginia or the District of Columbia. Because, the purported case against Stone relates to "the Podesta's" allegedly stolen emails which did not reside on the DNC's servers, and John Podesta is not a plaintiff in this case, the DNC has improperly attempted to link Roger Stone to a racketeering enterprise and conspiracy Stone did not join. Similar allegations about lying to Congress and intimidating witnesses are unproven allegations that occurred well after the DNC's "conspiracy" and the enterprise had ended. In this version of the lawsuit, the DNC attempts to solve this problem by alleging the enterprise is open-ended and still ongoing since Trump is still the president.

This case is meritless and filed for sensational and politically partisan reasons. The hope is this Court will authorize a private investigation through civil discovery, into the President of the United States and as a consequence, Roger Stone; an adviser and friend to President Donald Trump. In essence, litigate the 2016 presidential campaign. Proof of this lies with a lawsuit that does not allege Roger Stone conspired to damage the DNC; rather allegations that are only inferences of another conspiracy against John Podesta. Because the DNC alleged Stone injured John Podesta, therefore, he must be a part of a conspiracy against the DNC does not follow and is not a sufficiently plausible conclusion.

As a general proposition, the DNC cannot successfully sue Stone because it thinks he may have been involved in a larger, yet different, conspiracy in a purported effort to tilt the

election against the Democratic Candidate for President, in favor of Donald Trump. Although allegations may be fodder for media speculation, in the Courts there must be a wall against a lawsuit that without doubt is implausible and near impossible to prove. No doubt, if it were allowed to try, the effort would invite the Special Counsel's Office to intervene. At the outset, and at a minimum, the DNC must establish standing and a legitimate claim for relief.  Here there is neither. This case should be dismissed with prejudice.[2]

## **ALLEGATIONS**

Roger Stone is a defendant in the RICO (count II), RICO conspiracy (count III), wiretap act violation (count IV), violation of Uniform Trade Secrets Act, a statute in D.C. (count VIII), conspiracy to trespass chattels, a Virginia common law claim (count XII), and violation of Virginia Computer Crimes (count XIV). While analyzing these allegations, it is critical for the Court to note <u>when</u> Stone is alleged, by Plaintiff to have joined the conspiracy (post-July 22, 2016, first tranche of DNC data released and hack of both D.C. and Virginia servers), what acts he allegedly committed to in fact <u>join</u> the enterprise or any conspiracy, and do those acts <u>allege a conspiracy or torts</u> to which <u>the DNC</u> can seek a remedy in this Court. The second amended complaint alleges that in August 2016, Stone began communicating "secretly" with GRU operatives and bragged about his contacts with Assange. (SAC ¶ 21). Stone did not brag to GRU operatives even though the allegation, as a matter of grammar, seems to suggest it. Other than the

_____

[2] Defendant Roger Stone, pursuant to this Court's Order (Dkt. 181 at 2), adopts the argument made in the global motion to dismiss, as well as other Defendants' supplemental briefs, so applicable.

private messages (communication on the social network platform, twitter), between Guccifer 2.0 and Stone there are no additional allegations about what they communicated about. The communications are attached as exhibits to this motion.

Next, the DNC alleges Roger Stone was prophetic because he "revealed information he could not have had unless he were communicating with WikiLeaks, Russian operatives or both. (SAC ¶ 22). An example cited is: In August of 2016, nobody in the public sphere knew that Russia had stolen emails from John Podesta, Stone predicted that damaging information about Podesta would be released, tweeting: "it will soon [be] the Podesta's time in the barrel." Weeks later, WikiLeaks began releasing batches of Podesta's emails on a near-daily basis until Election Day—as Stone had predicted. (SAC ¶91).

WikiLeaks merely telling Stone that it has non-specific information is not a tort. But the DNC emphasizes that "Stone discussed highly confidential and strategic information stolen from another Democratic party institution and disseminated to the public." (SAC ¶ 23). This admission in and of itself proves that the Podesta emails were not part of the DNC records. Since the DNC alleged that Stone's prediction about "the Podesta's" proves Stone joined the relevant conspiracy and enterprise it is absolutely defeated by the fact John Podesta's emails were not on the DNC server or that of the other "Democratic party institution." Similarly, in mid-September 2016, Stone said that he expected "Julian Assange and the WikiLeaks people to drop a payload of new documents on Hillary [Clinton] on a weekly basis fairly soon." *Id.* And, beginning on October 7, 2016, WikiLeaks began releasing stolen emails at least once a week—as Stone had predicted. *Id.*

Then the DNC alleges Stone and other defendants misled various government agencies. Stone did not lie to the Special Counsel or the FBI; he only appeared or testified to one

congressional committee.[3] He is alleged to have intimidated a witness who "threatened to contradict his narrative about his communications with WikiLeaks." (SAC ¶ 30). But neither the testimony to Congress, nor the "intimidation" occurred prior to the 2016 presidential election.

The DNC describes the decades' earlier relationship between Defendants Manafort and Stone who worked together in 1977, the 1980s, and over ten years ago. (SAC ¶ 58). Stone worked against Manafort's candidate during a Ukrainian election. *Id.* The above allegation alone or in conjunction with the other allegations fails to create a plausible allegation that Roger Stone joined a conspiracy with Paul Manafort to steal and disseminate the DNC's emails.

It is impossible to analyze the plausibility of allegations where the DNC lumps several defendants together claiming, for the first time in the second amended complaint, "were in frequent contact with individuals connected to Russian intelligence and the Russian government." (*See* SAC ¶89). The DNC drafts allegations that imply two allegations have a relationship to each other, but never provides anything but hollow words. For example, Stone believed Assange had emails belonging to Secretary Clinton (not DNC), and the same day Guccifer 2.0 disseminated another set of stolen documents, but not Clinton's. (SAC ¶165).

---

[3] Roger Stone has been indicted in the District of the District of Columbia. (Case No. 1:19-cr-18-ABJ). The indictment charges Stone with lying to Congress and intimidating a witness, Randy Credico in relation to Credico asserting his Fifth Amendment right to a House Committee. The indictment is not for conspiracy, RICO, theft, or trespass.  The DNC alleges an open-ended RICO, something the Special Counsel has not been willing to allege against any American.

Stone then "began secretly communicating with GRU operatives. . . ." (SAC ¶ 167). That "secret" communication was a direct message on Twitter, they were not secret, just not public, but now they are public.  The message: "please tell me if i can help u anyhow. it would be a great pleasure to me." (sic). *Id.*[4]

Another attempted showing of prophesy: In mid-September 2016, Stone accurately predicted on Boston Herald Radio that he expected "Julian Assange and the WikiLeaks people to drop a payload of new documents on Hillary on a weekly basis fairly soon." (SAC ¶ 172). On October 1, 2016, Stone stated on Twitter: "Wednesday @HillaryClinton is done. #WikiLeaks." And on October 3, 2016, Stone reiterated that he was confident WikiLeaks would continue disseminating hacked materials: "I have total confidence that @WikiLeaks and my hero Julian Assange will educate the American people soon." (SAC ¶ 174). "Four days later, on October 7, 2016 – and just one hour after the release of the infamous Hollywood Access recording in which Trump admitted to sexually assaulting women – WikiLeaks released 2,000 emails stolen from Podesta. WikiLeaks continued to release documents stolen from Podesta on a near-daily basis until November 9, 2017 (sic) - just as Stone had predicted. (SAC ¶ 175). (emphasis added).

Four days later was not a Wednesday, so this tweet was not as predictive as alleged. (*See id.*). Again, the stolen Podesta emails were not on the DNC's servers. Lastly, claiming Stone

---

[4] The post from "Guccifer 2.0" to Stone read: "Thanks that u believe in the real #Guccifer2," demonstrates that post by the alleged hacker(s) was innocuous (in its context) and did not create an agreement by Stone to enter any supposed conspiracy. (*See* Exhibit, Dkt. -1).

predicted this is permitting speculation to be science – assigning the meaning of causation to a correlation without a plausible explanation of how this was done.

Outside of stating the obvious, the allegations in this paragraph are as obtuse as an astrological forecast. More importantly, this allegation is confirmation Podesta's emails were separate from the DNC's computer systems. Other allegations do no better. (*See* SAC ¶ 164) (Stone claims communication with Assange "the next tranche of his documents pertain to the Clinton Foundation, but there's no telling what the October surprise may be."). This prediction was also hardly prophetic since WikiLeaks disclosed the first tranche of DNC emails on July 22, 2016 and since it did not disclose all the data it possessed – there were going to be other disclosures by WikiLeaks. (*See* Dkt. 182, Am. Compl. ¶¶ 142-145) ("Assange appeared on British television").

New allegations in the second amended complaint state Stone directed Jerome Corsi (not a defendant) to "connect with Assange and WikiLeaks." (SAC ¶ 162). This allegation ignores the fact that the communications to which the DNC cites all took place after the July 22, 2016, release of information by WikiLeaks.  There is no allegation that Corsi did communicate with Assange or WikiLeaks. And information supposedly relayed an October surprise was a planned unspecified release of information a month before the November election. *Id.* The next allegation is that Stone "dined" with his "pal" Julian Assange. (SAC ¶163). First, the allegation does not describe the context of the remark. Second, there are no allegations Stone got into the Ecuadorian Embassy (or was even in London on the date specified), or that Assange left the Embassy in London. If it is a reference to an online meeting, the DNC does not allege it occurred or that the direction from Stone to Assange occurred. Because if Assange told Stone, 'WikiLeaks

is continuing to release information,' that would not be a tort. Lastly, WikiLeaks denies any communication with Stone. (SAC ¶ 176).

The DNC also alleges that Stone visited the Ecuadorian Embassy in London where Assange lives in March 2017. (SAC ¶215). Stone visited Assange in the same way someone visits the Pope by walking by the Vatican. The DNC does not even cite the timeframe correctly. In fact, the article it cites states that Mr. Stone was in London in February of 2018. (SAC n.195). Also, this is a meaningless allegation because the allegation is a year after Trump is elected as president. In fact, the DNC alleged requests by Stone, for Corsi to write a supportive article for Stone and Stone communicating to Credico that he is trying to secure a pardon for Assange, or any threats to Credico, all occur after Trump was elected and the most expansive objective of a conspiracy or racketeering enterprise could not be met. (SAC ¶¶ 214, 226, 228, 229).

The date of the first allegation of Stone's communications with Guccifer 2.0 is after the first dissemination of DNC documents cited as July 22, 2016. (*See* SAC ¶ 18). The DNC did not allege Stone asked for help from Guccifer 2.0 or that he had knowledge Guccifer 2.0 was Russian military intelligence.

> 170. <u>On August 21, 2016,</u> amidst his communications with Assange and Russian intelligence, Stone <u>prophesized</u> the future dissemination of Podesta's emails, tweeting: "Trust me, it will soon [be] (sic) Podesta's time in the barrel." There had been no public disclosure that <u>Podesta's emails had been hacked</u> at that time.
> (SAC ¶ 170)(emphasis added).

The tweet was materially misquoted by Plaintiff. It should read: "Trust me, it will soon [ ] the Podesta's time in the barrel." (*See* SAC ¶ 22 and Exhibit No.-2). "The Podesta's," demonstrates the plausible explanation Roger Stone has given that he was referring to the Podesta brothers who had business dealings with the Russian energy company, Gazprom.  The Court should also note, the DNC recognizes Podesta's emails had been "hacked," separate from

the DNC's database. Short of three weeks later, the Podesta emails were allegedly disseminated by WikiLeaks. (SAC. ¶ 170). John Podesta is not a plaintiff in this case. The DNC does not have standing to sue Stone based upon a claim that Podesta's data was hacked and disseminated. And any allegations that Stone knew about Podesta's emails does not support its theory Stone gave advice to WikiLeaks regarding dissemination of DNC emails.

To borrow from the title of episode 2 of season 1 from the popular television series: *The West Wing*, the DNC is guilty of violating the philosophical rule – *Post hoc, ergo propter hoc* (after this, therefore because of this). The DNC is correlating events in the 2016 presidential campaign with Roger Stone's online political advocacy, and claiming Stone's actions were because of the other. The "other" being communications with the Russians or WikiLeaks. This cannot be considered plausible allegations to support any cause of action against Roger Stone.

The DNC then alleges the GRU asked for Stone's assistance in its scheme.

> 179. On September 9, 2016, GRU operatives posing as Guccifer 2.0 contacted Stone to ask him for his reaction to the "turnout model for the Democrats' entire presidential campaign." Stone replied, "pretty standard."
> (SAC ¶ 179)(emphasis added).

This communication does not support a conspiracy or a managing membership in a racketeering enterprise. This communication was after the theft and dissemination of the first tranche of DNC emails by WikiLeaks. This is a standard remark that would have been an answer to anyone that asked him. Plaintiff's Second Amended Complaint does not allege what the turnout model entails, nor that it is a trade secret that was stolen off the DNC server. Assuming Guccifer 2.0 is a group of Russian intelligence officers, it was a question about an internet hyperlink to documents posted on a website of a United States political consultant that was in the public domain.

The Court should keep in mind: Roger Stone was not alleged to have been part of the meeting in Trump Tower in June, 2016 as described in paragraph 15, and referenced as the turning point in this racketeering enterprise throughout the Plaintiff's Second Amended Complaint. Furthermore, the allegations attempt to support multiple causes of action against Stone.  But, even if the Court were to assume Stone had previous knowledge of the subject matter of WikiLeaks disclosures, the DNC merely alleges Stone had previous knowledge of future publication of truthful disclosures. They do not allege Stone advised the Russian Federation or the GRU on how to hack (break into the DNC servers), steal the data from the servers, or who to give that data to once it was taken. The DNC does not allege Stone advised WikiLeaks on an effective method of dissemination of anyone's data – let alone the DNC's.  At best, the DNC claims Stone received information about what was going to be disseminated and disclosed to the world via social media, as if he were a journalist. The journalism community refers to that as a "scoop," not a tort. Even if status matters, which it does not, as a political advocate for Donald Trump, Stone mentioned that information would be revealed to the world that will affect Hillary Clinton's campaign. None of this is a tort.  It is protected free speech.

## ARGUMENT

### I.   THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.

Plaintiff in large part complains about the hacking, theft, transfer, and dissemination of two of its databases through WikiLeaks. (SAC ¶¶ 34, 84, 101, 347, 362). But some of its allegations, mostly about Roger Stone's involvement, relate to a completely different set of data – the Democratic Congressional Campaign Committee ("DCCC") and Hillary Clinton's campaign, and the source of her campaign manager John Podesta's emails. *See Cockrum v. Donald J. Trump for President, Inc.,* 319 F. Supp.3d 158, 166 (D.D.C. 2018).  To the extent that

Plaintiff intends to remediate the rights of other people and organizations, the below argument applies. The DNC does not have standing to object to a hack, theft, and transfer of data that does not belong to the DNC.

Article III standing concerns subject matter jurisdiction. *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff cannot sustain this action because they allege no cognizable injury that can be fairly traced to Roger Stone's alleged actions, and thus fail to clear a fundamental constitutional threshold necessary to pursue their claims in federal court. Article III of the Constitution limits the jurisdiction of federal courts to actual "cases and controversies." U.S. Const. art. 3, § 2. *See also* Fed.R.Civ.P. 12(b)(1). Central to that requirement is that a litigant has "standing." This requires more than a "keen interest in the issue." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013). To avoid dismissal, the plaintiff bears the burden of demonstrating (1) he has suffered "a concrete and particularized" injury, (2) that is "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party [who is] not before the court," and (3) "likely … will be redressed by a favorable [judicial] decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citation omitted). Stone challenges that his actions are fairly traceable to the DNC's alleged injury. The above analysis of the allegations made by the DNC demonstrates Stone is only accused of a conspiracy relating to John Podesta's emails. He is not part of the RICO enterprise or conspiracy to injure the DNC, steal its "trade secrets," or trespass on the DNC's computers.

In the case where Stone and the Trump Campaign were sued in the District of Columbia, the District Court found: "Plaintiffs do not seek to impose liability on defendants for the

publication of emails from the DCCC or John Podesta, Chairman of Hillary Clinton's 2016 presidential campaign." *Cockrum,* 319 F. Supp.3d at 166. This is because those plaintiffs' emails were on the DNC servers and their conspiracy claim was limited to only their alleged damages. The key point being Podesta's emails and the DNC lie on separate computer databases. The DNC seems to recognize that the conspiracy alleged is limited to a "conspiracy to disseminate stolen DNC data." (SAC § VI. at 24). An allegation that Stone joined the conspiracy to hack, steal, and disseminate Podesta's emails, is not a conspiracy to hack, steal, or disseminate the DNC's emails. The DNC therefore cannot sue Stone for conspiracy because it lacks standing and cannot allege that Stone was part of the DNC's conspiracy alleged in the complaint.

Perhaps the Court is meant to infer Roger Stone was consulted without ever reviewing the thousands of emails and gave strategic advice on how to disseminate the tranches of emails that included Plaintiff's data. It is implausible; however, that Stone could offer meaningful strategic advice on dissemination without viewing the emails. The complaint fails to allege sufficient conduct fairly traceable with the alleged effect because it is contingent on a chain of attenuated hypothetical events and actions by third parties independent of Roger Stone.

In this case, it appears the DNC merely alleges Roger Stone predicted future disseminations, which means he knew of it in advance, but not prior to the hack, theft, or transfer to WikiLeaks. If the DNC's lawsuit is based upon Stone receiving early notice of DNC emails directly from WikiLeaks, then this is not a tort. *See Bartnicki v. Vopper,* 532 U.S. 514 (2001) (Campaign Mot. to dismiss at 6-10)*.* Stone is not alleged to have seen the DNC emails or given advice on their publication to WikiLeaks. Stone commenting on what was to come is a teaser that any news media has done and continues to do today. But once WikiLeaks had the DNC's

data, Roger Stone as a political pundit, strategist, adviser, or journalist could seek to review it or publicly tease about its future disclosure. This also is not a crime or a tort.

Most importantly, Stone did not do anything that made Russian hackers hack, or WikiLeaks disseminate the DNC's data.  Because the DNC's allegations are based only on tenuously connected events that occurred at or near the time they felt they were injured,  they fail to establish a sufficient fairly traceable connection between Stone's acts and the injuries suffered. Thus, the Plaintiff does not have standing to pursue this lawsuit against Stone.

## II.  PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  Standard of Review

Pursuant to *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In all, determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Second, the court must determine whether the well-pled factual allegations, if assumed to be true, "plausibly give rise to an entitlement to relief." *Id.* at 662. When the factual allegations are "not only compatible with, but indeed [are] more likely explained by" lawful activity, the complaint must be dismissed. *Id.* at 663.

A complaint must be dismissed if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Following *Iqbal*, this District Court has applied the *Iqbal* standard strictly in cases ranging from racketeering, theft of trade secrets, to the Computer Fraud and Abuse Act. *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 659 (S.D.N.Y. 2016) (Koeltl, J.,).

Applying the *Iqbal* standard in this case, it is abundantly clear that Plaintiff's allegations of conspiracy fall short in crossing the line from "conceivable" to the "plausible" as they allege fantastic claims that are conclusory and unlikely. *See Iqbal*, 556 U.S. at 680.  As discussed below, the allegations are implausible because they do not clearly identify how Stone encouraged delivery of the data to WikiLeaks or coached its dissemination. Plaintiff fails to allege *any* facts that could plausibly support a viable claim, relying instead on broad and conclusory allegations, largely gleaned from various publications.

**B. Stone Did Not Join Any Conspiracy Claims**

**1. Conspiracy Between Stone and Russian Agents.**

In its causes of actions, Plaintiff lumps "Defendants" together as if there were sufficient specific allegations above. Stone did not conspire to trespass the DNC database in Virginia because there is no allegation he joined the conspiracy before the hacking occurred. The lawsuit does not allege that Roger Stone knew Guccifer 2.0 was Russian government. Because there is a dearth of allegations to establish Stone was part of any illegal acts, the allegations in the causes of action are conclusory and therefore insufficient. *See Franklin v. Curry*, 738 F.3d 1246, 1250-

51 (11th Cir. 2013) (district court should identify and remove conclusory allegations not entitled to the assumption of truth).

### 2.   Conspiracy Between Stone and WikiLeaks.

WikiLeaks did not commit a tort; therefore Roger Stone could not have vicarious liability for conspiring to participate in actions that do not amount to a tort. The Communications Decency Act of 1996, 47 U.S.C. §230, shields interactive computer services from liability from those who post on its site.   Stone is not alleged to have taken the Plaintiffs' data from the DNC or transferred it to WikiLeaks. Mere encouragement of publication of Plaintiff's data on WikiLeaks is not a tort and Stone cannot be held liable. *See Klayman v. Zuckerberg,* 753 F.3d 1354, 1358 (D.C. Cir. 2014). This protection from liability exists even if WikiLeaks fails to edit the posts coming from third party users. *See id.* Since WikiLeaks could not be held liable for its act of dissemination, then Stone cannot be held liable even if he were to have encouraged or reveled in the dissemination or predicted more disclosure was forthcoming.

Because Stone did not participate in the hack, theft, or dissemination of the DNC's data, Stone's public social media posts alleged in the complaint are therefore nothing more than political speech. '[T]he Podesta's time in the barrel,' 'WikiLeaks will drop a payload of new documents soon,' 'Wednesday Hillary Clinton is done,' 'Assange is my hero and will educate the American people;' and the like, is what political operatives do during a campaign. They proclaim their candidate is great, the opposition candidate is bad. In the context of a campaign, none of this demonstrates that Stone participated in the strategic dissemination of Plaintiff's emails. Stone played no part in the "illegal interception;" his access to the data was "obtained lawfully," and the subject matter was "a matter of public concern." *See Bartnicki v. Vopper,* 532 U.S. 514 (2001).

### III.     PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER RICO AGAINST STONE

Civil RICO claims are difficult to sustain. The "formidable intricacies and pitfalls" inherent in these requirements have sent many a "crew of spellbound plaintiffs foundering against the rocks." *Gross v. Waywell,* 628 F.Supp.2d 475, 479-80 (S.D.N.Y. 2009) (granting motion to dismiss RICO claims after describing how vast majority of RICO cases result in "total loss" to plaintiffs). Plaintiff here – like others before them – have failed to plead the requisite RICO elements.

#### A.   Roger Stone Did Not Participate in Management of Enterprise Affairs

Even if Plaintiff was able to show that Roger Stone associated with an "enterprise" – something it has failed to do – Plaintiff must also allege that each defendant conducted or participated in the conduct of the enterprise's affairs. Plaintiff does not describe Stone's role in the campaign or in the enterprise as anything other than an "informal adviser." (SAC ¶ 58). The Supreme Court has held that the "conduct or participate" element requires a defendant to "have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  More precisely, "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183; *see also In re Ins. Brokerage*, 618 F.3d 300, 370-71 (3d Cir. 2010) ("[m]ere association with an enterprise does not violate § 1962(c)"). Indeed, the Supreme Court previously has said that liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Cedric Kushner Productions, Ltd. v. King,* 533 U.S. 158, 163 (2001) (citing *Reves,* 507 U.S. at 185)).

"In *Reves v. Ernst & Young,* the Supreme Court interpreted the operative language to require a RICO defendant charged with violating section 1962(c) to have had "some part in *directing* [the enterprise's] affairs." *D'Addario v. D'Addario*, 901 F.3d 80, 103 (2d Cir. 2018)

(citing *Reves,* 507 U.S. at 179)) (emphasis in original). A RICO defendant will not be liable for mere participation in a racketeering act, but will sustain liability under the statute for participation in the "operation or management of an enterprise through a pattern of racketeering activity." *D'Addario,* 901 F.3d at 103 (citing *Reves*, 507 U.S. at 184; *see also First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 176 (2d Cir. 2004)).

The management requirement applies also to Roger Stone. The lawsuit does not allege Roger Stone had a management or operational position in the Campaign at all. He was merely an informal adviser. In short, Stone did not have any part in <u>directing</u> the enterprise's affairs as required by the law in this Circuit. *See id.*  At best, Stone is talking to an alleged Russian hacker on twitter about a hack and theft <u>after</u> the DNC's data was stolen. Those alleged communications do not allege a plausible scenario of coordination. This failure requires dismissal of the RICO count.

### B.  Roger Stone Did Not Commit a Predicate Act that Supports RICO

Roger Stone is not alleged to have committed any predicate act in relation to a stated goal of the racketeering enterprise; therefore, he cannot be liable under RICO. The DNC realized it did not sufficiently allege predicate acts against Stone in previous iterations of the complaint so it relied upon lying to Congress and witness intimidation. The allegations of lying to Congress and witness intimidation occurred well after the presidential campaign. Therefore they occurred well after the injury to the DNC. Stone's motivation for the intimidation is alleged to be an avoidance of detection of participation in a conspiracy or crime that had already occurred. The Campaign thoroughly explained the law and Plaintiff's pleading deficiency in its brief. (*See* § II.C, Campaign's Motion at 27-34). Stone did not commit economic espionage since he is not alleged to have stolen or reviewed the DNC's emails; or helped them do it. He also did not commit theft of trade secrets for the same reasons.

The first allegation against Stone pertaining to the DNC is after July 22, 2016, so he could not have joined the RICO enterprise until that date. Furthermore, Stone also only allegedly communicated about John Podesta; therefore, he could not have committed economic espionage or theft of trade secrets against the DNC. Lastly, RICO statute under § 1962(c) does not support an aiding and abetting theory. *DeFalco v. Bernas*, 244 F.3d 286, 330 (2d Cir. 2001) (citing *Central Bank of Denver v. First Interstate Bank,* 511 U.S. 164 (1994)).

This Circuit is clear: "Therefore, we hold that standing may be founded only upon injury from overt acts that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy." *Hecht v. Commerce Clearing House, Inc*., 897 F.2d 21, 25 (2d Cir. 1990). As a matter of standing and sufficiency of the pleadings under Rule 12(b)(6), Plaintiff fails to make its RICO case and its tagalong conspiracy against Roger Stone.

**C.  Lying to Congress and Witness Intimidation are Not Overt or Predicate Acts**

New to this version of the complaint are allegations that Stone lied to Congress and intimidated a witness. It is noted that without these allegations there would be no overt or predicate acts attributable to Stone. The purpose for these acts is for Stone to avoid detection of managing membership in the purported racketeering enterprise or membership in the conspiracy.

As hot as partisan passions may run, the DNC has not alleged the Trump campaign to re-elect him is a function of a criminal enterprise. Thus, the day of WikiLeaks' final release of DNC data had been disseminated was the end of the conspiracy and the close of the enterprise. This is because the objective of any purported conspiracy or enterprise has been met. *See Grunewald v. United States,* 353 U.S. 391, 402 (1957). Courts have applied *Grunewald* and its progeny to civil conspiracies. *Cockrum,* 319 F. Supp.3d at 182 (citing *Pyramid Sec. Ltd. V. IB Resolution, Inc.,* 924 F.2d 1114, 1118 (D.C. Cir. 1991)). Lying to Congress did not further the conspiracy to harm the DNC by way of disseminating its data. Intimidating a witness did not further the conspiracy

to harm the DNC by way of disseminating its data. While lying to Congress or intimidating a witness may serve as a predicate act of a racketeering enterprise, it does not here since the object of the conspiracy and enterprise had been met. Since the successful completion of the conspiracy did not require concealment, the allegations that Stone lied to Congress and intimidated Randy Credico do not serve to extend the conspiracy, *United States v. Andrews,* 532 F.3d 900, 909-910 (D.C. Cir. 2008), or considered predicate acts to support a RICO claim. *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 657 F. Supp. 2d 104, 113 (D.D.C. 2009), *aff'd,* 383 Fed. Appx. 1 (D.C. Cir. 2010) (citations omitted).

## CONCLUSION

The Court should dismiss the complaint for lack of subject-matter jurisdiction. Alternatively, it should dismiss the complaint for failure to state a claim.

Dated: March 4, 2019                                    Respectfully submitted,

                                                       /s/ Robert Buschel
                                                       Robert C. Buschel

 Grant J. Smith                                        Robert C. Buschel
(*admitted pro hac vice*)                                *Counsel of Record*
STRATEGYSMITH, P.A.                                    (*admitted pro hac vice*)
401 EAST LAS OLAS BOULEVARD                            BUSCHEL GIBBONS , P.A.
SUITE 130-120                                          ONE FINANCIAL PLAZA – SUITE 1300
FORT LAUDERDALE, FL 33301                              100 S.E. THIRD AVENUE
(954) 328-9064                                         FORT LAUDERDALE, FL 33394
GSMITH@STRATEGYSMITH.COM                               (954) 530-5301
                                                       BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*
## CERTIFICATE OF SERVICE

I certify that on March 4, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

/s/ Robert Buschel
_____
Robert C. Buschel
*Counsel for Roger Stone*



**GUCCIFER 2.0**
@GUCCIFER_2

👤 Follow

@RogerJStoneJr thanks that u believe in the real #Guccifer2

| RETWEETS | LIKES |
|---|---|
| 173 | 405 |



7:23 PM - 12 Aug 2016

 31      173      405

