# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DEMOCRATIC NATIONAL
COMMITTEE,

*Plaintiff*,

v.

THE RUSSIAN FEDERATION, et al.,

*Defendants*.

Case No. 1:18-cv-3501-JGK-SDA

## MEMORANDUM OF LAW IN SUPPORT OF
## GEORGE PAPADOPOULOS'S MOTION TO DISMISS
## COUNTS II, III, IV, VIII, XII, AND XIV OF THE SECOND AMENDED COMPLAINT

Jeffrey R. Alexander
Caroline J. Polisi
Christopher N. LaVigne
John M. Pierce
Shira L. Feldman
Pierce Bainbridge Beck Price & Hecht LLP
20 West 23rd Street, Fifth Floor
New York, New York 10010
(646) 664-1299
jalexander@piercebainbridge.com

*Attorneys for Defendant George Papadopoulos*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ............................................................................. 3

ARGUMENT ............................................................................. 6

1.     The Pleading Standard Under Federal Rule of Civil Procedure 12(b)(6) ............. 6

2.     The Second Cause of Action Should be Dismissed Because Plaintiff Fails to Plead Facts Sufficient to Establish a RICO Claim Against Papadopoulos ............................................................................. 7

     a.     The Complaint Does Not Allege That Papadopoulos Conducted Any Racketeering Acts ............................................................................. 8

         i.     Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Conspiracy to Commit Economic Espionage ............................................................................. 9

         ii.     Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Theft of Trade Secrets ....................................... 11

         iii.     Aiding/Abetting a RICO Enterprise is Not a Valid Cause of Action ............................................................................. 11

         iv.     Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Obstruction of Justice ...................................... 12

         v.     Papadopoulos's 2017 Conduct Could Not Have Caused Plaintiff's 2016 Harm ............................................................... 14

     b.     The Complaint Does Not Allege Facts Sufficient to Show That Papadopoulos Engaged in a Pattern of Racketeering Activity ............... 15

     c.     The DNC Does Not Allege Facts Sufficient to Show Papadopoulos Participated in the Conduct of the Affairs of Any Enterprise ............................................................................. 16

     d.     The Complaint Must Be Dismissed Against Papadopoulos Because it Fails to Allege His Membership in a Cognizable RICO Enterprise ............................................................................. 17

         i.     The DNC Fails to Allege a Fraudulent Purpose. ....................... 18

         ii.     The DNC Fails to Allege Relationships Amongst the Purported Association-in-Fact Enterprise Members ................... 18

     e.     The DNC Does Not Allege Any Cognizable Injuries Caused by Racketeering Acts ............................................................................. 19

i

3.      The Third Cause of Action Should Be Dismissed Because Plaintiff Fails to Plead Facts Sufficient to Establish a RICO Conspiracy Under 18 U.S.C. § 1962(d) ................................................................................. 20

4.      The Fourth Cause of Action (Wiretap Act) Should be Dismissed........................ 21

5.      The Eighth, Twelfth, and Fourteenth Causes of Action (Under D.C. and Virginia Law) Should be Dismissed Against Papadopoulos Because Plaintiff Fails to Adequately Allege the Necessary Elements for these Claims .................................................................................................. 23

        a.      Count VIII, D.C. Uniform Trade Secrets Act........................................... 23

        b.      Count XII, Conspiracy to Commit Trespass to Chattels.......................... 24

        c.      Count XIV, Violation of the Virginia Computer Crimes Act.................. 25

6.      The Court Should Dismiss All Claims Against Papadopoulos Because the Imposition of Liability Would Violate the First Amendment ............................ 26

CONCLUSION.................................................................................................................... 27

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*,
   2 F. Supp. 3d 525 (S.D.N.Y. 2014)...................................................................21

*Abbott Labs. v. Adelphia Supply USA*,
   2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ...........................................................11

*Allen v. New World Coffee, Inc.*,
   2002 WL 432685 (S.D.N.Y. Mar. 19, 2002) .......................................................20

*Am. Online, Inc. v. IMS*,
   24 F. Supp. 2d 548 (E.D. Va. 1998) ...................................................................24

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)............................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................6

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ..............................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................6

*Blackwelder v. Millman*,
   522 F.2d 766 (4th Cir. 1975) .............................................................................24

*Boyle v. United States*,
   556 U.S. 938 (2009 .............................................................................................19

*Bui v. Indus. Enters. of Am., Inc.*,
   594 F. Supp. 2d 364 (S.D.N.Y. 2009).................................................................27

*Cohen v. Cohen*,
   993 F. Supp. 2d 414 (S.D.N.Y. 2014).................................................................15

*Com. Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*,
   271 F.3d 374 (2d Cir. 2001)..................................................................................9

*Cont'l Realty Corp. v. J.C. Penney Co., Inc.*,
   729 F. Supp. 1452 (S.D.N.Y. 1990)....................................................................16

*Conte v. Newsday, Inc.*,
　703 F. Supp. 2d 126 (E.D.N.Y. 2010) ........................................................................9

*DeFalco v. Bernas*,
　244 F.3d 286 (2d Cir. 2001)...............................................................................8, 14

*In re Digital Music Antitrust Litig.*,
　812 F. Supp. 2d 390 (S.D.N.Y. 2011), *disagreed by Wittman v. CB1*, No. 15-
　105, 2016 WL 3093427 (D. Mont. June 1, 2016).......................................................7

*Directv, LLC v. Wright*,
　2016 WL 3181170 (W.D.N.Y. June 3, 2016).............................................................22

*DSMC, Inc. v. Convera Corp.*,
　479 F. Supp. 2d 68 (D.D.C. 2007)...................................................................23, 24

*Eagle One Roofing Contractors, Inc. v. Acquafredda*,
　2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018)...........................................................17

*Elsevier Inc. v. Memon*,
　97 F. Supp. 3d 21 (E.D.N.Y. 2015) ..........................................................................16

*Elsevier Inc. v. W.H.P.R., Inc.*,
　692 F. Supp. 2d 297 (S.D.N.Y. 2010)........................................................................8

*Elsevier, Inc. v. Grossman*,
　2013 WL 6331839 (S.D.N.Y. Dec. 5, 2013) .............................................................21

*Equinox Gallery Ltd. v. Dorfman*,
　306 F. Supp. 3d 560 (S.D.N.Y. 2018)........................................................................7

*Faberware, Inc. v. Groben*,
　764 F. Supp. 296 (S.D.N.Y. 1991)............................................................................16

*Flexborrow LLC v. TD Auto Fin. LLC*,
　255 F. Supp. 3d 406 (E.D.N.Y. 2017) ........................................................................7

*Gerstenfeld v. Nitsberg*,
　190 F.R.D. 127 (S.D.N.Y. 1999) ................................................................................9

*Gross v. Waywell*,
　628 F. Supp. 2d 475 (S.D.N.Y. 2009)........................................................................7

*Hamrick v. Gottlieb*,
　416 F. Supp. 2d 1 (D.D.C. 2005) .......................................................................12, 13

*Hecht v. Commerce Clearing House*,
　897 F.2d 21, 25 (2d. Cir. 1990)................................................................................21

iv

*Kirk v. Heppt*,
    423 F. Supp. 2d 147 (S.D.N.Y. 2006)..................................................................6

*Lundy v. Cath. Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013)............................................................................7

*Manhattan Telecomm. Corp. v. DialAmerica Mktg.*,
    156 F. Supp. 2d 376 (S.D.N.Y. 2001)..............................................................7

*McGladrey & Pullen LP v. Shrader*,
    62 Va. Cir. 401, 2003 WL 22203709 (Va. Cir. Ct. Aug. 11, 2003) ......................25

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ............................................................19

*N.Y. State Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*,
    1998 WL 695869 (S.D.N.Y. Oct. 6, 1998)........................................................7

*Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*,
    420 F. Supp. 2d 253 (S.D.N.Y. 2006)............................................................20

*Othentec Ltd. v. Phelan*,
    526 F.3d 135 (4th Cir. 2008) ........................................................................25

*Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*,
    2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018) ....................................................9

*Purchase Real Estate Grp. Inc. v. Jones*,
    2010 WL 3377504 (S.D.N.Y. Aug. 24, 2010).....................................................7

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*,
    1996 WL 442799 (S.D.N.Y. Aug. 6, 1996).......................................................15

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)............................................................................15

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)...............................................................................16, 17

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).......................19

*Ruffolo v. Oppenheimer & Co.*,
    987 F.2d 129 (2d Cir. 1993).........................................................................20

*Salinas v. United States*,
    522 U.S. 52 (1997)......................................................................................20

*Scherer v. United States*,
241 F. Supp. 2d 1270 (D. Kan*.), aff'd sub nom. Scherer v. U.S. Dep't of Educ.*, 78 F. App'x 687 (10th Cir. 2003) ....................................................12

*Schlaifer Nance & Co. v. Estate of Warhol*,
119 F.3d 91 (2d Cir. 1997) .................................................................15

*Schmidt v. Fleet Bank*,
16 F. Supp. 2d 340 (S.D.N.Y. 1998) .....................................................8

*Sedima S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) ...........................................................................8

*Spinale v. United States*,
2004 WL 50873 (S.D.N.Y. Jan. 9, 2004) ...............................................11

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) .................................................................6

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) ..................................................................14

*Tantaros v. Fox News Network, LLC*,
2018 WL 2731268 (S.D.N.Y. May 18, 2018) ......................................21, 22

*Toms v. Pizzo*,
172 F.3d 38, 1998 WL 964199 (2d Cir. Feb. 2, 1998) ..............................9

*Tribune Co. v. Purcigliotti*,
869 F. Supp. 1076 (S.D.N.Y. 1994), *aff'd*, 66 F.3d 12 (2d Cir. 1995) ...................................11

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
303 F. Supp. 2d 432 (S.D.N.Y. 2004) ..........................................7, 8, 16, 20

*United States v. Allen*,
155 F.3d 35 (2d Cir. 1998) ..................................................................17

*United States v. Papadopoulos*,
Case No. 17-cr-182-RDM, Sentencing Tr., Doc. No. 48 (D.D.C. Sept. 7, 2018) ..............................................6, 22

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987), *rejected by McCool v. Strata Oil Co.*, 972 F.2d 1452 (7th Cir. 1992) ........................................................8

*United States v. Reich*,
479 F.3d 179 (2d Cir. 2007) (Sotomayor, J.) .........................................13

*United States v. Sampson*,
   898 F.3d 287 (2d Cir. 2018)............................................................................................13

*United States v. Tairod Nathan Webster Pugh*,
   2015 WL 9450598 (Dec. 21, 2015) ...............................................................................14

*United States v. Viola*,
   35 F.3d 37 (2d Cir. 1994) ..............................................................................................17

*Westchester Cty. Indep. Party v. Astorino*,
   137 F. Supp. 3d 586 (S.D.N.Y. 2015)......................................................................14, 19

*World Wrestling Entm't v. Jakks Pac., Inc.*,
   530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).....................15

*Zaratzian v. Abadir*,
   2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014), *aff'd*, 694 F. App'x 822 (2d Cir.
   2017) ............................................................................................................................22

**Statutes**

18 U.S.C. §§......................................................................................................................11

18 U.S.C. § 1001...........................................................................................................5, 12

18 U.S.C. § 1503.................................................................................................5, 9, 12, 13

18 U.S.C. § 1512....................................................................................................... *passim*

18 U.S.C. § 1831......................................................................................................9, 10, 11

18 U.S.C. § 1832......................................................................................................9, 10, 11

18 U.S.C. § 1961...........................................................................................................5, 12

18 U.S.C. § 1962....................................................................................................... *passim*

18 U.S.C. § 1964................................................................................................................19

18 U.S.C. § 2511..........................................................................................................21, 22

28 U.S.C. § 1367................................................................................................................23

D.C. Code § 36–401..........................................................................................................24

Va. Code Ann. § 18.2-152.3–4 .........................................................................................26

**Federal Rules**

Fed. R. Civ. P. 8 ..................................................................................................................1, 6, 7

Fed. R. Civ. P. 12 ...................................................................................................................1, 6

We respectfully submit this memorandum of law in support of George Papadopoulos's motion to dismiss the Second Amended Complaint ("SAC") against him under Rules 12(b)(6) and (8) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

On October 3, 2018, following a years-long investigation into foreign interference in the 2016 presidential election, the DNC filed a 70-page, 309-paragraph, 14-count complaint, pursuing racketeering claims against ten individuals and three entities. Following that filing, George Papadopoulos ("Papadopoulos") filed a motion to dismiss, including a memorandum explaining that Plaintiff's massive filing, relying largely on group pleading allegations, failed to suggest that Papadopoulos was even aware of the alleged scheme at issue, much less perpetrated any alleged racketeering activities. Thereafter, in a futile effort to maintain a cause of action against as many defendants as possible, Plaintiff filed the SAC, adding 63 paragraphs, but no substantive factual allegations relating to Papadopoulos. As before, nowhere in the SAC is there a factual allegation of specific wrongdoing by Papadopoulos that could render him legally responsible for the alleged racketeering conduct of Russia and WikiLeaks.

Plaintiff fails to plausibly allege any cause of action against Papadopoulos. None of the allegations in the SAC establishes that Papadopoulos performed any actions that qualify as "racketeering activity" under the RICO Act, nor has Plaintiff sufficiently alleged any of the myriad state or federal law causes of action against Papadopoulos. Notably, Plaintiff does not claim that Papadopoulos had any role in hacking into its systems and stealing the materials in question—it attributes that only to Russia. Nor does the DNC allege that Papadopoulos played any part in publicly disseminating or publishing the stolen materials—it attributes that only to

---

[1]     All abbreviations referenced in this motion and not defined herein refer to those abbreviations and definitions set forth in the SAC. All internal citations omitted and emphasis added unless otherwise noted.

Russia and WikiLeaks.  Instead, the DNC predicates its claims against Papadopoulos exclusively

on allegations that: (1) he received advanced notice that certain information had been possibly

acquired by Russia; and (2) he "did not report this information to American law enforcement,"

but instead reported back to the Trump Campaign that there were "interesting messages coming

in from Moscow about a trip when the time is right."  SAC ¶ 12.[2]

Under the law, all elements of each RICO claim must be sufficiently pleaded against each

defendant.  Yet, Plaintiff has not alleged – nor could it – that Papadopoulos conducted *any*

racketeering acts in connection with the charged scheme.  Furthermore, Plaintiff has not

established that Papadopoulos was in any way essential to the alleged scheme.  He did not plan,

organize, direct, control, or have any interest whatsoever in the affairs of the alleged enterprise.

Plaintiff relies on vague allegations that "Trump Associates," defined to include Papadopoulos,

"assisted the common scheme."  Such conclusory group allegations do not suffice under the law.

Moreover, as explained in the Memo of Points and Authorities in Support of Donald J.

Trump for President, Inc.'s Motion to Dismiss the SAC (Doc. No. 227) (the "Trump Campaign

Memo"), the numerous deficiencies in the civil RICO allegations here include: (1) Plaintiff's

failure to adequately allege a valid enterprise (a) with a common fraudulent purpose, (b) with

sufficient relationships amongst the purported association-in-fact enterprise members, and

(c) that is separate from the purported pattern of racketeering; and (2) Plaintiff's failure to allege

a cognizable injury that was proximately caused by the RICO activity.  Because the SAC fails to

adequately allege the elements of a substantive offense under the RICO statute, and because the

---

[2]     Plaintiff additionally now contends that Papadopoulos is somehow responsible for the alleged 2016 foreign racketeering conduct because of his conduct in the year following the  election, amending its complaint to add limited details regarding allegations that Papadopoulos "deleted his Facebook account," "scrubbed other social media accounts," and "changed his cell phone number" in 2017.  *See* SAC  ¶ 223.  These 2017 allegations, which all *follow* the relevant alleged conduct at issue (and *follow* the time in which the DNC claims to have suffered its alleged damages), do not amount to RICO racketeering liability.

DNC does not allege that Papadopoulos agreed to any conduct that constitutes a violation, Plaintiff's RICO conspiracy claim also must fail.  Similarly, Plaintiff fails to state facts sufficient to allege any cause of action against Papadopoulos under any of the tagalong torts.  As explained below and in the Trump Campaign Memo, each of these causes of action is facially defective.[3]

For these reasons, the claims alleged against Papadopoulos in the SAC should be dismissed in their entirety, with prejudice.

## FACTUAL BACKGROUND

The DNC alleges a broad conspiracy in which Russia, via the GRU, hacked the DNC's computer networks, stole sensitive information, and then, together with WikiLeaks and its founder, Assange, disseminated that information with the purpose of harming the DNC and Hillary Clinton's campaign for President of the United States.  As to the other parties it names, the DNC alleges only that they conspired to assist Russia, the GRU, WikiLeaks, and Assange, or aided and abetted their actions.

The DNC alleges that, during the 2016 presidential campaign, "Russia's intelligence services illegally hacked into the DNC's computer systems and email server in order to steal and publish trade secrets, including confidential, proprietary documents relating to campaigns, fundraising, and campaign strategy." (SAC ¶ 83.)  Russian intelligence agents allegedly launched the first phase of the cyberattack in July 2015 (*id*. ¶ 115), and the second phase in April 2016 (*Id*. ¶ 101).  As a result of these attacks, Russian intelligence agents allegedly copied "thousands of DNC documents and emails." (*Id*. ¶ 14.)  The DNC further alleges that, after Russian agents stole the DNC's emails and other documents, Russian agents entered into a conspiracy with the

---

[3]       Papadopoulos joins in, relies upon, and  incorporates herein by reference, each and every argument, insofar as it applies to him, made by each and every other defendant named in the Second Amended Complaint.

Trump Campaign, Papadopoulos, WikiLeaks, and others to "disseminate [the] stolen DNC material." (*Id.* ¶ 82.)  The DNC claims that, in accordance with this supposed conspiracy, Russia and WikiLeaks released batches of stolen DNC materials over the course of the next several months, which purportedly revealed important information about the DNC.  (*See id.* ¶¶ 143–76.)

The DNC's theory likewise makes clear that the alleged conspiracy between Russia and the Trump Campaign came into being *after* the hack and *after* the theft of the emails. Papadopoulos is not alleged to have played any role in the hacking or disseminating of sensitive or proprietary information, or the planning thereof.  Instead, Papadopoulos, a volunteer "foreign policy advisor" to the Trump Campaign, is alleged to have held meetings with foreign contacts to glean information about the interests of various countries as relevant to the Trump Campaign. The DNC seeks to insinuate something nefarious about Papadopoulos's meetings, and their timing, but is unable to plead any illegal or tortious acts actually committed by Papadopoulos in connection with the alleged hacking and dissemination scheme.  Only Russia and its GRU Operatives are alleged to have hacked into computer systems, stolen trade secrets, or trespassed onto a computer network.  Only WikiLeaks and Assange are alleged to have disseminated or assisted in disseminating the information.

The DNC does not allege that Papadopoulos hacked into any computer system, stole any documents,  conspired to steal any documents, or disseminated stolen documents in any way. There is also no allegation that Papadopoulos played any role in the planning of the alleged hack or theft, or had any contemporaneous knowledge of any action or agreement to act vis-à-vis the DNC.  The DNC alleges only, in general terms, that in his role as policy advisor, Papadopoulos was in "frequent contact" with the Trump Campaign "in the summer and fall of 2016," and that "Trump Associates" "actively supported" the disclosure of hacked information.  (*Id.* ¶¶ 60, 83.)

The supposed actions taken by Papadopoulos that bear any relationship to the allegations herein occurred over the course of a few weeks in the spring of 2016.  (*Id.* ¶¶ 92-100.)  That alleged conduct reflects only Papadopoulos's efforts to further a "principal foreign policy focus of the Trump Campaign," an "improved relationship with Russia" (*Id.* ¶ 92), and that ***following*** Russia's theft of DNC emails, Papadopoulos ***learned*** "that the Russians have dirt on Hillary Clinton in the form of thousands of emails," and "did not report this information to American law enforcement," but instead reported back to the Trump Campaign that there were "interesting messages coming in from Moscow about a trip when the time is right."  (*Id.* ¶¶ 13, 94(d), 97.) The SAC does not allege that Papadopoulos knew that the information discussed in any such exchange had been obtained illegally, or that he ever learned that it had been obtained illegally.

In a tortured effort to plead a predicate act that could connect Papadopoulos to the alleged racketeering conduct, Plaintiff now pleads new predicate acts related to Papadopoulos's October 5, 2017 guilty plea under 18 U.S.C. § 1001. (*Id.* ¶ 223.)  But, a violation of 18 U.S.C. § 1001 is not a predicate act under the RICO statute (18 U.S.C. § 1961).  Instead, Plaintiff now suggests that, because Papadopoulos admitted to having "deleted his Facebook account," "scrubbed other social media accounts," and "changed his cell phone number," he is somehow liable for civil racketeering.  (*Id.*)  These limited alleged acts, occurring nearly a year following the conduct at issue, do not render Papadopoulos liable for the prior alleged acts in  which he took no part.  This alleged 2017 conduct could not have caused the DNC's claimed 2016 injury, nor does the DNC even attempt to plead any cognizable RICO injury traceable to Papadopoulos's 2017 conduct.[4]

As Judge Moss unambiguously concluded at Papadopoulos's sentencing: "I don't for a moment believe that Mr. Papadopoulos was seeking to assist the Russian government in any

---

[4]    It stands to reason that no court in this Circuit has ever found that the newly pleaded predicate acts against Papadopoulos related to obstruction of justice (18 U.S.C. §§ 1503, 1512) can form the basis of civil RICO liability.

way." *United States v. Papadopoulos*, Case No. 17-cr-182-RDM, Sentencing Tr., Doc. No. 48 (D.D.C. Sept. 7, 2018) at 39:17-19. "I don't think there's any reason in the record to conclude that Mr. Papadopoulos had any desire to aid Russia in any way, to do anything that was contrary to the national interest." (*Id.* at 38:12-15.) Plaintiff makes no allegations to the contrary.

## ARGUMENT

### 1. <u>The Pleading Standard Under Federal Rule of Civil Procedure 12(b)(6)</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[B]ald assertions and conclusions of law will not suffice. The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

This determination is context-specific, requiring the Court to draw on its experience and common sense; there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The heightened pleading standards under *Twombly* and *Iqbal* are particularly important in RICO cases like this one, so as to protect defendants against baseless charges of racketeering that are serious, harmful, and expensive to defend. *Kirk v. Heppt*, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006) (courts "must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves clothing").

The RICO allegations against Papadopoulos fail to meet the basic, liberal pleading standards under Rule 8(a). Plaintiff pleads the type of conclusory and frivolous RICO allegations that courts "should strive to flush out . . . at an early stage of the litigation."

*Manhattan Telecomm. Corp. v. DialAmerica Mktg.*, 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001);

*Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (same).[5]

## 2.   The Second Cause of Action Should be Dismissed Because Plaintiff Fails to Plead Facts Sufficient to Establish a RICO Claim Against Papadopoulos

A plaintiff bringing a RICO claim under Section 1962(c) must allege participation in the

affairs of an enterprise and a pattern of racketeering activity in the form of two or more

qualifying predicate acts.  *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F.

Supp. 2d 432, 446 (S.D.N.Y. 2004).  These elements "must be established as to each individual

defendant," and each "must 'share a common purpose to engage in a fraudulent course of

conduct and work together [with the other associated individuals] to achieve such purposes.'" *Id.*

at 447, 451 (citing *N.Y. State Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, 1998 WL

695869, at *5 (S.D.N.Y. Oct. 6, 1998)); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d

106, 119 (2d Cir. 2013) (dismissing a RICO claim where the complaint failed to adequately

plead predicate acts).

Plaintiff may not rely on generalization as to a group to satisfy the rigorous pleading

standard.  Allegations directed at multiple defendants, or "'group pleading[s,]' do[] not comply

with the requirements of RICO" because "lumping the defendants into collective allegations

results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant

individually, as required." *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009).[6]

---

[5]    *See also Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 570 (S.D.N.Y. 2018) ("[C]ourts are encouraged to dismiss RICO allegations at an early stage of the litigation where it is otherwise appropriate to do so."); *Purchase Real Estate Grp. Inc. v. Jones*, 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) (in dismissing RICO claims, court observed that "courts should look 'with particular scrutiny' at civil RICO claims").

[6]    The Second Circuit has made clear that a complaint "fail[s] to satisfy [Rule 8's] minimum standard" where a plaintiff merely "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (upholding dismissal of complaint that failed "to identify which defendants were alleged to be responsible for which alleged violations"); *see also In re In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. 2011) ("The complaint alleges direct involvement of [certain defendants] by way of generic references to 'defendants.'  This approach is insufficient.").

Moreover, a plaintiff must allege facts showing that each defendant conducted or participated "in the operation or management of the [RICO] enterprise" and had "some part in directing [its] affairs." *Id.* at 451.  "In this district and others, the 'operation and management' test . . . is a very difficult test to satisfy." *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998), and "[i]t is not enough to merely take directions and perform 'tasks that are 'necessary and helpful'" to the enterprise . . . . Nor is it enough to simply provide 'goods and services that ultimately benefit the enterprise.'" *United Limousine*, 303 F. Supp. 2d at 451–52; *see also Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307–08 (S.D.N.Y. 2010) (dismissing RICO claims against individual defendants because "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise.").

The RICO allegations are defective as to Papadopoulos because Plaintiff has not properly alleged that Papadopoulos (a) conducted any racketeering activities, (b) engaged in a pattern of racketeering activity, or (c) participated in the conduct of the affairs of any enterprise.

### a. The Complaint Does Not Allege That Papadopoulos Conducted Any Racketeering Acts

The DNC has insufficiently alleged that Papadopoulos engaged in predicate acts necessary to establish a RICO claim as against Papadopoulos. *See Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act . . . ."). A plaintiff alleging substantive violations of RICO under 18 U.S.C. § 1962(c) must allege facts sufficient to show that ***each*** defendant engaged in a pattern of racketeering activity. *See, e.g.*, *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant."); *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987); *236 Cannon Realty, LLC v. Ziss*, 2005 WL

8

289752, at *5-9 (S.D.N.Y. Feb. 8, 2005) (dismissing claim where plaintiff failed to allege that each defendant made misrepresentations upon which he relied).  Moreover, because RICO is predicated on criminal conduct, plaintiffs must plead and establish that ***each*** defendant intended to engage in the conduct with actual knowledge of the illegal activities.  *See Com. Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 487 (2d Cir. 2001) (plaintiffs must allege that the defendant acted with actual knowledge in violation of the predicate statute).[7]

Plaintiff alleges that four predicate "racketeering acts" gave rise to the pattern of racketeering: 18 U.S.C. § 1831 (economic espionage), 18 U.S.C. § 1832 (theft of trade secrets), 18 U.S.C. § 1503 (influencing or injuring officer or juror generally), and 18 U.S.C. § 1512 (tampering with a witness, victim, or an informant).  None is adequately pled.

### i.  *Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Conspiracy to Commit Economic Espionage*

As an initial matter, courts in this Circuit do not consider the alleged trade secret theft or economic espionage viable predicate acts.  *See Toms v. Pizzo*, 172 F.3d 38, 1998 WL 964199, at *2 (2d Cir. Feb. 2, 1998) (affirming dismissal of RICO claims in part because "trade secret theft . . . [is] not [a] predicate act[] for purposes of the RICO statute"); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 138, n.9 (E.D.N.Y. 2010) (finding that economic espionage "does not qualify as a predicate act under the RICO statute").[8]  It stands to reason that counsel could find no court in this Circuit that has ever sustained a civil RICO claim predicated on the two substantive predicate counts pled by the DNC (18 U.S.C. §§ 1831-32).

---

[7]      *See also Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 132 (S.D.N.Y. 1999) (dismissing RICO claims because the complaint failed to allege facts giving rise to a strong inference of fraudulent intent).

[8]      These provisions also do not contain a private cause of action.  *See, e.g.*, *Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*, 2018 WL 1605985, at *9 (S.D.N.Y. Mar. 29, 2018) ("As the Getty Defendants point out, concealment only violates the DTSA's *criminal* provision, 18 U.S.C. § 1832, and ***Plaintiffs have not cited any authority suggesting that the provision authorizes private causes of action***.  Indeed, courts outside this Circuit have held that private citizens do not have the right to enforce the DTSA's criminal provision.").

In any event, the substantive counts fail because they do not state a claim vis-à-vis Papadopoulos. Without identifying any specific allegations as to Papadopoulos (*see* SAC ¶¶ 277-81 (detailing the alleged conduct of Russia, WikiLeaks, and Assange)), the SAC alleges that Papadopoulos was part of a large group that conspired to commit economic espionage. (*Id*. ¶¶ 282-83.) But, those paragraphs naming Papadopoulos simply reference the paragraphs identifying conduct by others, without even alleging the existence of an agreement that would be necessary to alleging a conspiracy. Paragraphs 282 and 283 provide no factual information as to acts that violated the economic espionage statute and allege no actions by Papadopoulos.

In Paragraph 83, the DNC claims that the "Trump Associates" "actively supported" the disclosure of hacked information. It does not explain how, nor does it mention Papadopoulos. The DNC alleges that, while hacked information was being released, Defendant Stone was in contact with Assange, WikiLeaks, and the GRU. (*Id*. ¶ 161.) It alleges that Defendant Trump, Jr. secretly communicated with WikiLeaks during the same period. (*Id*. ¶ 173.) And it alleges that Defendants Manafort and Gates communicated during that time with Konstantin Kilimnik, who the DNC speculates is an agent of the GRU. (*Id*. ¶¶ 67, 91, 152-55, 168-69, 231.) Nowhere does it allege anything with respect to Papadopoulos. Because there is absolutely no allegation that Papadopoulos took any information without authorization, copied, duplicated, downloaded, uploaded, altered, destroyed, replicated, transmitted, delivered, sent, communicated, or conveyed the DNC's supposed trade secrets, and because there is no allegation that Papadopoulos participated in the conspiracy allegedly undertaken by the other named defendants to engage in these activities, the DNC does not plead facts sufficient to plausibly establish a predicate offense of conspiracy to commit economic espionage against Papadopoulos.

Because Plaintiff must adequately plead all elements of each offense as to each

defendant, conduct allegedly committed by another defendant or generically by "Trump

Associates" cannot be attributed to Papadopoulos when pleading a substantive RICO violation.

### ii.    Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Theft of Trade Secrets

Plaintiff's theft of trade secrets claim similarly fails.  Theft of trade secrets and

economic espionage involve the same activities.[9]  As with the economic espionage allegation,

the SAC claims in two conclusory paragraphs that all Defendants committed acts constituting

theft of trade secrets.  (*Id*. ¶¶ 289-90.)   And as with economic espionage, the SAC alleges no

facts to suggest that any such act was committed or aided and abetted by Papadopoulos, or that

Papadopoulos did so with actual knowledge of the illegal activities.

### iii.    Aiding/Abetting a RICO Enterprise is Not a Valid Cause of Action

As the Trump Campaign Memo makes clear, the DNC also cannot state a claim against

Papadopoulos by alleging he merely aided and abetted a substantive RICO violation.  *See* Trump

Campaign Memo § III.C.  Moreover, the DNC's allegations fail to plausibly allege aiding and

abetting.  To establish a claim for aiding and abetting, a complaint must allege, among other

things, "'substantial assistance' by the aider and abettor in the achievement of the primary

violation." *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1100 (S.D.N.Y. 1994), *aff'd*, 66 F.3d

12 (2d Cir. 1995); *Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *6 (E.D.N.Y. Jan.

4, 2017) ("[S]imply aiding and abetting a [RICO] violation is not sufficient to trigger liability.");

*Spinale v. United States*, 2004 WL 50873, at *6 (S.D.N.Y. Jan. 9, 2004) ("Courts in this district

have routinely held that 'aiding and abetting' a RICO enterprise is not a valid cause of action.").

---

[9]      The acts constituting theft of trade secrets are undertaken with the intent to convert a trade secret to the economic benefit of anyone other than its owner, knowing and intending that doing so will injure that owner; the acts constituting economic espionage are undertaken knowing or intending that doing so will benefit a foreign government, foreign instrumentality, or foreign agent.  *See* 18 U.S.C. §§ 1831, 1832.

The DNC does not plead that Papadopoulos provided any – let alone substantial –assistance to the Defendants that allegedly committed predicate acts.

### iv.    Papadopoulos is Not Alleged to Have Committed Any Acts Constituting Obstruction of Justice

Recognizing the inadequacy of the original predicate acts pleaded as against Papadopoulos, Plaintiff now pleads two new predicate acts related to Papadopoulos's guilty plea under 18 U.S.C. § 1001. (*Id*. ¶ 223.)  Of course, a violation of 18 U.S.C. § 1001 is not a predicate act under the RICO law (18 U.S.C. § 1961).  Instead, Plaintiff seeks to convert Papadopoulos's plea, along with his admission that "he deleted his Facebook account," "scrubbed other social media accounts," and "changed his cell phone number" into racketeering conduct.

Firstly, as above, no court in this Circuit has ever held that the criminal obstruction of justice predicate acts pled here (18 U.S.C. §§ 1503, 1512) are viable predicate acts for a civil RICO claim.  As above, there is no private cause of action to enforce either 18 U.S.C. § 1503 or 18 U.S.C. § 1512.  *See Scherer v. United States*, 241 F. Supp. 2d 1270, 1282 (D. Kan*.), aff'd sub nom. Scherer v. U.S. Dep't of Educ.*, 78 F. App'x 687 (10th Cir. 2003) ("Federal courts have consistently denied a private civil right of action under 18 U.S.C. § 1503, the criminal statute against jury tampering, witness intimidation, and obstruction of justice.") (citing cases); *Hamrick v. Gottlieb*, 416 F. Supp. 2d 1, 4 (D.D.C. 2005) (dismissing civil RICO claim where plaintiff "has not stated a claim for obstruction of justice under 18 U.S.C. § 1512(b)(2)(B) because this statutory provision does not provide for a civil remedy as plaintiff seeks here.").[10]

---

[10]    The Court in *Hamrick* explained why there was no civil remedy under 18 U.S.C. § 1512: "In determining whether a civil remedy exists under a criminal statute that does not specifically provide for a civil remedy, the language and structure of the statute is examined to assess legislative intent. Statutes that are part of comprehensive legislative schemes, including an integrated system of procedures for enforcement, create a strong presumption against the creation of a private cause of action.  Here, § 1512(b)(2)(B) is part of a comprehensive legislative scheme, and, thus, there is *a presumption that absent a specific civil remedy, Congress did not intend for the courts to imply such a remedy*. Plaintiff has offered nothing to rebut this presumption, and, thus, has not stated a claim for obstruction of justice." 416 F. Supp. 2d at 4.

Moreover, these acts, occurring nearly a year following the conduct at issue, cannot create liability for the prior alleged acts (which fail to state a claim against Papadopoulos).  As explained in the section immediately below, this alleged 2017 conduct could not have caused the DNC's claimed 2016 injury, nor does the DNC even attempt to plead any cognizable RICO injury traceable to Papadopoulos's 2017 conduct.

Plaintiff's RICO claim against Papadopoulos fails for the additional reason that Plaintiff alleges no actions by Papadopoulos that amount to a violation of the obstruction statutes at issue. Most notably, Plaintiff makes no allegation regarding Papadopoulos's intent with respect to any of his 2017 conduct.  A violation of 18 U.S.C. § 1503 requires that the defendant "acted with the wrongful intent or improper purpose to influence the judicial or grand jury proceeding, whether or not the defendant is successful in doing so—that is, that the defendant corruptly intended to impede the administration of that judicial proceeding."  *United States v. Sampson*, 898 F.3d 287, 299 (2d Cir. 2018).  Plaintiff does not make any effort to plead this necessary mental state element, nor does Plaintiff make any effort to plead that at the time Papadopoulos spoke with the FBI in January 2017, he had actual or constructive notice of the existence of a "pending judicial or grand jury proceeding," as required to state a claim.  *Id*.

Similarly, 18 U.S.C. § 1512(c)(1) requires that the defendant "**inten[ded] to impair** the object's integrity or availability for use **in an official proceeding**."  The DNC makes no allegation that, in February 2017, when Papadopoulos "deleted his Facebook account," "scrubbed other social media accounts," and "changed his cell phone number" he did so with an intent to affect any official proceeding.  *See United States v. Reich*, 479 F.3d 179, 185 (2d Cir. 2007) (Sotomayor, J.) ("defendant's conduct must 'have a relationship in time, causation, or logic with the judicial proceedings'"); *see also United States v. Tairod Nathan Webster Pugh*,

2015 WL 9450598, at *15 (Dec. 21, 2015) ("An offender 'must believe that his actions are likely to affect a particular, existing or foreseeable proceeding.'").

### v.   Papadopoulos's 2017 Conduct Could Not Have Caused Plaintiff's 2016 Harm

Plaintiff's new inclusion of RICO predicate acts related to Papadopoulos's alleged obstruction fail for the simple reason that any 2017 conduct – which occurred *after* the alleged hack, *after* the alleged theft of the emails, and *after* the alleged dissemination – could not have caused the DNC's 2016 harm.  Injury under the RICO statute must be "actual [and] quantifiable"; "[c]ourts have required that the plaintiff show concrete financial loss in order to show injury under RICO."  *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015).  The RICO violation must be "both the proximate cause and the but-for cause of the plaintiffs' injuries." *Id*. at 612; *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 91 (2d Cir. 2015) (the alleged injury must be "by reason [of a violation] of the substantive RICO violation.").  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460–61 (2006).  A plaintiff must plausibly allege that its damages are "attributable to *the violation*, as distinct from other, independent factors." *DeFalco*, 244 F.3d at 329–30.  Of course, the DNC cannot possibly suggest that the harm it allegedly suffered in connection with the 2016 election was caused by Papadopoulos's 2017 conduct vis-à-vis the FBI.  The DNC suffered its alleged harm in 2016 (*see* SAC ¶¶ 244-56) – harm not caused by the scant allegations regarding Papadopoulos's 2017 conduct.

These obstruction of justice predicates also cannot create civil RICO liability for Papadopoulos because they do not "relate" to the acts of the alleged enterprise.  *Reich v. Lopez*, 858 F.3d 55, 61 (2d Cir. 2017) (Racketeering acts are related to each other when they "have the

same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."). "Any number of a defendant's activities or affiliations might create the circumstances for a RICO predicate act, but the legal question is whether the predicate act could rationally be ascribed to the enterprise such that it was conduct of an enterprise within the meaning of the RICO act." *Cohen v. Cohen*, 993 F. Supp. 2d 414, 425 (S.D.N.Y. 2014). The after-the-fact obstruction predicate acts pled against Papadopoulos here are exactly the type of "unrelated predicate act[] allegedly committed against [other] victims . . . . [pled] to extend the scope of the pattern of racketeering activity" that these relatedness requirements prohibit. *Id*; *see also Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, 1996 WL 442799, at *6 (S.D.N.Y. Aug. 6, 1996) (rejecting the relatedness of predicates that were not directed at plaintiff and not alleged to have injured plaintiff).[11]

### b. The Complaint Does Not Allege Facts Sufficient to Show That Papadopoulos Engaged in a Pattern of Racketeering Activity

Because the DNC fails to plead facts showing that Papadopoulos committed any racketeering activity that could properly form the basis for a civil RICO claim, it also necessarily fails to plead facts sufficient to show that Papadopoulos engaged in a pattern of racketeering. In alleging a "pattern" of racketeering activity, a plaintiff must establish that ***each*** defendant participated in the pattern of racketeering, which the SAC fails to do. *World Wrestling Entm't v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 513 (S.D.N.Y. 2007) ("The focus of section 1962(c) is on the individual patterns of racketeering activity engaged in by a defendant, rather than on the collective activities of the members of the enterprise"), *aff'd*, 328 F. App'x 695 (2d Cir. 2009). Here, Papadopoulos is alleged to have been told about the existence of information stolen from

---

[11]     Even if Papadopoulos hoped his alleged 2017 conduct would benefit the enterprise, which Plaintiff has not even suggested, this would be insufficient. *See Reich*, 858 F.3d at 62; *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).

the DNC and to have sought contact with an individual the DNC describes as a "Kremlin-tied

agent" – neither of which is illegal.  Those are the only allegations suggesting Papadopoulos

participated in any wrongdoing relevant to the alleged racketeering enterprise that caused the

DNC's alleged harm.  This is not sufficient to adequately allege a "pattern of racketeering

activity," and therefore Plaintiff's RICO claim against him fails as a matter of law.[12]

### c. The DNC Does Not Allege Facts Sufficient to Show Papadopoulos Participated in the Conduct of the Affairs of Any Enterprise

Under Section 1962(c), a defendant must have "conduct[ed] or participate[d], directly or

indirectly, in the conduct of such enterprise's affairs."  18 U.S.C. § 1962(c).  The Supreme Court

has defined that phrase as requiring that "one must have some part in *directing those affairs*."

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  It is insufficient, as here, to merely "allege

that a defendant provided services that *were helpful* to an enterprise, without alleging facts that,

if proved, would demonstrate some degree of control over the enterprise." *Elsevier Inc. v.

Memon*, 97 F. Supp. 3d 21, 33 (E.D.N.Y. 2015).  Under this standard, a person may not be held

liable merely for taking directions and performing tasks that are "necessary and helpful to the

enterprise," or for providing "goods and services that ultimately benefit the enterprise."  *See U.S.

Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004).

The most generous reading of the SAC suggests only that Papadopoulos provided a

service helpful to the purported enterprise by emailing the Trump Campaign that there were

"interesting messages coming in from Moscow about a trip when the time is right."  (SAC ¶ 13.)

This fact alone is insufficient to adequately plead that he played "some part in directing the

---

[12]    *See Faberware, Inc. v. Groben*, 764 F. Supp. 296, 306 (S.D.N.Y. 1991) (allegations regarding "what is essentially a single transaction" found to be insufficient, as "one allegedly overpriced contract does not involve the type of repeated criminal activity at which RICO is properly directed"); *Cont'l Realty Corp. v. J.C. Penney Co., Inc.*, 729 F. Supp. 1452, 1455 (S.D.N.Y. 1990) (holding, where complaint did not allege that defendants "previously engaged in similar acts" that "to infer a threat of repeated fraud from a single alleged scheme would in effect render the pattern requirement meaningless").

enterprise's affairs." *Reves*, 507 U.S. at 179; *United States v. Allen*, 155 F.3d 35, 40 (2d Cir. 1998) (complaint must allege defendant "participat[ed] in the operation or management of the enterprise itself"); *United States v. Viola*, 35 F.3d 37, 40 (2d Cir. 1994) ("simply aiding and abetting a violation is not sufficient to trigger [RICO] liability.").

The SAC alleges no facts showing Papadopoulos directed the conduct of others. The Russian Federation and the GRU allegedly stole sensitive information and disseminated it, with the assistance of Assange and WikiLeaks. There is no allegation that Papadopoulos was even aware of these events, much less that he played any role in deciding to undertake them. There are no allegations that Papadopoulos occupied a position in the chain of command, authorized or directed Russian conduct, or knowingly implemented the decisions of upper management of any entity. Neither Papadopoulos's status as an unpaid foreign policy advisor to President Trump, nor the nebulous allegations regarding his conduct following the hacking and dissemination of the information at issue, amount to "facts that, if proved, would demonstrate some degree of control over the enterprise." *Eagle One Roofing Contractors, Inc. v. Acquafredda*, 2018 WL 1701939, at *8 (E.D.N.Y. Mar. 31, 2018). In other words, the DNC does not allege that Papadopoulos played a part in – let alone directed – any of the conduct upon which its RICO claim is predicated. Therefore, Plaintiff's claims under Section 1962(c) fail as a matter of law.

### d.  The Complaint Must Be Dismissed Against Papadopoulos Because it Fails to Allege His Membership in a Cognizable RICO Enterprise

The DNC's generic claim that Papadopoulos "was part of an Association-In-Fact comprising" all Defendants, which supposedly worked "to further [Defendants'] mutual goal of using illegal means to secure Trump's grip on the Presidency, in part by damaging the DNC," (SAC ¶ 272), fails to adequately allege Papadopoulos's membership in a valid RICO enterprise. To plead a RICO claim, the DNC must allege an enterprise whose members pursued a common

17

fraudulent purpose by working closely together for an extended period.  But the DNC simply lumps together an assortment of individuals and entities who were pursuing differing objectives, who maintained no relationships beyond isolated interactions, and who did not come together until well after the alleged wrongdoing started.  The DNC's failure to allege a shared fraudulent purpose or relationships among those associated with the enterprise is fatal generally to the DNC's § 1962(c) claim and to this claim against Papadopoulos.

### i.   *The DNC Fails to Allege a Fraudulent Purpose.*

As the Trump Campaign Memo makes clear, a RICO plaintiff must allege not just a common purpose, but a common fraudulent purpose.  Here, there is nothing fraudulent about the alleged common purpose shared by Papadopoulos of "secur[ing] Trump's grip on the Presidency."  (SAC ¶ 70.)  Advancing Trump's electoral prospects necessarily diminished the DNC's likelihood of success.  It is not enough for the DNC to allege that Defendants pursued a legitimate objective (electoral success) through improper means.  Because Defendants' alleged objective was entirely legitimate, Defendants cannot be said to have formed a RICO enterprise.

### ii.   *The DNC Fails to Allege Relationships Amongst the Purported Association-in-Fact Enterprise Members.*

As explained in the Trump Campaign Memo (§ III.A.3), for an association-in-fact enterprise to exist, its members also must have "interpersonal relationships" with one another.  Here, the DNC alleges a series of isolated connections between various individuals (*e.g.*, Papadopoulos's meetings with Joseph Mifsud, a Maltese academic "based in London") with undefined connections to Russia.  (SAC ¶¶ 93–98).  These allegations are insufficient.

*First*, Papadopoulos's isolated interactions with a small subset of the Defendants does not establish that the disparate and geographically dispersed enterprise members were "work[ing] together for a common illicit interest" through "interpersonal relationships," rather than for "their

18

own independent interests." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301

(E.D.N.Y. 2017).  The fact that various Defendants occasionally communicated with one another

simply does not provide any "evidence of an ongoing organization" that "function[ed] as a

continuing unit." *Boyle v. United States*, 556 U.S. 938, 945 (2009).

 *Second*, many of these allegations rely on unsupported assertions that particular

individuals were working as "agents" for other Defendants. (SAC ¶ 52 (alleging that Mifsud

"acted as a de facto agent of the Russian government")).  But "conclusory allegations regarding

[an] agency relationship," without "facts that support [this] assertion[,] . . . are not sufficient to

survive a motion to dismiss." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 408 (S.D.N.Y.

2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).  The DNC offers no such factual support, and so

cannot rely on these bare allegations to bootstrap relationships among various Defendants.

### e.  The DNC Does Not Allege Any Cognizable Injuries Caused by Racketeering Acts

 As stated above, the DNC has failed to allege facts sufficient to show that any of its

alleged injuries were caused by racketeering activity by Papadopoulos.  Moreover, as explained

in the Trump Campaign Memo (§ III.D), the DNC has utterly failed to allege that the supposed

RICO violations proximately caused injury to its "business or property" as required under the

law. 18 U.S.C. § 1964(c).  A RICO injury must be "*actual* [and] quantifiable"; "[c]ourts have

required that the plaintiff show concrete financial loss in order to show injury under RICO."

*Westchester Cty.*, 137 F. Supp. 3d at 612.  The DNC's failure to assert such cognizable injuries

proximately caused by the supposed RICO violations requires dismissal of its RICO claims.

*      *      *

 The DNC does not allege a valid enterprise, does not allege that Papadopoulos

participated in the operation or management of any such enterprise, does not allege that

19

Papadopoulos committed any predicate acts (let alone a continuous pattern of such acts), and does not allege that it sustained any cognizable injury to its property or business that was proximately caused by Papadopoulos's alleged actions.  The RICO claim against Papadopoulos must be dismissed.

### 3.  The Third Cause of Action Should Be Dismissed Because Plaintiff Fails to Plead Facts Sufficient to Establish a RICO Conspiracy Under 18 U.S.C. § 1962(d)

The SAC's failure to adequately allege the elements of a substantive offense under Section 1962(c) requires dismissal of Plaintiff's RICO conspiracy claim.  *See Salinas v. United States*, 522 U.S. 52, 64–65 (1997); *Allen v. New World Coffee, Inc.*, 2002 WL 432685, at *6 (S.D.N.Y. Mar. 19, 2002) ("The dismissal of all of plaintiffs' RICO claims leaves the conspiracy cause of action without a leg to stand on.").  "Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient."  *Nat'l Grp. for Commc'ns & Computers v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006).

Even if the SAC adequately alleged substantive violations of RICO, which it has not, it fails to allege facts sufficient to establish conspiracy liability against Papadopoulos.  Under Section 1962(d), a plaintiff must "assert that 'each defendant by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise.'"  *United Limousin*e, 303 F. Supp. 2d at 453.  To be liable for a RICO conspiracy, the defendant must "knowingly agree[] to facilitate . . . an endeavor which, if completed, would satisfy all of the elements of a [RICO substantive claim]."  *Salinas*, 522 U.S. at 64–65.

Accordingly, "the Second Circuit has instructed that a plaintiff must prove that (i) the defendants agreed to form and associate themselves with a RICO enterprise; (ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise; and (iii) if the agreed-upon predicate acts had been carried out,

they would have constituted a pattern of racketeering activity."  *See Elsevier, Inc. v. Grossman*,

2013 WL 6331839, at *11 (S.D.N.Y. Dec. 5, 2013).  "Because the core of a RICO civil

conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the

very least, must allege specifically such an agreement."  *Hecht v. Commerce Clearing House*,

897 F.2d 21, 25 (2d. Cir. 1990); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525,

544–45 (S.D.N.Y. 2014) (dismissing RICO conspiracy claim where plaintiffs alleged "no facts to

show specifically that the defendants had any 'meeting of the minds' in the alleged violations").

Here, as the Trump Campaign Memo (§ III.E) makes clear, the DNC's conspiracy claim

fails on its own terms because the DNC has not sufficiently alleged a conspiratorial agreement.

Conclusory allegations are all that the DNC offers.  At no point does the DNC allege specific

facts plausibly suggesting that Papadopoulos reached an agreement with the other Defendants to

commit any of the alleged predicate acts.  For this reason, too, the DNC's § 1962(d) claim fails.

### 4.   The Fourth Cause of Action (Wiretap Act) Should be Dismissed

The DNC's claim under the Wiretap Act fails because it does not allege that

Papadopoulos had any role in intercepting in-progress communications or using intercepted

communications.  A straight-forward analysis of the allegations makes clear that this cause of

action has not been pleaded against Papadopoulos.  The Wiretap Act makes it unlawful to

"intentionally intercept, endeavor to intercept, or procure any other person to intercept a wire,

oral, or electronic communication, or to use the contents of any such communication knowing or

having reason to know that the information was obtained in violation of [the Act]."  *See* 18

U.S.C. § 2511(1)(a), (c); *see also Tantaros v. Fox News Network, LLC*, 2018 WL 2731268, at *7

(S.D.N.Y. May 18, 2018).

Courts in this Circuit have construed the term "intercept" narrowly to require that the

interception of an electronic communication be ***contemporaneous with the transmission*** of that

communication.  *See Tantaros*, 2018 WL 2731268, at *7; *see also Zaratzian v. Abadir*, 2014 WL

4467919, at *6 (S.D.N.Y. Sept. 2, 2014) (collecting cases), *aff'd*, 694 F. App'x 822 (2d Cir.

2017); *Directv, LLC v. Wright*, 2016 WL 3181170, at *5 (W.D.N.Y. June 3, 2016) ("[A]n

interception requires a capture of the communication **while it is in transit**.").

     The DNC fails to allege an "interception."  The SAC notably does not state that Russian

agents acquired the DNC emails *while DNC employees were in the process of sending or*

*receiving them*.  The DNC thus alleges only that Russian agents gained access to stored

communications – not that they intercepted communications contemporaneously with the

communications' transmission.  Moreover, the DNC also fails to allege that *Papadopoulos*

"kn[ew] or ha[d] reason to know that the information was obtained through . . . interception."

18 U.S.C. § 2511(d).  In other words, the DNC nowhere alleges that Papadopoulos knew or

should have known that Russian agents had extracted communications from the DNC's servers,

let alone that they acquired the emails contemporaneously with the emails' transmission.

     Furthermore, the provision of the Wiretap Act at issue here prohibits the intentional "use"

of intercepted communications. 18 U.S.C. § 2511(1)(d).  Here, the DNC fails to allege

Papadopoulos "used" an interception because it does not allege he disclosed the contents of an

intercepted communication to the public.  The SAC alleges only that "WikiLeaks and Assange"

"endeavored to disclose and did disclose the contents of [the DNC's] wire, oral, or electronic

communications . . . ." (SAC ¶ 311.)  This is insufficient to state a claim against Papadopoulos.

     The DNC cannot get around these problems by asserting that Papadopoulos conspired

with Russian agents and WikiLeaks to disclose the DNC emails.  (*See* Trump Campaign Memo

§IV.)  In contrast with other clauses of the Wiretap Act, the use and disclosure clauses alleged do

not provide for any form of secondary liability.  Therefore, as the SAC fails to allege facts

necessary to establish a cause of action under the Wiretap Act against Papadopoulos, Plaintiff's

Wiretap Act claim against him must be dismissed.

5. **The Eighth, Twelfth, and Fourteenth Causes of Action (Under D.C. and Virginia Law) Should be Dismissed Against Papadopoulos Because Plaintiff <u>Fails to Adequately Allege the Necessary Elements for these Claims</u>**

The DNC's state-law claims (under the laws of Washington, D.C., and Virginia) fare no

better than its RICO claims.  Given the defects in the federal claims and the complex state-law

issues the state claims raise, the Court should decline to exercise supplemental jurisdiction over

these claims.  *See* Trump Campaign Memo §V; 28 U.S.C. § 1367(c)(3) (a federal court may

decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has

original jurisdiction").  But even if the Court were to retain jurisdiction over these claims, they

should all be dismissed because the DNC (1) invokes D.C.'s Uniform Trade Secrets Act

("DCUTSA"), but fails to plead that this case involves any trade secrets; (2) brings a claim under

Virginia law for conspiracy to commit trespass to chattels, but alleges nothing about

Papadopoulos; and (3) asserts a claim under the Virginia Computer Crimes Act, but ignores that

that statute does not authorize aiding-and-abetting liability (and does not allege that

Papadopoulos had any involvement in hacking, in any event).

a. **Count VIII, D.C. Uniform Trade Secrets Act**

Plaintiff has not pled any of the necessary elements to state a cause of action against

Papadopoulos for a violation of the DCUTSA.  The elements of a DCUTSA claim are: (1) the

existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper

use or disclosure by one under a duty not to disclose.  *See DSMC, Inc. v. Convera Corp.*, 479 F.

Supp. 2d 68, 77 (D.D.C. 2007).  A plaintiff claiming misappropriation of trade secrets also must

show that the defendant gained access to the trade secrets through ***improper*** means or that ***the***

***defendant improperly used or disclosed trade secrets***.  *See Id.* at 79.  The DCUTSA defines

23

"improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means."  D.C. Code § 36–401.

Plaintiff has not pleaded facts that plausibly establish any of these elements as to Papadopoulos.  Plaintiff alleges no facts that Papadopoulos disclosed, received, or otherwise used any alleged trade secrets.  Plaintiff makes no allegation that Papadopoulos undertook any efforts or aided in any efforts to disclose or improperly use any trade secrets.  The SAC does not allege that Papadopoulos was involved in any of the activity of the other Defendants relevant to this claim.  To the contrary, the SAC's allegations regarding this conduct entirely excludes Papadopoulos.  Therefore, this cause of action is defective as to Papadopoulos.[13]

### b.  Count XII, Conspiracy to Commit Trespass to Chattels

Plaintiff has not pleaded any of the necessary elements to state a cause of action against Papadopoulos for conspiracy to commit trespass to chattels.  These necessary elements are: (1) that two or more persons engaged in concerted action; (2) to accomplish some criminal or unlawful purpose, or some lawful purpose by some criminal and unlawful means; and (3) that actual damages resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy.  *See Blackwelder v. Millman*, 522 F.2d 766, 776 (4th Cir. 1975). A trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization.  *See Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998).

The DNC, however, has not alleged that Papadopoulos combined with anyone else to hack into the DNC's servers (which would constitute a trespass to chattels).  Instead, the DNC

---

[13]    This cause of action is also defective for all the reasons stated in the Trump Campaign Memo (§V.B): the DNC has not properly identified the trade secrets at issue; the trade secret information at issue does not derive its independent economic value from not being generally known; and the trade secret information at issue was not the subject of "reasonable efforts to maintain its secrecy."

alleges that Russia hacked the DNC's servers and extracted information all by itself.  Indeed, the SAC's allegations regarding this conduct entirely exclude Papadopoulos.  While Plaintiff matter-of-factly alleges that "each Defendant committed overt acts" that "caused Plaintiff injury and damages," (SAC ¶ 358), there are no specific allegations as to Papadopoulos.  Plaintiff asserts only that "[a]ll of the named Defendants aided and abetted" the acts described, and "knowingly and substantially assisted the common scheme" and that, therefore, the "actions of Defendants constitute conspiracy to trespass."  (*Id*. ¶ 359.)  This boilerplate language, without more, does not suffice to state a claim against Papadopoulos.

### c.  Count XIV, Violation of the Virginia Computer Crimes Act

The DNC fails to sufficiently allege any of the necessary elements to state a cause of action against Papadopoulos for a violation of the Virginia Computer Crimes Act (VCCA).  The three elements required to state a claim for a violation of the VCCA are: (1) using a computer or computer network (2) without authority (3) intending to obtain, embezzle, or convert the property of another.  *See Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008); *see also McGladrey & Pullen LP v. Shrader*, 62 Va. Cir. 401, 2003 WL 22203709, at *6 (Va. Cir. Ct. Aug. 11, 2003).  The DNC claims that Papadopoulos is liable because he "knowingly aided, abetted, encouraged, induced, instigated, contributed to and assisted" Russia's violation of these prohibitions.  (SAC ¶ 371.)  The Court should dismiss this claim, because (1) the VCCA does not provide for aiding-and-abetting liability (*see* Trump Campaign Memo at V.D) and (2) the DNC does not plausibly plead that Papadopoulos aided and abetted a violation of the VCCA.

Even if aiding-and-abetting liability were contemplated under the VCCA, the DNC fails to plausibly plead that Papadopoulos aided and abetted a violation of it.  The provisions on which the DNC relies prohibit acts involved in hacking into another person's computer network: "us[ing]" the network to convert property, "disabl[ing]" computer programs, "caus[ing] [the]

computer to malfunction," "alter[ing]" computer data, "us[ing] [the] computer . . . to make . . . an unauthorized copy," "collect[ing] information" by installing certain kinds of malicious software, and "us[ing] [the] computer" to examine private financial information. Va. Code Ann. § 18.2-152.3–4. Plaintiff has not alleged any facts that plausibly establish any of these elements as to Papadopoulos. Nor does the SAC allege that Papadopoulos was involved in any of the activity of the other Defendants relevant to this claim. To the contrary, as with the rest of the SAC, the allegations regarding this conduct entirely exclude Papadopoulos. The SAC fails to allege that Papadopoulos did anything to aid and abet the Russian hack of the DNC's servers. Indeed, even under the DNC's theory, Russia began colluding with Papadopoulos *after* the hack had occurred and the information in the DNC's servers had been stolen. The DNC thus fails to state a claim against Papadopoulos under the VCCA.

### 6. The Court Should Dismiss All Claims Against Papadopoulos Because the Imposition of Liability Would Violate the First Amendment

The DNC seeks to hold Papadopoulos legally responsible for the publication of the DNC's emails and other data on the internet. However, the DNC does not actually claim that Papadopoulos played any role in publishing those materials. As the Trump Campaign Memo (§ I) makes clear, even if the DNC did make such a claim, the First Amendment protects a speaker's right to disclose stolen information so long as (1) the speaker did not participate in the theft and (2) the information deals with matters of public concern. Here, the DNC does not allege that Papadopoulos participated in the theft of the leaked materials, and the materials plainly deal with matters of public concern. Each claim must thus be dismissed. The First Amendment bars civil liability here against Papadopoulos.

**CONCLUSION**

The SAC fails to plead facts sufficient to establish any of the six claims alleged against Papadopoulos.[14]  Dismissal with prejudice is particularly appropriate where, as here, Plaintiff has already had multiple opportunities to amend.  *See Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 373–74 (S.D.N.Y. 2009) (granting motion to dismiss with prejudice where plaintiffs had "already had an opportunity to amend the Initial Complaint in response to deficiencies pointed out by the first pre-answer motion to dismiss"); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.").

Accordingly, and for all the foregoing reasons, George Papadopoulos respectfully requests that the Court enter an order dismissing the SAC, with prejudice.

Dated:  March 4, 2019

> /s/ Jeffrey R. Alexander
> Jeffrey R. Alexander
> Caroline J. Polisi
> Christopher N. LaVigne
> John M. Pierce
> Shira L. Feldman
> Pierce Bainbridge Beck Price & Hecht LLP
> 20 West 23rd Street, Fifth Floor
> New York, New York 10010
> (646) 664-1299
> jalexander@piercebainbridge.com
>
> *Attorneys for Defendant George Papadopoulos*

---

[14]    The DNC raises six claims against Papadopoulos: (1) violation of RICO (count II), (2) conspiracy to violate RICO (count III), (3) violation of the Wiretap Act (count IV), (4) violation of the Washington, D.C. Uniform Trade Secrets Act (count VIII), (5) conspiracy to commit trespass to chattels in violation of Virginia law (count XII), and (6) violation of the Virginia Computer Crimes Act (count XIV).  None is adequately pleaded.

**CERTIFICATE OF SERVICE**

I certify that on March 4, 2019, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send a notice of electronic filing to all registered

parties.

Dated:    March 4, 2019                    /s/ Jeffrey R. Alexander
                                           Jeffrey R. Alexander

                                           *Attorney for Defendant George Papadopoulos*