UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE,<br><br>              Plaintiff,<br><br>-against-<br><br>THE RUSSIAN FEDERATION, et al.,<br><br>              Defendants. | Case No. 1:18-cv-03501-JGK |

**REPLY BRIEF IN FURTHER SUPPORT OF
ARAS AGALAROV'S AND EMIN AGALAROV'S
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

Scott S. Balber
Jonathan C. Cross
Michael P. Jones
Pamela K. Terry
HERBERT SMITH FREEHILLS NEW YORK LLP
450 Lexington Ave, 14th Floor
New York, New York 10017
Tel:  (917) 542-7600
Fax:  (917) 542-7601
Email:   Scott.Balber@hsf.com
           Jonathan.Cross@hsf.com
           Michael.Jones@hsf.com
           Pamela.Terry@hsf.com

*Attorneys for Defendants
Aras Iskenerovich Agalarov
and Emin Araz Agalarov*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 3

    I.    THE SAC FAILS TO ALLEGE FACTS SHOWING
           THAT THE AGALAROVS PARTICIPATED IN A RICO ENTERPRISE...... 3

           A.    The Opposition Confirms that the SAC Fails to
                  Allege Any Facts Showing that the Agalarovs
                  Engaged in any Racketeering Activity ................................................. 3

           B.    Plaintiff Fails to Allege that
                  the Agalarovs Directed the Enterprise's Affairs .................................. 6

           C.    Plaintiff Fails to Allege Open-Ended or Closed-Ended Continuity ..... 8

    II.    PLAINTIFF FAILS TO PLEAD ANY
            RICO CONSPIRACY CLAIM AGAINST THE AGALAROVS ...................... 9

    III.    PLAINTIFF FAILS TO ESTABLISH
             PERSONAL JURISDICTION OVER THE AGALAROVS ............................ 9

    IV.    PLAINTIFF HAS FAILED TO PLEAD ANY COGNIZABLE
             STATE-LAW CLAIMS AGAINST THE AGALAROVS.............................. 11

CONCLUSION....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*7 West 57th St. Realty Co. v. Citigroup, Inc.*,
   No. 13 Civ. 981(PCG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) .................................11

*AmTrust Fin. Servs., Inc. v. Lacchini*,
   260 F. Supp. 3d 316 (S.D.N.Y. 2017) ..........................................................................11

*Casio Computer Co. v. Sayo*,
   No. 98CV3772 (WK), 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ..............................6, 7

*City of New York v. FedEx Ground Package System, Inc.*,
   175 F. Supp. 3d 351 (S.D.N.Y. 2016) ...........................................................................7

*D'Addario v. D'Addario*,
   901 F.3d 80 (2d Cir. 2018) ............................................................................................7

*Daventree Ltd. v. Republic of Azerbaijan*,
   349 F. Supp. 2d 736 (S.D.N.Y. 2004) .........................................................................11

*Document Techs., Inc. v. LDiscovery, LLC*,
   731 F. App'x 31 (2d Cir. 2018) .................................................................................5, 6

*D'Onofrio v. City of New York*,
   No. 07-CV-0731 (CBA), 2007 WL 2994269 (E.D.N.Y. Oct. 11, 2007) ..............................4

*Exxon Mobil Corp. v. Schneiderman*,
   316 F. Supp. 3d 679 (S.D.N.Y. 2018) .........................................................................10

*Franzone v. City of New York*,
   No. 13-CV-5282 (NG), 2015 WL 2139121 (E.D.N.Y. May 4, 2015) .................................8

*Goldfine v. Sichenzia*,
   118 F. Supp. 2d 392 (S.D.N.Y. 2000) ...........................................................................6

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
   331 F. Supp. 3d 130 (S.D.N.Y. 2018) .........................................................................10

*Holmes v. Parade Place, LLC*,
   No. 12 CIV. 6299 (GBD)(DF), 2013 WL 5405541 (S.D.N.Y. Sept. 26, 2013) ..................6

*Kahn v. City of New York*,
   No. 14-CV-4665 (SLT) (VMS), 2016 WL 1128298 (E.D.N.Y. Feb. 1, 2016) ....................4

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ......................................8

*Newman v. Jewish Agency for Isr.*,
    No. 16-cv-7593, 2017 WL 6628616 (S.D.N.Y. Dec. 28, 2017)..............................................10

*Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*,
    No. 2:12CV701, 2013 WL 2147478 (E.D. Va. May 14, 2013)...............................................12

**STATUTES**

18 U.S.C. § 1962(c) ....................................................................................................................6

**RULES**

Fed. R. Civ. P. 4................................................................................................................3, 10

Fed. R. Civ. P. 11........................................................................................................................4

**PRELIMINARY STATEMENT**

Aras Agalarov and Emin Agalarov (the "Agalarovs") do not belong in this case.

The SAC[1] consumes 256 paragraphs, spanning over 65 pages, alleging facts supposedly supporting Plaintiff's claim that Defendants participated in an unlawful "scheme to hack into [Plaintiff's] computer system, steal its trade secrets and other private documents, and then strategically disseminate those materials to the public to improve [Donald J.] Trump's chances of winning the [2016] election." (Opp. at 1-2.)[2] Yet only nine facts alleged mention either of the Agalarovs. None even attempt to link the alleged hacking scheme to the Agalarovs.

In its Opposition, Plaintiff tacitly concedes that most of the facts alleged against the Agalarovs—such as the fact that the Agalarovs met Trump at the Miss Universe pageant in Moscow, or the fact that the Agalarovs negotiated (but did not consummate) a potential real estate deal with Trump—have no relationship to the alleged scheme whatsoever. Instead, Plaintiff's Opposition focuses on a singular event: that the Agalarovs allegedly arranged a meeting that took place in June of 2016 and involved citizens of the Russian Federation and members of the Trump campaign (the "Trump Tower meeting"). (*See, e.g.*, Opp. at 18-19.)

The SAC itself alleges no facts to connect the Trump Tower meeting to the supposed hacking scheme. Indeed, the SAC alleges no facts at all about what transpired at the Trump

---

[1] Unless otherwise defined, capitalized terms used herein have the meanings set forth in the Memorandum of Law in Support of Aras Agalarov's and Emin Agalarov's Motion to Dismiss the Second Amended Complaint (ECF No. 230 (the "Memo")).

[2] "Opposition," or "Opp." refers to Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss and Russia's Statement of Immunity (ECF No. 241).

Tower meeting.  The absence of such allegations is no mere error in pleading: the Trump Tower meeting has been the subject of widely-reported and extensive investigations by the Office of the Special Counsel and multiple committees of Congress.  None of those investigations uncovered any connection between the Trump Tower meeting, the Agalarovs, and any alleged hacking by the Russian government, as would be required to link the Agalarovs to the alleged predicate acts of the other defendants.

Faced with the complete lack of allegations connecting the Agalarovs to any illegal activity at all, Plaintiff seeks to rescue its claims by inventing unpled and baseless factual contentions in its legal briefs.  For example, Plaintiff suggests, without basis, that the Agalarovs "coordinated" disclosures of hacked emails with Wikileaks, and that Aras Agalarov discussed e-mail hacking with the "Crown Prosecutor of Russia."  (Opp. at 18, 29.)  These slanderous suggestions are not pled, they could not be pled in good faith given their total absence of factual basis, and they do not represent reasonable inferences from the SAC's actual allegations, which evidence no RICO predicate conduct by the Agalarovs at all, let alone specific involvement in an e-mail hacking scheme.

Because the SAC fails to allege that either of the Agalarovs engaged in or knew of any RICO predicate activity, it fails all of the statutory and doctrinal requirements of a viable RICO claim.  It fails to allege a "pattern of racketeering activity" because it alleges no racketeering activity by the Agalarovs at all.  It fails to establish that activity prohibited by RICO "continued" because it fails to allege that such activity began in the first place.  It fails to allege that the Agalarovs "directed the affairs" of a RICO enterprise because it fails to allege that they knew of the existence of such an enterprise at any relevant time.  And, because a RICO conspiracy claim requires knowing facilitation of a pattern of racketeering activity, but the SAC fails to allege that

the Agalarovs knew of any such activity, the SAC also fails to allege a viable claim for RICO conspiracy.

Plaintiff also does not allege, and cannot show, any basis for this Court to exercise personal jurisdiction over the Agalarovs, non-residents of New York and the United States whose contacts do not, and are not alleged to, meet the demanding standards of "general" personal jurisdiction. While Plaintiff points to Fed. R. Civ. P. 4(k)(2) as a basis for evaluating the Agalarovs' contacts with the United States as a whole, rather than with New York, Plaintiff can point to no contacts with the United States as a whole that "give rise" to any claim asserted by Plaintiff. Moreover, because the SAC pleads no viable claim of participation in a RICO enterprise against the Agalarovs, the acts of other parties cannot form the basis for personal jurisdiction here.

Finally, the SAC's ancillary state-law claims for trespass and theft of trade secrets fail because Plaintiff alleges no facts to support the inference that the Agalarovs participated in any effort to "hack" Plaintiff's computer systems or to disseminate the results of such "hacking."

In sum, none of Plaintiff's claims are viable for the simple reason that Plaintiff does not allege that the Agalarovs engaged in any illegal conduct. The SAC should accordingly be dismissed as to them.

## ARGUMENT

### I. The SAC Fails to Allege Facts Showing that the Agalarovs Participated in a RICO Enterprise

#### A. The Opposition Confirms that the SAC Fails to Allege Any Facts Showing that the Agalarovs Engaged in any Racketeering Activity

The SAC alleges just nine facts concerning the Agalarovs, and none amount to, or relate to, RICO predicate acts. (*See generally* Memo at 3-4.) Nor do any of the nine facts alleged against the Agalarovs have any relationship to the scheme allegedly perpetrated by other

3

defendants to hack, and then disseminate, information from Plaintiff's computer systems. (*Id.*) The absence of any such allegations is fatal to Plaintiff's claims that the Agalarovs committed any predicate acts or otherwise joined a RICO conspiracy. (*Id.* at 6-16.)

Plaintiff's Opposition attempts to overcome the SAC's lack of factual allegations in two ways. *First*, Plaintiff invents new factual claims in the Opposition in an effort to link the Agalarovs to the other defendants' alleged cyberhacking scheme. Specifically, the Opposition asserts that the Agalarovs "coordinat[ed] with both Russia and WikiLeaks to time the disseminations [of hacked emails], amplify their effect, and solicit and encourage additional hacking." (Opp. at 29.)

Yet, this contention is not pled in the SAC, and the Opposition does not even attempt to provide a citation for its wholly unsupported assertion.[3] Accordingly, because it is error for a court to consider factual allegations or assertions made for the first time in a party's briefing papers, the Court should simply disregard Plaintiff's arguments regarding these unpled facts. *See, e.g.*, *Kahn v. City of New York*, No. 14-CV-4665 (SLT) (VMS), 2016 WL 1128298, at *5 (E.D.N.Y. Feb. 1, 2016) (plaintiff may not "circumvent the legal deficiencies of her amended complaint" by offering, and court may not rely upon, "factual allegations asserted in response to motions to dismiss"); *D'Onofrio v. City of New York*, No. 07-CV-0731 (CBA), 2007 WL 2994269, at *3 (E.D.N.Y. Oct. 11, 2007) (similar).

*Second*, in an apparent concession that it cannot plead any actual facts establishing that

---

[3] Nor could such an allegation be made consistent with counsel's obligations under Fed. R. Civ. P. 11, since the assertion has no factual basis whatsoever. It is simply made up, appearing for the first time in the Opposition, in a desperate attempt to salvage a hopelessly flawed SAC.

4

the Agalarovs knew of or participated in any RICO predicate offenses, Plaintiff argues that it has pled sufficient facts to give rise to an "inference" that the Agalarovs engaged in such behavior. (*See* Opp. at 18, 29, 36-37.)  However, Plaintiff's proposed "inferences" should be rejected because they are nothing more than rank speculation having no reasonable basis in any facts actually pled in the SAC.  Specifically, Plaintiff points to an email, sent by Emin Agalarov's publicist (non-party Rob Goldstone), which references a meeting between Aras Agalarov and the "Crown Prosecutor of Russia."  (SAC ¶¶ 133-137.)  Plaintiff claims that the Court can "infer" that the "Crown Prosecutor of Russia" discussed "sensitive matters with Aras because he believed that Aras could help him decide . . . how to deliver sensitive documents—such as stolen Democratic materials—to the Trump Campaign," and that the result of those "decisions" were then passed on to the Trump Campaign at the Trump Tower meeting.  (Opp. at 18-19.)

However, the SAC does not allege a single fact that would support any of these wild inferences, and the email itself says no such thing.  The SAC does not allege:  (i) that a "Crown Prosecutor of Russia" even exists (it does not); (ii) that this "Crown Prosecutor of Russia" knew of, or came to possess, any of Plaintiff's allegedly stolen information; or (iii) that the "Crown Prosecutor" discussed those stolen materials with Aras Agalarov.  Nor does the SAC allege any facts that would support the inference that any of these unpled and unsupportable facts were discussed at the Trump Tower meeting; indeed, the SAC does not plead a single fact about the content of the Trump Tower meeting itself.  Accordingly, the inference that Plaintiff asks the Court to make is wholly unsupported and should be rejected. *See Document Techs., Inc. v. LDiscovery, LLC*, 731 F. App'x 31, 33-34 (2d Cir. 2018) (finding no way to "plausibly infer" misappropriation of trade secrets through discussions with former employees because, *inter alia*, "the fact that [defendant] engaged in communications with the former employees prior to their

5

employment offers says 'nothing about the content of these communications'"); *Holmes v. Parade Place, LLC*, No. 12 CIV. 6299 (GBD)(DF), 2013 WL 5405541, at *9 (S.D.N.Y. Sept. 26, 2013) (rejecting plaintiff's request for the court to make "inferences . . . not actually supported by any pleaded facts" because such inferences are "too strained to be reasonable").

  **B.  Plaintiff Fails to Allege that the Agalarovs Directed the Enterprise's Affairs**

  Because Plaintiff cannot establish any connection between the Agalarovs, on the one hand, and the supposed hacking of Plaintiff's computers, on the other, Plaintiff necessarily has failed to plead that either of the Agalarovs exercised some degree of control over the hacking enterprise, as would be required to hold them liable under 18 U.S.C. § 1962(c). (*See* Memo at 9.) Nonetheless, Plaintiff advances four meritless arguments in an attempt to demonstrate the required control.

  *First*, Plaintiff points to its suggestion, unfounded in any allegation of the SAC, that Aras Agalarov discussed the dissemination of Plaintiff's stolen e-mails with the "Crown Prosecutor of Russia." (Opp. at 18.) Because, as explained above, no facts are pled in support of this scurrilous contention, it should be disregarded entirely.

  *Second*, Plaintiff claims the Court can reasonably infer that Emin Agalarov "collaborated with Trump, Jr. on the agenda for the Trump Tower meeting." (Opp. at 19.) Of course, allegedly collaborating on an agenda for a single meeting, itself not alleged to have related to any RICO predicate activity whatsoever, falls far short of demonstrating that Emin Agalarov "directed the affairs of an enterprise." *See Goldfine v. Sichenzia,* 118 F. Supp. 2d 392, 403 (S.D.N.Y. 2000) (dismissing claim as to certain defendants allegedly involved in fraudulent loan scheme where plaintiff failed to allege that they were "leaders, managers or directors" of the enterprise or that they "ever [] spoke with any other defendant about the [fraudulent] loans"); *Casio Computer Co. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516, at *22 (S.D.N.Y. Oct.

6

13, 2000) (dismissing claim because plaintiff "fail[ed] to allege that defendants were in charge of decision-making for the enterprise or that they directed the affairs of the enterprise").  In any event, Plaintiff acknowledges that the proposed inference it asks the Court to make about Emin Agalarov's phone call to Trump Jr. is a baseless stretch.  (Opp. at 36 ("[T]he two men had several phone calls to discuss the upcoming meeting, *presumably* setting a rough agenda." (emphasis added)).)

*Third*, Plaintiff relies on *D'Addario v. D'Addario*, 901 F.3d 80, 104 (2d Cir. 2018), to claim its allegations are sufficient to demonstrate that the Agalarovs directed the affairs of the enterprise.  (Opp. at 18.)  However, in *D'Addario*, the Second Circuit recognized that a defendant's assistance to an alleged RICO enterprise must be "material" to meet the operation or management test, with such materiality being satisfied when the defendant's conduct is a "necessary tool for the [scheme's] operation."  901 F.3d at 104 (citations omitted).  Here, however, Plaintiff makes no attempt to explain how a single meeting, which it has not alleged to be related to the scheme to hack Plaintiff's servers in any way, could possibly have been material to the efforts to direct the affairs of an e-mail hacking enterprise.

*Finally*, Plaintiff cites *City of New York v. FedEx Ground Package System, Inc*., 175 F. Supp. 3d 351, 372 (S.D.N.Y. 2016), for the proposition that one who has some degree of "control and discretion" over an enterprise's affairs meets the operation and management test.  (Opp. at 19.)  However, in *City of New York*, the plaintiffs alleged that FedEx exercised discretion and control over an enterprise to profit from the sale and delivery of unstamped cigarettes by making decisions about when those cigarettes would be picked-up and delivered.  175 F. Supp. 3d at 372.  Here, of course, Plaintiff makes no allegation that the Agalarovs had any involvement, whatsoever, in deciding whether, when or how anyone would hack into Plaintiff's computer

servers, or then disseminate the fruits of that hacking. Accordingly, Plaintiff has not alleged any facts showing that the Agalarovs exercised any control over the enterprise at all. The absence of any pled connection between the Agalarovs and any RICO predicate activity is the SAC's fatal flaw, which no amount of creative argument can overcome.

### C. Plaintiff Fails to Allege Open-Ended or Closed-Ended Continuity

Plaintiff does not contest that, in order to state its claims against the Agalarovs, it must establish that each of the Agalarovs, individually (as opposed to the alleged enterprise), engaged in a "pattern" of racketeering activity. (*See* Memo at 10-11.) However, Plaintiff does not point to any allegation in the SAC showing that either of the Agalarovs, distinct from the alleged enterprise, committed any acts over a "substantial period of time," or which posed a "threat of continuing criminal conduct," as required to establish continuity. (*Id.*)

Rather than address these fatal deficiencies, Plaintiff claims it has alleged the required open ended continuity by referencing acts of other Defendants, and asserting that these other Defendants' acts amount to obstruction of justice or witness tampering. (Opp. at 64.) But this approach fails under applicable precedent because Plaintiff has not alleged that the Agalarovs engaged in, or knew of, any such acts. It is Plaintiff's burden to plead facts against each defendant in a RICO case demonstrating each defendant's knowing participation in a scheme to conduct unlawful predicate activity, something the SAC nowhere alleges as to the Agalarovs. *See, e.g.*, *Franzone v. City of New York*, No. 13-CV-5282 (NG), 2015 WL 2139121, at *9 (E.D.N.Y. May 4, 2015); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *20 (S.D.N.Y. Mar. 15, 1994). Because the SAC fails to allege that any predicate activity was conducted by the Agalarovs or occurred with their knowledge, let alone that such activity "continued," the claims against the Agalarovs fail.

## II.     Plaintiff Fails to Plead Any RICO Conspiracy Claim Against the Agalarovs

Plaintiff concedes that, in order to state a RICO conspiracy claim, it must allege that each defendant "agreed to facilitate a plan in which one or more of them would violate RICO's substantive provisions." (Opp. at 74 (citation omitted).)  However, Plaintiff does not even attempt to address the argument that, because the Agalarovs are not alleged to have had any knowledge of any of the other Defendants' plan to engage in cyberattacks against the DNC, the Agalarovs necessarily could not have agreed to promote or facilitate such a scheme in any way. (Opp. at 16-19.)  Accordingly, because the SAC fails to allege that the Agalarovs had knowledge of, much less conspired to promote or facilitate, any "hacking," theft of trade secrets or any other cognizable RICO predicate offense, the SAC's RICO conspiracy claims against the Agalarovs must be also be dismissed.

## III.    Plaintiff Fails to Establish Personal Jurisdiction Over the Agalarovs

In the Opposition, Plaintiff advances two arguments in a desperate attempt to show that the Court may exercise personal jurisdiction over the Agalarovs, even though they are (and were at the time of the relevant events) residents of Russia, not New York or the United States, whose only connection to the forum is their alleged facilitation of a single meeting that took place in New York (but which neither of the Agalarovs are even alleged to have attended). (Opp. at 16-19, 107-114.)

*First*, Plaintiff claims that the Agalarovs' alleged arrangement of the Trump Tower meeting and a handful of phone calls (by Emin Agalarov) are sufficient to show that the Agalarovs directed "purposeful activities" towards New York that had a "substantial relationship" to their claims, as is required to satisfy the New York long-arm statute. (Opp. at

9

109.)[4]  In support, Plaintiff cites *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 697 (S.D.N.Y. 2018).

*Exxon* is inapposite.  In that case, the plaintiffs alleged that a set of defendants attended a meeting to make plans for their criminal conspiracies in the state of New York, and alleged the content of the meeting that took place, as well as its relationship to the alleged conspiracy.  *Id.*  Here, Plaintiff has failed to allege that the Trump Tower meeting—which neither of the Agalarovs attended—related to any computer hacking or other criminal activity.  Therefore, because Plaintiff cannot show and does not allege that the Trump Tower meeting related to any scheme to unlawfully injure Plaintiff, the meeting provides no basis for exercising personal jurisdiction over the Agalarovs under the New York long-arm statute.  *See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 145 (S.D.N.Y. 2018) (dismissing RICO claim for lack of personal jurisdiction because there was "no allegation of any relationship between [defendants'] contacts and the alleged wrongdoing").

*Second*, as an alternative to the New York long-arm statute, Plaintiff invokes Fed. R. Civ. P. 4(k)(2) to provide a basis for this Court to exercise personal jurisdiction over the Agalarovs.  (Opp. at 109-110.)  However, in order to establish personal jurisdiction over the Agalarovs under Rule 4(k)(2), Plaintiff must show how the Agalarovs' contacts *with the United States as a whole* meet the standard due-process tests for establishing general or specific jurisdiction.  *Newman v. Jewish Agency for Isr.*, No. 16-cv-7593, 2017 WL 6628616, at *4 (S.D.N.Y. Dec. 28, 2017).  Thus, Plaintiff must allege some act constituting primary participation by which the Agalarovs

---

[4]   Plaintiff nowhere explains how telephone calls made by Emin Agalarov could possibly subject Aras Agalarov to personal jurisdiction in New York.

10

purposefully availed themselves of the privilege of conducting activities within the United States, and that such conduct is related to Plaintiff's claims. *Id.* Contacts which do not give rise to a claim by the Plaintiff do not establish specific jurisdiction. *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 764-65 (S.D.N.Y. 2004).

Here, because the single meeting and handful of telephone conversations identified by Plaintiff (SAC ¶¶ 135-137) do not relate to any hacking or other unlawful activity, they do not "give rise to" any claim of Plaintiff. Therefore, whether analyzed on a nationwide or New York-specific basis, minimum contacts are not alleged, and dismissal is appropriate. *See 7 West 57th St. Realty Co. v. Citigroup, Inc.*, No. 13 Civ. 981(PCG), 2015 WL 1514539, at *10 (S.D.N.Y. Mar. 31, 2015) (no personal jurisdiction where "[o]nly two paragraphs in [] 72-page Amended Complaint even hint[ed] at" sufficient contacts (citation omitted)); *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 330-34 (S.D.N.Y. 2017) (no personal jurisdiction under Rule 4(k)(2) where defendant had insufficient contacts with New York or U.S.).

### IV. Plaintiff Has Failed to Plead Any Cognizable State-Law Claims Against the Agalarovs

As a coda to its deficient RICO claims, the SAC pleads, on a group basis, state-law claims against "ALL DEFENDANTS" pursuant to, respectively, the District of Columbia Uniform Trade Secrets Act ("DCUTSA"), the Virginia common law of trespass to chattels (in the form of cyberintrusion into Plaintiff's computer systems) and the Virginia Computer Crimes Act. In their opening Memo, the Agalarovs explained how the SAC fails to plead viable claims under any of these provisions, for the basic reason that the Agalarovs are not alleged to have participated in any scheme—in any way—relating to "hacking" or intrusion into Plaintiff's, or anyone's, computer systems. (Memo at 21-24.)

11

The Opposition only confirms that each of these claims should be dismissed. With respect to the DCUTSA claim, the Opposition concedes that the Agalarovs "did not steal or disclose the information" in question (Opp. at 92), and the SAC nowhere alleges that the Agalarovs ever came into contact with, let alone disseminated, any trade secrets of Plaintiff. With regard to the SAC's Virginia trespass to chattels claim, the Opposition concedes that the Agalarovs would be liable only if they "agreed to a general plan to hack and steal" Plaintiff's data (Opp. at 96), but the SAC nowhere alleges any such agreement. (*See* Memo at 23.) Finally, the Virginia Computer Crimes Act claim must be dismissed because, while Plaintiff argues that the SAC "allege[s] that Defendants worked with one another to coordinate the theft of materials from DNC computers before those materials were published," (Opp. at 99), it makes no allegations of the sort concerning the Agalarovs, and the general allegation that "ALL DEFENDANTS" (SAC ¶¶ 366-372) generally violated the Act is not sufficient to plead a claim against each defendant. *See Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, No. 2:12CV701, 2013 WL 2147478, at *6-7 (E.D. Va. May 14, 2013).

Rather than address these arguments, Plaintiff relies on the conclusory, boilerplate assertion that each of the Defendants "agreed to a general plan to hack and steal." (Opp. at 96.) But of course, as has been set forth above and before, Plaintiff cannot plead a single fact showing that either of the Agalarovs ever entered into any such agreement. Accordingly, any claims premised on an alleged conspiracy to hack and steal Plaintiff's information against the Agalarovs must be dismissed.

## CONCLUSION

For the reasons stated above, the Agalarovs respectfully request that Plaintiff's claims against them be dismissed with prejudice in their entirety.

Dated:   New York, New York
         June 3, 2019

                                          Respectfully submitted,

                                          HERBERT SMITH FREEHILLS NEW YORK LLP

                                          By: */s/ Scott S. Balber*
                                              Scott S. Balber
                                              Jonathan C. Cross
                                              Michael P. Jones
                                              Pamela K. Terry
                                              450 Lexington Ave, 14th Floor
                                              New York, New York 10017
                                              Tel:  (917) 542-7600
                                              Fax:  (917) 542-7601
                                              Email:  Scott.Balber@hsf.com
                                                      Jonathan.Cross@hsf.com
                                                      Michael.Jones@hsf.com
                                                      Pamela.Terry@hsf.com

                                          *Attorneys for Defendants*
                                          *Aras Iskenerovich Agalarov*
                                          *and Emin Araz Agalarov*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(D) of the Individual Practices of Judge John G. Koeltl, counsel for defendants Aras Agalarov and Emin Agalarov hereby certifies that this memorandum of law complies with the page limitations made applicable to this memorandum of law by the Scheduling Order entered on October 1, 2018 (ECF No. 181).

Dated:   New York, New York
         June 3, 2019

Respectfully submitted,

HERBERT SMITH FREEHILLS NEW YORK LLP

By: */s/ Scott S. Balber*
    Scott S. Balber
    Jonathan C. Cross
    Michael P. Jones
    Pamela K. Terry
    450 Lexington Ave, 14th Floor
    New York, New York 10017
    Tel:  (917) 542-7600
    Fax:  (917) 542-7601
    Email:  Scott.Balber@hsf.com
            Jonathan.Cross@hsf.com
            Michael.Jones@hsf.com
            Pamela.Terry@hsf.com

*Attorneys for Defendants
Aras Iskenerovich Agalarov
and Emin Araz Agalarov*