UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEMOCRATIC NATIONAL COMMITTEE

    Plaintiff,

v.

THE RUSSIAN FEDERATION, et. al.,

    Defendants.

CASE NO. 1:18-CV-03501-JGK

**REPLY IN SUPPORT OF DEFENDANT ROGER STONE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Grant J. Smith
(*admitted pro hac vice*)
StrategySmith, P.A.
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, FL 33301
(954) 328-9064
gsmith@strategysmith.com

Robert C. Buschel
  *Counsel of Record*
(*admitted pro hac vice*)
BUSCHEL GIBBONS, P.A.
ONE FINANCIAL PLAZA – SUITE 1300
100 S.E. THIRD AVENUE
FORT LAUDERDALE, FL 33394
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

TABLE OF CONTENTS

INTRODUCTION ………………………………………………………………..…….1

ARGUMENT……………………………………………………………………………...2

    I.    THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION
        BECAUSE PLAINTIFF LACKS ARTICLE III STANDING ……………………....2

    II.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONSPIRACY……...……………3

    III.   PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER RICO
        AGAINST STONE ……………………………………………………………..…....8

CONCLUSION ……………………………………………………………………….10

CERTIFICATE OF SERVICE ……………………………………………………….10

# TABLE OF CITATIONS

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009). ................................................................................................... 3

*Bartnicki v. Vopper,*
    532 U.S. 514 (2001). ............................................................................................ 3, 7, 8

*Campbell v. A.H. Robins Co., Inc.,*
    615 F.Supp. 496 (W.D. Wis. 1985) .............................................................................. 5

*Cockrum v. Donald J. Trump for President, Inc.,*
    319 F.Supp.3d 158 (D.D.C. 2018)............................................................................ 2, 9

*Com. v. Albert*,
    745 N.E.2d 990 (2001)…………………………………………………………....4

*Grunewald v. United States,* 353 U.S. 391, 402 (1957)…………………………….…..4, 6, 7, 9

*Hobson v. Wilson,*
    737 F.2d 1 (D.C. Cir. 1984)......................................................................................... 7

*Kidron v. Movie Acquisition Corp.,*
    40 Cal App. 4th 1571 (1995) ....................................................................................... 6

*Klayman v. Zuckerberg,*
    753 F.3d 1354 (D.C. Cir. 2014).................................................................................... 7

*Krulewitch v. United States,*
    336 U.S. 440 (1949) ..................................................................................................... 6

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,
    657 F.Supp.2d 104 (D.D.C. 2009)…...………………………………………………….9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................................... 2

*People v. Zamora*,
    557 P.2d 75 (Cal. 1976)............................................................................................... 6

*Pyramid Sec. Ltd. V. IB Resolution, Inc.,*
    924 F.2d 1114 (D.C. Cir. 1991)……………..……………………………………..…..9

*Rachman v. Schriro,*
   22 F.Supp.3d 305 (S.D.N.Y. 2014)………………………………………………...……..3

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .................................................................................................. 8

*Ruby Dev. Corp. v. Charrim Dev. Corp.,*
   742 F.Supp. 1213 (E.D.N.Y. 1990) .......................................................................... 9

*S. Union Co. v. Sw. Gas Corp.,*
   165 F.Supp.2d 1010 (D. Ariz. 2001) ....................................................................... 6

*State v. Carruthers,*
   35 S.W.3d 516 (Tenn. 2000)……………………………………………………………..4

United States v. Andrews,
   532 F.3d 900 (D.C. Cir. 2008)……………………………………………………………9

United States v. Covelli,
   738 F.2d 847 (7th Cir. 1984) .................................................................................... 5

United States v. Freeman,
   498 F.2d 569 (2d Cir. 1974)……………………………………………………………….4

*United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001)……………………………………..7

United States v. Knippenberg,
   502 F.2d 1056 (7th Cir. 1974 ................................................................................... 5

**OTHER AUTHORITIES**

Abby Vesoulis, *We Don't Know What the Mueller Report Says. But
We Do Know How Much It Cost*, Time (March 24, 2019)…………………………….…..2

Special Counsel Robert S. Muller, III, *Report On The Investigation
Into Russian Interference In The 2016 Presidential Election* (March 2019)………………...…1

**RULES**

Fed. R. Civ. Pro. 8(a)(2)…………………………………………………………………..3

## INTRODUCTION

This lawsuit cannot survive the Defendants' Motions to Dismiss, particularly in light of the publication of the Mueller Report detailing the findings of the Office of the Special Counsel. On April 18, 2019, Special Counsel Robert Mueller III's *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* ("Mueller Report")[1] was released to the public. The factual background and context of Plaintiff's complaint cannot survive the Report's significant and substantial findings supporting the Special Counsel's conclusion that no American conspired with any agent of the Russian state to break in to the DNC's computers (hack); steal any of its data, transmit any of its data to WikiLeaks, or aid in the public dissemination of that data.[2]

---

[1] Available at https://www.justice.gov/storage/report.pdf.

[2] In fact, the Mueller Report explicitly states that the Office of Special Counsel's investigation "did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities." Special Counsel Robert S. Mueller III, *Report On The Investigation Into Russian Interreference In The 2016 Russian Presidential Election*, Volume I of II, 1-2 (2019). Furthermore, the Mueller Report makes abundantly clear that in April 2016 it was "units of the Russian Federation's Main Intelligence Directorate of the General Staff (GRU) [that] hacked into the computer networks of the Democratic Congressional Campaign Committee (DCCC) and the Democratic National Committee (DNC)," *not* the Defendants. Mueller Report at 36.

Plaintiff is under the impression that it can somehow use civil discovery to obtain evidence that failed to be uncovered during an over two-year investigation, costing upwards of $25 million dollars[3] with the backing and support of the Department of Justice and assistance from the FBI, was unable to find. The DNC's second amended complaint does not overcome the lack of standing argument and that it does not allege Roger Stone conspired to damage the DNC; rather, the allegations are only inferences of another conspiracy against John Podesta whose emails were on a Google server – *i.e.* "gmail.com." Furthermore, it has no standing against Roger Stone because Plaintiff did not sufficiently allege that he participated in the conspiracy against it. The allegations suggesting Plaintiff has evidence that Stone harmed the Democratic Congressional Campaign Committee ("DCCC"), is insufficient to allege a cause of action against Plaintiff. Plaintiff can only maintain a claim against Stone if the Court accepts Plaintiff's premise that it can expand the object of a "broad conspiracy to steal and disseminate materials for Democratic targets, including the DNC." (Opp. 137) (emphasis added). A conspiracy must be definable. It has a start and a finish. A conspiracy must have an objective that cannot change over the life of it. Because Plaintiff's complaint relies upon allegations that Stone joined a conspiracy after the alleged conspiracy against Plaintiff ended, it has no standing and cannot support any cause of action against him. *Compare* (SAC § VI. at 24) ("conspiracy to disseminate stolen DNC data").

---

[3] Abby Vesoulis, *We Don't Know What the Mueller Report Says. But We Do Know How Much It Cost*, Time, (March 24, 2019), http://time.com/5557693/mueller-report-cost/.

**ARGUMENT**

**I.   THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.**

Plaintiff fails to recognize that Article III causation requires that Plaintiff must suffer the injury caused by a specified defendant. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff misapplies case law to in an attempt to bolster its problematic standing issue, by citing to claims that Stone authorized others to act. There was no principal-agent relationship between the Campaing and Stone, with the Campaign acting as Stone's agent. Plaintiff alleges that Stone did not act until after July 22, 2016, long after the DNC's data was stolen and transmitted to WikiLeaks. *See also Cockrum v. Donald J. Trump for President, Inc.,* 319 F. Supp.3d 158, 166 (D.D.C. 2018).

If the DNC's lawsuit is based upon Stone receiving early notice of DNC emails directly from WikiLeaks, then this is not a tort. *See Bartnicki v. Vopper,* 532 U.S. 514 (2001) (Campaign Mot. to dismiss at 6-10). Plaintiff does not disagree with this argument, but assumes it is pleading more. Stone is not alleged to have seen the DNC emails or given advice on their publication to WikiLeaks. Stone commenting on what was to be published is akin to the everyday practices of members of the new media. Furthermore, there is nothing illegal about reviewing or publicly discussing the information obtained by WikiLeaks. Had Stone actively attempted to steal the information or hired someone to do so, a crime may be attributable to him, but that is not the case here.

**II.   PLAINTIFF FAILS TO STATE CLAIM FOR CONSPIRACY.**

At the motion to dismiss stage, the Court can "[determine] whether a complaint states a plausible claim for relief. [It] will…be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 678, 679 (2009) (citing Fed. Rule Civ. Pro. 8(a)(2)). As part of analyzing context in order to determine whether Plaintiff's claim is plausible, the court can consider a government report. *See Rahman v. Schriro*, 22 F. Supp. 3d 305, 311 (S.D.N.Y. 2014) (other citations omitted). As such, the Mueller Report makes it abundantly clear that Plaintiff's claim that Stone or any other American defendant conspired to or acted against is entirely implausible.

Plaintiff does not allege Stone joined the relevant conspiracy – the conspiracy to disseminate stolen DNC data. *See* (SAC § VI. at 24). However, Plaintiff attempts to paint Stone as a conspirator after the fact, after the alleged conspiracy took pace. Plaintiff attempts to do so by asserting that members of the conspiracy do not have to agree to every detail of Russia's hacking; rather, it is enough that they agreed to a general plan to hack and steal. (Opp. 119). Additionally, Plaintiff claims a unique theory of conspiracy, that co-conspirators can be liable for acts after the conspiracy has ended. And as explained below, a member of a conspiracy cannot be held liable for the acts committed by his co-conspirators before he joins the conspiracy, unless he has knowledge of the prior overt acts.

Plaintiff relies upon *State v. Carruthers*, 35 S.W.3d 516, 556 (Tenn. 2000) to suggest Stone can be liable for coconspirator's conduct prior to his joining of the conspiracy. This case ruled on the admissibility of hearsay statements of co-conspirators. The ruling in *Carruthers* is still consistent with the law that one cannot be responsible for acts of conspirators, if one has not yet joined the conspiracy. *See id.* The same is true for the Massachusetts case cited by Plaintiff. The case concerned the admissibility of documentary evidence that was created prior to that

4

defendant joining the conspiracy. *Com. v. Albert*, 745 N.E.2d 990, 994 (2001). The evidence was admitted but it still does not expand the conspiracy itself or liability of an alleged party to a conspiracy.

The one binding case Plaintiff cites is *United States v. Freeman,* 498 F.2d 569, 576 (2d Cir. 1974) (Opp. 39). This case does not help Plaintiff at all. The Second Circuit reversed Freeman's conviction for conspiracy to import cocaine. *Id.* The case embraced well-established law on conspiracy. *Id.* at 575. "It was further a part of said conspiracy that the defendants would *conceal the existence of the conspiracy* and would take steps designed to prevent disclosure of their activities." *Id.* The Court rejected this notion. "But we read *Gruenwald* as forbidding us to hold Freeman guilty of the narcotics conspiracy here charged simply because he became a party to an effort to conceal several of the conspirators *after* the initial scheme had miscarried." *Id.* at 575 (emphasis added). The allegations must allege Stone participated in a specified and defined conspiracy – the one against the DNC, not the overarching amorphous conspiracy to aid Trump's grip on power.

Outside of lumping Roger Stone with "Defendants," Plaintiff never alleges that Stone himself participated in an unlawful act or a lawful act by unlawful means; or, was a member of the conspiracy when Plaintiff was allegedly injured by an act in furtherance of the conspiracy. "It is, of course, true that conspirators are responsible for the overt acts of co-conspirators, even those that occurred before they entered the conspiracy. . . retrospective liability of co-conspirators does not operate to make the late-entering conspirator responsible for the already completed substantive offenses of his cohorts." *Campbell v. A.H. Robins Co., Inc.,* 615 F.Supp. 496, 500 (W.D. Wis. 1985) (citing *United States v. Covelli*, 738 F.2d 847, 859 (7th Cir.1984), cert. den. 469 U.S. 867, (citing *United States. v. Knippenberg*, 502 F.2d 1056, 1059 (7th

Cir.1974)). Plainly stated: The purpose of a civil conspiracy claim is to impose liability on all those who agreed to join the conspiracy.

Plaintiff is attempting to hold Roger Stone liable for the acts of a conspiracy before he joined it because he joined what Plaintiff perceives was still on an ongoing conspiracy that lasted beyond its own injuries. The second amended complaint describes three separate hacks (break in) and thefts (stealing data) from three separate data sources (databases) – Democratic National Committee ("DNC"), Democratic Congressional Campaign Committee, and the Clinton Campaign chairman (John Podesta's emails). The DNC computers holds DNC data but the DCCC hack did not include any of the DNC's data. The only relevant inquiry is whether the lawsuit alleges Roger Stone conspired to disseminate Plaintiffs' emails held on the DNC's computers – and no one else's.

The important point here is that Plaintiff cannot seek to introduce allegations of conspiratorial acts that were committed before Defendants became involved with Plaintiff. Indeed, Roger Stone cannot be liable for torts which occurred before he joined the alleged conspiracy. *See S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1026 (D. Ariz. 2001). In examining the temporal element in criminal conspiracies, courts have repeatedly held that one cannot be liable as a co-conspirator if the crime was committed before one joined the conspiracy. *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1593 (1995) (citing *People v. Zamora,* 557 P.2d 75 (Cal. 1976) (["acts committed by conspirators subsequent to the completion of the crime which is the primary object of a conspiracy cannot be deemed to be overt acts in furtherance of that conspiracy"])).

Plaintiff blatantly ignores well established law of conspiracy. The Court must determine from the allegations when the conspiracy began and when it ended. *See Krulewitch v. United*

*States*, 336 U.S. 440, 442 (1949) (court required to determine for purposes of admitting co-defendant's statement whether conspiracy "never existed or had long since ended in success or failure. . ."). Plaintiff suggests that the Court should expand the main objective of the alleged amorphous conspiracy to maintain Trump's grip on power, as opposed the conspiracy's completion -- when Plaintiff was injured upon dissemination. Plaintiff's expansion of the object of the conspiracy implies the conspiracy remains ongoing because Donald Trump still is President.

The end date of a conspiracy is important for a variety of reasons. For example, it may become important when analyzing a statute of limitations. *Grunewald v. United States*, 353 U.S. 391, 397 (1957). But Plaintiff cannot extend or expand the conspiracy beyond its injuries because that would be prosecuting rights for third parties who are not the plaintiff. Plaintiff's civil conspiracy claims are limited by the damages they themselves suffered. *See id.* at 398. "In examining whether these conditions are fulfilled, the crucial question . . . is the scope of the conspiratorial agreement . . ." *United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) (citations omitted). Conspirators must have agreed on the essential nature of the plan. *Id.* (citations omitted). Efforts to conceal a conspiracy cannot be assumed as an automatic overt act of the conspiracy. *See Gruenwald,* 353 U.S. at 391. All of this language assumes at the relevant time of the agreement, there was an agreement. Roger Stone is not alleged to have had an agreement with the Campaign until after the alleged damages were suffered by Plaintiff. Predictions to the Campaign or publicly stated forecasts about what WikiLeaks will publish next is not an overt act of a conspiracy or itself a tort – even if WikiLeaks told Stone what it would publish next. *See Bartnicki v. Vopper,* 532 U.S. 514 (2001); *Klayman v. Zuckerberg,* 753 F.3d 1354, 1358 (D.C. Cir. 2014) (encouragement of publication is not a tort).

Plaintiff does not allege with factual specificity that Roger Stone had knowledge of the conspiratorial acts before he allegedly agreed to help further the conspiracy at a time the agreement to disseminate Plaintiff's emails was made.

Plaintiff's claim that its Complaint's allegations relating to the DCCC and Podesta are simply two of the many pieces of evidence suggesting that Stone participated in a broad conspiracy to steal and disseminate materials from Democratic targets, including the DNC. (Opp. 137). This is purely a conclusory allegation. The DNC does not explain how Stone or anyone in fact helped hack, steal, or publish DNC data.

### III.   PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER RICO AGAINST STONE.

Plaintiff must allege that each defendant conducted or participated in the conduct of the enterprise's affairs. Plaintiff does not describe Stone's role in the campaign or in the enterprise as anything other than an "informal adviser." (SAC ¶ 58). The Supreme Court has held that the "conduct or participate" element requires a defendant to "have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

Plaintiff responds by claiming that it only needs to allege that Stone played "some part" in directing a portion of the enterprise's activities. (Opp. 41). Plaintiff claims: Stone directed the affairs of both enterprises by discussing the release of DNC documents with WikiLeaks, Russian officers using the screen name Guccifer 2.0, and senior members of the Trump Campaign, helping them coordinate the timing of these releases to bolster Trump's electoral prospects. (SAC ¶¶ 161, 163, 167, 171-72, 174-76). Plaintiff further contends that Stone went to great lengths to conceal these efforts from Congress, so that the Defendants could continue to use illegal means to secure Trump's grip on power. (SAC ¶¶ 224-26, 228). Plaintiff is considering the Russian state and WikiLeaks to be two separate enterprises. Merely discussing the release of

8

publicly disclosed data is not a tort, since Stone did not help steal, transmit, or publish it. *See Bartnicki* 532 U.S. at 514. The allegations of Stone's concealment come after the alleged wrongdoing occurred, and it changes the objective of the alleged conspiracy from electing Trump to secure his grip on power – an objective that is too fluid or definable to be a concrete allegation one can defend against.

Plaintiff does not sufficiently allege that Stone directed anyone to do anything within the Campaign; nor directed anyone to engage in the wrongful acts. At best, the complaint suggests Stone was acting alone and communicating through social media with some entity that is connected to the Russian state – Guccifer 2.0. Stone is not alleged to have participated in the hack, stealing, transferring, or publicly disclosing the DNC's data.

Plaintiff's hope is that the Court will accept allegations that Roger Stone lied to Congress and intimidated a witness. These allegations are not overt or predicate acts**.** Plaintiff needs to articulate to the Court when the conspiracy and enterprise ended. This is because the objective of any purported conspiracy or enterprise has been met. *See Grunewald v. United States,* 353 U.S. 391, 402 (1957). Courts have applied *Grunewald* and its progeny to civil conspiracies. *Cockrum,* 319 F. Supp.3d at 182 (citing *Pyramid Sec. Ltd. V. IB Resolution, Inc.,* 924 F.2d 1114, 1118 (D.C. Cir. 1991)). Plaintiff's claim that in spite of Trump's victory, Stone and others "dedicated their criminal enterprise to concealing their collusion, sometimes by lying to the American public, and other times through criminal obstruction of justice. (Opp. 9). This is too broad of a claim. Lying to Congress did not further the conspiracy to harm the DNC by way of disseminating its data. Intimidating a witness did not further the conspiracy to harm the DNC by way of disseminating its data. While lying to Congress or intimidating a witness may serve as a statutory predicate act of a racketeering enterprise, it does not here since the object of the conspiracy and enterprise had
9

been met. Plaintiff did not and cannot refute that concealment does not extend a conspiracy or its enterprise. *United States v. Andrews,* 532 F.3d 900, 909-910 (D.C. Cir. 2008); *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 657 F. Supp. 2d 104, 113 (D.D.C. 2009), *aff'd,* 383 Fed. Appx. 1 (D.C. Cir. 2010) (citations omitted); *Ruby Dev. Corp. v. Charrim Dev. Corp.*, 742 F.Supp. 1213, 1217 (E.D.N.Y. 1990)

## CONCLUSION

The Court should dismiss the complaint for lack of subject-matter jurisdiction. Alternatively, it should dismiss the complaint for failure to state a claim.

Dated: June 3, 2019                                                 Respectfully submitted,

/s/ Robert Buschel
Robert C. Buschel

| | |
|---|---|
| Grant J. Smith | Robert C. Buschel |
| (*admitted pro hac vice*) | *Counsel of Record* |
| STRATEGYSMITH, P.A. | (*admitted pro hac vice*) |
| 401 EAST LAS OLAS BOULEVARD | BUSCHEL GIBBONS , P.A. |
| SUITE 130-120 | ONE FINANCIAL PLAZA – SUITE 1300 |
| FORT LAUDERDALE, FL 33301 | 100 S.E. THIRD AVENUE |
| (954) 328-9064 | FORT LAUDERDALE, FL 33394 |
| GSMITH@STRATEGYSMITH.COM | (954) 530-5301 |
| | BUSCHEL@BGLAW-PA.COM |

*Counsel for Roger Stone*

## CERTIFICATE OF SERVICE

I certify that on June 3, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

/s/ Robert Buschel

Robert C. Buschel
*Counsel for Roger Stone*