## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DEMOCRATIC NATIONAL
COMMITTEE,

*Plaintiff,*

v.

THE RUSSIAN FEDERATION, et al.,

*Defendants.*

Case No. 1:18-cv-3501-JGK-SDA

Oral Argument Requested

## DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S
## NOTICE OF MOTION FOR RULE 11 SANCTIONS

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law in Support of Defendant Donald J. Trump for President, Inc.'s ("the Campaign's") Motion for Rule 11 sanctions; the Exhibits annexed thereto; and all prior pleadings, submissions and proceedings herein, the Campaign moves the United States District Court for the Southern District of New York (located in the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York) for an order imposing sanctions on Plaintiff, the Democratic National Committee ("the DNC"), under Federal Rule of Civil Procedure 11(c).

This Motion is based on the DNC's violation of its certification that all of its "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The DNC's claims against the Campaign are predicated on the notion that the Campaign "participated in a criminal conspiracy to steal the DNC's information and use it to support Russia's preferred presidential candidate." DNC's MTD Opp. at 3 (ECF 241). But that notion has been definitively refuted by Special Counsel Robert Mueller's Report On The Investigation Into Russian

- 1 -

Interference In The 2016 Presidential Election, released publicly by the Attorney General on April 18, 2019. In that Report, the Special Counsel—who was appointed specifically to investigate whether the Campaign conspired or coordinated with Russia in that country's efforts to steal and disseminate DNC materials—explained that his Office's nearly two-year "investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities." Mueller Report, Vol. I at 1–2.

More specifically, the Special Counsel's Report refutes many of the factual contentions that the DNC set forth in its Second Amended Complaint and reasserted in its Omnibus Opposition to Defendants' Motions to Dismiss, including the key allegations upon which the DNC predicates its claims that the Campaign conspired or otherwise coordinated with Russia in the effort to steal and publish DNC materials. Indeed, the Report disproves the two basic pillars of this theory:

- *First*, the DNC claims that after Joseph Mifsud told George Papadopoulos "that the Russians had 'thousands of emails' that could harm Hillary Clinton's presidential campaign" (SAC ¶ 94(d)), Papadopoulos "deliver[ed]" this information to others at the Campaign and "coordinat[ed] with Russian operatives" in their hacking efforts (DNC's MTD Opp. at 12–20, 41). But the Special Counsel reported that Papadopoulos "could not clearly recall having told anyone on the Campaign" about Mifsud's reference to emails, and that "the Campaign officials who interacted with him … could not recall Papadopoulos sharing the information that Russia had obtained 'dirt' on candidate Clinton in the form of emails or that Russia could assist the Campaign through the anonymous release of information about Clinton." Mueller Report, Vol. I at 93. Nor were the DNC's allegations substantiated by any other evidence: "No documentary evidence, and nothing in the email accounts or other communications facilities reviewed by the Office, shows that Papadopoulos shared this information with the Campaign." *Id.* at 94. And the Special Counsel did not find that, through Papadopoulos, the Campaign conspired or coordinated with Russia.

- *Second*, the DNC claims that, in a June 9 meeting between several Campaign officials and certain individuals with ties to the Russian government, the Campaign "[a]ccept[ed] [t]he [o]ffer" of assistance from Russia. SAC at 34, § H; *see also id.* ¶¶ 132–48. And the DNC draws from the meeting the "infer[ences] that: (a) Russia used the meeting to tell members of the Trump Campaign about the documents it had stolen from the DNC, including trade secrets; and (b) members of the Campaign blessed a plan in which Russia would continue stealing similar documents and disseminate the documents it already had to the public." MTD Opp. at 37; *see also id.* at 19, 21. But the Special Counsel explained that "[t]he meeting lasted approximately 20 minutes" and involved just two topics: (1) alleged "funds derived from illegal activities in Russia [that] were provided to Hillary Clinton and other Democrats," and (2) "a critique of the origins of … a 2012 [U.S.] statute that imposed financial and travel sanctions on

Russian officials and that resulted in a retaliatory ban on adoptions of Russian children." *Id.* at 110, 117. The Special Counsel did not find that the meeting had *anything* to do with documents stolen from the DNC, let alone that the Campaign "blessed" or otherwise became involved with a plan for Russia to continue stealing and disseminating such documents.

In these ways, the Special Counsel's Report refutes the key allegations underlying the DNC's claims. And the foregoing are only examples; the Report renders many other allegations in the Second Amended Complaint untenable.

Rule 11 requires the DNC to amend or withdraw each and every factual allegation that is inconsistent with the facts set forth in the Special Counsel's Report. After accounting for the Special Counsel's findings, there is no possible basis upon which the DNC could continue to assert any of its claims against the Campaign. This is particularly true because, even before the Special Counsel's Report, the DNC's conspiracy and RICO theories were based not on any direct evidence, but on speculative and implausible inferences.

For these reasons, and as further explained in the accompanying Memorandum of Law, the Campaign seeks as sanctions: (1) an order dismissing all of the DNC's claims against the Campaign with prejudice; (2) reimbursement of the Campaign's attorney's fees and costs in connection with this motion, and all other fees and costs that the Campaign incurs in defending itself against the DNC's claims going forward; and (3) any additional sanctions that the Court deems just and proper.

Dated:   June 4, 2019

Respectfully submitted,

/s/ *Michael A. Carvin*
_____

James M. Gross
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
jgross@jonesday.com

Michael A. Carvin (*pro hac vice*)
   *Counsel of Record*
William D. Coglianese (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
macarvin@jonesday.com
wcoglianese@jonesday.com

*Counsel for Donald J. Trump for President, Inc.*

## CERTIFICATE OF SERVICE

I, Michael A. Carvin, certify that on June 4, 2019, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

Dated: June 4, 2019

/s/  *Michal A. Carvin*
Michael A. Carvin

*Counsel for Defendant Donald J. Trump for President, Inc.*

- 4 -