UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

DEMOCRATIC NATIONAL COMMITTEE,  :

                      Plaintiff,     :          18 Civ. 3501 (JGK)

      - against -            :

THE RUSSIAN FEDERATION, et al.,    :

                 Defendants.   :
--------------------------------------------------------X


## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WIKILEAKS'S PRE-TRIAL MOTION TO DISMISS <u>THE SECOND AMENDED COMPLAINT</u>

Joshua L. Dratel
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732 - 0707
Jdratel@joshuadratel.com

*Attorneys for Defendant WikiLeaks*

TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

POINT I

THE CLAIMS AGAINST WIKILEAKS SHOULD BE
DISMISSED BECAUSE THEY ARE FORECLOSED
BY THE FIRST AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


POINT II

THE CLAIMS AGAINST WIKILEAKS SHOULD BE
DISMISSED BECAUSE WIKILEAKS, AS A USER OR
PROVIDER OF AN INTERACTIVE COMPUTER SERVICE, IS
IMMUNE FROM CIVIL LIABILITY PURSUANT TO 47 U.S.C. §230. . . . . . . . . . . . . . . . . 10


POINT III

THE RICO AND RICO CONSPIRACY CLAIMS SHOULD BE
DISMISSED BECAUSE THEY FAIL TO PLEAD CERTAIN
ESSENTIAL ELEMENTS OF A CIVIL RICO VIOLATION. . . . . . . . . . . . . . . . . . . . . . . . 13

POINT IV

THE TRADE SECRETS CLAIMS SHOULD BE DISMISSED
BECAUSE THEY FAIL TO STATE A CLAIM AGAINST WIKILEAKS. . . . . . . . . . . . . . . 17

POINT V

THE CLAIMS AGAINST WIKILEAKS SHOULD BE
DISMISSED FOR LACK OF PERSONAL JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . 18

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

TABLE OF AUTHORITIES

CASES

*Barnes v. Yahoo!, Inc.*, 565 F.3d 560 (9th Cir.2009)................................... 11

*Bartnicki v. Vopper*, 532 U.S. 514 (2001)..................................... 3, 4, 7, 8, 9

*BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp.3d 591 (S.D.N.Y. 2017)............ 18, 19

*Boim v. Quranic Literacy Society, et al.*, 291 F.3d 1000 (7th Cir. 2002).................... 7

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002). ......................... 16

*City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526 (S.D.N.Y. 2005) ................. 19

*City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303 (S.D.N.Y. 2014)............... 13, 14

*Clayborn v. Twitter*, 2018 WL 6839754 (N.D. Cal. December 31, 2018)................... 11

*Dyroff v. Ultimate Software Group*, 2017 WL 5665670
(N.D. Cal. November 26, 2017)...................................................... 11, 12

*Fair Housing Council of San Fernando Valley v. Roommates.com,
LLC*, 521 F.3d 1157 (9th Cir. 2008) ........................................... 10, 11, 12

*Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016)............... 11

*Freeplay Music, LLC v. Nian Infosolutions Private Ltd.*,
 2018 WL 3639929 (S.D.N.Y. July 10, 2018)...................................... 19, 20

*F.T.C. v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009)............................ 11

*Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016)................................... 16

*Goldfine v. Sichenzia*, 118 F.Supp.2d 392 (2000).................................. 17

*Havlish v. Royal Dutch Shell PLC*, 2014 WL 4828654
(S.D.N.Y. Sept. 24, 2014). ....................................................... 19

ii

*Kaplan v. County of Los Angeles*, 894 F.2d 1076 (9th Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . 6

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013). . . . . . . . . . 20

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mills v. Alabama,* 384 U.S. 214 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*New York Times v. United States,* 403 U.S. 713 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Planned Parenthood of the Columbia/Willamette Inc. v.*
*American Coalition of Life Activists*, 244 F.3d 1007 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . 7

*Porina v. Marward Shipping Co. Ltd.*, 521 F.3d 122 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . 18, 20

*RJR Nabisco v. European Community*, ___ U.S. ___, 136 S. Ct. 2090 (2016). . . . . . . . . . . . . . 18

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
17 F. Supp. 3d 207 (E.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Goldfine v. Sichenzia*, 118 F.Supp.2d 392 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Time, Inc. v. Hill*, 385 U.S. 374 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United Res. 1988-I Drilling & Completion Program, L.P.*
*v. Avalon Expl., Inc.*, 1994 WL 9676 (S.D.N.Y. Jan. 10, 1994). . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Netyshko*, 18 Cr. 215 (ABJ) (D.D.C.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## AUTHORITIES

47 U.S.C. §30(f)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

47 U.S.C. §230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 11, 12

47 U.S.C. §230(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 12

Rule 4(k)(2), Fed.R.Civ.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 19, 20

iii

Rule 4(k)(2)(B), Fed.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

**Introduction**

This Reply Memorandum of Law in submitted in support of defendant WikiLeaks's Motion to Dismiss the Second Amended Complaint (ECF Dkt #s 208 & 225) (hereinafter, respectively, "WikiLeaks Memo I" and "WikiLeaks Memo II"), and in response to Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss and Russia's Statement of Immunity (ECF Dkt #241) (hereinafter "Plaintiff's Memo of Law").

Much of Plaintiff's Memo of Law does not require rejoinder because it either states boilerplate principles of law far removed from the specific facts and context of this case, or was addressed in WikiLeaks's (or another defendant's) initial Memos of Law.   This Reply will therefore concentrate on issues unique to WikiLeaks:  the First Amendment, the immunity conferred by 47 U.S.C. §230, and the lack of personal jurisdiction.  WikiLeaks also joins in the Reply submissions made by the other defendants, including specifically that filed by defendant Donald J. Trump for President, Inc. (ECF Dkt # 254) (hereinafter "Trump Campaign Reply"), and which covers many of the joint issues raised in the motions to dismiss, to the extent they inure to WikiLeaks's benefit and are not inconsistent with the positions advanced herein.

Plaintiff's Memo of Law, like the Second Amended Complaint (hereinafter "SAC") (ECF Dkt # 217), fails for numerous legal and factual reasons to state any claim against WikiLeaks. As detailed below (as well as earlier in WikiLeaks's prior motions to dismiss), the expansive theories of liability asserted by Plaintiff regarding the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), the Wiretap Act, and other statutes would eviscerate the First Amendment and threaten every news organ that publishes materials and information provided by whistleblowers and other sources who obtain those materials and information

1

without authorization.

Indeed, under Plaintiff's extreme interpretation, every news organization, including *The New York Times* and *Washington Post*, among many other, and every internet platform, including Google, Facebook, and Twitter, would be liable for having published the *very same materials and information WikiLeaks published in this case*. While WikiLeaks was neither the first nor the last entity to publish the materials at issue, only it has been chosen as Plaintiff's lightning rod in a lawsuit that, if permitted to proceed, would jeopardize various bedrock forms of journalism – including investigative, international, political, and opinion – in their entirety.

Also, as discussed below, bereft of sufficient facts from which to fashion a viable claim against WikiLeaks, Plaintiff's Memo of Law, in many ways like the SAC itself, spends an inordinate amount of space and emphasis on unsubstantiated accusations regarding WikiLeaks *un*connected to the alleged tortious conduct claimed in the SAC. Conclusory claims of conspiracy and indignant rhetorical flourishes are not substitutes for sufficient factual pleadings or sustainable legal theories of liability. Rather, they illustrate the fatal deficiencies in the SAC against WikiLeaks – if the necessary allegations themselves were sufficient, there would not be any need for the SAC or Plaintiff's Memo of Law to refer repeatedly to accusations and speculation that are simply not material to this litigation.

Conversely, as set forth below, Plaintiff's Memo of Law ignores entirely the conclusive and preclusive impact of the 446-page *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* issued by U.S. Department of Justice's Special Counsel (hereinafter "Special Counsel's Report"), from which not even an inference can be drawn to support the SAC's allegations against WikiLeaks. Plaintiff's Memo of Law also fails to

2

distinguish certain dispositive case law regarding the First Amendment, as well as the RICO and

other claims.  Accordingly, for the reasons set forth below, as well as in WikiLeaks Memo I and

WikiLeaks Memo II, and the motions to dismiss and replies filed by other defendants, it is

respectfully submitted that WikiLeaks's motion to dismiss the SAC should be granted.

## ARGUMENT

### POINT I

### THE CLAIMS AGAINST WIKILEAKS SHOULD BE DISMISSED BECAUSE THEY ARE FORECLOSED BY THE FIRST AMENDMENT

Assaults on the First Amendment, and the jurisprudential doctrine developed to protect its

exercise, pervade Plaintiff's Memo of Law.  As a result, certain arguments in Plaintiff's Memo of

Law that appear in other sections therein, and relate to RICO and other statutes, nevertheless

overlap with and are more relevant to the First Amendment analysis because, if those arguments

were adopted, they would erase centuries of First Amendment protections and practice.  Thus,

they are addressed here because of their direct impact on First Amendment activities.

As a threshold matter, though, Plaintiff's Memo of Law attempts unsuccessfully to create

distance between this case and the controlling First Amendment precedent, *Bartnicki v. Vopper*,

532 U.S. 514 (2001).  Yet, in trying to distinguish *Bartnicki* factually, Plaintiff's Memo of Law

proves the essential similarity between the defendants' position therein and WikiLeaks's here.

For example, Plaintiff's Memo of Law quotes *Bartnicki*, noting in a parenthetical that "the

defendants played 'no part' in the wiretapping."  Plaintiff's Memo of Law, at 101, *quoting*

*Bartnicki*, 532 U.S. at 525.  On the same page, Plaintiff's Memo of Law adds that in *Bartnicki*,

"the defendants 'found out about the [illegal wiretap] only after it occurred.'" *Id*., *quoting*

*Bartnicki*, 532 U.S. at 525.

Yet both those conclusive facts apply to WikiLeaks:  it did not play any part in the hacking, and it did not find out about it until after it occurred – and the SAC does not allege any facts to dispute those conclusions.  Plaintiff's own chronology proves the point:  the communications exchanges cited in Plaintiff's Memo of Law, at 7, demonstrate that even according to the SAC's allegations WikiLeaks was not involved in the alleged hacking *at all*, but was simply, and exclusively, a publisher (among others) interested in publishing the materials. *See also* WikiLeaks Memo I, at 4-5, 8; WikiLeaks Memo II, at 7-8.

Thus, the similarities to *Bartnicki*, dictating the same result, are manifest.  *See also* WikiLeaks Memo I, at 4-6 (listing other conforming facts between *Bartnicki* and the allegations against WikiLeaks in this case).  Likewise, Plaintiff's Memo of Law, at 99, in trying to distinguish *Bartnicki*, claims that this case involves "corrupt, coordinated effort to steal [Democratic National Committee (hereinafter "DNC"] documents and use them to help a hostile foreign power[.]"

However, the SAC does not include a single allegation against WikiLeaks with respect either to stealing DNC documents or using them to help a "hostile foreign power."  Nor does Plaintiff's Memo of Law provide any record citation for its unsupported and insupportable assertion that "WikiLeaks' and Assange's role in the enterprise primarily was to use WikiLeaks' platform to disseminate the hacked materials and provide advice about the best materials to steal and the optimal timing for the thefts[.]" The SAC utterly fails to provide a single fact alleging any "advice about the best materials to steal and the optimal timing for the thefts."

Moreover, hinging First Amendment protection on whether or not publication of truthful

information of public interest – neither of which Plaintiff contests[1] – would assist a foreign

power would impermissibly politicize and limit the First Amendment, instead of effecting its

purpose of immunizing political orientation.  It would thereby endanger every media organ and

journalist.  Without First Amendment protection, a media entity could not publish if it believed

its story, while accurate and relating to a matter of public interest, could or would benefit a

foreign nation.  No such limitation applies to First Amendment activity, and, unsurprisingly,

Plaintiff's Memo of Law cannot cite any support for that specious proposition.

Indeed, every news outlet that published *these documents and materials* would have been

on the same notice of Russian involvement and the benefits to that nation, and therefore would

be liable for publishing with that knowledge.  *See* Appendix B to WikiLeaks Memo I (ECF Dkt #

207-2) (listing other publishers of the documents and information at issue herein).

Also, the disastrous and widespread ripple effects of such a restriction on essential First

Amendment activity beyond this case are easily envisioned.  *The New York Times*'s and

*Washington Post*'s publication of The Pentagon Papers (and the subsequent broad publication by

---

[1]  Nor could it, considering that the revelations in the published materials resulted in the resignations of four senior DNC officials as well as the charge by Democratic legislators, including Sen. Elizabeth Warren (D.– Mass.) that the materials proved that the Democratic primary process had been "rigged."  *See* Abby Phillip and Katie Zezima, "Top Democratic National Committee officials resign in wake of email breach," *The Washington Post,* August 2, 2016, available at <https://www.washingtonpost.com/news/post-politics/wp/2016/08/02/democratic-national-committee-ceo-amy-dacey-resigns-in-wake-of-email-breach/?utm_term=.2454dcb4b585>;  Jonathan Martin and Alan Rappeport, "Debbie Wasserman Schultz to Resign D.N.C. Post," *The New York Times,* July 24, 2016, available at <https://www.nytimes.com/2016/07/25/us/politics/debbie-wasserman-schultz-dnc-wikileaks-emails.html>;  Sophie Tatum, "Asked if DNC system was rigged in Clinton's favor, Warren says 'yes,'" CNN, November 3, 2017, available at <https://www.cnn.com/2017/11/02/politics/elizabeth-warren-dnc-rigged/index.html>..

media thereafter) certainly benefitted North Viet Nam, and by extension the Soviet Union and China (which supported the North Vietnamese), the U.S.'s principal geopolitical adversaries at the time.  The same would be true for *every* whistleblower, whether political or corporate or otherwise, whose information, obtained without authorization, implicated geopolitics.  *See also* WikiLeaks Memo I, at 7-10.

Likewise, Plaintiff contends that WikiLeaks "coordinat[ed]" with "Trump Associates and Russia in aid of Trump' election[,]" because "July 6, 2016, WikiLeaks instructed Guccifer 2.0 to send additional hacked material because 'we think trump has only a 25% chance of winning against hillary . . . so conflict between bernie and hillary is interesting[,]" and that "alone suffices to plausibly allege Assange and WikiLeaks worked to secure Trump's grip on power."  Plaintiff's Memo of Law, at 25.

That claim, too, fails for factual and legal reasons.  For instance, it is inconsistent with the SAC's allegations that WikiLeaks's motive was not to aid Russia or "secure Trump's grip on power," but rather to settle WikiLeaks's founder Julian Assange's pre-existing score with Hillary Clinton.  *See* SAC, at ¶ 78.  It also runs afoul of the First Amendment, because its protections are not dependent on parsing a publisher's motives.  A point of view is not outside the First Amendment's purview;  in fact, the opposite is true:  political speech merits the *maximum* First Amendment protection.  *See, e.g.,United States v. Rahman*, 189 F.3d 88, 117 (2d Cir. 1999) ("political speech and religious exercise are among the activities most jealously guarded by the First Amendment");  *Kaplan v. County of Los Angeles*, 894 F.2d 1076, 1079 (9th Cir.1990) ("[p]olitical speech lies at the core of the First Amendment's protections").  *See also Mills v. Alabama,* 384 U.S. 214, 218 (1966) ("there is practically universal agreement that a major

6

purpose of [the First] Amendment was to protect the free discussion of governmental affairs");

*New York Times v. United States,* 403 U.S. 713, 728 (1971) (Stewart J., *concurring*) (importance

of First Amendment freedoms in context of national defense and international affairs).

      That applies equally to advocacy.  *Boim v. Quranic Literacy Society, et al.*, 291 F.3d

1000, 1026 (7th Cir. 2002) ("[a]dvocacy is always subject to the highest levels of scrutiny under

the First Amendment");  *Planned Parenthood of the Columbia/Willamette Inc. v. American*

*Coalition of Life Activists*, 244 F.3d 1007, 1019 (9th Cir. 2001), *vacated on other grounds by* 290

F.3d 1058 (9th Cir. 2002) (*en banc*) .

      The *Bartnicki* analysis, and the dangers of exempting WikiLeaks from it in this case, also

defeats Plaintiff's attempts to carve out exceptions to the First Amendments within the context of

discrete statutory provisions, including 18 U.S.C. §2511, which was at issue in *Bartnicki*.  Thus,

Plaintiff's reference to the "use" and "disclosure" provisions of §2511 is unavailing because *that*

*is precisely the conduct that* Bartnicki *deemed protected.  See* Plaintiff's Memo of Law, at 78

n.21, 79.[2]  *See also* WikiLeaks Memo I (and citations therein to Defendants' Joint Briefs [ECF

Dkts # 212 & 227]), at 5-6 and WikiLeaks Memo II, at 7-8.[3]

      Likewise, the SAC does not allege any participation by WikiLeaks in the theft of trade

secrets – assuming *arguendo* anything obtained from Plaintiff constituted its trade secret(s),

---

   [2]  Understandably, given the volume of briefing and the purpose of Defendants' Joint
Brief, Plaintiff's Memo of Law fails to appreciate that WikiLeaks did indeed join in the specific
statutorily-based objections to the SAC set forth in Defendants' Joint Briefs (ECF Dkt #s 212 &
227) and any other defendant's motion to dismiss.  *See* WikiLeaks Memo I, at 25.

   [3]  The Trump Campaign Reply, at 4-5, distinguishes the cases cited in Plaintiff's Memo
of Law, at 102, all of which involve decidedly different factual scenarios – direct involvement
and/or participation in the unauthorized acquisition of materials and information – than present
here with respect to WikiLeaks.

which was not the case for the reasons set forth in WikiLeaks Memo I and WikiLeaks Memo II, as well as Defedants' Joint Brief and the Trump Campaign Reply – thereby acknowledging that WikiLeaks was not involved in any hacking activity.  *See* Plaintiff's Memo of Law, at 44.  That unquestionably further places WikiLeaks in the position of every media organ that published the documents – or which would engage in similar publication of these types of documents and information in the future.

Plaintiff also misstates *Bartnicki*'s position with respect to disclosure of trade secrets. *See* Plaintiff's Memo of Law, at 104.  In fact, the Court in *Bartnicki* determined it "need not decide whether that [privacy] interest is strong enough to justify the application of §2511(c) to disclosures of trade secrets or domestic gossip or other information of *purely private concern*." 532 U.S. at 533 (emphasis added), *citing cf. Time, Inc. v. Hill*, 385 U.S. 374, 387-388 (1967) (reserving the question whether truthful publication of private matters unrelated to public affairs can be constitutionally proscribed).

Plaintiff's efforts to apply other legal principles to circumvent First Amendment protection also fail.  In asserting that "a defendant 'incur[s] liability' for the unlawful acts of co-conspirators 'committed both before and after' the defendant joined the conspiracy," Plaintiff's Memo of Law, at 102 (citation omitted), Plaintiff threatens *every* media entity that accepts and publishes materials and information obtained by a source absent authorization, and would put every journalist and publisher in peril of being a co-conspirator with every whistleblower – just what *Bartnicki* precludes, and which defines WikiLeaks's alleged actions.[4]

---

[4]  Likewise, in alleging that WikiLeaks's "solicitation" of additional material from Guccifer 2.0, *see* Plaintiff's Memo of Law, at 120-21, is actionable, Plaintiff would eliminate important First Amendment protections.  Even the now-common electronic "secure drop"

In that context, the submission by *amici* American Civil Liberties Union, the Knight First Amendment Institute at Columbia University, and the Reporters' Committee for Freedom of the Press (ECF Dkt # 238-1) is instructive. *Amici* submitted their Brief "to emphasize one critical point in support of WikiLeaks' motion to dismiss: An act of publication that would otherwise be protected by the First Amendment does not lose that protection simply because a source acquired the published information unlawfully, or because the publishing party communicated with the source about the receipt or publication of that information." *Id*., at 2.

*Amici* explain that "the Supreme Court has repeatedly held that the First Amendment protects the right to publish information of public concern despite a 'defect in [the] chain' from source to publication." *Id*., *citing and quoting Bartnicki*, 532 U.S at 528 (citation omitted). In addition, "Courts have explicitly rejected efforts to circumvent this First Amendment protection by plaintiffs seeking to attach liability not directly to the publication of unlawfully acquired information, but to communication with its source." *Id*.

That explication of the contours of the First Amendment is substantive and compelling as opposed to the mere pejorative characterizations by Plaintiff that pale before the expertise of those estimable First Amendment advocacy organizations. The stakes herein are also of extraordinary magnitude. As *amici* point out,

> [t]he First Amendment protection described above helps to ensure that the public obtains the information it needs to understand and evaluate government policy and to hold the powerful accountable for their actions. This protection has been crucial to the ability of the press to inform the public about matters of public concern.

---

systems by which news organizations encourage sources to provide materials and information anonymously would be imperiled by Plaintiff's casual and wholesale stripping of First Amendment protections.

> Without it, era-defining stories about Watergate, the Vietnam War,
> post-9/11 counterterrorism policy, and recent global financial
> scandals might never have been written.

*Id.*, at 7.

Accordingly, the SAC against WikiLeaks should be dismissed because WikiLeaks's

conduct is shielded by the First Amendment.

**POINT II**

**THE CLAIMS AGAINST WIKILEAKS SHOULD BE
DISMISSED BECAUSE WIKILEAKS, AS A USER OR
PROVIDER OF AN INTERACTIVE COMPUTER SERVICE, IS
<u>IMMUNE FROM CIVIL LIABILITY PURSUANT TO 47 U.S.C. §230</u>**

Plaintiff's arguments opposing dismissal of the SAC on the basis of WikiLeaks's

immunity conferred by 47 U.S.C. §230 misapprehends the scope of the statute.  As explained in

WikiLeaks Memo I, at 10-12, it does not cover simply "a website exchange system that enables

users to post their own content (like GoDaddy, Craigslist, Facebook, Twitter, or WordPress), an

internet service provider (like AOL), a search engine (like Ask.com), or an online message board.

" Plaintiff's Memo of Law, at 119-20.

Also, while Plaintiff complains that "WikiLeaks does not otherwise explain how it

provides or enables computer access by multiple users to a computer server[,]" Plaintiff's Memo

of Law, at 119, *quoting* 47 U.S.C. §30(f)(2), WikiLeaks provides multiple users access to *its own*

*server* that houses the documents and materials.  Plaintiff would conveniently confine §230's

immunity, which Congress intended to be broad and categorical*, see* WikiLeaks Memo I, at 11,

to a limited group of providers.  However, §230 is not exclusive in its protections.

Indeed, in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521

10

F.3d 1157 (9th Cir. 2008) (en banc), cited frequently by Plaintiff, *see* Plaintiff's Memo of Law, at

120-121, the Ninth Circuit *en banc* noted that the most common "interactive computer services"

are websites, 521 F.3d at 1162 n.6, of which WikiLeaks is one.   *See also Dyroff v. Ultimate*

*Software Group*, 2017 WL 5665670 (N.D. Cal. November 26, 2017), at *5 (footnote omitted).[5]

Also, as the Court in *Dyroff* pointed out in discussing *Roommates.com*, if a web site "passively

displays content that is created entirely by third parties, then it is only a service provider with

respect to that content."  2017 WL 5665670, at *6, *citing Roommates.com*, 521 F.3d at 1162.

That defines WikiLeaks's position here.[6]

    In *Roommates*, in dispositive contrast, the Ninth Circuit concluded that the site *created*

---

[5]  In *Clayborn v. Twitter*, 2018 WL 6839754 (N.D. Cal. December 31, 2018), the Court that decided *Dyroff* did not reach the §230 issue because it held that Twitter's conduct was not the proximate cause of plaintiff's alleged injuries, 2018 WL 6839754, at *9 n.73, although the Court did cite its prior opinion in *Dyroff* as an expression of its position on §230 immunity.

[6]  Nor did WikiLeaks obtain anything through fraud or other illegality – as occurred in *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009), *see* Plaintiff's Memo of Law, at 121, in which the defendant site paid researchers to uncover confidential phone records protected by law, and then provided that information to paying customers – as there is no allegation that WikiLeaks was involved in any manner prior to the hacking of the DNC.  Likewise, in *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016)*,* the Court found the defendant did "not merely act as a neutral intermediary," but "assisted in the development of what made the content unlawful[]" because its authority to allow or disallow the deceptive information to reach the public through its affiliate network rendered the website "an information content provider with respect to the deception at issue."  *Id.*, at 174, 175-77.  As explained in *Barnes v. Yahoo!, Inc.*, 565 F.3d 560, 566 (9th Cir.2009),

> what matters is whether the cause of action inherently requires the
> court to treat the defendant as the "publisher or speaker" of content
> provided by another.  To put it another way, courts must ask
> whether the duty that the plaintiff alleges the defendant violated
> derives from the defendant's status or conduct as a "publisher or
> speaker."  If it does, section 230(c)(1) precludes liability.

content because it "[i]t required subscribers to create profiles and answer questions – about themselves and preferences in roommates – regarding criteria including sex, sexual orientation, and whether they would bring children to the household." *Dyroff*,  2017 WL 5665670, at *6, *citing Roommates.com*, 521 F.3d at 1161.

Those distinguishing factors in *Roommates* were recognized in *Dyroff*, in which the Court applied §230 to a web site's conduct far more active than anything WikiLeaks did here.  In *Dyroff*, the plaintiff contended that the defendant site "developed third-party information (or content) [] by mining data from its users' posts and using its proprietary algorithms to understand the posts and to make recommendations, which in [*Dyroff*] steered [the deceased] toward heroin-related discussions and the drug dealer who sold him fentanyl-laced heroin."  2017 WL 5665670, at *1 (footnote omitted).

That conduct notwithstanding, the Court in *Dyroff* held that the defendant web site was "immune under §230(c)(1)[,]" noting that "[o]nly third parties posted content, and without more, [the defendant's] providing content-neutral tools to facilitate communication does not create liability."  *Id.*, at *5, *citing Roommates.com*, 521 F.3d at 1167-69.  In addition, the Court in *Dyroff* concluded that "providing neutral tools to carry out what may be unlawful or illicit [activities] does not amount to 'development' for purposes of the immunity exception." 2017 WL 5665670, at *7, *citing Roommates.com*, at 1168-69.

Plaintiff's Memo of Law, at 121, also contends WikiLeaks did not assert its eligibility under the third element of §230 – that it is a "publisher or speaker of third-party content."  Yet that is self-evident from WikiLeaks's exclusive mode of operation:  it publishes third-party content, as it did in this instance.  Thus, Plaintiff's argument is without merit.

12

**POINT III**

**THE RICO AND RICO CONSPIRACY CLAIMS SHOULD BE
DISMISSED BECAUSE THEY FAIL TO PLEAD CERTAIN
<u>ESSENTIAL ELEMENTS OF A CIVIL RICO VIOLATION</u>**

Plaintiff's attempt to defend the SAC's RICO cause of action is addressed generally in the
Trump Campaign Reply.  As a result, this Reply will discuss only issues specific to WikiLeaks,
including the claim that "WikiLeaks played a leadership role in the [alleged RICO "association-
in-fact] Enterprise, and developed its 'own methods and practices to determine how and when' to
disseminate the DNC' information."  Plaintiff's Memo of Law, at 20, *quoting City of New York
v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 310 (S.D.N.Y. 2014).

Yet that does not describe conspiratorial or enterprise activity, but instead the typical
activities of a *publisher* – even one with a political point of view, which, as discussed **ante**, at 6-
7, is squarely within the traditional confines of the First Amendment.  Moreover, neither
Plaintiff's Memo of Law nor the SAC explain how WikiLeaks could be the "architect" when (1)
it was not the initial source of dissemination, which was Guccifer 2.0 via DCLeaks and
Wordpress (*see* WikiLeaks Memo I, at 4-5, 8); and (2)  the SAC claims WikiLeaks subsequently
had to convince Guccifer 2.0 to utilize WikiLeaks as a subsequent outlet for dissemination.  *See
also* Special Counsel's Report, at 4 ("[a]round the time that the DNC announced in mid-June
2016 the Russian government's role in hacking its network, the GRU began disseminating stolen
materials through the fictitious online personas 'DCLeaks' and "Guccifer 2.0.'").  *See
also* WikiLeaks Memo I, at 6.

Plaintiff's argument, carried to its logical extension, would render anyone who supported
the Trump Campaign – even indirectly – a member of the alleged "association-in-fact" RICO

enterprise, including any and all of the subsequent publishers of the very same documents and

information.  *See* WikiLeaks Memo I, at Appendix B (ECF Dkt # 207-2).  In addition,

examination of *LaserShip* demonstrates just how inapposite its facts are compared to the

allegations against WikiLeaks here.  In *LaserShips*, the Court, reached its conclusion that

defendant therein "not only provided services which were essential to [the subject company's]

operation, but had some part in directing [its] affairs and exercised discretion over the operation

of the [] enterprise" because the defendant

> allegedly received and delivered unstamped cigarettes on behalf of
> [the company], exercised discretion in using its own methods and
> practices to determine how and when to transport the unstamped
> cigarettes, provided all of the logistics and delivery support
> services to [the company] that were required for successful
> delivery, and accepted the financial and other risks of transporting
> contraband cigarettes on behalf of [the company].

33 F. Supp. 3d at 310.

That Plaintiff would consider those facts comparable to those here regarding WikiLeaks

illustrates the fatal weakness of the SAC's RICO claim against WikiLeaks.  Similarly, Plaintiff's

Memo of Law persistently resorts to irrelevant allegations and rank speculation, which again

manifests the insufficiency of the SAC's claims against WikiLeaks.

For example, Plaintiff's Memo of Law cites *ten times* ¶ 173, which Plaintiff's Memo of

Law acknowledges is not even a "charged predicate," *see* Plaintiff's Memo of Law, at 27-28, and

which does not relate to the DNC hacking, the DNC materials, or any publication by WikiLeaks.

That repeated reliance on an allegation fully outside the conduct related to the Plaintiff or the

SAC is emblematic of the straws at which Plaintif must grasp to attempt to defend the SAC.[7]

In that regard, Plaintiff's Memo of Law repeats multiple times other allegations, included in the SAC notwithstanding their lack of any relationship to the subject matter of this case, about subsequent events that are based on Plaintiff's naked supposition.  Those allegations are discussed in WikiLeaks Memo II, at 8-9, and further reflect the abject insufficiency of the SAC's allegations against WikiLeaks;  if the SAC had merit, such unrelated allegations would not need to be mentioned, much less emphasized repeatedly.

Conversely, Plaintiff's Memo of Law ignores entirely the extremely relevant and exhaustive federal criminal investigation, and subsequent Special Counsel's Report that covers

---

[7]  The SAC also includes as source material for ¶ 173, at n. 151, a citation to House Permanent Select Committee on Intelligence, Minority Views to the Majority-produced "Report on Russian Active Measures," H.R. Doc. (Mar. 26, 2018), available at <https://archive.org/stream/Russian-Active-Measures-House-Intel-2018/HRPT-115-1_djvu.txt>. However, neither the text nor footnote for that House of Representative Report substantiate anything alleged in ¶ 173.  For instance, the text accompanying footnote 106 to the House Report reads as follows:

> [p]articularly in light of candidate Trump's expressed enthusiasm for WikiLeaks, the Committee examined the relationship between his associates and the stolen emails. The Committee did not find any evidence that Trump associates were involved in the publication of emails by WikiLeaks and other outlets—or had access to such emails or other stolen information prior to their becoming publicly available.

Footnote 106 reads, "HPSCI Executive Session Interview of Roger Stone, September 26, 2017, pp.41-43."  Nor does the other source, an article in *The Atlantic* magazine, allege any "illegal hacking."  *See also* Special Counsel's Report, at 59-60 (in September 2016 an individual "sent WikiLeaks the password for an unlaunched website focused on Trump's 'unprecedented and dangerous' ties to Russia").  Thus, the SAC and Plaintiff's Memo of Law's desperation requires gross exaggeration.

the very same territory as the SAC,[8] in substantially greater detail and with vastly superior

investigative resources, but which, despite a two-year inquiry of massive scope that returned a

number of indictments for a variety of diverse offenses, and referred other matters for

prosecution by U.S. Attorney's Offices is particular districts, did not identify any criminal

activity, including conspiracy, by WikiLeaks.  *See also* Trump Campaign Reply, at 15-16, 20-21,

25.[9]

      Plaintiff's Memo of Law also persuasively undermines any notion that WikiLeaks's

motivation was to assist Russia – a claim not substantiated in any respect in the SAC.  Indeed,

Plaintiff's Memo of Law, at 112, alleges that "WikiLeaks admitted its activities were geared

toward sowing conflict within the Democratic Party to increase Trump' chances of

---

    [8]  Plaintiff's Memo of Law, at 15, acknowledges that any document which the SAC "relies heavily upon its terms and effect" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), can be considered in a motion to dismiss.  Here, the SAC refers explicitly to the Special Counsel's work – *e.g.*, its Indictment in *United States v. Netyshko*, 18 Cr. 215 (ABJ) (D.D.C.).  *See also* WikiLeaks Memo I, at 8-9.

    [9]  The Special Counsel's inquiry incorporated the entire arsenal of federal criminal investigative weapons.  As the Special Counsel's Report notes, it included a staff of 19 attorneys, 40 FBI agents, intelligence analysts, forensic accountants, and a paralegal, and utilized a multitude of techniques for gathering information and evidence:

> [d]uring its investigation the Office issued more than 2,800 subpoenas under the auspices of a grand jury sitting in the District of Columbia; executed nearly 500 search-and-seizure warrants; obtained more than 230 orders for communications records under 18 U.S.C. § 2703(d); obtained almost 50 orders authorizing use of pen registers; made 13 requests to foreign governments pursuant to Mutual Legal Assistance Treaties; and interviewed approximately 500 witnesses, including almost 80 before a grand jury.

Special Counsel's Report, at 13 (available at <https://assets.documentcloud.org/documents/5955997/Muellerreport.pdf>).

winning the 2016 election. See ¶ 150."

Plaintiff's Memo of Law also fails to establish the requisite RICO element of "continuity" with respect to WikiLeaks.  In fact, Plaintiff's Memo of Law does not even argue any "closed-end" continuity for WikiLeaks.  *Id*., at 67.  Regarding "open-ended" continuity, none of the conduct alleged to demonstrate "open-ended" continuity – obstruction of justice, witness tampering, and destruction of evidence, *see id*., at 63-64 – involved WikiLeaks, or is alleged against it in the SAC.  Thus, either type of "continuity" is lacking.  Ultimately, Plaintiff's Memo of Law, at 104, is reduced to the long-discredited civil RICO plaintiff's tactic of wielding the term "racketeer" as an epithet in an effort to smear defendants, as if that proved the allegations regardless of their lack of factual basis.[10]  That, of course, cannot rescue the SAC's deficient RICO claim against WikiLeaks.

### POINT IV

### THE TRADE SECRETS CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM AGAINST WIKILEAKS

The SAC's trade secrets claims are also addressed in the Trump Campaign Reply, at 14-17, and WikiLeaks joins in those arguments.  *See also* WikiLeaks Memo I, at 15-16, 17-19; WikiLeaks  Memo II, at 2-3;  Defendants' Joint Memo, at 26-30.  Also, Plaintiff's Memo of Law does not argue that WikiLeaks was responsible for the theft of any trade secrets, or conspired to do so – nor could it given the chronology adopted by the SAC.  In that context, WikiLeaks also joined Defendant's Joint Memo, and any co-defendants' submissions, challenging the state law claims, including those alleging violations of state or District of Columbia trade secrets

---

[10]  *See, e.g.*, *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220–21 (E.D.N.Y. 2014);  *Goldfine v. Sichenzia*, 118 F.Supp.2d 392 (2000).

provisions.  *See* WikiLeaks Memo I, at 25.  WikiLeaks joins in the replies as well on those issues.

Regarding WikiLeaks specifically, Plaintiff's Memo of Law, at 83-84, argues that 18 U.S.C. §1836 applies extraterritorially.  However, the cases cited all were decided prior to the Supreme Court's decisive explication of the doctrine of extraterritoriality in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010), and refined even more recently in *RJR Nabisco v. European Community*, ___ U.S. ___, 136 S. Ct. 2090 (2016).  *See* WikiLeaks Memo I, at 17-19.

## POINT V

### THE CLAIMS AGAINST WIKILEAKS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Plaintiff relies on Rule 4(k)(2), Fed.R.Civ.P., for personal jurisdiction over WikiLeaks. *See* Plaintiff's Memo of Law, at 109-110.  Indeed, Plaintiff's Memo of Law does not argue that New York State's jurisdictional statutes provide personal jurisdiction.  *See id.*, at 108-09. However, contrary to Plaintiff's intimation, Rule 4(k)(2) does not supersede all other principles applicable to personal jurisdiction.  Rather, it incorporates them in a manner, upon scrutiny, renders the Rule unavailing to establish personal jurisdiction over WikiLeaks.

Rule 4(k)(2)(B) provides that the Rule applies only when "exercising jurisdiction is consistent with the United States Constitution and laws."  *See also Porina v. Marward Shipping Co. Ltd.*, 521 F.3d 122, 127-28 (2d Cir. 2008) (Rule 4(k)(2) analysis still requires constitutional minimum contacts inquiry);  *United Res. 1988-I Drilling & Completion Program, L.P. v. Avalon Expl., Inc.*, No. 91 CIV. 8703 (RPP), 1994 WL 9676, at *1 (S.D.N.Y. Jan. 10, 1994).

Indeed, Rule 4(k)(2) operates as a "federal long-arm statute," *BMW of N. Am. LLC v. M/V*

*Courage*, 254 F. Supp.3d 591, 598–99 (S.D.N.Y. 2017), and "permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole." *Id.*, *citing Havlish v. Royal Dutch Shell PLC*, No. 13-CV-7074 (GBD), 2014 WL 4828654, at *4 (S.D.N.Y. Sept. 24, 2014).

Thus, the analysis replicates that employed in applying New York's long-arm statute, albeit with respect to the U.S. "as a whole." *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 541 (S.D.N.Y. 2005) ("[i]n general federal courts must guarantee that personal jurisdiction is in accordance with both the long-arm statute of the state in which the federal court is located and the Constitution"). In *Freeplay Music, LLC v. Nian Infosolutions Private Ltd.*, 2018 WL 3639929 (S.D.N.Y. July 10, 2018), *report and recommendation adopted*, 2018 WL 3632524 (S.D.N.Y. July 31, 2018), this Court adopted a Magistrate Judge's Report and Recommendation that pointed out that

> [a]s with the analysis under New York's long-arm statute, determining whether there are sufficient minimum contacts with the broader United States to support personal jurisdiction pursuant to Rule 4(k)(2) requires consideration of two different types of jurisdiction: general and specific.

*Id.*, at *13.

Consequently, Rule 4(k)(2) does not dispense with the requirement of either specific or general jurisdiction. As the Court in *BMW* noted, the analysis "calls for an inquiry into 'the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test,' and into whether 'the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" 254 F. Supp.3d at

599, *quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir.

2013).

In *Freeplay Music*, this Court endorsed the Magistrate Judge's explanation that

> [t]his in turn entails a two-step analysis: first, "whether the defendant has sufficient minimum contacts" with the United States, and second, "whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case."

2018 WL 3639929, at *13, *quoting Porina*, 521 F.3d at 127 (internal quotation marks omitted)

(*quoting Metropolitan Life Insurance Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 568 (2d Cir.

1996)).

In addition, the exercise of personal jurisdiction pursuant to Rule 4(k)(2) must be

"reasonable."  2018 WL 3639929, at *16.  As the Court elaborated in *Freeplay Music*, "[r]educed

to its essence, the 'reasonableness' of exercising jurisdiction depends on whether doing so would

comport with 'fair play and substantial justice.'" *Id*..  Here, for the reasons set forth in WikiLeaks

Memo I, at 19-23, it is respectfully submitted that the same factors that render the New York

State long-arm statute inapplicable to WikiLeaks compel the same conclusion in the context of

the federal long-arm version codified in Rule 4(k)(2).

Accordingly, it is respectfully submitted that the SAC against WikiLeaks should be

dismissed for lack of personal jurisdiction.

**Conclusion**

Accordingly, for all the reasons set forth above, as well as in WikiLeaks's initial Motions (WikiLeaks Memo I and WikiLeaks Memo II), and any other defendants' motions, including Defendants' Joint Memo(s), it is respectfully submitted that Plaintiff's Second Amended Complaint against WikiLeaks be dismissed in its entirety.

Dated: 10 June 2019
        New York, New York

                                        Respectfully submitted,

                                        ___/S/ Joshua L. Dratel_____
                                        Joshua L. Dratel
                                        Joshua L. Dratel, P.C.
                                        29 Broadway, Suite 1412
                                        New York, New York 10006
                                        (212) 732-0707
                                        jdratel@joshuadratel.com

                                        *Attorneys for Defendant WikiLeaks*

  – Of Counsel –

Joshua L. Dratel
Whitney G. Schlimbach